# EXHIBIT 1

From: Ronald Wilcox <ronaldwilcox@mac.com>
Subject: **Fausto v. Credigy, Vasquez v. Credigy, depositions**
Date: April 1, 2008 9:00:18 AM PDT
To: "David J. Kaminski" <KAMINSKD@cmtlaw.com>
Cc: Balam Letona <letonalaw@gmail.com>



David,

As you know the court has set a strict scheduling order for this case, despite the fact certain parties are in Brazil, making this matter more complicated.
You have yet to respond as to whether the individual Defendants prefer their depositions be taken in Brazil or the U.S. If we do not have an answer and available dates by this Friday, we will be forced to notice their depositions to a date and location without your input. I would prefer that we work together on this.

Ronald Wilcox
Attorney at Law
2160 The Alameda, First Floor
San Jose, CA 95126
Tel: (408) 296-0400
Fax: (408) 296-0486
ronaldwilcox@mac.com

# EXHIBIT 2



From: Ronald Wilcox <ronaldwilcox@mac.com>
Subject: **Fausto v. Credigy, Depositions, Written Discovery**
Date: April 9, 2008 10:37:47 AM PDT
To: "David J. Kaminski" <KAMINSKD@cmtlaw.com>
Cc: Balam Letona <letonalaw@gmail.com>

Dear David,

### 1. DEFENDANTS' DEPOSITIONS

When we met and conferred about this case I asked whether the individual Defendants wanted to conduct their depositions in Brazil or the U.S. Defendants did not provide the information sought. On April 1, 2008 I then wrote you in an attempt to obtain Defendants' available deposition dates and schedule Defendants' depositions. I emphasized the Court's strict scheduling order. Defendants did not provide the information sought. On Friday, April 4, 2008 Plaintiffs noticed certain individual Defendants' depositions. I understand you have voiced an objection to the depositions, but have not sought any order from the court. Furthermore, Plaintiffs are concerned that you signed a stipulation agreeing to represent and Answer for Ricardo Ventura and Thompson (Rita Goncaves), which the Court relied on in taking a motion off calendar, but now claim you will not represent them, and will not produce for depositions.

Simply put, Plaintiffs seek to proceed in an efficient and orderly manner. Fortunately, the F.R.C.P. provides the litigants certain rules to insure that. If Defendants have some specific alternative to offer, including a designation of the time and place, then please promptly provide such for Plaintiffs' consideration. Otherwise, the F.R.C.P. indicates depositions proceed absent an order from the court.

### 2. PLAINTIFFS' DEPOSITIONS

On April 2, 2008 you indicated, for the first time, you would like to take the depositions of the Plaintiffs. However, you insisted these occur before the Mediation set for April 23, 2008, and before the requested and noticed depositions of the defendants mentioned above. As you know, Defendants were unable to commit to a Mediation date during our mandatory Pre-Mediation phone call, requiring the parties, and Mediator, to hold several follow-up phone calls to resolve the Defendants' inadequacy. During such conversations you and I recognized the only possible dates we had available were those selected in late April. Thus, you are aware that neither of our schedules allow for the taking of the Plaintiffs' depositions before the mediation.

Furthermore, refusing to respond to Plaintiffs' attempt to obtain Defendants' available deposition dates, and then demanding (in the same communication) immediate depositions of the Plaintiffs, is not appropriate. Of course, it is well understood, "Playing games: with deposition sequence is a poor tactic. It undermines professionalism and may violate local court rules (see above). Equally important, it is sure to raise the antagonism level in the case, making further proceedings more costly and settlement more difficult!" **Civil Procedure Before Trial, Weil & Brown, The Rutter Group** ("TRG")[TRG 8:498]. Furthermore,

"Even in the absence of statutory authority or rule, many judges prefer depositons to be taken and completed in the order noticed. Protective orders (see below) may be granted to prevent a party from unilaterally altering the sequence of depositions (e.g., by obtaining a continuance of his or her depositions and then noticing the deposition of the opponent). [See *Young v. Rosenthal*, 212 C.A.2d 3d 96, 106, 260 C.R.D. 363, 374, fn. 10] [TRG 8:497].

We are happy to agree to a deposition schedule which follows the sequence of when the depositions were noticed. Furthermore, we agree with your assessment that this case is extraordinarily complicated. Thus, we should work together, and within the F.R.C.P. to insure it moves forward in an efficient and timely manner. You are welcome to call me so we can try to cooperate on these matters.

### 3. WRITTEN DISCOVERY

Finally, after several meet and confer sessions you and I agreed on responding to discovery on shortened time, so that the parties would have the discovery they needed for a fruitful Mediation. We then reduced our agreement to writing. You have since indicated an unwillingness to abide by our agreement. Plaintiffs expect Defendants to honor the written agreement entered into, but are happy to discuss the matter.

Sincerely,

Ron


Ronald Wilcox
Attorney at Law
2160 The Alameda, First Floor
San Jose, CA 95126
Tel: (408) 296-0400
Fax: (408) 296-0486
ronaldwilcox@mac.com

# EXHIBIT 3

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
 3    FOR THE NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE
 4
 5   MANUEL G. FAUSTO and LUZ,    )
     FAUSTO,                      )
 6                                )
                 Plaintiffs,      )
 7                                )
                                  )
 8        vs.                     ) Case No. C07 05658 JW (RS)
                                  )
 9   CREDIGY SERVICES CORPORATION;)
     CREDIGY RECEIVABLES, INC.;   )
10   CREDIGY SOLUTIONS, INC.;     )
     RYAN MILLER; RICARDO VENTURA;)
11   BRETT BOYDE; PAULO PERES;    )
     THOMPSON; and DOES 1-10,     )
12   inclusive,                   )
                                  )
13               Defendants.      )
     _____)
14
15
            DEPOSITION OF JASON SEAN WILLIAMS
16
17       BE IT REMEMBERED:  That pursuant to Notice of
18   Taking Deposition and on Tuesday, the 22nd day of 2008,
19   commencing at the hour of 9:13 a.m. of said day, before
20   me, Lisa Solomon, C.S.R., License Number CSR-8058,
21   personally appeared JASON SEAN WILLIAMS, called as a
22   witness herein, at the offices of Talty Court Reporters,
23   2131 The Alameda, Suite D, San Jose, California, and
24   being by me first duly affirmed, was examined as a
25   witness in said cause.
```

Page 76

1  native.
2      Q   Do -- does Credigy Services ever fly its
3  collectors up to the Atlanta location for training?
4      A   Well, Credigy Services Corp. only has
5  collectors in Atlanta.  It has collectors that are
6  provided by Credigy Solucoes under contract that are in
7  Brazil.
8      Q   Are any of the debt collectors that are
9  provided under contract at the Brazilian location, are
10 they ever flown up to the U.S. for training purposes?
11     A   No, it's never been any collection personnel
12 from Credigy Solucoes flown to the United States for
13 training.  However, the supervisory -- many of the
14 supervisory personnel from Credigy Solucoes have been
15 flown to the United States and participated in training
16 and observations of operations that are carried out by
17 Credigy Services Corp. in its Atlanta location.
18     Q   How often does that occur?
19     A   It's been very frequent in the past.  I mean we
20 might have someone at the Credigy Services Corp.,
21 Credigy Solutions office in Atlanta from Brazil every
22 week, or more than one person.
23     Q   Are these typically Brazilian nationals?
24         MR. KAMINSKI:  Vague and ambiguous.  Calls for
25 speculation.  Lacks foundation.

1    THE WITNESS:  Yes, typically these are
2  Brazilian nationals that may come to Atlanta for, you
3  know, a week or so to participate in meetings and
4  observe activities at Credigy Services Corp. and so on.
5  BY MR. WILCOX:
6    Q   And you know that because you've spoken to them
7  and they've told you they're Brazilian nationals, I take
8  it?
9    A   Yeah, I know many of those people who have come
10 to our office at Credigy Solutions, Credigy Services in
11 Atlanta from Brazil.  And again, I've been to the -- the
12 offices of Credigy Solucoes previously in Brazil, so I'm
13 personally familiar with many of these people.
14   Q   What are the names of the supervisors that have
15 been flown to Brazil?
16   A   Names of supervisors that have been flown to
17 Brazil?
18   Q   I'm sorry, I should have said from.  What are
19 the names of the supervisors who are flown from Brazil
20 to the U.S.?
21   A   Supervisors at Credigy Solucoes?
22   Q   Yes.
23   A   Let's see.  And you're talking about
24 supervisors that have responsibility for supervising
25 collection activity?

Page 78

1      Q    That would be correct.
2      A    Ulysses Rodrigues, Renato Orlandin, Rodrigo De
3   La Verde, Vinicius. Who I don't know his last name off
4   the top of my head. As far as supervisory personnel
5   that have responsibility from Credigy Solucoes for
6   collectors, that's all I can think of off the top of my
7   head, their names.
8           There's certainly been many more than that.
9   And those individuals I named have, to my knowledge,
10  been in the United States on quite a few business trips
11  over time.
12     Q    Getting back to the training. Besides the
13  training manual, what else can you tell me about the
14  training that's conducted for debt collectors before
15  they're allowed actually to begin making phone calls?
16     A    Again, as I indicated, Mr. Siler, to my
17  knowledge, and based on my observation, he and other
18  people he may have trained, or his predecessors,
19  conducted training sessions where they review the
20  training material, carry out tests on the FDCPA
21  material, practice phone calls and written training
22  material, any kind of -- live classroom-style training
23  is carried out prior to collectors ever making outbound
24  phone calls.
25     Q    I take it that the Brazilian location, the

Page 252

```
 1   STATE OF CALIFORNIA   )
 2   COUNTY OF SANTA CLARA )
 3                    CERTIFICATE
 4        I, Lisa R. Smith, a Certified Shorthand
 5   Reporter, License No. CSR-8058, certify that the witness
 6   in the foregoing deposition, JASON SEAN WILLIAMS, was
 7   duly sworn by me to tell the truth in the within
 8   entitled cause.  Said deposition was reported by me, a
 9   Certified Shorthand Reporter and a disinterested person,
10   to the best of my ability, and thereafter transcribed
11   into typewriting under my direction and supervision.
12   Date:  5/13/08
13                                _____
                                  Lisa R. Smith, C.S.R.
14                                License No. CSR-8058
15        The signing of the deposition by the deponent
16   was waived by stipulation at the time of the taking of
17   the deposition. _____
18        The deponent personally appeared on
19   the_____day of_____2008, and upon said date read
20   and signed the deposition. _____
21        Upon completion of the deposition, the deponent
22   was notified that it was ready for signature, but did
23   not sign said deposition for the following
24   reason:_____
25
```