TOMIO B. NARITA (SBN 156576)
JEFFREY A. TOPOR (SBN 195545)
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000
Facsimile: (415) 352-2625
tnarita@snllp.com
jtopor@snllp.com

Attorneys for Defendants
Credigy Services Corporation,
Credigy Receivables, Inc., and
Credigy Solutions, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MANUEL G. FAUSTO, AND LUZ FAUSTO,

Plaintiffs,

vs.

CREDIGY SERVICES CORPORATION, CREDIGY RECEIVABLES INC., CREDIGY SOLUTIONS INC., RYAN MILLER, RICARDO VENTURA, BRETT BOYDE, PAULO PERES, THOMPSON, and DOES 1-10, inclusive,

Defendants.

CASE NO.: C 07 05658 JW (RS)

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER BY DEFENDANTS CREDIGY SERVICES CORPORATION, CREDIGY RECEIVABLES INC., AND CREDIGY SOLUTIONS INC.**

Date: June 4, 2008
Time: 9:30 a.m.

The Honorable Richard Seeborg

# I. INTRODUCTION

In this case, Plaintiffs Manuel G. Fausto and Luz Fausto ("Plaintiffs") claim they received improper collection phone calls from Defendants. On April 4, 2008, in an apparent attempt to gain some perceived leverage in advance of court-sponsored mediation, Plaintiffs noticed the depositions of four individual defendants who reside in Brazil.[1] Plaintiffs presumably were trying to send a message to Defendants that this case would be extremely costly to defend, and therefore it should be settled. Consistent with this approach, the deposition notices purported to require these Brazilian residents (who were or had been employed as telephone collectors) to appear thousands of miles from their homes, in Atlanta, Georgia less than twenty-eight days later, on May 1, 2008 and May 2, 2008.

As a result, prior to the dates set for the depositions, Defendants Credigy Services Corporation, Credigy Receivables Inc., and Credigy Solutions Inc. ("Credigy") were forced to file the present motion for a protective order, seeking to excuse these defendants from appearing at their depositions in the United States, because of the extreme difficulty in arranging the appearance of these Brazilian nationals on such short notice.

Plaintiffs portray Credigy as obstructionists who have "gone to extraordinary lengths" to hinder discovery in this case. To the contrary, Credigy cooperated with Plaintiffs prior to Plaintiffs' unilateral decision to set the depositions – a decision which came just three days after Plaintiffs' counsel wrote to Credigy's counsel requesting available dates. Even after Credigy's counsel reminded Plaintiffs' counsel that he was no longer authorized to represent two of the four individuals – and that Credigy's counsel was not available on one of the

[1] Luis Renato Silva Nunes, Paulo Peres, Ricardo Ventura and Thompson, a.k.a. Rita de Cassia Goncalves.

dates that had been unilaterally selected for the depositions – Plaintiffs refused to withdraw the deposition notices, thus forcing Credigy to file this motion. The record clearly establishes that the parties met and conferred, but were unable to reach an agreement.

Plaintiffs have also failed to overcome the presumption that the depositions should take place in Brazil. They argue that their counsel will be arrested if they travel to Brazil to conduct the deposition, but they have not shown that the depositions cannot proceed there. In fact, depositions are permitted in Brazil, as Credigy's Brazilian counsel has confirmed. Thus, the depositions should occur in Brazil. Accordingly, Credigy requests that a protective order be issued excusing the deponents from traveling to this country for their depositions.

## II. ARGUMENT

### A. The Parties Met and Conferred

Plaintiffs devote more than half of their opposition to presenting a one-sided argument that Credigy failed to cooperate in scheduling the depositions of the individual collectors, and to observing that the collectors, all of whom reside in Brazil, did not appear for their depositions in Atlanta, Georgia, where Credigy is headquartered.[2] Contrary to Plaintiffs' suggestion, Credigy did meet and confer

---

[2] While it is true that the four individuals (two of whom, as discussed below, are former Credigy employees and thus not within Credigy's control) did not appear for the depositions, Plaintiffs present no evidence that they were harmed as a result. For example, Plaintiffs do not allege that they attended the depositions and thereby unnecessarily incurred attorneys' fees and costs. Notably, Plaintiffs do not request sanctions based on the failure to appear. In any event, sanctions are not appropriate because a motion for a protective order was filed prior to the dates of the depositions. *See* Fed. R. Civ. P. 37(d)(2) ("A failure [of a party to appear after being served with a proper deposition notice] is not excused on the ground that discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."). Plaintiffs discussion at pages 5 and 6 of their Opposition is therefore irrelevant.

regarding the location and dates of the depositions, prior to Plaintiffs' unilaterally noticing them.

Specifically, on April 1, 2008, in response to an inquiry from Plaintiffs' counsel, Ron Wilcox, Credigy's former counsel, David Kaminski, advised Mr. Wilcox that he would communicate with Credigy regarding potential dates for the depositions of Credigy's employees.[3] *See* Topor Decl. at ¶ 2, Ex. A. This apparently did not satisfy Mr. Wilcox, who insisted that Credigy provide "the available dates and location" by April 4, 2008, and threatened to notice the depositions for May 12 through May 14, 2008, "at a location convenient for Plaintiffs" if he did not receive a timely response. *Id.*

On April 2, 2008, Mr. Kaminski responded that the depositions were "logistically very difficult to schedule" because the individuals were located in Brazil, and advised Mr. Wilcox that he was unavailable from May 12th through May 14th. *Id*. In response, on April 4, 2008, Plaintiffs unilaterally noticed the

---

[3] On March 18, 2008, a stipulation was filed reflecting that Credigy had agreed to accept service of the summons and complaint on behalf of Mr. Ventura and Ms. Goncalves (Credigy had already accepted service on behalf of Messrs. Nunes and Peres). On March 27, 2008, however, Credigy's counsel advised Plaintiff's counsel that Credigy needed to withdraw the stipulation. Counsel explained that while Credigy had entered into the stipulation "in an effort to help plaintiff resolve the service of process issues with respect to these former Credigy employees and to help move the case forward since the former employees are located in Brazil," Credigy had been unsuccessful in its efforts to locate Mr. Ventura and Ms. Goncalves, and thus had not been able to obtain their authority to accept service on their behalf. *See* Declaration of Jeffrey A. Topor Re Reply In Support of Motion for Protective Order by Defendants Credigy Services Corporation, Credigy Receivables Inc. and Credigy Solutions, Inc. ("Topor Decl.") at ¶ 3, Ex. B. Accordingly, on May 8, 2008, Credigy moved to vacate the stipulation, explaining that it had been based on counsel's good faith belief that he would be able to communicate with Mr. Ventura and Ms. Nunes, which, in turn was based on his clients' representations. *See* Docket Entry No. 38. On May 21, 2008, the Court reset the hearing on that motion to September 22, 2008.

depositions of Messrs. Nunes, Peres and Ventura, and Ms. Goncalves for May 1, 2008 and May 2, 2008, in Atlanta, Georgia.

On April 8, 2008, Mr. Kaminski wrote to Mr. Wilcox and reminded him that he was not authorized to represent Mr. Ventura or Ms. Goncalves, *see* n.3, *infra*, and therefore could not produce them for their depositions. Topor Decl. at ¶ 4, Ex. C. As to Messrs. Nunes and Peres, Mr. Kaminski stated that "the service of a deposition notice has to comply with the law in Brazil and could take up to several months. Visas have to be obtained, etc. Therefore, the depositions of the Brazil employees cannot go forward on May 1, 2008 and May 2, 2008. . . . In addition, and as we discussed on April 7, 2008, I am out of town in Chicago on May 1, 2008." *See id.* Despite being advised of this, Plaintiffs did not withdraw the deposition notices.

It is clear that Credigy met and conferred with Plaintiffs regarding the scheduling of the depositions. The fact that they were unable to reach agreement does not mean that they failed to attempt to do so.

**B. Plaintiffs Have Not Established That Good Cause Exists For Conducting The Depositions In The United States**

Plaintiffs do not dispute the general proposition that a non-resident defendant is entitled to be deposed where the defendant resides – which in this case means the depositions would take place in Brazil. *See, e.g., Doe v. Karadzic*, 1997 WL 45515, *3 (S.D.N.Y. Feb. 4, 1997). Plaintiffs cite *Hyde v. Drath & Baker*, 24 F.3d 1162 (9th Cir. 1994) for the proposition that good cause exists for the Court to order that the depositions occur either in Atlanta (where Credigy's headquarters are located) or in San Jose (where the case is venued). *Hyde* does not support their argument.

There, the Ninth Circuit concluded that the district court did not abuse its discretion in ordering the <u>plaintiffs</u> – who were located in Hong Kong – to attend their depositions in San Francisco, because they had filed the lawsuit in San

Francisco and had disobeyed a prior order directing them to appear for their depositions. Thus, the Court held that it was reasonable to expect plaintiffs to appear in San Francisco for the depositions. *See id.* at 1165-66. Here, in contrast, Credigy and its employees are the defendants; they did not choose to be sued in California, nor has the Court issued any prior order requiring them to appear for their depositions that they have disobeyed.

Plaintiffs also argue that they "are subject to arrest" if they attempt to depose the witnesses in Brazil, quoting a portion of a "circular" set forth on the website of the United States Department of State. *See* Opposition at 8. Not only have Plaintiffs failed to quote the entire "circular," they have failed to establish that the "circular" is binding on this Court, or that it is impossible to depose the witnesses in Brazil. In full, the circular states as follows:

> Taking Depositions of Willing Witnesses: Brazil is not a party to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters. The United States is not a party to the evidence provisions of the Inter-American Convention on Letters Rogatory. Brazilian authorities do **not** permit persons, such as American attorneys, to take depositions for use in a court in the United States before a U.S. consular officer, with the assistance of a Brazilian attorney, or in any other manner. Brazilian law views the taking of depositions for use in foreign courts as an act that may be undertaken in Brazil only by Brazilian judicial authorities. The Government of Brazil asserts that, under Brazilian Constitutional Law, only Brazilian judicial authorities are competent to perform acts of a judicial nature in Brazil. Brazil has advised it would deem taking depositions in Brazil by foreign persons to be a violation of Brazil's judicial sovereignty. Such action potentially could result in the arrest, detention, expulsion, or deportation of the American attorney or other American participants. The United States recognizes the right of judicial sovereignty of foreign governments based on customary international law and practice; **See** , *e.g.*, the Restatement (Third) of Foreign Relations Law (1987). It is the State Department's understanding that the Brazilian prohibition on taking depositions by foreign persons extends to telephone or video teleconference depositions initiated from the United States of a witness in Brazil. The U.S. Embassy or Consulates in Brazil could in no way participate in, or otherwise sanction, such a proceeding. The State Department advises U.S. citizens contemplating participation in such a proceeding, without Brazil's concurrence, obtained through diplomatic channels, to consider carefully the possible legal consequences of doing so. Requests for Brazilian judicial assistance in taking a deposition must be addressed to the Ministry of Justice (Ministerio da Justica, Esplanada dos Ministerios - Bloco T, 70064-900 - Brasilia, DF, Brazil and should be made after consultation with a Brazilian attorney. On May 24, 2001 and October 29, 2001, the U.S.

> Department of State executed two declarations at the request of the U.S. Department of Justice filed in the United States District Court for the District of New Jersey in the civil tax matter of Frank Wheaton, III v. Porreca, et al; Civil No. 00-2205; United States v. Porreca; Civil No. 99-5943 regarding the problems inherent in seeking to obtain evidence in Brazil.

*See* http://www.travel.state.gov/law/info/judicial/judicial_672.html (emphasis omitted; hyperlinks omitted) (accessed May 20, 2008).

Setting aside the fact that the State Department's circular explicitly states that it "is provided for general information only and may not be totally accurate in a particular case," *see id.*, the circular makes clear that it is possible to conduct depositions in Brazil:

> Brazilian law views the taking of depositions for use in foreign courts as an act that may be undertaken in Brazil only by Brazilian judicial authorities. The Government of Brazil asserts that, under Brazilian Constitutional Law, only Brazilian judicial authorities are competent to perform acts of a judicial nature in Brazil. . . . Requests for Brazilian judicial assistance in taking a deposition must be addressed to the Ministry of Justice . . . and should be made after consultation with a Brazilian attorney.

*Id.* This is consistent with advice that Credigy has recently received from its counsel in Brazil, Monica Simas de Lima, who has advised that the depositions can proceed in Brazil.

Thus, while it appears that Plaintiffs' United States counsel may not be permitted to conduct the depositions in Brazil, depositions apparently are not categorically prohibited there. Plaintiffs have failed to establish that the depositions must be taken in the United States because they cannot be taken in Brazil, and thus have failed to carry their burden of showing good cause for ordering that the depositions take place in this country.

Plaintiffs submit that "applying for a Visa is a rather routine matter." Opposition at 8:14. Regardless whether applying for a visa is "routine," there is no evidence that being granted a visa is routine, especially for Credigy's Brazilian

collectors.[4] As the Exhibit submitted by Plaintiffs states, "There is no guarantee of obtaining an visa." *See* Exhibit 4, at page 2, step 4, attached to Declaration of Balam O. Letona. In any event, no visas for Messrs. Nunes and Peres have been issued, and unless and until defendants receive visas, they cannot travel to the United States.

## III. CONCLUSION

Credigy respectfully requests that the Court issue a protective order excusing defendants Nunes and Peres from appearing for their depositions in the United States. Alternatively, Credigy requests that Messrs. Nunes and Peres not be required to appear for depositions in the United States unless and until they are authorized to travel here.

DATED: May 21, 2008

SIMMONDS & NARITA LLP
TOMIO B. NARITA
JEFFREY A. TOPOR

By: s/Tomio B. Narita
Tomio B. Narita
Attorneys for Defendants
Credigy Services Corporation,
Credigy Receivables, Inc., and
Credigy Solutions, Inc.

---

[4] Plaintiff notes that Credigy's employee, Jason Sean Williams, testified during a Rule 30(b)(6) deposition that Credigy's employees "routinely fly" to Atlanta for weekly meetings. Plaintiff fails to disclose, however, that it is "supervisory personnel" who have come to the United States for "training and observations of operations." *See* Declaration of Ronald Wilcox In [Support of] Opposition to Defendants' Motion for Protective Order, Ex. 3, at 76:14-17. When asked whether "any of the debt collectors" were flown to the United States, Mr. Williams responded, "No, it's never been any collection personnel . . . flown to the United States for training." *See id*. at 76:8-13.