TOMIO B. NARITA (SBN 156576)
JEFFREY A. TOPOR (SBN 195545)
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000
Facsimile:   (415) 352-2625
tnarita@snllp.com
jtopor@snllp.com

Attorneys for Defendants
Credigy Services Corporation,
Credigy Receivables, Inc., and
Credigy Solutions, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MANUEL G. FAUSTO, AND LUZ FAUSTO,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CREDIGY SERVICES CORPORATION, CREDIGY RECEIVABLES INC., CREDIGY SOLUTIONS INC., RYAN MILLER, RICARDO VENTURA, BRETT BOYDE, PAULO PERES, THOMPSON, and DOES 1-10, inclusive,<br><br>        Defendants. | CASE NO.: C 07 05658 JW (RS)<br><br>**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER BY DEFENDANTS CREDIGY SERVICES CORP., CREDIGY RECEIVABLES INC. AND CREDIGY SOLUTIONS INC.**<br><br>Date:   June 25, 2008<br>Time:  9:30 a.m.<br>Ctrm:  4, 5th Floor<br><br>The Honorable Richard Seeborg |

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    Plaintiffs Have Failed To Establish Good Cause For A
              Protective Order  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.    Any Recordings Must Be Produced Immediately Because
              Plaintiff Intends To Use Them As Substantive Evidence, To
              Prove The Truth Of Their Allegations . . . . . . . . . . . . . . . . . . . . . . . 5

        C.    Any Surreptitious Recordings Of Live Phone Calls Are
              Relevant To Defendants' Unclean Hands Defense  . . . . . . . . . . . . 11

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

4

*Costa v. AFGO Mech. Servs., Inc.*,
237 F.R.D. 21 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 10, 11

5

*Jerolimo v. Physicians For Women, P.C.*,
238 F.R.D. 354 (D. Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 10

6

7

*Mason v. T.K. Stanley, Inc.*,
229 F.R.D. 533 (S.D. Miss. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

8

*Poppo v. AON Risk Servs.*,
2000 WL 1800746 (S.D.N.Y. Dec. 6, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

9

10

*Pro Billiards Tour Ass'n v R.J. Reynolds Tobacco Co.*,
187 F.R.D. 299 (M.D.N.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

11

*Renteria v. Collectcorp*,
2005 WL 4109338 (N.D. Cal. Oct. 26, 2005) . . . . . . . . . . . . . . . . . . . . . 3, 5, 9, 10

12

13

*Rivera v. NIBCO, Inc.*,
384 F.3d 822 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

14

*Roberts v. Americable Int'l. Inc.*,
883 F. Supp. 499 (E.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15

16

*Sherrell Perfumes, Inc. v. Revlon, Inc.*,
7 F.R.D. 705 (S.D.N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

17

*Stamps v. Encore Receivables Management, Inc.*,
232 F.R.D. 419 (N.D. Ga. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18

19

*Stoldt v. Centurion Indus., Inc.*,
2005 WL 375667 (D. Kan. Feb. 3, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

20

*Torres-Paulett v. Traditions Mariner, Inc. M/V Tradition*,
157 F.R.D. 487 (S.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

21

22

*Walls v. International Paper, Inc.*,
192 F.R.D. 294 (D. Kan. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

23

24

25

26

27

28

1

# STATE CASES

2

*Coulter v. Bank of America, NTSA*,
28 Cal. App. 4th 766 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

3

*Ion Equip. Corp. v. Nelson*,
110 Cal. App. 3d 868 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4

5

6

# STATE STATUTES

7

8

California Penal Code,
    § 632 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12
    § 632(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12
    § 637.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12
    § 637.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9

10

11

12

# OTHER AUTHORITIES

13

14

Federal Rules of Civil Procedure,
    26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    26(c)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    <u>INTRODUCTION</u>

Plaintiffs Manuel G. Fausto and Luz Fausto ("Plaintiffs") claim that they recorded telephone calls placed by employees of Credigy Services Corporation, Credigy Receivables, Inc., and Credigy Solutions, Inc. ("Defendants").  Plaintiffs allege that during the phone calls, the employees allegedly harassed, abused and threatened them.  Plaintiffs refuse to turn over the alleged tapes, or to provide any information about their alleged contents.

Defendants deny that the harassing calls were made, and doubt that any such recordings actually exist.  Assuming that the recordings exist, however, they are relevant to Plaintiffs' claims, and Defendants' defense, and therefore must be produced.  Plaintiffs plan to rely on the tapes as substantive evidence to prove their claims.  If the calls were recorded without the collectors' consent, then Defendants would rely on the tapes in support of their unclean hands defense, and in connection with state law privacy claims that they plan to pursue.

Plaintiffs suggest that they should be excused from producing any recordings in advance of the depositions of Defendants' employees, because they might conform their deposition testimony to the contents of the recordings.  This makes no sense, of course, because witnesses cannot be expected to intentionally conform their testimony to recordings in which they allegedly harassed, abused or intimidated a debtor in violation of the law.

It is apparent that Plaintiffs' refusal to produce the alleged tapes – or their refusal to admit that no such tapes exist – is an essential part of their settlement strategy.  Plaintiffs seem to believe they can obtain maximum settlement leverage by holding out as long as possible before admitting either that the tapes do not

1    exist, or that they are not really harassing or abusive after all.  But if any tapes

2    exist, they are key evidence in the case, and they must be produced.[1]

3        Plaintiffs have failed to show that a protective order is necessary to protect

4    them from annoyance, embarrassment, oppression, or undue burden or expense.

5    Nor have they shown that good cause exists for the issuance of a protective order.

6    The motion should be denied.

7

8    **II.    ARGUMENT**

9        **A.    Plaintiffs Have Failed To Establish Good Cause For A Protective
                 Order**

10       Plaintiffs contend that "Defendants engaged in a campaign of telephone

11   abuse" in an effort to coerce them into paying a debt, by making abusive and

12   harassing telephone calls, including calls in which Defendants allegedly falsely

13   threatened "to take Plaintiffs['] home."  *See* Motion at 3:2-8.  By this motion,

14   Plaintiffs seek an order allowing them to withhold substantive evidence – audio

15   recordings of telephone calls that Defendants' employees allegedly placed to them

16   – until after they have deposed those employees.

17       Plaintiffs do not explicitly state why they should be permitted to withhold

18   this key evidence until after the depositions are completed.  At best, they imply

19   that they are entitled to withhold the alleged recordings to prevent Defendants'

20   employees from conforming their deposition testimony to the contents of the

21   recordings.  Plaintiffs have failed to establish that a protective order is necessary

22

23   _____

24       [1] It is ironic that Plaintiffs are withholding key evidence, yet they devote
     almost half of their motion to seeking to depict Defendants as obstructing the search

25   for the  truth in this action (and in another action that the court has explicitly stated
     is unrelated to this action).  It is also ironic that – after the parties worked with a

26   mediator and "agreed to a framework to move this issue forward toward an amicable

27   resolution without the need for expensive and time-consuming motions" – it is
     Plaintiffs who have burdened the Court with this motion.

28

1    or that good cause exists for issuing such an order.  Their motion should be

2    denied.

3        Upon a showing of "good cause," this Court may issue a protective order

4    "to protect a party or person from annoyance, embarrassment, oppression, or

5    undue burden or expense," including an order setting a timetable "for the

6    disclosure or discovery" of evidence.  *See* Fed. R. Civ. P. 26(c)(1)(B).  As the

7    party seeking a protective order, Plaintiffs bear the burden of demonstrating good

8    cause.  *See Renteria v. Collectcorp*, 2005 WL 4109338, *1 (N.D. Cal. Oct. 26,

9    2005).

10        "'Good cause' is established where it is specifically demonstrated that

11   disclosure will cause a 'specific prejudice or harm.' . . . Courts have held that the

12   showing of 'good cause' under Rule 26 is a heavy burden. . . . 'Broad allegations

13   of harm, unsubstantiated by specific examples or articulated reasoning, do not

14   satisfy the Rule 26(c) test.'"  *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir.

15   2004) (quoted citations omitted); *see Jerolimo v. Physicians For Women, P.C.*,

16   238 F.R.D. 354, 356 (D. Conn. 2006) ("To establish good cause under Rule 26(c),

17   courts require a 'particular and specific demonstration of fact, as distinguished

18   from stereotyped and conclusory statements.'").  Plaintiffs have failed to make this

19   showing.

20        First, Plaintiffs have not submitted any evidence to establish that a

21   protective order is necessary to protect them from "annoyance, embarrassment,

22   oppression, or undue burden or expense."  They have not even discussed this

23   threshold issue in their motion.  It is hard to imagine how delaying the production

24   of the alleged recordings – which, if they exist, presumably inculpate Defendants –

25   could conceivably be necessary in order to protect the Plaintiffs.  For this reason

26   alone, their motion should be denied.

27

28

Next, Plaintiffs' motion should also be denied because they have failed to show good cause. In fact, Plaintiffs have completely failed to articulate any cause for withholding the alleged recordings. At best, Plaintiffs intimate – by citing a handful of non-binding district court decisions[2] – that if they are required to produce the alleged recordings prior to deposing Defendants' employees, those employees will somehow tailor their testimony to conform with the statements allegedly recorded. Absent a showing of good cause, however, "there is no reason to assume automatically that the party whose statements have been recorded will have a propensity to fabricate evidence or lie during the course of his or her testimony." *See Costa v. AFGO Mech. Servs., Inc.*, 237 F.R.D. 21, 24, 26 (E.D.N.Y. 2006) (finding that plaintiff's "mere 'conclusory allegation'" of potential for tailoring testimony "is insufficient to establish good cause"); *accord Jerolimo*, 238 F.R.D. at 356-57. Here, Plaintiffs have not even attempted to make a showing that any employee of Defendants would fabricate testimony if the tapes are produced.

The reasoning underlying the decisions cited by Plaintiffs does not apply here. Their argument presupposes that, if permitted to review the alleged recordings before being deposed, Defendants' employees will then testify consistently with their prior recorded statements. If the recordings actually exist, they presumably support Plaintiffs' allegations that Defendants' employees abused them, harassed them and threatened to take their home.[3] Given the potential

---

[2] *Poppo v. AON Risk Servs.*, 2000 WL 1800746 (S.D.N.Y. Dec. 6, 2000); *Walls v. International Paper, Inc.*, 192 F.R.D. 294 (D. Kan. 2000); *Torres-Paulett v. Traditions Mariner, Inc. M/V Tradition*, 157 F.R.D. 487 (S.D. Cal. 1994); *Sherrell Perfumes, Inc. v. Revlon, Inc.*, 7 F.R.D. 705 (S.D.N.Y. 1977).

[3] Plaintiffs have provided absolutely no information about the recordings, such as when the recordings were made, who made the calls, to whom the calls were made, how many calls were made, what time the calls were made, who the callers were, or

1   liability facing Defendants' employees – who are defendants in this action – the

2   more likely presumption is that they would <u>deny</u> having abused, harassed or

3   threatened Plaintiffs.  They would <u>not</u> tailor their testimony to the recordings –

4   they would testify <u>inconsistently</u> with the contents of the alleged recordings.  None

5   of the cases cited by Plaintiffs make sense in this situation.

6       Plaintiffs have failed to establish that there is good cause for delaying the

7   production of the alleged recordings until after Defendants' employees have been

8   deposed.  If the recordings exist, they should be produced now.  Their motion

9   should be denied.

10      **B.    Any Recordings Must Be Produced Immediately Because
            Plaintiffs Intend To Use Them As Substantive Evidence, To Prove
11           The Truth Of Their Allegations**

12      Before this motion was filed, Plaintiffs attempted to justify their refusal to

13  produce the alleged recordings by arguing that they intended to use them for

14  impeachment purposes only.  At that time, Plaintiffs relied upon this Court's

15  decision in *Renteria v. Collectcorp*.  *See* Declaration of Balam Letona In Support

16  of Plaintiff's Motion For Protective Order, at ¶ 13.  When they filed this motion,

17  however, Plaintiffs did not cite to *Renteria*, presumably because it does not apply

18  here.  Plaintiffs clearly intend to use the recordings as substantive evidence in

19  support of their claims, and not solely for impeachment.

20      Numerous courts have held that recordings that constitute substantive

21  evidence must be produced prior to any deposition of the person whose statement

22  was recorded.[4]  Two of those cases are particularly instructive here.

23

24  even a general description of what was said.  Instead, all that Plaintiffs say is that

25  "[c]ertain phone calls were recorded."  *See* Motion at 4:3.

26      [4] *See, e.g., Costa*, 237 F.R.D. 21; *Jerolimo*, 238 F.R.D. 354;  *Stamps v. Encore
    Receivables Management, Inc.*, 232 F.R.D. 419, 423-24 (N.D. Ga. 2005);  *Mason v.*
27  *T.K. Stanley, Inc.*, 229 F.R.D. 533, 534-35(S.D. Miss. 2005); *Stoldt v. Centurion*
    *Indus., Inc.*, 2005 WL 375667, **1-2 (D. Kan. Feb. 3, 2005); *Pro Billiards Tour*

1    In the first, *Stamps v. Encore Receivables Management, Inc.*, an FDCPA

2    action like this one, the defendant debt collector requested that the debtor produce

3    "all recorded voice mail messages" the collector had left for the debtor.  The

4    debtor objected to producing any recordings until after she deposed the collector

5    and its employees, so that she could obtain their "unrefreshed recollection of

6    events that gave rise to this litigation."  The collector moved to compel.  The court

7    granted the motion and ordered the debtor to promptly produce a recording of a

8    voicemail message left by the collector, because it was substantive evidence that

9    the debtor intended to use to prove her claim that the collector had abused and

10   harassed her.  *See* 232 F.R.D. at 422-24.

11   Initially, the *Stamps* court construed the debtor's objection as effectively

12   "seeking a protective order delaying the production of the tape," and noted that the

13   debtor bore the burden of showing good cause for such an order.  *Id.* at 423.  The

14   court then explained that resolution of the issue "depends on the classification of

15   the tape as either substantive evidence or impeaching evidence," and further

16   explained that if the substantive value of the evidence outweighed the

17   impeachment value of the evidence, production of the recording would not be

18   delayed until after the depositions.  *See id.* (citing *Pro Billiards Tour Ass'n v R.J.*

19   *Reynolds Tobacco Co.*, 187 F.R.D. 229 (M.D.N.C. 1999)).  "When a party uses a

20   recording to establish the truth of the case, that recording largely constitutes

21   substantive evidence."  *Id.*

22   In *Stamps*, because the debtor had referred to the recording in her complaint,

23   in her initial disclosures and in her response to the collector's discovery request,

24   the court found that the debtor was "clearly using the tape as substantive

25   evidence."  As the court said,

26

27   ────────────────────

28   *Ass'n v R.J. Reynolds Tobacco Co.*, 187 F.R.D. 299 (M.D.N.C. 1999);

1
2
3
4

> Plaintiff intends to use the tape to establish the truth of [her] allegations that Defendant used harassing and fraudulent means in connection with the collection of [her] debt. **Indeed, the real value of the recording is not in impeaching a witness, but in the facts and issues determined by the recording. The memory of a witness as to what was said is of lesser importance.** If the 'truth' is on the audiotape, then the value of allowing Plaintiff to impeach Defendant []or Defendant['s] [] representative will be minimal.

5

*Id.* (emphasis added).

6
7
8

The *Stamps* court also reasoned that fairness required immediate production of the recording. *See id.* The collector

9
10
11

> may need to verify the existence and the contents of the audio recording before subjecting itself and its representatives to a potentially misleading examination. In addition, Plaintiff used this tape to prepare for the litigation and has had the advantage of preparing her testimony on an important substantive issue in this case. In order not to distort the truth-finding process of cross-examination, Defendant [] should have the same opportunity.

12

*Id.*[5]

13
14
15
16
17
18
19
20

Finally, the *Stamps* court acknowledged that other courts had permitted delays in production of recordings, but "only upon a finding that such recordings may potentially provide compelling impeaching evidence." *Id.* The court found that the debtor had failed to articulate the value of obtaining Defendants' "unrefreshed recollection of the events giving rise to this litigation." *Id.* at 424. Accordingly, the court ordered the debtor to produce "all voice mails and other tapes" within five days. *Id.*

21
22
23
24
25
26
27
28

---

[5] *See also Mason*, 229 F.R.D. at 536 ("Yet there are real equitable and fairness concerns that argue in favor of compelling the production and predisposition access to such statements. As identified by the court in *Pro Billiards,* the party who created the tapes 'will have already reviewed the recording in question and would have an undue or unfair advantage of having or being able to prepare for its deposition with the recording, while denying the same opportunity to the opponent.' It certainly strains fairness and predictability, both overarching concerns of the trial process, to allow a party unlimited time to craft the perfect series of questions to ambush a deponent.").

1    Also instructive is the case cited by the *Stamps* court, *Pro Billiards Tour*

2    *Ass'n v R.J. Reynolds Tobacco Co.*  There, the plaintiff recorded a meeting with

3    representatives of the defendant.  In response to the defendant's request that the

4    recording be produced, the plaintiff sought a protective order, arguing that

5    production should be delayed until after the plaintiff could depose the defendant's

6    representatives and obtain "their unrefreshed and unrehearsed recollection of what

7    was stated at that meeting," in order to preserve "the impeachment value" of the

8    recording.  *See* 187 F.R.D. at 229-30.  The court denied plaintiff's request.

9    The *Pro Billiards* court observed that "evidence rarely fits within a single

10   category," and that a party's recorded statement often "constitute[s] both

11   impeachment and substantive evidence." *Id.* at 230-31.  The court acknowledged

12   that other courts had delayed production of evidence that had substantive and

13   impeachment value, but noted that "where the substantive value of the evidence

14   predominates, production has not been delayed until after the deposition." *Id.* at

15   231.

16   Surveying the relevant caselaw, the *Pro Billiards* court concluded that the

17   optimal criteria for deciding whether to delay production was to classify the

18   evidence based on "its relative importance as either impeachment or substantive

19   evidence." *Id.*  The court reasoned that the

20   nature of substantive evidence supports this more even-handed treatment.
     'Substantive evidence is offered to establish the truth of a matter to be
21   determined by a trier of fact.' . . . **In the instance of a recording of fact
     events, surreptitious or not, the real value of the recording is not in
22   impeaching a witness, but in the facts and issues determined by the
     recording.  The memory of a witness as to what was said is of lesser
23   importance**. . . . When a party seeks to use a recording which majorly
     constitutes substantive evidence, that party is using the recording to
24   establish the truth of the case.  Therefore, when a party has obtained a
     recording of another party but wants to delay production until after that
25   other party's deposition, the court will deny the request where the recording
     majorly constitutes substantive evidence.
26
     *Id.* at 231-32 (emphasis added).
27

28   _____

1    Applying this reasoning, the *Pro Billiards* court held that the tape recording

2    at issue – which allegedly provided evidence of an oral contract – "majorly

3    constitutes substantive evidence" because if the "'truth' is on the audiotape, then

4    the value of allowing plaintiff to impeach defendant's representatives will be

5    minimal." *Id.* at 232.  Consequently, the court denied the plaintiff's motion for a

6    protective order seeking to delay production of the recording until after the

7    deposition.  *Id.*[6]

8    Here, if the tapes exist, the record shows that Plaintiffs plan to use the

9    recordings as substantive evidence to prove their case.  Like the debtor in *Stamps*,

10   Plaintiffs' initial disclosures reveal that they may rely on "recordings of

11   communications between the parties" to prove their claims.  *See* Declaration of

12   Jeffrey Topor In Support of Defendants' Opposition to Motion For Protective

13   Order at ¶ 2, Ex. A [Plaintiff's Initial Disclosures at ¶ 3(H)].  Similarly, in

14   response to Defendants' discovery requests, Plaintiffs have also identified

15   "recordings of calls" as evidence that supports all of their claims in this case.  *See*

16   *id.* at ¶ 3, Ex. B [Plaintiff Manuel Fausto's Response to Request for Production of

17   Documents at ¶¶ 1-6] and ¶ 4, Ex. C [Plaintiff Luz Fausto's Response to Request

18   for Production of Documents at ¶¶ 1-6].

19   Plaintiffs never argue that the alleged recordings constitute impeachment

20   evidence.  Indeed, they never explain why production should be delayed.  At most,

21   they simply state that they "merely seek to provide the tape recordings, and

22   respond to the related discovery at the appropriate time."  Motion at 8:13-14; *see*

23

24        [6] *See also Stoldt*, 2005 WL 375667 at *2 (finding "that the conversations

25   captured on Plaintiffs' tapes directly impact Plaintiffs' claims and Defendant's

26   defenses, as the tapes allegedly record fact events that are pivotal to the present

27   litigation.  Thus, the real value of the tape recordings are in their documentation of the

     actions of Plaintiffs' co-workers and the reaction of Defendants to Heather Stoldt's

28   complaints.").

1    *id.* at 10:1-2.  Like the debtor in *Stamps*, Plaintiffs here have failed to articulate the

2    value of obtaining Defendants' "unrefreshed recollection of the events giving rise

3    to this litigation."  *See* 232 F.R.D. at 424.

4        Plaintiffs previously argued that they were not required to produce the

5    alleged recordings because they intended to use them solely for impeachment,

6    relying upon this Court's decision in *Renteria*.  Tellingly, after Defendants pointed

7    out that *Renteria* did not apply, because Plaintiffs had not stated that they would

8    use the tapes solely for purposes of impeachment, Plaintiffs abandoned their

9    reliance on *Renteria*.  The obvious implication of this about-face is that Plaintiffs

10   intend to use the alleged recordings as substantive evidence.  Plaintiffs are not

11   entitled to a protective order and should be directed to produce the recordings

12   immediately.[7]

13       None of the authorities cited by Plaintiffs are persuasive or binding here.

14   Essentially, those cases, which were acknowledged by the *Stamps* and the *Pro*

15   *Billiards* courts, seek to preserve the impeachment value of the recordings, by

16   delaying their production until after the deposition of the party whose statement

17   was recorded.  In each case, the Court's decision rested upon the presumption

18   (which does not apply here) that the deponents would <u>conform</u> their testimony to a

19   prior recorded statement if provided with access to the recordings prior to their

20   depositions.  *See Poppo*, 2000 WL 1800746 at *1; *Walls*, 192 F.R.D. at 298;

21   *Torres-Paulett*, 157 F.R.D. at 488-89.  Furthermore, none of the cases address the

22

23

24       _____

25       [7]   In addition to the concerns discussed in *Stamps* and *Pro Billiards*, other
     courts have also considered the circumstances surrounding the recording.  If done

26   surreptitiously, as was the case here, "there is a heightened justification for producing
     the tape recordings to the defendants in advance of their depositions."  *Costa*, 237

27   F.R.D. at 26; *accord Jerolimo*, 238 F.R.D. at 357; *Roberts v. Americable Int'l. Inc.*,

28   883 F. Supp. 499, 505 (E.D. Cal. 1995).

1  important distinction between substantive and impeachment evidence.  *See, e.g.,*

2  *Costa*, 237 F.R.D. at 24.[8]

### C.  Any Surreptitious Recordings Of Live Phone Calls Are Relevant To Defendants' Unclean Hands Defense

4  If Plaintiffs recorded any live phone calls without the consent of all parties

5  to the call, then they violated California law.  If any such recordings exist, they

6  must be produced because they are relevant to Defendants' unclean hands defense.

7  In addition, Defendants have standing to assert affirmative state law claims against

8  Plaintiffs if they made recordings without the collectors' consent.  For these

9  additional reasons, this motion should be denied.  The tapes should be turned over.

10  California law prohibits the recording of live phone calls unless all parties

11  on the call consent to the taping.  *See* Cal. Penal Code § 632(a).  If Plaintiffs made

12  recordings of Defendants' employees without their consent, they violated

13  California law and have unclean hands.

14  In addition, Defendants may have an affirmative claim against Plaintiffs

15  under state law based upon any such recordings.  Section 637.2 of the California

16  Penal Code provides that any person injured by a recording made in violation of

17  section 632 of that Code may bring a civil action for three times the amount of any

18  actual damages sustained, or up to $5000 for each violation, whichever is greater.

19

20  _____

   [8] Plaintiffs also cite *Sherrell Perfumes, Inc. v. Revlon, Inc.*, 7 F.R.D. 705, 707

21  (S.D.N.Y. 1977).  There, with virtually no analysis whatsoever, the district court

22  simply denied a motion for *de novo* review of a magistrate judge's protective order

23  postponing plaintiff's production of recordings pending the depositions of the recorded persons.  The district court merely noted that the magistrate judge had

24  "decided that the interest of plaintiff in determining the present unrefreshed recollection of the persons whose statements are in issue outweighs any prejudice to

25  defendants."  *Id.*  Plaintiffs have not asserted that they have any such interest.

26  Regardless, in light of the fairness concerns recognized by the *Stamps* court, and others, Defendants would be prejudiced by permitting Plaintiffs to withhold the

27  alleged recordings pending the depositions.

28

1    *See* Cal. Penal Code § 637.2.  In addition, California courts have held that a

2    corporation has standing to assert a claim for violations of Penal Code 632 under

3    section 637.2 of the Code, if the secret recordings were made of calls with the

4    corporation's employees.  *See Coulter v. Bank of America, NTSA*, 28 Cal. App. 4th

5    766 (1994) (affirming judgment for bank and its employees for $132,000 entered

6    against former employee who secretly taped colleagues in order to obtain evidence

7    for his wrongful termination case); *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d

8    868 (1980) (recognizing that corporation has standing to sue under Penal Code

9    section 637.2: "The purpose of the Invasion of Privacy chapter is to deter wrongful

10   conduct. That purpose could be easily circumvented if it were not an offense to

11   eavesdrop upon or record confidential communications of corporations.  Since a

12   corporation is considered a 'person' which may be held liable for invasion of

13   privacy pursuant to Penal Code section 632, subdivision (a), we believe the

14   Legislature intended the words 'any person' stated in section 637.2, subdivision

15   (a), to include corporations as well.").

16        Any surreptitious recordings of live phone calls are relevant to Defendants'

17   affirmative defenses and to privacy claims that Defendants may assert.  They

18   should be produced promptly.

19

20   **III.    <u>CONCLUSION</u>**

21        For the foregoing reasons, Defendants respectfully submit that Plaintiffs'

22   motion for a protective order should be denied, and Plaintiffs should be ordered to

23   produce the alleged recordings immediately.

24

25

26

27

28

1 │ DATED:  June 3, 2008                              SIMMONDS & NARITA LLP
2 │                                                   TOMIO B. NARITA
                                                      JEFFREY A. TOPOR
3 │
4 │                                        By:   s/Jeffrey A. Topor
5 │                                               Jeffrey A. Topor
                                                 Attorneys for Defendants
6 │                                               Credigy Services Corporation,
                                                 Credigy Receivables, Inc., and
7 │                                               Credigy Solutions, Inc.
8 │
9 │
10 │
11 │
12 │
13 │
14 │
15 │
16 │
17 │
18 │
19 │
20 │
21 │
22 │
23 │
24 │
25 │
26 │
27 │
28 │