1  Balám O. Letona, Bar No. 229642
   LAW OFFICE OF BALÁM O. LETONA, INC.
2  1347 Pacific Avenue, Suite 203
   Santa Cruz, CA 95060-3940
3  Tel: 831-421-0200
   Fax: 831-621-9659
4  Email: letonalaw@gmail.com

5  Ronald Wilcox, Bar No. 176601
   LAW OFFIC OF RONALD WILCOX
6  2160 The Alameda, First Floor, Suite F
   San Jose, CA 95126
7  Tel: 408-296-0400
   Fax: 408-296-0486
8  Email: ronaldwilcox@post.harvard.edu

9  Attorneys for Plaintiffs

10                          **U.S. DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
11                         **SAN JOSÉ DIVISION**

12  MANUEL G. FAUSTO and LUZ FAUSTO,   ) Case No.: C07-05658 JW RS
                                        )
13            Plaintiffs,                ) **REPLY BRIEF REGARDING**
                                        ) **PLAINTIFFS' MOTION FOR**
14                                      ) **PROTECTIVE ORDER**
                                        )
15  v.                                   ) Date:  June 25, 2008
                                        ) Time:  9:00 a.m.
16                                      ) Place: 280 South 1st Street
    CREDIGY SERVICES CORPORATION,        )        San Jose, CA
17  CREDIGY RECEIVABLES INC.,            )
    CREDIGYSOLUTIONS INC., RYAN          ) **JUDGE RICHARD SEEBORG**
18  MILLER, RICARDO VENTURA, BRETT       )
    BOYDE, PAULO PERES, THOMPSON and    )
19  DOES 1-10, inclusive,                )
                                        )
20            Defendants.

21

22                          **I. INTRODUCTION**

23      The Defendants in this matter used their telephones to abuse California consumers in

24  violation of Federal and state law.  The Plaintiffs demanded that the Defendants stop contacting

25  them.  The Defendants refused to stop and continued to telephone the Plaintiffs.  In continuing to

- 1 -

harass the Plaintiffs with these telephone calls, the Defendants violated numerous provisions of the Fair Debt Collection Practices Act, as well as state common law.  The Defendants actions also constitute violations of California Penal Codes §653m, §519, and §524.  The Plaintiff then recorded Defendant engaging in the illegal acts so as to obtain evidence of such. [1]

      The Plaintiffs' motion seeks to disclose the recorded evidence after the Plaintiff has deposed certain witnesses. [2]  Plaintiffs are NOT attempting to withhold the recordings permanently, but merely seek a delay in the production until Plaintiffs has obtained the un-refreshed, and untailored deposition testimony of Defendants and their agents. This delay does not prejudice the Defendants in any way, and aids in the search for truth in the matter.

      Plaintiff intends to use the recording as impeachment evidence only.

## II. BACKGROUND

      Defendants sought to collect from Plaintiffs an almost ten year (10) old charged-off debt. Defendants began placing abusive telephone calls to the Plaintiffs.  From the outset the Plaintiffs disputed the debt in its entirety.  To put an end to the constant phone calls and harassment, Plaintiffs sent the Defendants a "cease and desist" letter demanding that the Defendants stop contacting them.[3]  The Defendants ignored the cease and desist letter and repeatedly and continuously contacted the Plaintiffs in an attempt to collect on the alleged debt.  Defendants' made approximately <u>ninety-five (95)</u>[4] <u>phone calls</u> to the Plaintiffs, with *eighty-four* (84) of these

---

[1] The Court should note that there is a similar motion pending in the matter of *Pintor v. Credigy et al.* with Judge Lloyd under Docket number 07-06428 JF HRL to be heard on June 24, 2008.  The Court should note that the allegations in the *Pintor* complaint are extremely similar to the herein matter. Additionally, the Court should note that the issues raised in this motion are virtually identical to the pending motion in *Pintor,* and that there are overlapping witnesses.

[2] The witnesses Plaintiffs seek to depose prior to turning over the recorded evidence are: the F.R.C.P. 30b(6) witness (continuation); Brett Boyde (continuation); Ryan Miller (a.k.a. Luis Renata Silva Nunez); Ricardo Ventura; Rita Goncalvces; Moises Moteli; Ralph Phillips, and Renato Orlandin.

[3] Under the Fair Debt Collection Practices Act , the sending of a "cease and desist" letter prohibits the debt collector from ever contacting the Plaintiff again.  See 15 USC 1692c.

[4] *See Declaration of Balám O. Letona In Support of Plaintiff's Reply to Defendants' Opposition, §3, line 3 -15, the Live Vox, Inc. call log is attached as Exhibits 1 to the declaration.*

1  phone calls occurring <u>after</u> Defendant received the cease and desist letter. [5]   The Plaintiffs then

2  recorded Defendants engaging in the illegal acts so as to obtain evidence of such.

3  Plaintiffs have begun the process of attempting to depose the relevant witnesses.

4  Defendants produced a 30b(6) witness that was not competent to testify about the relevant phone

5  calls, or the callers[6]. Plaintiffs seeks to continue the 30b(6) deposition with a person that is

6  competent to testify about the calls before producing the recorded evidence[7]. Additionally,

7  several defendants failed to appear for properly noticed depositions. Plaintiffs seeks to obtain

8  the depositions of the relevant fact witnesses before producing the recorded evidence.

9  The Court should note that the Plaintiffs have sought to obtain available dates from the

10 Defendants to conduct these depositions. The Defendants have not responded. As such,

11 Plaintiffs have begun noticing depositions.

### III. PLAINTIFF SEEKS TO OBTAIN THE UNREFRESHED, UNTAILORED TESTIMONY OF DEFENDANTS

The Plaintiffs seeks to withhold the recorded evidence so that the relevant witnesses do not tailor their testimony to the recorded evidence. In holding that the depositions must be conducted before the production of the recordings, the court in *Poppo v. AON Risk Servs.*, 2000 U.S. Dist. LEXIS 17588 (S.D. NY 2000) engaged in an in depth analysis underlying the propriety of its decision and engaged in a review of relevant case law:

> "Since biblical times the prospect of tailoring testimony and its ramifications has been understood and condemned. This is presently seen most clearly in the sequestration of witnesses. Skipping some 2000 years, Second Circuit courts have delayed the production of audio or video tapes prior to one or more depositions in order to prevent the defendant or its witnesses from tailoring their testimony to conform with their prior recorded statements or

---

[5] In another case pending against Defendants in the Northern District of California, *Pintor v. Credigy et al.*, Defendants made approximately sixty-six (66) phone calls, with almost all of those calls being placed after a cease and desist order.

[6] *See Declaration of Balám O. Letona In Support of Plaintiff's Reply to Defendants' Opposition, §4, line 16 -17, the Live Vox, Inc. call log is attached as Exhibits 1 to the declaration.*

[7] Additionally, individual fact witnesses failed to appear for properly noticed depositions in the *Fausto* matter, and Defendants counsel have sought to withdraw from representing Ricardo Ventura and Thompson a.k.a Rita Goncalvces, complicating the taking of their depositions. That motion has been re-set by Judge Ware to September 22, 2008.

actions. *See Tribune Co. v. Purcigliotti, 1997 U.S. Dist. LEXIS 13165, No. 93 CV 7222, 1997 WL 540810,* at *3 (S.D.N.Y. 1997) (ordering a production of audio and video tapes after the risk of altering testimony was over); *Weinhold v. Witte Heavy Lift, Inc., 1994 U.S. Dist. LEXIS 4559, No. 90 CIV 2096, 1994 WL 132392,* at *1 (S.D.N.Y. April 11, 1994)(surveillance video tape in a products liability action); *Daniels v. Nat'l R.R. Passenger Corp., 110 F.R.D. 160, 161 (S.D.N.Y. 1986)* (same); *Erie Conduit Corp. v. Metro. Asphalt Paving Assoc., 106 F.R.D. 451, 457 (E.D.N.Y. 1985)* (stating that the Court had denied the defendants access to plaintiff's secretly recorded tapes until after depositions); *Sherrell Perfumes, Inc. v. Revlon, Inc., 77 F.R.D. 705,* (S.D.N.Y. 1977) (delaying the production of surreptitiously tape recorded conversations in an antitrust action until after depositions)." *Id.*

It is clear that the Court in *Poppo* recognized the importance of not permitting the Defendants to tailor their deposition testimony to the recorded statements. Just like in *Poppo,* here the Plaintiffs do not seek to withhold the audio tape indefinitely, but until just after the depositions of relevant witnesses. Defendants will not be prejudiced by the delay in the production of the recorded evidence. The Defendants will have sufficient opportunity to review the audio tape before trial. The production of the audio tape <u>prior</u> to depositions can serve only one purpose: to aid the Defendants in altering their deposition testimony. There is no other reasonable explanation why the Defendant needs the audio tape prior to depositions. The Defendants do not need the tape to help them prepare for depositions. The only deposition preparation necessary is a direction to "tell the truth as you remember such."

Defendants argue that Plaintiffs must show Defendants would conform their testimony. There is no such requirement. Nevertheless, the record is littered with Defendants attempts to conceal and evade, consider:

1. Defendants' counsel agreed to represent certain Defendants, and then, after Judge Ware relied on Defendants' assertions in ruling a pending motion to extend time to serve was moot, reneged.[8]

---

[8] Judge Ware has continued Defendants' Motion to Withdraw from the Stipulation to September 22, 2008.

2.   Defendants refused to appear for duly noticed depositions.

3.   Defendants' counsel now claims he does not represent Thomson a.k.a. Rita Goncalves, or Ricardo Ventura, and thus is unable to accept service of a deposition notice.

4.   Defendants failed to produce a F.R.C.P. 30(b)(6) designee competent to testify about the collection calls and the callers.

5.   Defendants produced collection logs showing approximately fifty-four (54)[9] collection calls to the Fausto's. An agent of Defendants, Live Vox, Inc., then produced documents showing the true number of collection calls to the Faustos was approximately ninety-five (95).

6.   Defendants concealed the last known phone number and addresses of certain fact witnesses, causing Plaintiff to bring a Motion to Compel (heard June 4, 2008).

7.   Defendants' Answer to Plaintiff's Amended Complaint denies all wrong doing, and is hopelessly littered with, "Defendants have insufficient information to either admit or deny the allegations contained therein and on that basis deny each and very allegation."

8.   Defendants consented to the Magistrate Judge and then reneged.

Turning over the recorded evidence prior to deposition, will severely prejudice the plaintiffs. The witnesses independent recollection of the events in question will be immediately lost upon after hearing the recorded evidence. The witnesses' unaltered testimony will be unobtainable following the disclosure. *Torres-Paulett v. Tradition Mariner, Inc.*, 157 F.R.D. 487 (S.D. Cal 1994).

---

[9] *See Declaration of Balám O. Letona In Support of Plaintiff's Reply to Defendants' Opposition, §5, line 18 -20, the Live Vox, Inc. call log is attached as Exhibits 1 to the declaration.*

**A. Equity favors disclosure of the tapes until after the deposition of relevant witnesses**

As the Plaintiff does not request to permanently withhold the tape, the issue is merely timing. In <u>Parla v. Matson</u>, 28 F.R.D. 348 (S,.D.N.Y. 1961) the court stated:

> The core question, therefore, is one of timing. To protect the legitimate interests of both parties – defendant's interest in determining the extent of plaintiff's present unrefreshed recollection, and plaintiff's interest in examining post-accident disclosures prior to trial so that he may honestly explain any inaccuracies or error in his present or past account of the accident – I direct that plaintiff appear for his deposition within ten days after the date of this order and that defendant bring to the examination and produce for inspection and copying upon completion of the deposition the items set forth above.

The majority of case law outside of this Circuit also favors protecting recorded information until after deposition. *Walls v. Int'l Paper Co.,* 192 F.R.D. 294 (D. Kan. 2000) (granting a protective order in a sex discrimination case); *Torres-Paulett v. Tradition Mariner, Inc.*, 157 F.R.D. 487 (S.D. Cal 1994) (granting a protective order in a personal injury action); *McCoy v. General Motors Corp.*, 33 F.R.D. 354 (W.D. Pa. 1963) (delaying production in a personal injury action).

Plaintiffs were being harassed and abused by the Defendants' debt collectors. Plaintiffs recorded the debt collectors so as to obtain evidence of the ongoing harassment and abuse.

Plaintiffs are entitled to the un-refreshed recollection of the Defendants and relevant witnesses' testimony. If the Defendants testify that they do not have any recollection of the calls, than that of itself will be telling. Moreover, the Plaintiffs are entitled to that testimony on the record before the Defendants listen to the recorded evidence. It is realistically and practically impossible for the Defendant to give such testimony once they have heard the recorded evidence. The Defendant will not be prejudiced in any way by a slight delay in disclosure. On the other

hand, the Plaintiff would be prejudiced by losing the ability to establish the witnesses current/untailored recollection of the events.

The Defendants argument that there is minimal value in obtaining the witnesses un-refreshed recollection is wrong. The Defendants made phone calls in which they engaged in a campaign of harassment and abuse using the telephone. If this type of illegal campaign is *unremarkable* to the Defendants, then that of itself is relevant to the assessment of damages under both the FDCPA, and an assessment of punitive damages.

## IV. IMPEACHMENT EVIDENCE ONLY

The Plaintiffs seek to use the recorded telephone calls as impeachment evidence only. Plaintiffs do not intend to use the recordings at issue in this pending motion as substantive evidence. The Defendants made eight-four (84)[10] calls to the Plaintiffs after the Defendants received a "ceased and desist" letter from the Plaintiffs. The Defendants violated the law by making the telephone calls irrespective of the contents of the calls. The Plaintiff's claims will be established by the mere existence of the calls.

Notwithstanding such, the contents of the calls also violate the law. Plaintiff will rely upon the Plaintiffs' testimony to establish such.

In fact, it is very obvious that Plaintiffs would not need to use the recording as substantive evidence. The Plaintiffs were the recipients of the abusive phone calls. The evidence that the Plaintiffs would rely on in their case-in-chief would be the Plaintiffs' testimony. It would only be necessary to play recorded evidence in the event that the Defendants' witnesses chose to perjure themselves by denying having made the statements. In that event, it would be necessary for the Plaintiffs to use the recording to impeach these witnesses.

//

---

[10] *See Declaration of Balám O. Letona In Support of Plaintiff's Reply to Defendants' Opposition, §3, line 2 -10, the Live Vox, Inc. call log is attached as Exhibits 1 to the declaration.*

# V. STATUTE AND PUBLIC POLICY PERMITS RECORDING

The Defendants argue that the recorded evidence at issue herein was illegally obtained and thus the Plaintiffs have "unclean hands." The Defendants also argue that they need the recorded evidence before depositions because they want to sue the Plaintiffs. While neither of these arguments is an explanation as to why the Defendants need the recordings before depositions, the Court should note that for a variety of reasons, the Plaintiffs were legally permitted to record the Defendants.

*Penal Code §633.5 states:*

§ 633.5. Recording by party to communication

Nothing in Section 631, 632, 632.5, 632.6, or 632.7 prohibits one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion, kidnapping, bribery, any felony involving violence against the person, or a violation of Section 653m. Nothing in Section 631, 632, 632.5, 632.6, or 632.7 renders any evidence so obtained inadmissible in a prosecution for extortion, kidnapping, bribery, any felony involving violence against the person, a violation of Section 653m, or any crime in connection therewith.

## A. Defendants were engaging in extortion

*Penal Code §633.5* permits a person to record phone calls so as to obtain evidence of extortion. The Defendants attempted to extort the Plaintiffs, and as such the Plaintiffs were entitled to record the Defendants phone calls. Defendants attempted to extort payment from the Plaintiffs by threatening to take the Plaintiffs' house [11] and to permanently ruin the Plaintiffs credit,[12] unless the Plaintiffs paid them money.

*Penal Code §519. Threats, states:*

Fear, such as will constitute extortion, may be induced by a threat, either:

---

[11] This threat violates 15 USC 1692e; 15 USC 1692e(5); 15 USC 1692e(10); and 15 USC 1692d.
[12] This threat violates 15 USC 1692e; 15 USC 1692e(5); 15 USC 1692e(8); 15 USC 1692e(10); 15 USC 1692d; and 15 USC 1681 et seq.

- 8 -

> 1. To do an unlawful injury to the person or property of the individual threatened or of a third person; or,
> 2. To accuse the individual threatened, or any relative of his, or member of his family, of any crime; or,
> 3. To expose, or to impute to him or them any deformity, disgrace or crime; or,
> 4. To expose, any secret affecting him or them.

*Penal Code §524. Punishment for attempt states:*

> Every person who attempts, by means of any threat, such as is specified in Section 519 of this code, to extort money or other property from another is punishable by imprisonment in the county jail not longer than one year or in the state prison or by fine not exceeding ten thousand dollars ($10,000), or by both such fine and imprisonment.

Defendants' false threats to take the Plaintiffs' house, and to ruin the Plaintiffs' credit forever, unless the Plaintiff paid them money, were unlawful and extortionist threats. These threats were attempts to do "unlawful injury" to the Plaintiffs and their property. The threats were also an attempt to "disgrace" the Plaintiff.

Thus, the recorded evidence clearly fits into the definition of "recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion."

### B. Obscene phone calls under Penal Code 653m

*Penal Code §633.5* permits a person to record phone calls if the phone calls are violations of *Penal Code §653m*. The Defendants phone calls to the Plaintiffs were violations of *Penal Code §653m.*

*Penal Code §653m* states:

> § 653m. Obscene, threatening or annoying telephone calls
>
> (a) Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty of a misdemeanor. Nothing in this subdivision shall apply to telephone calls or electronic contacts made in good faith.

According to *People v. Hernandez*, 231 Cal. App. 3d 1376 (1991), "obscene" under Penal Code 653m means "offensive" to one's feelings. Defendants' unlawful threats to take the Plaintiffs' house, and to permanently ruin a Plaintiffs' credit was offensive to Plaintiffs' feelings and thus "obscene." Therefore Defendants communications were in a violation of *PC 653m(a)*, and thus clearly an exception covered under *Penal Code 633.5*.

Furthermore, as noted above, Defendants threatened to inflict injury to the Plaintiffs and their property, which also violates *§653m*. Defendants threatened to take the Fausto's house and permanently ruin their credit report.

**C. Repeated phone calls under Penal Code 653m:**

*Penal Code 653m also states:*

> (b) Every person who makes repeated telephone calls or makes repeated contact by means of an electronic communication device with intent to annoy another person at his or her residence, is, whether or not conversation ensues from making the telephone call or electronic contact, guilty of a misdemeanor. Nothing in this subdivision shall apply to telephone calls or electronic contacts made in good faith.

Defendants made more than ninety (90) telephone calls to the Fausto's, despite their cease and desist letters, and despite the Plaintiffs' pleas for them to stop. In *Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1129, (2007) the Court noted: "the frequency and volume of the telephone calls show that defendants intended to annoy, abuse and harass plaintiff Irma Sanchez. Accordingly, plaintiffs' motion for partial summary judgment as to this claim is granted." The herein case is even more egregious than *Sanchez*, in which there were only fifty-four calls, and there was no cease and desist letter.

The law clearly permits victims like the Plaintiffs to record the illegal

telephone abuse and harassment. To hold otherwise, would be to encourage and immunize criminal use of the telephone. The Defendants threats to bring an action against the Plaintiffs under the penal code for illegal recording are not only unwarranted, but are arguably unethical. [13]

**D. Not "Confidential Communication"**

Additionally, the Court should note that the Plaintiffs were permitted to record the Defendants because the telephone calls were not confidential communications. *Penal Code §632* does not prohibit recording all communications, only "confidential communications."
*Penal Code 632 states:*

> **(c) The term "confidential communication"** includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but **excludes a communication** made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance **in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.**

Thus, if the parties have a reasonable expectation that their telephone conversation may be overheard or recorded, then the communication is not a "confidential communication." If the communication is not a confidential communication, then there is no prohibition against recording the communication.

Here, Defendants clearly intended all telephone calls to be overheard and recorded. Defendants sent Plaintiffs letters indicating, **"Your calls may be monitored for quality assurance purposes."** See Amended Complaint, **Exhibits 1, 7, 8, 9 and** 10 (top line of second page). Docket #3. Clearly the fact that the calls were being monitored shows that the callers were being listened to by third parties. Nobody had an expectation of privacy. Everyone in fact

---

[13] The Court should note that Defendants reference to a lawsuit against Plaintiff is <u>completely irrelevant</u> to the issue raised in this discovery motion. This motion is about the timing of disclosures in this action. The Defendants' raising the specter of Plaintiffs' alleged violations of the penal code raises serious issues of ethics, and seeks to further victimize the Plaintiffs.

REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER C07-05658 JW RS

was aware that the calls were being overheard by a third party.  Thus, no party to the action had an expectation of privacy.

### E.  Defendants Lack Standing to Assert Claims of Privacy Invasion

The Credigy Defendants herein were <u>not</u> even parties to the phone calls at issue, and thus lack standing to bring any claims against Plaintiffs.  The are attempting to shoe horn themselves into a shoe that does not fit and deflect attention from the real issue --- when should the tapes be disclosed.

In any case, the Credigy Defendants have testified that they hired an independent Brazilian debt collection company to make debt collection calls for them[14].  Credigy alleges that this independent company is who made the calls at issue in this motion.  This Brazilian entity is separate and distinct from the three Credigy defendants herein.  Thus, the Credigy Defendants herein are not the real party in interest and have no right to assert claims for invasion of privacy.  Clearly a person (or entity) claiming to have had their privacy invaded must have actually been a party to the phone calls at issue.

Finally, any voice mail messages are not confidential in any way shape or form.

### VI.  CONCLUSION

The Plaintiffs seek to withhold the recorded evidence until the Plaintiffs have deposed the relevant witnesses.  There is no prejudice to the Defendants to delay the disclosure of the evidence, and the Plaintiffs would be irreparably prejudiced by disclosure prior to the depositions.  The Plaintiffs were permitted to record the Defendants for numerous reasons and thus do not have "unclean hands."  As such, Plaintiffs respectfully requests that the Court issue an order:

---

[14] *See Declaration of Balám O. Letona In Support of Plaintiff's Reply to Defendants' Opposition, §6, line 20 -22, the Live Vox, Inc. call log is attached as Exhibits 1 to the declaration.*

1) That permits Plaintiffs to disclose the recorded evidence after obtaining the depositions of the Defendants and relevant witnesses.

2) That Defendants shall then be able to take Plaintiffs depositions

                              LAW OFFICE OF BALÁM O. LETONA, INC.

Date: June 11, 2008                    By:/s/ Balám O. Letona

                                      Balám O. Letona Esq.
                                      Attorney for Plaintiff