Balam O. Letona, Bar No. 229642
LAW OFFICE OF BALAM O. LETONA, INC.
1347 Pacific Avenue, Suite 203
Santa Cruz, CA 95060-3940
Tel: 831-421-0200
Fax: 831-621-9659
Email: letonalaw@gmail.com

Ronald Wilcox, Bar No. 176601
LAW OFFIC OF RONALD WILCOX
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: 408-296-0400
Fax: 408-296-0486
Email: ronaldwilcox@post.harvard.edu

Attorneys for Plaintiffs

## U.S. DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| MANUEL G. FAUSTO and LUZ FAUSTO,<br>　　　　Plaintiffs,<br>　　　v.<br>CREDIGY SERVICES CORPORATION,<br>CREDIGY RECEIVABLES INC., CREDIGY<br>SOLUTIONS INC., RYAN MILLER,<br>RICARDO VENTURA, BRETT BOYDE,<br>PAULO PERES, THOMPSON and DOES 1-<br>10, inclusive,<br><br>　　　　Defendants. | Case No.: C07-05658 JW RS<br><br>**PLAINTIFFS' NOTICE AND MOTION**<br>**TO COMPEL DEPOSITION**<br><br>**Date: August 20, 2008**<br>**Time: 9:30 a.m.**<br>**HON. RICHARD SEEBORG**<br><br>**U.S. DISTRICT COURT**<br>**280 South First St.**<br>**San Jose, CA** |

**PLEASE TAKE NOTICE THAT** on August 20, 2008, at 9:30 a.m., or as soon thereafter as the

matter may be heard, in the above-entitled Court located at 280 South 1st St., San Jose, CA 95113,

Plaintiffs will move the court to compel Defendant Credigy Service, Corp.'s deposition. This motion

will be based on the herein notice and motion, including the legal authorities cited, the supporting

declaration, all documents related to the motion, all documents in the Court's file in this action, all

matters of which the Court may take judicial notice, and any other items the Court deems appropriate.

PLAINTIFFS' NOTICE AND MOTION TO COMPEL DEPOSITION

## TABLE OF CONTENTS

I.   BACKGROUND..................................................................................................1

II.  INTRODUCTION.............................................................................................2

III. SUMMARY OF FACTS.....................................................................................2

IV.  PROCEDURAL HISTORY...............................................................................4

V.   DISCOVERY PRINCIPLES.............................................................................4

VI.  DISCOVERY OBSTRUCTION........................................................................4

    A.  Defendants' Failure to Produce a Knowledgeable Deponent..........................5

    B.  Failure to Abide by F.R.CP. 30 in Answering Questions...............................6

    C.  Training, Practices and Procedures................................................................7

    D.  Information Regarding Previous Complaints and Lawsuits............................13

    E.  Financial Condition.......................................................................................15

    F.  Telephone Practices......................................................................................16

    G.  Denials in the Answer...................................................................................18

    H.  Witnesses, Investigation...............................................................................19

    I.  Deposition Topics to Which Defendants Refused to Produce a Designee.......22

VII. ADDITIONAL DOCUMENTS WHICH DEFENDANTS FAILED TO PRODUCE..............23

PLAINTIFFS' NOTICE AND MOTION TO COMPEL DEPOSITION

## I.    **BACKGROUND**

Defendant Credigy Services Corp. (hereinafter shall all be referred to as "Defendant" or "Credigy") failed to produce a competent F.R.C.P. 30(b)(6) designee for deposition. Plaintiffs seek an order requiring Defendants to comply with the Federal Rules of Civil Procedure (FRCP), including FRCP 26, 30 and 34. (The court granted an earlier Motion to Compel on June 13, 2008. **Exhibit 1**.)

Plaintiff began Defendants' deposition, in San Jose, on April 22, 2008 in the *Fausto v. Credigy* matter, and the *Martha Pintor Vasquez v. Credigy et al., 07-06428 JF,* matter, on April 23, 2008 (the parties agreed the deposition transcripts could be used interchangeably). Defendants served boilerplate objections, and did not produce documents in advance of its deposition (including documents relating to financial condition, LiveVox, Inc. call logs, address and telephone tables relating to the Simplect system, personnel files, etc.). See Amended Objections at **Exhibit 2**. Defendant failed to produce personnel files until the day of the deposition, and the documents are in Portuguese. Furthermore, Defendants failed to produce all of the relevant personnel files, and thus Plaintiffs were forced to obtain an Order from Judge Seeborg compelling all of the personnel files. Additionally, Defendants' corporate representative designated pursuant to F.R.C.P. 30(b)(6) was unable to answer numerous questions; answering more than sixty (60) questions with, "I don't know", and "I have no idea" twelve (12) times, in the *Fausto* matter alone. Defendants' delays and conduct impaired Plaintiffs' ability to conduct the deposition. Thus, Plaintiffs held the depositions open, to continue them on another date. *Wilcox Decl.* ¶1.

Intending to conduct the continued deposition of Defendants, on May 29, 2008 Plaintiffs requested, in writing, that Defendants designate witnesses who are prepared to testify regarding the topics noticed, including: telephone practices, communications and practices relating to LiveVox, Inc., the maintenance of procedures by Defendant to avoid violations of the Fair Debt Collection Practices Act and the California FDCPA; the methods, practices, techniques, and strategies used by Defendants

- 1 -

in training and disciplining their collection employees; Defendants' denials in its answer, written

discovery responses, and net worth, financial condition. *Wilcox Decl.* ¶2, **Exhibit 3**.

Defendants refused to provide available dates for the continued deposition. On June 10, 2008, Plaintiffs noticed the Continued Depositions for July 10 and July 11, 2008. **Exhibit 4**. On June 17, 2008 Defendants sent a letter, pretending the depositions had been noticed to their surprise, demanded no one would appear in San Jose, that any deposition would have to be limited in time and scope, and Plaintiffs would first have to specify each question and answer not properly answered at the depositions. Plaintiffs wrote Defendant, indicating a failure to appear was sanctionable, and that if Defendants believed they were entitled to a protective order staying the deposition they were required to file a motion with the court. Defendants refused to file a motion and proceeded to willfully fail to appear for the depositions. The parties corresponded via e-mail, fax, and on the telephone. Plaintiff also offered to meet in person in San Jose or Redwood City. The parties could not resolve the matter. *Wilcox Decl.* ¶3.

## II.    **INTRODUCTION**

Plaintiffs allege that Defendant engaged in a campaign of telephone abuse in an attempt to coerce payment on a consumer debt. Defendants' own collections logs show they made approximately fifty (50) phone calls, and their agent shows an additional forty-one (41) phone calls. Almost all of these ninety-one (91) phone calls occurred after Plaintiffs sent a cease and desist order. Defendants' also threatened to take Plaintiffs' home and report the debt on their credit report forever.

## III.    **SUMMARY OF FACTS**

Plaintiffs filed this lawsuit against Defendants for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, Civil Code § 1788 et seq. (hereinafter "state Act"), which prohibit debt

collectors from engaging in abusive, deceptive and unfair practices, and have also alleged common law tort claims.[1]  Plaintiffs requested statutory, actual and punitive damages.

Defendants Credigy et al. buy portfolios of old consumer debts, many of which are well past the statute of limitations, and then attempt to collect on these time barred debts with a relentless phone call and letter campaign from their collection center in the country of Brazil.

Defendants called Plaintiffs repeatedly and continuously, many times several times a day, and despite Plaintiffs' letters disputing the debt, and requesting Defendants cease and desist.  Defendants telephoned Plaintiffs about fifty (50) times according to Defendants' own collection logs, including on: December 21, 2006, January 5, 10, 16, 16, 22, 22, 23, 2007, February 13, 16, 27, 27, 2007, March 16, 16, 17, 17, 23, 23, 30, 30, 2007, April 7, 9, 9, 10, 13, 13, 18, 23, 23, 23, 28, 2007, May 2, 2, 2, 10, 11, 11, 16, 22, 2007, June 1, 6, 6, 2007, July 13, 20, 26, 31, 2007, August 5, 7, 2007, September 10, 12, 2007, November 14, 15, 23, 2007 (the Friday of the Thanksgiving holiday), and December 3, 15, 21, 2007.  Furthermore, Defendants' agent, LiveVox, Inc. made approximately forty-one (41) more telephone calls via use of an automated dialer.  Thus, Defendants telephoned Plaintiffs approximately ninety (90) times, in an attempt to collect a debt Plaintiffs dispute owing.

Defendants also engaged in numerous unlawful and abusive acts directed towards Plaintiffs, including: 1) yelling and screaming at Plaintiffs in an attempt to pressure them to repay the time barred debt, 2) threatening to take plaintiffs' home, 3) ignoring a cease communications order and intrusively and relentlessly calling, (including abusively calling back after the call was terminated) and continuing to sending collection letters, 4) unlawful and invasive communications with a third party, 5) false threats of immediate suit, 6) threatening suit on a time barred debt, 7) false threats to report a stale debt to credit reporting agencies, and 8) engaging in false, abusive and misleading statements, all in an attempt to collect a debt that is almost 10 years old.

---

[1] Invasion of privacy by intrusion upon seclusion, tort-in-se, negligent hiring, training, retention and supervision.

1    Defendants' conduct is part of a pattern and practice of unlawful collection abuse thereby

2    warranting punitive damages.

3    **IV.    PROCEDURAL HISTORY**

4        Defendants' counsel has gone to extraordinary lengths to obstruct discovery, and to attempt to

5    prevent Plaintiffs from getting to the truth in this case.  Defendants' counsel signed a stipulation that

6    was filed with the Court, stating they represented certain Defendants and would answer on their behalf

7    by a certain date. Docket #16.  Relying on Defendants' counsel representations, Judge Ware ruled that

8    a pending motion to extend time to serve certain Defendants was moot, and therefore vacated. Docket#

9    17. Emboldened by their ability to dupe not only Plaintiffs' counsel, but the Court, certain individual

10   Defendants then willfully failed to appear for duly noticed depositions on May 1 and 2, 2008, having

11   not first obtained an Order from the Court excusing their attendance, and refused to answer any

12

13   questions regarding entire topic areas at its F.R.C.P. 30(b)(6) deposition (including any questions

14   regarding their financial condition).  Defendants then refused to appear for their continued F.R.C.P.

15   30(b)(6) depositions noticed for July 10 and 11, 2008. *Wilcox Decl.* ¶4.

16

17       Furthermore, consistent with their brazen and willful failures to abide by the Rules, Defendants

18   refused to provide complete initial disclosures, and properly respond to written discovery.  This Court

19   must compel compliance with the Federal Rules of Civil Procedure.

20

21   **V.    DISCOVERY PRINCIPLES**

22       Under the Federal Rules of Civil Procedure, Rule 26(b)(1),

23   [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or
     defense of any party...For good cause, the court may order discovery of any matter relevant to the
     subject matter involved in the action.  Relevant information need not be admissible at the trial if the
24   discovery appears reasonably calculated to lead to the discovery of admissible evidence.

25   **VI.    DISCOVERY OBSTRUCTION**

26

27   **A.    Defendants' Failure to Produce a Knowledgeable Deponent**

28   Defendants FRCP 30(b)(6) stated "I don't know" more than sixty (60) times, and "I have no

- 4 -

idea" twelve (12) times. Under FRCP 30(b)(6) the corporation had a duty to produce and prepare the witness to give "complete, knowledgeable and binding answers". *Marker v. Union Fidelity Life Ins. Co.* (M.D.N.C. 1989)(Defendant's failure to designate knowledgeable person in response to specific and understandable request required new order requiring it to produce knowledgeable person and to pay plaintiff's attorneys' expenses). In the event the designee could not answer the corporation had a duty to substitute a proper witness. *Id* at 126. The failure to designate was a failure or refusal to answer deposition questions justifying appropriate sanctions. *Id.* Indeed, Appellate Courts have stated unless the corporation designates a knowledgeable person, it is for all practical purposes no appearance at all. *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196 (5th Cir. 1993). Herein, Defendants' failure to produce a competent designee has forced Plaintiff to notice continued depositions for July 10 and 11, 2008, but Defendants again failed to produce a designee.

A witness must attend or file a motion for a protective order pursuant to Rule 26(c). West's Civil Rules Handbook, p. 705. Citing, *Collins v. Wayland*, 136 F.2d 677 (9th Cir. 1944). Furthermore, any motion for a protective order must be timely since the motion itself does not stop the deposition. *King v. Fidelity Nat'l Bank of Baton Rouge*, 712 F.2d 188, 191 (5th Cir. 1983). *See also, Goodwin v. Boston,* 118 F.R.D. 297 (D. Mass. 1988)(Defendants were required to pay costs and fees for failure to come to a deposition even though defendants had filed a motion to quash, where filing the motion to quash did not automatically stay deposition and Defendant failed to file a motion with court to stay deposition). Nor is a parties' failure to appear cured by a promise to later submit to a deposition. *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 947 (9th Cir. 1993). Thus, a deposition proceeds as noticed, absent an order from the court. After meeting and conferring the parties earlier agreed the depositions would take place in San Jose, CA. That's where they began, and, thus, that's where they were noticed to continue. Moreover, depositions proceed at the location noticed absent an order from

- 5 -

the court. *Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 383 (M.D. NC 1988). *Fausto v. Credigy*, ___ F.R.D. ___, 2008 WL 2441927 (N.D. Cal. 2008). Thus, Defendants failure to appear in San Jose for the July 10 and 11, 2008 depositions is sanctionable. While Plaintiffs are not seeking sanctions at this time, Plaintiffs are entitled to an Order requiring Defendant to produce a knowledgeable designee. *FDIC v Butcher*, 116 F.R.D. 196 (E.D. TN 1986).

**B.    Failure to Abide by F.R.CP. 30 in Answering Questions**

Plaintiff seeks an order to control deposition conduct. At one point during Credigy's first deposition, Credigy and its counsel, stood up and walked out of the room to confer outside, while a question was pending. **Exhibit 6**, Vasquez Deposition Transcript ("Vasquez") 16:7-17:22. Deposition questioning must proceed as if the deponent were testifying at trial. Needless to say, it would be inappropriate for a witness testifying at trial to stand up, walk out of the courtroom and confer with his counsel while a question was pending.

Defendants' counsel also instructed Defendant not to answer numerous questions, without asserting a valid privilege. For example, Defendants refused to testify about the factual basis for denials in its answer, such as whether Defendant received Plaintiffs' cease and desist letter. **Exhibit 5**, Fausto Deposition Transcript ("Fausto") 223:8-224:11[2]. *Wilcox Decl.* ¶5.

---

[2] Fausto Depo. 223:8-224:11:
8    Q    Can you explain why in its answer, Credigy
9 denied having received the certified letter disputing
10 the debt?
11    MR. KAMINSKI:  Objection.  Calls for
12 information protected by the attorney-client and
13 attorney-work-product privileges.  The deposition is not
14 the proper form in which to seek discover on legal
15 contentions.
16    THE WITNESS:  Again, I didn't review --
17    MR. KAMINSKI:  No, no --
18    MR. WILCOX:  I'm sure you understand I'm asking
19 him about a factual issue, not a legal contention, and a
20 matter of public record.

Defendants must answer the question or its defenses should be stricken.  Indeed, unless Defendants produce a designee to answer questions about its affirmative defenses, they should be precluded from introducing defenses, such as bona fide error.  F.R.C.P. 37(c)(1).

Plaintiffs are entitled to an order that: 1) the deponent cannot leave the deposition room while a question is pending, and 2) counsel cannot instruct deponent not to answer a question unless some valid privilege is asserted. *Hall v. Clifton Precision*, 150 F.R.D. 525, 530 (E.D. PA 1993).

### C.    Training, Practices and Procedures

Defendants have raised the defense of "bona fide error",[3] thus placing its training and practices at issue. Answer to First Amended Complaint, Docket #7, Page 14, ¶18.  Defendant's F.R.C.P. 30(b)(6) designee was unable to answer many questions regarding Defendants' practices and procedures.  For example the corporate designee was unable to describe the alleged initial and ongoing training, **Exhibit 5**, Fausto 49:21-50-4[4], did not know how the training manual is disseminated, **Exhibit**

---

```
21      MR. KAMINSKI:  Still, I'm instructing the
22 witness not to answer.
23 BY MR. WILCOX:
24    Q  Mr. Williams, what facts support Credigy's
25 denial of having received the second certified mail
1 letter from Mr. Fausto?
2      MR. KAMINSKI:  I interpose the same objection
3 and instruct the witness not to answer.
4      THE WITNESS:  Again, I'm not aware of the
5 denial of the receipt, and I don't know anything about
6 it.
7 BY MR. WILCOX:
8    Q  Who at Credigy provided the answers for the
9 answer?
10   A  Again, I don't know who provided the answers
11 for the answer.
```

[3] 15 U.S.C. 1692k(c): "A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

[4] Fausto Depo. 49:21-50:4:

1  **5**, Fausto 48:4-9[5]; he could not say whether he had seen the training manual ever displayed, **Exhibit 5**,

2  Fausto 48:10-14[6]; could not say whether employee's have to sign any form when receiving the training

3  manual, **Exhibit 5**, Fausto 48:23-49:2[7]; testified Defendants track all of their training, including dates,

4  but could not say how or where, **Exhibit 5**, Fausto 49:5-20[8], was unable to say where any FDCPA tests

5

6

---

7  21    Q   What initial training is provided before a
   22 collector's allowed to begin making collection calls?

8  23    A   You know, again, to my knowledge, this training
   24 manual is presented and those personnel spend -- may

9  25 spend a couple of days, I don't know the exact time
   1 frame, with Mr. Siler in a training class going over

10 2 this training material, talking about different
   3 scenarios, and doing exercises before any of those

11 4 personnel are ever allowed to make outbound phone calls.

12 [5] Fausto Depo. 48:4-9:

13 4    Q   Do you know how it's disseminated to the
   5 employees?

14 6    A   I would have to ask Brian Siler.  However, when
   7 I've seen training sessions take place in the past,

15 8 typically written and displayed electronically on some
   9 type of a presentation system.

16

17 [6] Fausto Depo. 48:10-14:
   10    Q   Have you seen this particular document

18 11 displayed on some kind of presentation system during a
   12 training session?

19 13    A   I could not state with certainty that it was
   14 this particular document.

20

21 [7] Fausto Depo. 48:23-49:2:
   23       When this training manual is provided to the

22 24 employees, do they have to sign some kind of
   25 confidentiality form?

23 1    A   I'm not sure of whether they have to sign a
   2 confidentiality form or not.

24

25 [8] Fausto Depo. 49:5-20:
   5    A   We track the training for all personnel,

26 6 what -- when they completed the training and what dates,
   7 but as to whether or not they sign anything, I do not

27 8 know.
   9    Q   Where's the training tracked?

28 10    A   I would have to ask Brian Siler how that's

- 8 -

1  were stored, **Exhibit 5**, Fausto 51:20-22, 52:10-16; 52:23-53:1[9]; did not know whether the test taker

2  had to sign and date the tests, **Exhibit 5**, Fausto 52:1-9[10]; stated he would have to speak to someone

3

4

5

6

11 accounted for.  I do not know personally how they track.
12 I just know that it is tracked.
13    Q   So when you say the training is tracked, is --
14 is there some kind of ongoing training that is being
15 tracked?
16    A   Yes.  To my knowledge, Mr. Siler conducts
17 ongoing training as well.  So he will periodically carry
18 out additional training with a refresher training with
19 people that have already went through training
20 previously.

[9] Fausto Depo. 51:20-22:

20    A   Again, I would have to talk with our human
21 resources department and Brian Siler.  I'm not sure
22 where those tests are stored.

Fausto Depo. 52:10-16:
10    Q   You don't know if they are stored in a
11 personnel file or somewhere else at Credigy?
12    A   Again, I would have to check with Mr. Siler and
13 our human resources.  But I would -- I would suspect
14 that these tests may be stored either by the human
15 resources department in the personnel file or by
16 Mr. Siler's training files.

Fausto Depo. 53:23-54:1:
23    Q   Dated and signed by the particular collector?
24    A   Again, I would have to check with Mr. Siler as
25 to whether or not their policy is to retain the date and
1 signed tests.

[10] Fausto Depo. 52:1-9:
1    A   Well, referring to FA15, the document does
2 indicate that the -- the test taker must put their name
3 and the date on the document.  And to my knowledge, you
4 know, we do track these on an individual basis.
5         As to whether or not the employees sign them,
6 again, I would have to talk to Mr. Siler.  There is a
7 signature block on the bottom of FA19 indicating a place
8 for the employee's signature and the trainer's
9 signature.

- 9 -

else (Brian Siler) to answer questions about specific training periods, **Exhibit 5**, Fausto 53:14-15[11].

Indeed, he had never actually participated in any of the FDCPA training classes, **Exhibit 5**, Fausto

54:8-9[12]. Nor did he make an effort to speak to anyone about training before coming to the deposition.

**Exhibit 5**, Fausto 54:15-20[13]. He was also unsure whether there were any written records of alleged

monitoring of debt collector's collection calls, **Exhibit 5**, Fausto 55:19-56:5, 56:16-20, 56:21-57:1[14].

---

[11] Fausto Depo. 53:14-15:
13 in detail with the employee." But, you know, I would
14 have to speak with Mr. Siler to get the exact details on
15 the training periods.

[12] Fausto Depo. 54:8-9:
8   A   I've never participated in one of the Credigy
9 Services Corp. FDCPA training classes, no.

[13] Fausto Depo. 54:15-20:
15   Q   Did you talk with anyone at Credigy before
16 coming to the deposition today about what takes place
17 inside the classroom in regard to training?
18   A   No. I just based it off of my observations and
19 the material that has been produced by our training
20 department as what's used for training.

[14] Fausto Depo. 55:19-56:5, 56:16-20, 56:21-57:1:
55:19   A   The purpose of monitoring telephone
20 conversations is to make sure that employees are
21 complying with the training material the way that
22 they've been trained to speak with consumers.
23   Q   Does the collection supervisor make a written
24 record after performing one of these monitoring
25 exercises?
1   A   To my knowledge, no. But I would have to check
2 with our operations department to see if there were any
3 logs maintained by the collection supervisors when they
4 monitor particular creditors. There may very well be.
5   Q   Who's the operations department?

Fausto Depo 56:16-20:
16   A   I -- I believe it would probably be stored not
17 with the supervisor himself, but yes, within the
18 department, if it exists. But I would have to check
19 with the operations department to check on their policy

He could not personally testify as to what training manual is used in Brazil, **Exhibit 5**, Fausto 59:20-23, 60:22-24[15], or what written tests are conducted, **Exhibit 6**, Vasquez 147:2-22[16]. *Wilcox Decl.* ¶6.

---

20 with regard to that.

Fausto Depo. 56:21-57:1
21    Q    And just to clarify though, you are unsure
22 whether or not Credigy actually has records of
23 monitoring the phone calls?
24    A    That's correct.  I can't state from my -- my
25 knowledge whether or not records are maintained when
1 phone calls are monitored.

[15] Fausto Depo. 59:20-23, 60:22-24:

20 manual that's in use.  And I have observed training
21 sessions going on in Brazil personally, but I cannot
22 verify that they were using FA20 to FA42 as the training
23 material personally.

Fausto Depo. 60:22-24:

22 office of Credigy Solucoes in Brazil, but I can't verify
23 that this particular document was in use when I
24 personally observed those training sessions.

[16] Vasquez Depo. 147:2-22:

2    Q.  Do you know if there was testing conducted
3 regarding this particular training document?
4    A.  I believe it's the ordinary course of business
5 relative to training material to conduct tests as, you
6 know, carried out by Brian Siler or by other personnel
7 that might be employed by Credigy Soluçoes in Sao Paolo
8 when material is -- training material is presented in
9 the ordinary course of business to conduct testing on
10 that training material.
11    Q.  Did you see in your review of the personnel
12 files earlier of the debt collectors in Brazil in the
13 matter of Mr. Brett Boyde -- did you see any tests
14 relating to this particular training document?
15    A.  I did not, no.
16    Q.  Would the tests be written tests or verbal?
17    A.  I believe that the tests would probably be
18 similar to the ones we looked at yesterday, which were
19 written tests, but it's -- it's possible that there are
20 also oral quizzes.  But I suspect that the tests are
21 written in nature.  I'd have to speak with Brian Siler
22 to confirm that.

- 11 -

The deponent did not know how long the training would last, or why there was no date on training manual, **Exhibit 5**, Fausto 61:2-7[17]. The deponent based all of his answers on his personal view of training sessions, but has not seen a training session in Brazil since 2004-2005, **Exhibit 5**, Fausto 61:18-20[18], the deponent did not know the names of the trainers, **Exhibit 5**, Fausto 58:6-17[19], and was unsure if there are written training documents regarding the CA FDCPA (Rosenthal Act). **Exhibit 5**, Fausto 232:12-19[20]. The designee did not know how many written disputes Defendants received in the last three years.[21] **Exhibit 5,** Fausto 248:5-25. *Wilcox Decl.* ¶7.

_____

[17] Fausto Depo. 61:2-7:
2    Q   Can you explain why Credigy doesn't have a date
3 on the training manual?
4        MR. KAMINSKI: Objection. Argumentative. It
5 calls for speculation. Lacks foundation.
6        THE WITNESS: I -- no, I can't -- I can't tell
7 you why there's not a date on the training manual.

[18] Fausto Depo. 61:18-20:
18   Q   When was the time you witnessed a training
19 session when you were in Brazil?
20   A   Probably in either 2004, 2000 and 5.

[19] Fausto Depo. 58:6-17:
6    Q   Who's the trainer in Brazil?
7    A   I believe Mr. Siler has been to Brazil on a
8 couple of occasions. He's also trained personnel that
9 work with him for him at Credigy Solucoes.
10   Q   So as I --
11   A   I don't know their -- the names of those
12 individuals off the top of my head.
13   Q   So as I understand it, Mr. Siler has gone to
14 Brazil to conduct some training, and he's also trained
15 others in Brazil to conduct the training?
16   A   Correct. Again, at -- at Credigy Solucoes in
17 Brazil, correct.

[20] Fausto Depo. 232:12-19:
12   Q   Are there any particular written documents
13 regarding the Rosenthal Act that are handed out to
14 Credigy's debt collectors?

### D.    Information Regarding Previous Complaints and Lawsuits

Defendants refused to produce any documents relating to previous lawsuits or complaints

relating to Defendants' collection practices, thus impairing Plaintiffs' ability to question the

deponent regarding the facts of such.[22]   Defendant also refused to produce designee on that

---

15    A   Again, I would have to review the training
16 material that we provided.  I thought perhaps I saw
17 something that talked about the state-based differences
18 in the additional material we've brought today, but I
19 need to look through the training material.

[21] Fausto Depo., 248:5-25:
5    Q   Would you say there are more than 100 such
6 disputes made by consumers in the last three years?
7        MR. KAMINSKI: Objection.  Calls for
8 speculation.
9        THE WITNESS: By "dispute," you mean a dispute
10 in request for a verification debt under that FDCPA?
11 BY MR. WILCOX:
12    Q   Sure.
13    A   Sure.  In the last three years more than a
14 hundred, sure.
15    Q   What about disputes where -- written disputes
16 where a consumer says, "I don't owe this debt", would
17 there be more than 100?
18    A   I don't know the exact number where -- where
19 someone says "I don't owe this debt" in the last three
20 years.  I don't know that number.
21    Q   Would you estimate it's more than 100?
22    A   Again, I have no idea.  I'd have to go review
23 the files and talk to the resolution team, but, you
24 know, I'm sure that we receive those kinds of dispute "I
25 don't owe the debt."

[22] **Request for Production Number 8** stated, "All complaints, judgments and consent orders, from 2005-2008, relating to Defendant's conduct in the collection of individual's debts."  Defendants objection stated: Defendant objects to this request on the grounds it calls for information which is not relevant to any issue in this case and will not lead to the discovery of admissible evidence.  Defendant objects on the grounds it is vague, ambiguous, unduly burdensome an oppressive.  Defendant further objects on the grounds it calls for private and confidential information pertaining to third parties.  Defendant objects to the request on the grounds it potentially calls for confidential and private information and invades the privacy rights of third persons not parties to this lawsuit.  **Exhibit 2.**

- 13 -

Topic.[23]  Furthermore, the deponent was not prepared to testify about previous complaints,

**Exhibit 5**, Fausto 236:21-237:9,[24] and lawsuits involving the very practices at issue herein,

**Exhibit 5**, Fausto 236:14-20.[25]  *Wilcox Decl.* ¶8.  Defendants must produce a competent

designee.

---

[23] **Deposition Topic Number 22** stated: "Complaints and lawsuits against Defendants for unlawful collection practices in the past three years." Defendants Amended Objection stated: "This category is objected to on the grounds it is vague, ambiguous, and overbroad.  Defendant further objects on the grounds this request seeks information protected by the attorney-client privilege, seeks information which is irrelevant and is therefore not reasonably calculated to lead to the discovery of admissible evidence. **Exhibit 2**.

[24] Fausto Depo. 236:21-237:9:
21      Q   Has Credigy received any Better Business Bureau
22 complaints stating that they were engaging in unlawful
23 collection practices?
24           MR. KAMINSKI:  Objection.  Vague as to time.
25 BY MR. WILCOX:
CONDENSED TRANSCRIPT
Page 237
1      Q   Within the last three years.
2      A   I don't know whether we've received any
3 complaints specifically alleging what you stated, in the
4 last three years.  I don't know.
5      Q   Has Credigy been sued by any consumers in the
6 last three years whereby the consumer indicated that
7 Credigy failed to abide by cease and desist letters?
8      A   I don't know whether we have been sued over
9 that issue in the last three years.  I don't know.
10      Q   Has Credigy received complaints from consumers
11 other than Mr. Fausto that the alleged First Select debt
12 is a debt that the consumer doesn't owe?

[25] Fausto Depo. 236:14-20:
14      A   What I said earlier was that, to my knowledge,
15 there's certainly been cases where there has been a
16 cease and desist received and it was improperly
17 characterized due to human error and subsequent to that
18 there was a complaint from a consumer.  As to whether or
19 not that's happened in the last three years, I could not
20 say.

The Advisory Committee Note to the 2000 Amendment to F.R.C.P. 26(b)(1) states, "information such as other incidents of the same type...may be relevant to the claims in the action." *See* **West's Federal Civil Rules Handbook**, p.577 (2004). This information is essential in helping Plaintiffs identify witnesses, rebut the mistake defense of the "bona fide error" defense, to establish a foundation for punitive damages, and to assist the court in determining statutory damages, at trial. Under the Fair Debt Collection Practices Act ("FDCPA") the Court is to consider, among other relevant factors, "...the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *See* 15 U.S.C. § 1692k(a)(3). Thus, courts have ordered debt collectors to respond to such requests.[26]

### E.    Financial Condition

Defendant refused to produce documents, and testify, about financial condition at the F.R.C.P. 30(b)(6) deposition. **Exhibit 5**, Fausto 213:5-21.[27] Also see RPD 15-21.[28] Defendant then produced

---

[26] *Yancey v. Hooten*, 180 F.R.D. 203 (D. Conn. 1998) and *Kimbro v. I.C. Systems*, 2002 U.S. Dist. LEXIS 14599 (D. Conn. 2002).

[27] Fausto Depo. 213:5-21.
5  Q  What's the net worth of Credigy?
6      MR. KAMINSKI:  Objection.  I'll instruct the
7  witness not to answer at this time.  The witness doesn't
8  have the information, plus the information regarding net
9  worth has not yet been produced.  And pursuant to
10  agreement between counsel, that will -- certainly
11  unaudited financial information will be provided to
12  counsel during the mediation of this matter.
13      MR. WILCOX:  Counsel, to save us all a lot of
14  time, I've got a great number of questions regarding
15  financial condition I'm about to launch into.  I will
16  not do that and not consume our time if you understand
17  I'm reserving a right to ask those questions at a later
18  date after we met and confer to deal with the issue,
19  because I don't want to waste Mr. William's time.
20      MR. KAMINSKI:  I appreciate that.  That's fine,
21  Mr. Wilcox.

1   some documents relating to financial condition *after* Plaintiffs brought a Motion to Compel, and before

2   it was heard, which was well after the deposition.  Subsequently, Magistrate Judge Seeborg ordered

3   Defendants to produce their financial statements and tax returns. *Wilcox Decl.* ¶9.  Thus, Defendants

4   must produce a competent designee regarding this topic.

5

6          Indeed, Defendants' failure to testify and produce the properly requested discovery

7   information, and failure to even seek a Protective Order to prevent its production, is sanctionable.

8   **F.     Telephone Practices**

9          This case is about the more than ninety (90) phone calls Defendant made in an attempt to

10  collect a ten (10) year old debt from Plaintiffs.  Many of these phone calls do not appear on Defendants

11  collection logs.  Moreover, Defendants failed to produce any documents relating to the more than forty

12  (40) phone calls placed by its agent, LiveVox, Inc., in an attempt to collect the debt from Plaintiffs on

13  behalf of Defendants.  However, Plaintiffs subsequently obtained these records via subpoena, and thus,

14  have yet to depose Defendant about these numerous collection phone calls. *Wilcox Decl.* ¶10.

15

16         Defendants' F.R.C.P. 30(b)(6) designee was unable to testify regarding Defendants' practices

17  in regard to the use of its auto-dialer telephone system, provided by its agent LiveVox, Inc.  He was

18  unable to testify as to what the LiveVox, Inc. automated dialer system actually does if a person picks

19  up the phone to receive a call, **Exhibit 5**, Fausto 86:10-15.[29]  He was unsure whether there were any

20

21  _____

22  [28] **Request to Produce Documents (Exhibit 2):**
    15. All financial documents from lawsuits in which Defendant has provided financial documents
23  or net worth information.
    16. All documents of Defendant providing their net worth to any government agency,
24  provide such documents.
    17. All financial statements of Defendant for the last three years.
25  18. All annual reports of Defendant for the last three years.
    19. All semiannual and quarterly financial statements of Defendant for that last three years.
26  20. All credit applications of Defendant for the last three years.
27  21. All tax returns of Defendant for the last three years.

28  [29] Fausto Depo 86:10-15:

1  written documents regarding Defendants' practices and procedures regarding the LiveVox, Inc.'s auto-

2  dialing system. **Exhibit 6**, Vasquez 96:25-97:22.[30]  Furthermore, the designee made no effort to speak

3  to LiveVox, Inc. before coming to the deposition, **Exhibit 6**, Vasquez 105:12-15. *Wilcox Decl.* ¶11.

4
       The designee was unable to answer questions regarding Defendant's document retention policy

5
6  and practices in regard to its telephone records, and whether or not Defendants destroyed telephone

7  records after being notified of this lawsuit. **Exhibit 5**, Fausto 234:20-235:7;[31]  A competent designee

8
_____

9  10    Q  If LiveVox was making an automated call using
11 this product that leaves an automated voice mail message
10 12 and an actual human picks up, what would happen?
13    A  I'm not sure what would happen.  I'm not sure
11 14 if LiveVox would detect that was a human and then
15 transfer the call to a live person.  I would have to
12 16 check on that.

13 [30] Vasquez Depo. 96:25-97:22:
14 25    Q.  Are there written documents regarding this
1 criteria you just mentioned?
15 2    A.  I'm not sure whether or not there is a written
3 document or whether there may be a programmatic
16 4 procedure which carries out some specific selection
5 criteria.
17 6    Q.  Have you ever seen any written documents
7 regarding the criteria used for the LiveVox system?
18 8    A.  I have not reviewed any documents of that
9 nature, no.
19 10    Q.  Have you reviewed any documents that indicate
20 11 Credigy has a practice against allowing LiveVox to use
12 prerecorded messages to cell phone numbers?
21 13    A.  Again, I have not reviewed any documents
14 regarding the specific policies or practices in place
22 15 relative to the selection of phone numbers sent to
16 LiveVox.  I would have to research that and review any
23 17 information that was available to answer that
18 question.
24 19    Q.  But you haven't seen any documents?
25 20    A.  Again, I haven't seen any documents related to
21 the selection of phone numbers that are sent to
26 22 LiveVox, that's correct.
27 [31] Fausto Depo. 234:20-235:7:
28 20    Q   Did Credigy preserve the 90 days of telephone

- 17 -

1  must be produced regarding Defendant's telephone practices used in an attempt to collect a debt.

2  *Wilcox Decl.* ¶12.

3  ### G.    Denials in the Answer

4  Defendants' counsel repeatedly instructed Defendant not to answer questions that Defendants

5  are required to answer.  For example, Defendants refused to testify about the factual basis for denials

6  in its answer, such as whether Defendant received Plaintiffs' cease and desist letter, which under the

7  FDCPA compelled collection activity to cease, but which did not. **Exhibit 5**, Fausto 223:8-224:11[32].

8

9

---

10  21 billing statements leading up to January 4, 2000 and 8?
22     A   When -- I don't know.  I have no idea whether
11  23 we have -- you're talking about 90 days prior to January
24 4th?
12  25    Q   Sure.
Page 235
13  1    A   2008.  Not to my knowledge.
2    Q   What is Credigy's document retention policy in
14  3 regard to telephone bills when it receives a lawsuit
4 alleging telephone abuse?
15  5    A   I -- I don't know what our specific policy
6 would be in regard to that.  But I would have to look
16  7 into it further to answer that question.

17  [32] Fausto Depo. 223:8-224:11:
18  8    Q   Can you explain why in its answer, Credigy
9 denied having received the certified letter disputing
19  10 the debt?
11     MR. KAMINSKI:  Objection.  Calls for
20  12 information protected by the attorney-client and
13 attorney-work-product privileges.  The deposition is not
21  14 the proper form in which to seek discover on legal
15 contentions.
22  16     THE WITNESS:  Again, I didn't review --
17     MR. KAMINSKI:  No, no --
23  18     MR. WILCOX:  I'm sure you understand I'm asking
19 him about a factual issue, not a legal contention, and a
24  20 matter of public record.
21     MR. KAMINSKI:  Still, I'm instructing the
25  22 witness not to answer.
23 BY MR. WILCOX:
26  24    Q   Mr. Williams, what facts support Credigy's
27  25 denial of having received the second certified mail
28

- 18 -

*Wilcox Decl.* ¶13. Defendant's objection notwithstanding,[33] it must answer the question or its

defenses should be stricken. Indeed, unless Defendants produce a designee to answer questions about

its affirmative defenses, they should be precluded from introducing defenses, such as bona fide error.

F.R.C.P. 37(c)(1).

### H.    Witnesses, Investigation

Plaintiffs are entitled to conduct discovery regarding the factual information and source of such

information, supporting Defendant's affirmative defenses, and what action Defendants took in

response to Plaintiffs allegations. *U.S. EEOC v. Ceaser Entertainment, et al.*, 237 F.R.D. 428 (D. Nev.

2006)("The factual information and source of such information…supporting Defendant's affirmative

defenses").

The designee claimed Credigy conducted an investigation into the Fausto's claims, but does not

know who at Credigy conducted the investigation. **Exhibit 5**, Fausto 207:24-208:1.[34] Also, when

---

1 letter from Mr. Fausto?
2      MR. KAMINSKI: I interpose the same objection
3 and instruct the witness not to answer.
4      THE WITNESS: Again, I'm not aware of the
5 denial of the receipt, and I don't know anything about
6 it.
7 BY MR. WILCOX:
8    Q   Who at Credigy provided the answers for the
9 answer?
10    A   Again, I don't know who provided the answers
11 for the answer.

[33] **Deposition Topic Number 11 (Exhibit 2)**, "The factual basis for Defendants' Answer" and Deposition Topic Number 12 stated, "The facts relating to any bona fide error defense." Defendants Amended Objection to both topics stated: "This category is objected to on the grounds it seeks information protected by the attorney-client and work produce privileges. This category is also objected to on the grounds that it is [sic] seeks a legal contention question that has nothing to do with whether the information sough is discoverable." *Rifkind v. Superior Court*, 22 Cal. App. 4th 1255 (1994).

[34] Fausto Depo. 207:24-208:1:
24    Q   Other than the attorneys, who at Credigy
25 reviewed the claims?

1  asked "Did anyone at Credigy speak to debt collector "Rgoncalves about the Fausto account," the

2  deponent answered, "I have no idea." **Exhibit 5**, Fausto 185:9-12.[35]  When asked if anyone at Credigy

3  had spoken to debt collector "eisilva" about the Fausto account, and again the deponent had no idea,

4  nor could he answer whether Credigy asked "eisilva" if he threatened to report the Fausto's debt on

5  their credit report forever,[36] and whether or not "eisilva" was disciplined.[37]  Nor did the designee know

6

7

8  25 reviewed the claims?
   1      A   I don't know.
9  [35] Fausto Depo. 185:9-12:
   9   Q   Did anyone at Credigy speak to rgoncalves about
10 10 the Fausto account?
   11      MR. KAMINSKI:  Object.  Calls for speculation.
11 12      THE WITNESS:  It's possible.  I have no idea.

12 [36] Fausto Depo. 212:13-20:
   13      Q   Has Credigy asked esilva -- or eisilva whether
13 14 or not he or she made the statement to Mrs. Fausto that
   15 if the debt was not paid, it would appear on
14 16 Mr. Fausto's credit report forever?
   17      MR. KAMINSKI:  Objection.  Calls for
15 18 speculation.  Lacks foundation.
   19      THE WITNESS:  Again, not to my knowledge.
16 20 BY MR. WILCOX:

17 [37] Fausto Depo. 100:4-24:
   4 Q   Did anyone at Credigy talk to eisilva about the
18 5 Faustos' account?
   6      MR. KAMINSKI:  Objection.  Calls for
19 7 speculation.  Lacks foundation.
   8      THE WITNESS:  I -- I have no idea, and I cannot
20 9 tell from looking at the tracking notes.
   10 BY MR. WILCOX:
21 11      Q   Has Credigy taken any disciplinary action
   12 against eisilva --
22 13      A   When you --
   14      Q   -- in the last three years?
23 15      A   When you refer to "Credigy," who are you
   16 referring to?
24 17      Q   Has any Credigy entity taken any disciplinary
   18 action against eisilva in the last three years?
25 19      A   Again, I would have to review the personnel
   20 file of eisilva to tell you the answer to that question.
26 21 I haven't reviewed her personnel file.  And I would have
27

28

PLAINTIFFS' NOTICE AND MOTION TO COMPEL DEPOSITION

1  if "sblackwell" or "kervin" had been disciplined (two collectors allegedly involved in failing to

2  properly identify the Plaintiffs' cease and desist letter). **Exhibit 5**, Fausto 162:21-163:6. Nor could the

3  designee answer whether any disciplinary action was taken against any of the collectors. **Exhibit 5**,

4  Fausto 208:2-8.[38] *Wilcox Decl.* ¶14.

5

6  The following day the corporate designee was also unable to answer whether Defendants

7  conducted any investigation into the allegations made in the Vasquez complaint. **Exhibit 6**, Vasquez

8  90:21-91:7.[39] Furthermore, when asked if Defendants' had spoken to the "fferao", one of the debt

9

10

11  _____

12  22 to be obtain that from Credigy Solucoes Financeiras.
   23   Q   Did you bring a copy of eisilva's personnel
13  24 file today?

14  25   A  I don't believe so.

15  [38] Fausto Depo. 208:2-9:
   2   Q   Has Credigy taken any disciplinary action
16  3 against any of the collectors that worked on the Fausto
   4 account?
17  5   A  I -- I -- again, I -- we have the personnel
18  6 files here, and I can review the personnel records, but
   7 I don't know specifically what disciplinary action was
19  8 taken against any employees without reviewing the
   9 personnel files.
20
   [39] Vasquez Depo. 90:21-91:7:
21  21   Q.  What investigation did Credigy make into the
   22 allegations raised by Ms. Vasquez?
22  23     MR. KAMINSKI:  Independent of attorney-client
   24 privilege, if you know.
23
   25     THE WITNESS:  The only investigation that I'm
24  90:1 aware of is merely as a result of the documents that
   2 have been produced to me for review in this case.  I
25  3 have not spoken with anyone internally about the
   4 investigation of this case.  I don't know anything
26  5 about the internal investigation of this case.  I have
27  6 just reviewed the documents that have been provided to
   7 me for this particular case.
28

- 21 -

collectors that abused Ms. Vasquez, counsel instructed the deponent not to answer. **Exhibit 6**, Vasquez 90:10-19.[40] *Wilcox Decl.* ¶15.

Additionally, Plaintiffs have alleged a claim for punitive damages under Civil Code §3294. Defendants can be liable for punitive damages if they are found to have ratified these unlawful acts, i.e. if Defendants failed to properly investigate the matter, failed take remedial action or discipline the wrongdoers. *Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1835 (9th Cir. 1987).

Concealing the identity of fact witnesses, instructing a deponent not to answer, and refusing to testify about what investigation was conducted into Plaintiffs allegations, and what actions were taken as a result, is improper.

## I.     **Deposition Topics to Which Defendants Refused to Produce a Designee**

When Defendants intended to respond to questions regarding various topics they clearly stated so (See for example **Exhibit 2**, Topic #1, stating "Defendant will produce a witness to testify as to this subject."); when they would not they indicated so with in their written objection. Defendants served amended objections to numerous topics, including seven (7) relevant herein (See Topics #7, 11, 12, 22, 25-26, 28- the lengthy 17 pages of objections are attached as **Exhibit 2)** *Wilcox Decl.* ¶16:

7.  Documents sent to and/or received from Plaintiffs or anyone else regarding Plaintiffs; (Asserting a privilege, but failing to produce privilege log, and stating a witness will be produced)

---

[40] Vasquez Depo. 90:10-19:
90:10      Did Credigy speak with fferrao regarding the
11 allegations made by Ms. Vasquez regarding Credigy's
12 violations of the Fair Debt Collection Practices Act?
13      MR. KAMINSKI: Objection. Assumes facts not in
14 evidence, misstates the facts in this case, states a
15 legal conclusion, is vague and ambiguous, calls for
16 speculation, and I'll instruct the witness not to
17 answer the question as phrased.
18      Also invades the attorney-client privilege.
19      (Marked question indexed.)

11. The factual basis for Defendants' Answer;

12. The facts relating to any bona fide error defense;

22. Complaints and lawsuits against Defendants for unlawful collection practices in the past three years.

25. All documents relating to Plaintiff; and

26. The net worth and financial condition of Defendant.

28. Any bonuses or commissions paid to any of the collectors that worked on Plaintiffs' account, from 2005-2008.

The subject matter of Topics 11, 12, 22, and 26, have already been addressed above. Defendants have failed to produce a privilege log regarding Topic 7, and thus must respond without objection. Topic 25 simply requires someone with knowledge regarding all documents relating to Plaintiffs. Defendants assert an attorney-client privilege objection, but again fail to provide any privilege log. Topic 28 seeks any bonuses or commissions paid to any of the collectors that worked on Plaintiff's account, from 2005-2008. A jury may consider the payment of bonuses or commissions to unlawful collectors as a failure to repudiate, and/or ratify, the wrongful acts. Defendants must produce a competent designee regarding these categories.

## VII.    ADDITIONAL DOCUMENTS WHICH DEFENDANTS FAILED TO PRODUCE

**DEPO RPD 1 (Exhibit 2, page 9)**

All documents relating to Plaintiffs and/or Plaintiff's account.

Defendants' F.R.C.P. 30(b)(6) designee testified there were address and telephone tables relating to the Simplect collection logs/tracking notes; they have not been produced. Furthermore, Plaintiffs are entitled to the actual screen prints or screen shots of the collection logs, identified as FA 2-FA 19. Defendants did not produce any documents relating to the audits conducted, as reflected on

- 23 -

the collection logs, or any audit trails. Defendants failed to produce key codes or documents explaining the various codes on the collection logs. *Wilcox Decl.* ¶17. Since numerous codes appear on the collection logs Defendants have relating to the Plaintiffs and the alleged debt, any documents explaining such codes must be produced.

Additionally, Defendants failed to produce logs noting the calls made by its agent, LiveVox, Inc. Furthermore, Defendants failed to produce any documents relating to the LiveVox, Inc. system and the alleged debt (such as the data and information about the Plaintiffs transferred back and forth to LiveVox, Inc., the data and computer screens Defendants accessed on the LiveVox system, the merging of any data of LiveVox with Credigy's Simplect system (as Defendants testified occurs), or any procedures manuals relating to such, etc.). *Wilcox Decl.* ¶18. These documents must be produced.

Nor have they produced proof of any payments made on the alleged despite, despite testifying they may have such documents. Defendants have also failed to produce **all** documents relating to its reporting of the alleged debt to credit reporting agencies (as required by Court Order dated June 13, 2008, and are therefore in contempt. *Wilcox Decl.* ¶19. As such, Defendants designee stated he could not answer whether the debt was properly reported as disputed unless he reviewed the documents showing what was reported. **Exhibit 5**, Fausto 111:3-7.[41] Defendants must be compelled to produce "copies of any documents relating to the referral of the Faustos's case to a credit reporting agency," as the Court Ordered on June 13, 2008.

---

[41] Fausto Depo. 11:3-7:
3    A   I don't know from this document whether or not
4 it was reported as disputed. I would have to probably
5 obtain, if we could, the historical data that was
6 submitted to the credit bureau on 12/19/2006 in the
7 Metro 2 format to see how the account was reported.

- 24 -

**DEPO RPD 2 (Exhibit 9)**

All collection records maintained by Defendants as to Plaintiff's account, with a key to abbreviations used thereon, such as codes for letters, personnel, activities.

      As argued directly above, all documents relating to collection efforts must be produced, including the explanation of the codes.

**V.    CONCLUSION**

      For the reasons stated above Plaintiffs respectfully request:

A)  an Order requiring Defendants to properly answer questions, not leave the room while a question is pending, and not instruct the designee not to answer absent a valid privilege;

B)  an Order requiring Defendants to produce a competent F.R.C.P. 30(b)(6), in San Jose, CA, for its continued depositions for the topics originally noticed for April 22, 2008, including, but not limited to: 1) training practices and procedures, 2) previous lawsuits and complaints, 3) financial condition and net worth, 4) telephone practices, 5) the denials in its Answer, 6) investigation of fact witnesses, and actions taken as a result of such, and 7) deposition topic numbers 7, 11, 12, 22, 25, 26 and 28;

C)  an order requiring Defendants to produce, and testify about, the following documents:  Previous lawsuits and complaints, financial statements and tax returns for the past three years, any documents relating to LiveVox, Inc., address and telephone tables relating to the Simplect system, personnel files for all individuals that worked on Plaintiffs account, all documents referring to the reporting of the alleged debt, and any documents relating to Plaintiff, and supplement their responses to **Depo RPD Numbers 1, 2 and 8** (**Exhibit 2**, p. 9 and 11.).

Respectfully submitted,

Dated: July 15, 2008

                          /s/Ronald Wilcox
                          Ronald Wilcox, Counsel for Plaintiff