TOMIO B. NARITA (SBN 156576)
JEFFREY A. TOPOR (SBN 195545)
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000
Facsimile: (415) 352-2625
tnarita@snllp.com
jtopor@snllp.com

Attorneys for Defendants and Cross-Complainant Credigy Services Corporation, and for Defendants Credigy Receivables, Inc. and Credigy Solutions, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MANUEL G. FAUSTO, AND LUZ FAUSTO,

Plaintiffs,

vs.

CREDIGY SERVICES CORPORATION *et al.*,

Defendants.

---

CREDIGY SERVICES CORPORATION,

Counterclaimant,

vs.

LUZ FAUSTO and ROES 1 through 25,

Counterdefendants.

---

CASE NO.: C 07 05658 JW (RS)

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT CREDIGY SERVICES CORPORATION FOR LEAVE TO FILE SUPPLEMENTAL PLEADING ASSERTING COUNTERCLAIM**

Date: September 22, 2008
Time: 9:00 a.m.
Ctrm: 8 (Fourth Floor)

The Honorable James Ware

## I. INTRODUCTION

In their Opposition, Plaintiffs Manuel and Luz Fausto ("Plaintiffs") effectively seek to file a speaking motion asking this Court to rule on the merits of the proposed counterclaim. The Court, however, must accept as true the allegations made in the proposed pleading by Defendant Credigy Services Corporation ("CSC"). It should defer resolving contested issues of fact on this record.

CSC has alleged that the victim who was secretly recorded was employed by CSC, and thus CSC has standing to pursue the claim. This allegation must be accepted as true for purposes of this motion. Plaintiffs claim in their Opposition that the collector whom they surreptitiously taped was not employed by CSC. But Plaintiffs have never even identified the name of the collector who was the victim of their secret taping. Without the name of the victim, it is impossible for the Court to determine which entity employed the collector. These issues should not be decided in the context of this motion.

Plaintiffs identify no tangible prejudice that will result if the counterclaim is allowed. They simply speculate that discovery may be difficult. This speculation is insufficient to carry their burden of proving that leave to amend should be denied.

Plaintiffs' remaining arguments fare no better. Their "public policy" argument is severely misplaced. No legitimate claim by any debtor will be "chilled" just because that debtor is held accountable when they illegally tape a collector. Nor are there exceptional circumstances here that warrant declining supplemental jurisdiction. Contrary to Plaintiffs' argument, the California Penal Code applies to Plaintiffs where, as here, their unlawful conduct was committed inside the State of California.

It is now undisputed that CSC's proposed counterclaim arises out of the same set of transactions and occurrences at issue in Plaintiffs' First Amended Complaint. The Court can and should exercise supplemental jurisdiction over this claim, so that these interrelated issues can be resolved efficiently and economically in a single proceeding. CSC respectfully requests that it be granted leave to file its proposed counterclaim under section 632 and 637.2 of the California Penal Code.

## II. ARGUMENT

### A. The Proposed Counterclaim Is Not Futile And Plaintiffs Would Not Be Prejudiced By Permitting The Claim

Plaintiffs do not dispute that CSC's proposed counterclaim only recently matured, such that it may be asserted as a permissive counterclaim.[1] Nor do they dispute that the counterclaim arises out of the same transaction or occurrence – a common nucleus of operative facts – as their claim, such that it would be appropriate for the Court to exercise supplemental jurisdiction.[2]

Instead, Plaintiffs maintain that leave to amend – which is to be granted freely[3] – should be denied because CSC's proposed claim is futile, and because Plaintiffs would be prejudiced by allowing the claim to proceed. Plaintiffs have failed to carry their burden of demonstrating that leave to amend should be denied. *See Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989) (burden on non-moving party).

---

1 *See* Fed. R. Civ. P. 13(e).

2 *See* 28 U.S.C. § 1367(a); *Otsuka v. Polo Ralph Lauren Corp.*, 2008 WL 2037621, *3 (N.D. Cal. May 12, 2008).

3 *See* Fed. R. Civ. P. 15; *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, 2001 WL 1702151, *4 (S.D.N.Y. Jan. 11, 2002) ("This liberal amendment policy of Rule 15 applies to requests to add counterclaims pursuant to Rule 13(e).")

**1. The Proposed Counterclaim Is Not Futile; Regardless The Court Should Not Rule On The Merits Of The Proposed Counterclaim At This Juncture**

Plaintiffs assert that leave to file the counterclaim should be denied because the person whom they secretly recorded was not a CSC employee. Therefore, according to Plaintiffs, CSC "was not a party to the communications," has not been injured and lacks standing to pursue the proposed counterclaim. *See* Opposition at 6:1. Plaintiff's argument is at best premature.

Even if the Court is inclined to consider the argument at this stage, Plaintiffs have not submitted any competent, admissible evidence conclusively establishing the identity of the victim of their secret taping activities. Without knowing who the victim is, it is not possible to know who employed that person. The Court should accept as true CSC's allegation in the countercomplaint that the victim of the illegal recording was employed by CSC.

Courts rarely deny leave to amend on the ground that amendment is futile. Instead, courts ordinarily "will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 549 (N.D. Cal. 2003); *accord SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002). Thus, when determining futility, "the Court is required to accept" the allegations in the proposed counterclaim "as true. . . . Plaintiff's opposition contests the truth of this allegation. Such a factual question is more appropriately determined by way of a fully briefed motion or a trial, rather than in the context of a motion for leave to amend." *See SAES Getters S.p.A.*, 219 F. Supp. 2d at 1088 (granting motion for leave to amend to add counterclaim).

In its proposed pleading, CSC alleges that at all relevant times, it "maintained contractual relationships by which it employed personnel located in offices in Sao Paulo, Brazil." *See* Counterclaim for Violation of California Penal

Code § 632, at 2:7-9 (underlining added).[4] In addition, CSC alleges that "Fausto and CSC employees had telephone conversations," at least one of which Fausto "secretly recorded . . . without the consent of CSC or CSC's employees." *See id.* at 3:8-9, 3:16-18 (underlining added). Plaintiffs do not dispute that, if true, these allegations are sufficient to state a claim.

Plaintiffs' new argument – that the collectors who called them are not employees of CSC – should be rejected, in light of Plaintiffs repeated allegations and representations to this Court to the contrary. Throughout the course of this litigation, Plaintiffs have sought to hold CSC liable on the theory that the individual collectors with whom they spoke **were employees of CSC**. In their First Amended Complaint ("FAC"), Plaintiffs refer to CSC, Credigy Receivables Inc., Credigy Solutions Inc., Ryan Miller, Ricardo Ventura, Brett Boyde, Paulo Peres and Thompson collectively as "Defendants," and Plaintiffs allege that Miller, Ventura, Boyde, Peres and Thompson were each "an employee of Defendants." *See* FAC at ¶¶ 6, 73-77. Plaintiffs further allege that they began receiving improper telephone calls and correspondence from Defendants in January 2006, and repeatedly allege that "Defendants" called them. *See id.* at ¶¶ 6, 27, 29, 31, 32, 34-36, 43.

Now, faced with the proposed claim against them, Plaintiffs have flip-flopped on this issue, and argue that the collector whom they secretly taped was not an employee of CSC, but rather was an employee of non-party, Credigy Solucoes Financeiras, Ltda., which they contend is an independent contractor of CSC. To make the argument, Plaintiffs rely upon the deposition testimony of a

---

[4] Attached as Exhibit D to the Declaration of Tomio B. Narita in Support of Motion of Defendant Credigy Services Corporation for Leave to File Supplemental Pleadings Asserting Counterclaim

representative of CSC and a "General and Administrative Services Agreement" between CSC and Credigy Solucoes.

Neither the deposition testimony nor the Agreement support Plaintiffs. The testimony indicates that certain collectors were "**contracted employees**" of CSC, provided by Credigy Solucoes.[5] None of the testimony identifies who was secretly taped by Plaintiffs. For purposes of the present motion, the Court must accept CSC's allegations as true, and should not resolve any factual dispute, especially where discovery is ongoing.[6] The proposed amendment is not futile.[7]

**2. Plaintiffs Have Not Demonstrated Substantial Prejudice**

Plaintiffs also argue that they will be unduly prejudiced if the Court permits CSC to file its proposed counterclaim. They speculate that "it will be almost impossible to conduct discovery and take the depositions of the individuals that

---

[5] Plaintiffs misstate the testimony of the deponent, who said: "So at this point in time, December 3, 2007, most all – and it could have been all, I'd have to double check, of the calls that Credigy Service Corp. were made were being handled by contracted employees provided by Credigy Solucoes." *See* Declaration of Balam O. Letona, Ex. 2 at 97:15-19. As for the Agreement, it simply states that the parties to it – CSC and Credigy Solucoes – are independent contractors; it says nothing about the status of individuals who work for either entity. *See* Ex. 3 at Section 5.1.

[6] Where, as here, discovery is ongoing, a proposed amendment is futile only if no facts could be proven under the amendment that would constitute a valid claim. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (reversing denial of motion to amend answer); *Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 157 (N.D. Cal. 2005) (allowing amendment to complaint).

[7] Plaintiffs also argue that "the persons allegedly injured" by their unlawful recording "are not parties to this suit and it should not be the subject of a counterclaim. . . . The pleader was not a party to the conversation as defined by the code and does not have a claim based on this code against an opposing party." *See* Opposition at 7:5-10. This is simply just another way of stating Plaintiffs' argument that CSC was not a party to the recorded conversation because the victim was allegedly employed by Credigy Solucoes, not by CSC.

collected on [sic] the Faustos." Opposition at 7:23-24. Plaintiffs' speculation is not sufficient to establish prejudice, let alone substantial prejudice.

As the Ninth Circuit has explained, a party opposing leave to amend on the grounds of prejudice must demonstrate that it will suffer substantial prejudice, such as where the plaintiff delayed for almost two years in seeking to add a new claim that "would have greatly altered the nature of the litigation and would have required defendant to have undertaken, at a late hour, an entirely new course of defense." *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Plaintiffs cannot meet this heavy burden.

Plaintiffs recount certain challenges that they have faced in obtaining discovery from Brazilian residents in this case. They do not explain, however, why they would need to depose any Brazilian resident in connection with proving an unidentified affirmative defense to the Penal Code claim. They also ignore the fact that the Court already ordered Defendants to produce Brazilian residents in the United States for their depositions. Plaintiffs' speculation that they <u>may</u> face a challenge in deposing a Brazilian resident is not a sufficient basis to deny CSC from pursuing its claim. Plaintiffs cite no cases to support their argument that they should escape responsibility for their unlawful conduct simply because discovery may take some extra effort.

Nor is the fact that additional discovery may be needed, standing alone, an insufficient reason to deny amendment. *See United States v. Continental Ill. Nat'l Bank & Trust*, 889 F.2d 1248, 1255 (2d Cir. 1989) (reversing denial of motion to amend); *Genentech, Inc.*, 127 F.R.D. at 531 (holding that necessity of deposing individuals a second time and conducting additional document searches and written discovery, resulting in postponement of trial date, did not constitute undue prejudice, and noting that new facts came to light after original complaint filed and

during course of discovery). Simply put, Plaintiffs will not be prejudiced by allowing CSC to pursue its claim.[8]

**B. Allowing The Counterclaim Will Not Chill Any Legitimate FDCPA Claims From Proceeding**

Plaintiffs urge the Court to decline to exercise supplemental jurisdiction over the proposed counterclaim. They concede by their silence, however, that none of the factors set forth in 28 U.S.C. § 1367(c)(1-3) are implicated here. Plaintiffs rely solely upon their argument that "exceptional circumstances" exist here that justify declining jurisdiction, *see* 28 U.S.C. § 1367(c)(4), because the claim would somehow impermissibly "chill" their right to pursue their claims under the Fair Debt Collection Practices Act ("FDCPA"). Thus, Plaintiffs assert that "[t]he prospect of jail time, or civil damages, as a result of bringing an FDCPA claim against a collector would certainly chill any plaintiff from bringing a claim." Opposition at 11:3-4.

The only thing that might be chilled by permitting CSC's claim to proceed is Plaintiffs' illegal conduct. Plaintiffs cannot violate the law with impunity and then claim that their alleged FDCPA claims would be chilled if they are held responsible for their conduct.

---

[8] Plaintiffs' argument that "litigation costs will escalate" because "they will need additional time to prove their affirmative defenses," Opposition at 9:5-6, is specious. A litigant who allegedly violated the law cannot argue that the claim should be disallowed simply because the litigant will incur defense costs. Plaintiffs' argument that CSC somehow delayed bringing its claim, because CSC knew "about the existence of the recorded evidence" since April is also frivolous. The claim did not accrue until CSC discovered it in July 2008, when Plaintiffs belatedly produced the tape recording. *See Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 99-100 (1987). Plaintiff's suggestion that they will be prejudiced because the discovery deadline is approaching is likewise frivolous, given that Plaintiffs deliberately withheld clearly discoverable information – the tape recording – for months.

Plaintiffs cite a trio of cases, all of which are inapposite here.[9] As Plaintiffs acknowledge, each of these cases addressed whether allowing a debt collector to assert a counterclaim for the debt in an action alleging that the collector violated the FDCPA would chill debtors' efforts to enforce the FDCPA. There is a marked difference between declining jurisdiction over a breach of contract claim on a debtor's unpaid debt, and declining jurisdiction over a claim that Plaintiffs violated the law in an effort to gather evidence to support their alleged FDCPA claim.[10] This is not the type of exceptional circumstance that Congress contemplated when it enacted section 1367(c)(4). *See Executive Software N. A. v. United States Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994) (explaining that exceptional circumstances warranting declining jurisdiction are limited to type that lead court to conclude that doing so best accommodates values of economy, convenience, fairness and comity) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)), *overruled on other grounds by California Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008) (holding that discretionary decision to decline supplemental jurisdiction properly challenged on appeal rather than via mandamus petition).

---

[9] *Leatherwood v. Universal Bus. Serv. Co.*, 115 F.R.D. 48 (W.D.N.Y. 1987); *Campos v. Western Dental Servs., Inc.*, 404 F. Supp. 2d 1164, 1170 (N.D. Cal. 2005); *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1071 (E.D. Cal. 2005).

[10] Plaintiffs argue that a claim under section 632 of the Penal Code "is purely personal and cannot be assigned," citing to *Bela George Lugosi v. Universal Pictures*, 25 Cal. 3d 813 (1979), and *Essex Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal. 4th 1252 (2006). Neither of these cases dealt with section 632. Furthermore, as the Courts have held, a corporation may bring an action pursuant to sections 632 and 637 of the Penal Code, based on an injury suffered by its employee. *See Coulter v. Bank of Am. National Trust and Sav. Ass'n*, 28 Cal. App. 4th 923, 930 (1994); *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 879-80 (1980).

Because CSC's claim arises out of the same circumstances surrounding Plaintiffs' initial complaint, fairness and judicial economy would be best served by adjudicating these inextricably intertwined claims in one action. Defendants urge the Court to exercise supplemental jurisdiction over its counterclaim.

Finally, Plaintiffs maintain that the California Penal Code is not implicated here because the victim of their unlawful recording was not located in California during the recording, citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006). *Kearney* addressed only a choice-of-law issue: whether California's law or Georgia's law applied if the recording party was located in Georgia, and the recorded party was located in California. *See id.* at 107.[11] In conducting the choice-of-law analysis, the court "concluded that California's interest in protecting individuals in California from the secret recording of their confidential telephone conversations would be more significantly impaired than would Georgia's interest in protecting the right of a business to record telephone conversations for legitimate business reasons." *See Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1458 (2007). In concluding that California law applied, the *Kearney* court observed that one purpose of section 632 was "'to protect the privacy of the people of'" California. *See* 39 Cal. 4th at 119. The court did not, however, as Plaintiffs suggest, hold that California law was inapplicable where, as here, the party who committed the unlawful recording did so in California. Holding California residents liable for violating California law, even if the victim is not a California resident, is not inconsistent with protecting the privacy of California citizens. *Kearney* does not control here.

Plaintiffs do not dispute that they were in California when the illegal taping occurred. The California legislature clearly sought to punish and deter this type of

---

[11] Under Georgia law, only one party to the call was required to consent to recording, whereas California law requires the consent of both parties.

illegal conduct from occurring within the State of California. Section 637.2 of the California Penal Code states that "any person" who is victimized by illegal taping activities may bring an action for damages. The statute does not, on its face, require that the victim be located in California at the time of the taping. In any event, again, there is no admissible evidence in the record regarding the identity of the person who was illegally taped, much less the location of the victim at the time of the taping. Plaintiffs argument is without merit.[12]

## III. CONCLUSION

For the foregoing reasons, Defendant CSC respectfully requests that the Court enter an Order granting it leave to file a supplemental pleading asserting a counterclaim under section 632 and 637.2 of the California Penal Code.

DATED: September 8, 2008

SIMMONDS & NARITA LLP
TOMIO B. NARITA
JEFFREY A. TOPOR

By: s/Tomio B. Narita
Tomio B. Narita
Attorneys for Defendant and Counterclaimant Credigy Services Corporation and for Defendants Credigy Solutions Inc., Credigy Receivables Inc.

---

[12] Plaintiffs have wholly failed to show that there is a compelling reason not to apply California law, other than their desire to avoid liability for their conduct. California's "choice of law analysis carries a presumption that California law applies and that the proponent of the foreign state law bears the burden of showing a compelling reason justifying displacement of California law." *Rasidescu v. Midland Credit Managment, Inc.*, 496 F. Supp. 2d 1155, 1159 (S.D. Cal. 2007) (citing *Marsh v. Burrell*, 805 F. Supp. 1493, 1496 (N.D. Cal. 1992)).