1   Ronald Wilcox SBN 176601
    LAW OFFICE OF RONALD WILCOX
2   2160 The Alameda, 1st Flr., Suite F
    San Jose, CA 95126-1001
3   Telephone: (408) 296-0400
    Facsimile: (408) 207-0486
4   Email: ronaldwilcox@yahoo.com

5   Balam O. Letona SBN 229642
    LAW OFFICE OF BALAM O. LETONA, INC.
6   1347 Pacific Avenue, Suite 203
    Santa Cruz, CA 95060-3940
7   Telephone: (831) 421-0200
    Facsimile: (831) 621-9659
8   Email: letonalaw@gmail.com

9   David Humphreys, OBA # 12346
    Luke Wallace, OBA # 16070
10  HUMPHREYS WALLACE HUMPHREYS, P.C.
    9202 S. Toledo Avenue
11  Tulsa, OK 74137
    Telephone: (918) 747-5300
12  Facsimile: (918) 747-5311

13  Attorneys for Plaintiffs
    MANUEL G. FAUSTO, LUZ FAUSTO

14

15              IN THE UNITED STATES DISTRICT COURT
16          FOR THE NORTHERN DISTRICT OF CALIFORNIA
                      SAN JOSE DIVISION
17

18  MANUEL G. FAUSTO and LUZ FAUSTO,      )
                                          )
19              Plaintiffs,               )    Case No: C07-05658 JW
                                          )
20      vs.                               )
                                          )
21  CREDIGY SERVICES CORPORATION,         )    **DECLARATION OF LUKE WALLACE**
22  CREDIGY RECEIVABLES INC.,             )    **IN SUPPORT OF PLAINTIFFS'**
    CREDIGY SOLUTIONS INC., RYAN          )    **MOTIONS IN LIMINE**
23  MILLER, RICARDO VENTURA, BRETT        )
    BOYDE, PAULO PERES, THOMPSON,         )
24  And DOES 1-10, inclusive,             )
                                          )
25              Defendants.               )
                                          )
26                                        )
                                          )
27                                        )
                                          )
28                                        )
                                          )

I, Luke Wallace, declare under penalty of perjury, as provided for by the law of the United States, 28 U.S.C. Section 1746, that the following statements are true:

1.    I am an attorney admitted *pro hac vice* to practice in this district court. I am a partner in the law firm of Humphreys Wallace Humphreys, P.C., counsel for Plaintiffs Manuel and Luz Fausto.  I make this declaration in support of Plaintiffs' Motions *In Limine*. I have personal knowledge of the facts set forth below, and if called as a witness, I could and would testify competently thereto.

2.    On September 16, 2008, Defendants took the deposition of Plaintiff Luz Fausto. On October 6, 2008, Defendants took the continued deposition of Mrs. Fausto. Attached hereto as **Exhibit A** are true and correct copies of the cover pages, the oaths, and the cited pages of those depositions.

3.    On September 15, 2008, Defendants took the deposition of Plaintiff Manuel G. Fausto. On October 6, 2008, Defendants took the continued deposition of Mr. Fausto. Attached hereto as **Exhibit B** are true and correct copies of the cover pages, the oaths, and the cited pages of those depositions.

4.    On October 9, 2008, Defendants took the deposition of Victor Munoz. Attached hereto as **Exhibit C** are true and correct copies of the cover page, the oath, and the cited pages of this deposition.

5.    Defendants proposed submission for the Joint Exhibit List include, Exhibit 149 *Notice of Default and Election to Sell Under Deed of Trust, dated June 7, 2008 (Exhibit 2 to the Deposition of Jose Fausto)*.   Attached hereto as **Exhibit D** is a true and correct copy of the document.

6.    Plaintiffs proposed submission for the Joint Exhibit List include, Exhibit 108 *Simplect Collection Log re: Fausto, bates labeled FA 1048-1052*. Attached hereto as **Exhibit E** is true and correct copy of the documents.

7.   No Defendant has produced a single writing establishing that Manuel Fausto breached the terms of a contract with Wells Fargo and, thereby, remains indebted on the account.

8.   Credigy has produced only a contract between itself and First Select, Inc.


I declare under penalty of perjury that the foregoing is true and correct.

Executed at Tulsa, Oklahoma, on this 12th day of January, 2009.


/s/ Luke Wallace
Luke Wallace
Attorney for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "A"

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    SAN JOSE DIVISION

4

5    MANUEL G. FAUSTO, AND

     LUZ FAUSTO

6              Plaintiffs,

     vs.                        Case No. C 07 05658 JW (RS)

7    CREDIGY SERVICES CORPORATION,

     CREDIGY RECEIVABLES, INC.,

8    CREDIGY SOLUTIONS, INC.,

     RYAN MILLER, RICARDO VENTURA,

9    BRETT BOYDE, PAULO PERES, THOMPSON,

     and DOES 1-10, inclusive,

10             Defendants.

                                    /

11

             **CERTIFIED COPY**

12

13

14

15        VIDEOTAPED DEPOSITION OF LUZ FAUSTO

16              September 16, 2008

17

18

19   REPORTED BY:

20   Debby Clary, CSR No. 9705, Registered Merit Reporter

21

22

23

                   TOOKER & ANTZ

24        CERTIFIED SHORTHAND REPORTERS

          350 SANSOME STREET, SUITE 700

25          SAN FRANCISCO, CA  94104

LUZ FAUSTO - September 16, 2008

```
1                        I N D E X

2

3    DEPOSITION OF LUZ FAUSTO

4    EXAMINATION BY:                              PAGE

5         MR. NARITA                                8

6

7                      ---o0o---

8

9                       EXHIBITS

10   For Defendants

11   IDENTIFICATION      DESCRIPTION              PAGE

12          1           Complaint, FA0001940 to -1945   39

13          2           Declaration Requesting     83

14                      Reduction of Filing Fee,

15                      FA0001970 to -1989

16          3           Summons, FA0001946 to -1969    86

17          4           Complaint for Damages,      94

18                      FA0001990 to -2018

19          5           First Select Corporation    117

20                      Account Agreement, FA0001163

21

22

23

24

25
```

TOOKER & ANTZ COURT REPORTING & VIDEO SERVICES
Tel: (415) 392-0650

1          BE IT REMEMBERED, that pursuant to Notice, and

2   on the 16th day of September, 2008, commencing at the

3   hour of 9:44 a.m., in the offices of Tooker & Antz, 350

4   Sansome Street, Suite 700, San Francisco, California,

5   before me, DEBBY CLARY, a Certified Shorthand Reporter

6   in the State of California, personally appeared

7                        LUZ FAUSTO,

8   called as a witness by the Defendants, and the said

9   witness, by me first duly sworn, was thereupon examined

10  and testified as hereinafter set forth.

11

12                        --o0o--

13

14          Humphreys, Wallace & Humphreys, 9202 South

15  Toledo Avenue, Tulsa, Oklahoma 74137, represented by

16  DAVE HUMPHREYS and LUKE WALLACE, Attorneys at Law,

17  appeared as counsel on behalf of the Plaintiffs.

18          Law Offices of Balam O. Letona, 1347 Pacific

19  Avenue, Suite 203, Santa Cruz, California 95060,

20  represented by BALAM O. LETONA, Attorney at Law,

21  appeared as counsel on behalf of the Plaintiffs.

22          Law Offices of Ronald Wilcox, 2160 The Alameda,

23  First Floor, Suite F, San Jose, California 95126-1122,

24  represented by RONALD WILCOX, Attorney at Law, appeared

25  as counsel on behalf of the Plaintiffs.

3

1    had pretty full discussion on the issue yesterday, so.

2

3                    EXAMINATION BY MR. NARITA:

4    BY MR. NARITA:

5        Q.   (Through Interpreter) Good morning, Ms. Fausto.

6        A.   (Through Interpreter) Good morning.

7        Q.   Ms. Fausto, do you speak English?

8        A.   No.

9        Q.   Do you speak any English, any English words?

10       A.   Little.

11       Q.   So maybe you speak as much English as I speak

12   Spanish.  We'll, we'll find out, I guess.

13       A.   Maybe.

14       Q.   Okay.  Where were you born?

15       A.   Ameca, Jalisco, Mexico.

16       Q.   And when?

17       A.   December 31st, 1950.

18       Q.   And when did you move to the United States?

19       A.   In 1990.

20       Q.   Had your husband already moved to the United

21   States before you?

22       A.   Yes.

23       Q.   Because he came to the United States around

24   1970, correct?

25       A.   Correct.

8

1    Q.  (Through Interpreter) Did you have a car

2    accident in the year 2007?

3          MR. WALLACE:  Objection; vague, ambiguous,

4    foundation.

5          THE WITNESS:  (Through Interpreter) Yes, but,

6    but it hurts me a lot to remember it.  I would not like,

7    I would not like to remember it, but yes.

8    BY MR. NARITA:

9    Q.  (Through Interpreter) Well, Mrs. Fausto, let me

10   explain that my job is to ask you questions.  My job is

11   not to upset you.  Do you understand that?

12         MR. WALLACE:  Objection; foundation.

13         THE WITNESS:  (Through Interpreter) Yes.

14   BY MR. NARITA:

15   Q.  (Through Interpreter) And I want you to know

16   that I am not trying to make you upset by any question

17   that I'm asking you today.  Okay?

18         MR. WALLACE:  Objection; foundation.

19         THE WITNESS:  (Through Interpreter) I

20   understand, but it hurts me a lot to remember it.  I

21   still cannot recover from that.

22         MR. NARITA:  Counsel, maybe we should take a

23   short break at this time?

24         MR. WALLACE:  (Through Interpreter) Do you want

25   to take a break?

30

1          THE WITNESS:   (Through Interpreter) As far as

2    I'm concerned, we can continue.

3          MR. WALLACE:   (Through Interpreter) Are you

4    sure?

5          THE WITNESS:   (Through Interpreter) Yes.

6    BY MR. NARITA:

7      Q.   (Through Interpreter) Mrs. Fausto, I said this

8    yesterday to your husband, but I don't think I mentioned

9    it today to you.  If at any time during this process you

10   need a break, just tell me or tell your lawyer, and we

11   stop.  Okay?

12     A.   (Through Interpreter) Correct.

13     Q.   So I just want to emphasize that you, you are

14   in control of when we stop or start.  Do you understand?

15     A.   Correct.  Thank you.

16     Q.   (In Spanish) De nada.

17          (In English) Now, on May 3rd, 2007, you were

18   involved in a car accident, correct?

19          MR. WALLACE:  Objection; foundation.

20          THE WITNESS:   (Through Interpreter) Correct.

21   BY MR. NARITA:

22     Q.   (Through Interpreter) Can you recall where the

23   accident occurred?

24     A.   (Through Interpreter) The name of the street, I

25   do not remember it.

31

```
 1    answered that, that it was no.

 2    BY MR. NARITA:

 3        Q.  (Through Interpreter) Did the accident happen

 4    at an intersection somewhere?

 5        A.  (Through Interpreter) It was about some 20

 6    steps from in the intersection.  Do you refer to the

 7    intersection as to where one goes down or what?

 8            (Mr. Humphreys has left the room;

 9         Mr. Wilcox is now present.)

10    BY MR. NARITA:

11        Q.  (Through Interpreter) Where, well, where two

12    streets meet.

13            MR. WALLACE:  Objection; foundation.

14            THE WITNESS:  (Through Interpreter) Yes, it was

15    about some 20 steps in front from the, in the

16    intersection.

17    BY MR. NARITA:

18        Q.  (Through Interpreter) Okay.  And what do you

19    remember about the accident?

20        A.  (Through Interpreter) What I remember from the

21    accident is that I was driving when all of the sudden I

22    saw that girl that came down from the sidewalk, and I

23    immediately applied the brake all the way down.  And the

24    girl, thank God, the only thing that happened to the

25    girl was that she touched, she touched my, my truck.
```

33

1    That's all. The only thing that she got was a small

2    bump in her forehead. I don't know, we don't know if

3    she did that when she hit my, or when she fell on the

4    concrete.

5         Q. How old was the girl?

6              MR. WALLACE: Objection; foundation.

7              THE WITNESS: I don't know, but I believe, I

8    think that she was between 8 and 10 years old.

9    BY MR. NARITA:

10        Q. (Through Interpreter) Do you know her name?

11        A. (Through Interpreter) I did not know it. I

12   read it in the report, in the papers from my attorney.

13        Q. You don't remember it?

14        A. I'm not sure if it was Alondra or, I'm not

15   sure. But I'm not sure if that is the correct.

16        Q. And so did you, did you hear the sound of her

17   hitting your car?

18             MR. WALLACE: Objection; foundation.

19             THE WITNESS: (Through Interpreter) Yes,

20   because it was right in the middle, in the, excuse me,

21   it was right in the corner of the truck.

22   BY MR. NARITA:

23        Q. (Through Interpreter) Okay. And did you get

24   out of the truck and see if she was okay?

25        A. (Through Interpreter) Yes, I got down. The

34

1   girl, I saw her then because she just got up by herself.

2   She started to walk by herself, and I said, I said don't

3   walk, little, my little girl, stay there, stop.  And she

4   said no, it's okay, it's okay, I am fine, I am fine.

5   She kept saying that in both languages, English and

6   Spanish, but I told her no, no, don't walk.

7          And then I got her where I caught up with her,

8   I held her and I sat her down on the side of the, on the

9   curb.  I came back and got her bicycle and put it on the

10  curb.  At that time, there was a man who was there who

11  was the only person who saw it, and I asked him if he

12  knew the phone number of her house, her mom's, to call

13  her mom.  And she did not want us to call as if the

14  little girl, the girl was more afraid of calling her

15  than what had happened to her.  The girl kept saying no,

16  do not call, that she was fine.  I said no, mija, let's

17  call your mother.

18         And the man had a cell on him, and then he

19  offered it, and we dialed the woman's number.  A person

20  answered, a woman said that her, the mom was at her job,

21  but that she would be called right away.  And then it

22  was left at that.

23         And then I told the man if he could please stay

24  there with the girl while her mom would come, and I was

25  going to my house to bring money to take the girl to the

35

1    clinic for her to be checked because all I had in my bag

2    was $20.

3                 So the man told me, yes.  And I got back on

4    again and I left.  But my house was far, and about three

5    blocks away from where that happened, a friend of, a

6    girlfriend of mine lives there, and I got there because

7    I was already trembling and crying.  I felt my head hot,

8    very, yes, I was feeling very bad.  That is why I got to

9    her house, my girlfriend's, because I felt that if I

10   .were to continue to drive, I could cause something worse

11   because it was the time when children were now getting

12   out of school.

13                And I got there, and I looked for my

14   girlfriend.  She wasn't there.  So with the woman who

15   lives across, I know her, she is one of my son-in-law's

16   aunt.  And I went, knocked on her door and she opened

17   it.  She was there, yes.  And when she opened it, I just

18   let it out and cried because I could no longer take it

19   anymore.

20                She got scared and said what is going on,

21   Mrs. Luz, Doña Luz, what's going on?  And I said, oh --

22   I could not even speak, and I said to her just now I ran

23   over a girl, and I want to call my house, I want to talk

24   to one of my children.  Can you lend me your phone, and

25   she said yes.

36

1          She herself dialed it because I could not do

2     it.  I was trembling, shaking, and she asked me who do I

3     call.  And I said my son, because at my house, there was

4     no one at that moment.  The eldest.  And he had to get

5     out because they were also finishing up or getting out

6     of school because he is a teacher, but when he heard the

7     way I was screaming, right away he left.  And he came

8     very quickly.  In fact, the woman said look how quickly

9     he got here because she knows he lives in Soledad.

10         And then I told him what had happened and that

11    I wanted to go where the girl was, and he told me where

12    was it.  And then I told him where it was, and he told

13    me, no, you wait here.  And the woman then was brewing a

14    tea for me, and she threw some ice in a pot with water,

15    and she wet some towels and put it on my head because I

16    was sweating and I was feeling very bad, very bad.

17         And then my son went.  Then he came back, and

18    he told me she's not there, mom.  There's no one there

19    anymore.  That's where it was?  And I said yes.  And

20    then I said they must have taken her to the clinic, my

21    son.  Let's go.  And we went.  And then my son got out

22    there, at the clinic.  And while my son got out to the

23    clinic to ask, when the police was arriving because from

24    the same clinic, they called the police, I think.

25         So then, by then, at that moment, the police

37

1    did not know who it had been because my son also went in

2    just about at the same time.  He told them it was my

3    mom.  There she is in the car.  But my son had already

4    called my daughter Elizabeth to call an attorney, then

5    the attorney advised --

6              MR. WALLACE:  (Through Interpreter) Wait a

7    minute.  Whoa, whoa, whoa.  Don't, don't disclose

8    anything your attorney advised.  Okay.  That will be

9    attorney-client privilege communication.  You can

10   continue on, just don't disclose anything you talked to

11   your attorney about.

12             THE WITNESS:  (Through Interpreter) Okay.

13             Well, then that was all because I went to the

14   police to say that it was me.

15   BY MR. NARITA:

16       Q.  (Through Interpreter) That must have been

17   terribly upsetting for you?

18             MR. WALLACE:  Foundation objection; vague.

19             THE WITNESS:  (Through Interpreter) Horrible.

20   BY MR. NARITA:

21       Q.  (Through Interpreter) Did the police say that

22   they wanted to arrest you that day?

23       A.  (Through Interpreter) I'm not going to answer

24   it.  All of it is written in my case, and that's all I

25   think.

38

1    THE WITNESS:  (Through Interpreter) Yes,

2  because it wasn't the truth.

3  BY MR. NARITA:

4    Q.  (Through Interpreter) Do you remember that you

5  did plead guilty to one of the charges that had been

6  filed against you?

7    MR. WALLACE:  (Through Interpreter) Objection;

8  foundation, misstates -- excuse me, assumes facts not in

9  evidence.

10    And to the extent that your understanding came

11  from a discussion with your lawyer, do not answer to

12  that extent.

13    THE WITNESS:  (Through Interpreter) Correct, I

14  am not going to answer.

15  BY MR. NARITA:

16    Q.  (Through Interpreter) Well, do you recall that

17  on December 11th, 2007, you pled guilty to the

18  misdemeanor violation of reckless driving in violation

19  of Vehicle Code Section 23103?

20    MR. WALLACE:  Objection; foundation.

21    THE WITNESS:  (Through Interpreter) Correct.

22  BY MR. NARITA:

23    Q.  (Through Interpreter) And you were put on

24  probation for that, correct?

25    A.  (Through Interpreter) Mm-hmm, yes.

43

1    to be put on probation and have to pay a fine?

2         MR. WALLACE:  Compound, foundation.

3         THE WITNESS:  (Through Interpreter) Well, the

4    fact it happened with the girl upset me, and the rest

5    was irrelevant.  For me, it was very big.  My happiness

6    that nothing greater, that it wasn't anything bigger,

7    the fact that I did not injure the girl, that I didn't

8    injure the girl to the point of, as great.  For me,

9    that's what it was.  For me it was very, very big.

10        The rest as they gave me 500 or they would have

11   given, put, given me a bigger fine, the money, I don't

12   care.  What I care is that the girl is okay.

13   BY MR. NARITA:

14        Q.  (Through Interpreter) Did you get physically

15   hurt yourself during the accident?

16        MR. WALLACE:  Objection; foundation, vague.

17        THE WITNESS:  (Through Interpreter) No, but I

18   was taken to the clinic right at that moment as well

19   because I was not able to control myself, and they gave

20   me a shot.  The female doctor -- my daughter Elizabeth

21   took me there because everyone else was there with me.

22   And my daughter Elizabeth asked the female doctor how

23   was the daughter doing, how was the, excuse me, how was

24   the girl doing, that I wanted to know.

25        And she said that that was confidential, but

45

1    didn't.  Yes.

2    BY MR. NARITA:

3        Q.  (Through Interpreter) Okay.  Who is Louise

4    Hoover?

5        A.  (Through Interpreter) A woman.  In fact, I

6    think she passed way.  I don't know.  Yes, she made us a

7    loan.

8        Q.  She made you a loan when?

9        A.  I don't remember, but we're now in 2008.  I

10   don't remember, but it was 2003 or 2004.  I don't

11   remember.

12       Q.  Did she loan you $15,000?

13       A.  Correct.

14       Q.  Do you know if she took a lien on your house?

15       A.  Correct.

16       Q.  Okay.  And why did she loan you $15,000?

17       A.  Because one of my children wanted to get a

18   house, and we wanted to help to get the house, his or

19   her house.

20       Q.  Which child?

21       A.  My son, Jose Manuel.

22       Q.  Okay.  And how did you know Louise Hoover?

23       A.  By a girlfriend.

24       Q.  Have you paid Louise Hoover back?

25       A.  Yes, soon.

56

1      MR. NARITA:  Can the interpreter say that name

2  again?

3           THE INTERPRETER:  Rabobank in Gonzales.

4           MR. NARITA:  Okay.

5      Q.  (Through Interpreter) How long have you had a

6  checking account there?

7      A.  (Through Interpreter) I've had it for a while.

8  First it was Community Bank, and it changed the name to

9  Rabobank.  So I already had it when it was Community

10  Bank.

11     Q.  Okay.  Do you think you've had that bank

12  account for at least ten years?

13          MR. WALLACE:  Foundation, form, assumes facts

14  not in evidence, speculation.

15          THE WITNESS:  (Through Interpreter) No.

16  BY MR. NARITA:

17     Q.  (Through Interpreter) Approximately how many

18  years do you think you've had it?

19     A.  (Through Interpreter) There at the, that is

20  before I had it at Washington Mutual, and I've been

21  there I think for about two years at Rabobank.

22     Q.  Do you remember the last time you paid your

23  mortgage?

24     A.  More or less, about five months ago.

25     Q.  Okay.  So we're in September of 2008 now.  Did

69

1   you, do you think you paid your mortgage in May of 2008?

2          MR. WALLACE:   Objection; form, vague,

3   foundation.

4          THE WITNESS:   (Through Interpreter) No, I think

5   it was like from April, yes.

6   BY MR. NARITA:

7      Q.   (Through Interpreter) Do you believe that you

8   made a payment in April?

9      A.   (Through Interpreter) No, I believe, I think it

10  was from April on forward that I stopped making them.   I

11  am not sure if the last month was April or, that I paid

12  for it or, yeah, I don't remember if that was the last

13  month that I didn't pay it or if it was from that month

14  on forward that I didn't pay for it.

15     Q.   Okay.   Your checking account records would show

16  when your last payment was, though, correct?

17         MR. WALLACE:   Objection; foundation, assumes

18  facts not in evidence.

19         THE WITNESS:   (Through Interpreter) Correct.

20  BY MR. NARITA:

21     Q.   (Through Interpreter) What is the address for

22  the Rabobank checking account that you use?

23     A.   (Through Interpreter) It's on Alta Street and

24  4th.

25     Q.   In Gonzales?

70

1    A.   Gonzales.

2    Q.   Can you tell me why you stopped paying your

3    mortgage earlier this year?

4    A.   Because of a stupid thing of mine.   Because I'm

5    thinking about for things that I think that, now I see

6    things that are not right.   Because one of my

7    girlfriends, right now with the problem that there is

8    with the houses that went down, told me that this man,

9    this person from a real estate was fixing her payments

10   for her house based on the value that her house is at

11   now.

12       And that she was told that her payment for the

13   house was going to go down a lot, almost an average of

14   $1,000 was going to go down.   So I asked her who is the

15   agent.   She gave me the name.   I called him.   He told

16   me, yes.   I asked him questions the same as that, if it

17   was possible, if it was right.   Yes.   He answer me yes.

18       So I told him that we were interested, and I

19   mentioned that to my husband, and we agreed to call the

20   man and came home, the man, the agent.   And then he

21   explained to us then that it was possible, but that we

22   needed to stop giving, giving the house payments,

23   otherwise the bank would not want to negotiate.

24       We did it.   And now I am very, I regret it, I

25   regret it dearly.   It was not the way that he had told

71

1    me.  And my son right now, the eldest is upset with me

2    because I burned his credit.  It hurts me a lot to have

3    done that, too.  Because he complained to me, and with

4    just reason, as to why did I not consult him first.

5           And because the statements from the bank would

6    come, from Chase Bank, even though under my son's name,

7    but to my address, that's the reason he did not realize

8    it.  Just barely two months ago that I saw that this

9    guy, this man was not helping me because I made a

10   question to someone else, and I was told that is not

11   correct what you're doing, that is not true.

12          So I told my son.  And then my son, he is the

13   one right now who is in talks with the bank trying to

14   take care of it with the bank.  That's where we are at

15   right now.

16      Q.  Okay.  Are you worried that you might lose your

17   home?

18          MR. WALLACE:  Objection; foundation.

19          THE WITNESS:  (Through Interpreter) Yes, of

20   course.

21   BY MR. NARITA:

22      Q.  (Through Interpreter) What is the name of the

23   gentleman that gave you this advice?

24      A.  (Through Interpreter) Victor Muñoz.

25      Q.  And does Victor Muñoz work for a company, do

72

1    you know?

2         A.  He is the owner.  He's the president because

3    when I went to his office to bring in the papers that he

4    was demanding that he would ask for me, it was his plate

5    showing president Victor Muñoz.

6         Q.  Do you remember where his office is located?

7         A.  Yes.

8         Q.  Where is his office located?

9         A.  It's number 20 Mapo Street in Salinas.

10        Q.  M-a-p-o?

11        A.  (In English) Mm-hmm.

12             THE INTERPRETER:  Maple, Maple.  It's something

13   like that.  Maple.

14   BY MR. NARITA:

15        Q.  (Through Interpreter) Maple?

16        A.  (Through Interpreter) Well, that's how I have

17   seen it on the street, the sign.  Maple.

18             (Translation.)

19             THE INTERPRETER:  Maple.  It's an L.  Maple.

20   BY MR. NARITA:

21        Q.  (Through Interpreter) So 20 Maple Street in

22   Salinas, California?

23        A.  (Through Interpreter) Yes.

24        Q.  Okay.  And do you remember whether there was a

25   name of the company associated with the business?

73

1    MR. WALLACE:  Objection; foundation, form.

2    THE WITNESS:  (Through Interpreter) Creative

3    Mortgage.  Creative.  Creative Mortgage.

4    BY MR. NARITA:

5    Q.  (Through Interpreter) Okay.  I'd say there's

6    some irony in that.

7    MR. WALLACE:  Objection; foundation.

8    THE WITNESS:  (Through Interpreter) Yeah.

9    BY MR. NARITA:

10    Q.  (Through Interpreter) Did Victor Muñoz charge

11    you any money for his services?

12    A.  (Through Interpreter) They wanted $3,600.

13    Q.  Did you pay them?

14    A.  I was just about to give them to him because,

15    according to him, he was already talking to the bank and

16    he wanted the money.  But I told him in this I already

17    talked to him, to his wife about it because by that time

18    he sends me with his wife.  His wife's name is

19    Rosalinda.  And I asked if I was going to have a

20    contract and give me a receipt, and said no, that I

21    needed to trust them.  And then I said not that way.

22    Q.  Have you ever paid any money to Victor Muñoz?

23    A.  No.  And also he advised me not to make payment

24    for the, for taxes for the house because the bank would

25    pay them.  And I asked him, are you sure about that?

74

1  Yes.  And then okay, that, that, too, I did not mail

2  him.

3  So then I get the payment for the taxes, and

4  the payment for the taxes was for 1,900 something.  And

5  so when I got the payment again was for 2,100 something.

6  In other words, it went up another $200 plus for the

7  penalty.  And I went over and told him look, now, I got

8  this penalty for the -- and then he said okay, pay them,

9  pay them.

10  And I told him that's not right because are you

11  going to pay me for those 200-and-plus dollars that I'm

12  going to be paying extra?  And then he said to me, what

13  are you complaining about?  In any event, your payment

14  is going to go down a lot.  Then you'll recover.  Don't

15  be worried about this.  You're, don't be worried about

16  it, you are not going to lose your house.  I assure you.

17  Q.  When was the last time that you spoke to Victor

18  Muñoz?

19  A.  Well, that was when I told you that I spoke

20  with my son, when my son, when I told him about the

21  problem that I told him about it.  And I barely, I had

22  not just, I had not gone in for all the paperwork that I

23  had given to him because I was mad and I barely went to

24  get them about two weeks ago.

25  And that's when he told me once again, very

75

1    kindly, how are you doing, Mrs. Fausto? And I told him,

2    upset. Bothered. Well, I think you know how it is that

3    I feel, how I'm doing. And I took my papers. That was

4    all.

5        Q. So he had some paperwork for you, and you took

6    it from him?

7        A. Yes.

8        Q. Do you have that paperwork at your house?

9        A. Yes.

10       Q. Have you -- since -- let me start, I'm going to

11   start that question over.

12           Is it your intention to pay your mortgage in

13   October 2008?

14           MR. WALLACE: Objection; foundation, form.

15           THE WITNESS: (Through Interpreter) Yes.

16   BY MR. NARITA:

17       Q. (Through Interpreter) Have you paid any amount

18   towards your April, May, June, July or August 2008

19   mortgage payments?

20           MR. WALLACE: Compound, form, foundation.

21           THE WITNESS: (Through Interpreter) No, but

22   that's what I'm telling you, my son is talking to the

23   bank to see how they're going to do that.

24   BY MR. NARITA:

25       Q. (Through Interpreter) Have you spent that money

TOOKER & ANTZ COURT REPORTING & VIDEO SERVICES
Tel: (415) 392-0650

1    or do you still have it?

2            MR. WALLACE:  Objection; assumes facts not in

3    evidence, foundation, form.

4            THE WITNESS:  (Through Interpreter) Well, I am

5    not able to answer that.

6    BY MR. NARITA:

7        Q.  (Through Interpreter) Well, before April of

8    2008, your husband would give you money and you would

9    use some of that money to pay the mortgage, right?

10           MR. WALLACE:  Foundation, form.

11           THE WITNESS:  (Through Interpreter) Correct.

12   BY MR. NARITA:

13       Q.  (Through Interpreter) Okay.  Since April of

14   2008, have you taken any money that you would have paid

15   for the mortgage and put it somewhere, saved it or spent

16   it?

17           MR. WALLACE:  Compound.

18           THE WITNESS:  (Through Interpreter) I cannot

19   answer it.

20   BY MR. NARITA:

21       Q.  (Through Interpreter) Why can't you answer it?

22       A.  (Through Interpreter) Just no.  It's only no.

23       Q.  Did you have enough money in April to make your

24   April 2008 mortgage payment?

25       A.  Correct.

77

1      Q.  And you had enough money in June -- excuse me.

2  You had enough money in May of 2008 to make your May

3  mortgage payment, correct?

4          MR. WALLACE:  Objection; foundation, form.

5          THE WITNESS:  (Through Interpreter) I already

6  answer why.

7          MR. WALLACE:  Let's take a break.

8  BY MR. NARITA:

9      Q.  (Through Interpreter) But did you have enough

10  money to pay it?  I know you didn't pay it, but did you

11  have enough money to pay it?

12          MR. WALLACE:  Same objections; foundation.

13          THE WITNESS:  (Through Interpreter) I already

14  answered that same question.

15  BY MR. NARITA:

16      Q.  (Through Interpreter) I don't think you did,

17  but your counsel wants to take a break, so we'll take a

18  break.

19          THE VIDEOGRAPHER:  This marks the end of tape

20  2, volume I in the deposition of Luz Fausto.  Going off

21  the record.  The time is 2:06.

22          (Recess.)

23          THE VIDEOGRAPHER:  This marks the start of tape

24  3, volume I in the deposition of Luz Fausto.  Going on

25  the record.  The time is 2:21.

78

1    BY MR. NARITA:

2         Q.  (Through Interpreter) Ms. Fausto, you said that

3    you had a checking account with Washington Mutual Bank,

4    correct?

5         A.  (Through Interpreter) Correct.

6         Q.  Do you remember what the address was that you

7    banked at with Washington Mutual?

8         A.  Near, it was by Alisal Street in Salinas.

9         Q.  Can you spell that?

10        A.  (Witness writing it down.)

11            THE INTERPRETER:  Alisal Street, A-l-i-s-a-l.

12   BY MR. NARITA:

13        Q.  (Through Interpreter) I'm sorry, could you,

14   could you say how you spelled that name.  A-l-i-s-a-l?

15        A.  (Through Interpreter) Correct.

16        Q.  And what, in what city?

17        A.  Salinas.

18        Q.  Salinas?

19        A.  California.

20        Q.  And did you say you still have that checking

21   account?

22        A.  No.

23        Q.  Have you received any notices that your house

24   may be going into foreclosure?

25            MR. WALLACE:  Foundation, form.

1     THE WITNESS:  (Through Interpreter) No

2  foreclosure letter has, we haven't received any, but

3  we've gotten some letters like....

4  BY MR. NARITA:

5     Q.  (Through Interpreter) Have you received a

6  letter from the company that gave you a mortgage telling

7  you that you're delinquent on your mortgage?

8     MR. WALLACE:  Objection, form, foundation.

9     THE WITNESS:  (Through Interpreter) Correct.

10 BY MR. NARITA:

11    Q.  (Through Interpreter) Have any of those letters

12 indicated that the bank might foreclose on your

13 mortgage?

14    MR. WALLACE:  Foundation, form.

15    THE WITNESS:  (Through Interpreter) Yes.  But

16 again I repeat it, the foreclosure letter has not come.

17 And I hope that it will not come.  God willing.

18 BY MR. NARITA:

19    Q.  (Through Interpreter) Are you concerned that it

20 might come?

21    A.  (Through Interpreter) Yes.

22    Q.  Does that make you nervous?

23    A.  Yes.

24    Q.  Have you tried to sell your house?

25    A.  No.

80

1    Q.  Have you thought about putting your house on

2  the market?

3         MR. WALLACE:  Objection; form, foundation.

4         THE WITNESS:  (Through Interpreter) What was it

5  you said?

6  BY MR. NARITA:

7    Q.  (Through Interpreter) Have you considered

8  putting your house up for sale?

9         MR. WALLACE:  Same objection.

10        THE WITNESS:  (Through Interpreter) No.

11  BY MR. NARITA:

12    Q.  (Through Interpreter) Okay.  Were you and your

13  husband sued by a company named Credit Consulting

14  Services in Monterey County Superior Court?

15    A.  (Through Interpreter) Did you finish?  Yes.

16    Q.  Do you recall why you were sued?

17    A.  Yes.

18    Q.  Why?

19    A.  They had us on collection because the Memorial

20  Hospital, that we had not paid some 500 something or 400

21  something.  I have that check somewhere, and we had

22  already brought it in.  I personally had brought it in

23  to Memorial, and then I got that letter from the Credit

24  Consulting that we were in -- what do you call that?  We

25  were in, well, when you're, when they have you at --

81

1    God, what is the name?  What is the word?  I can't

2    remember.  In other words, that we owe that.

3        Q.  Okay.

4        A.  I went to the hospital, to Memorial to ask them

5    why were, did we have that with Credit Consulting when

6    we had already paid for that.  The person that I spoke

7    with in the hospital told me that they had already

8    called Credit Consulting to have it removed because I

9    had already brought in the money to them.  And then it

10   was left at that.

11       Q.  But do you remember that Credit Counseling

12   Services actually got a judgment against you in the

13   amount of $3,485.10 as a result of the lawsuit it filed

14   against you?

15            MR. WALLACE:  Objection; foundation, form.

16            THE WITNESS:  (Through Interpreter) Yes, but

17   the insurance, my insurance argued with Credit

18   Consulting that they had sent the payment, and the same

19   insurance sent to me, sent to me telling me what it was

20   that I owed as a patient, the balance.  They sent me the

21   amount for the balance, and that is what I brought in to

22   the hospital.

23            In other words, my insurance was the one who

24   was behind making that payment, took too long to make

25   that payment.

82

1      MR. NARITA:  Okay.  Can we mark Exhibit 2.

2      (WHEREUPON, DEFENDANTS' EXHIBIT 2

3      WAS MARKED FOR IDENTIFICATION.)

4  BY MR. NARITA:

5      Q.  (Through Interpreter) Have you ever seen any of

6  the documents contained in Exhibit 2 before,

7  Mrs. Fausto?

8      A.  (Through Interpreter) Yes.

9      Q.  Are these documents relating to the lawsuit

10  that was filed against you by Credit Consulting

11  Services, Inc.?

12      MR. WALLACE:  Objection; foundation.

13      THE WITNESS:  (Through Interpreter) Yes.

14  BY MR. NARITA:

15      Q.  (Through Interpreter) Do you know if Credit

16  Consulting Services filed an Abstract of Judgment that

17  it obtained against you?

18      MR. WALLACE:  Objection; foundation, form.

19      THE WITNESS:  (Through Interpreter) Yes.

20  BY MR. NARITA:

21      Q.  (Through Interpreter) Was any portion of that

22  judgment satisfied when you refinanced your home?

23      MR. WALLACE:  Foundation, form.

24      THE WITNESS:  (Through Interpreter) No.

25  BY MR. NARITA:

83

1    Q.   (Through Interpreter) Do you know how that

2    judgment was satisfied?

3            MR. WALLACE:   Foundation, form.

4            THE WITNESS:   (Through Interpreter)   As I

5    repeat again, I, the insurance, when I called the

6    insurance, that I was very bothered by it, and I told

7    them what I had gotten in the mail and was due because

8    they had been late in making the payment for the

9    account.

10           And their name was, I don't remember the name

11   of the person with whom I spoke with, and immediately

12   sent the payment to Memorial because I was very bothered

13   when I, when I claimed, I made the claim to them.  And I

14   had already paid my portion that I had to pay as a

15   patient.  I never went to court for this debt.

16   BY MR. NARITA:

17       Q.   (Through Interpreter) Did Rosa Duran sue you?

18       A.   (Through Interpreter) Correct.

19       Q.   Why did Rosa Duran sue you?

20           MR. WALLACE:   Objection; form, foundation,

21   speculation.

22           THE WITNESS:   (Through Interpreter) Can you

23   repeat the question.

24   BY MR. NARITA:

25       Q.   (Through Interpreter) Yeah.  Why did Rosa Duran

84

1    sue you?

2          MR. WALLACE:  Same objections.

3          THE INTERPRETER:  Interpreter's going to

4    request for that to be repeated.

5          (Translation.)

6          THE WITNESS:  (Through Interpreter) Because she

7    is a problematic person who thought she was going to

8    collect some money.  She wanted to get some money.

9    She's an abusive person and that was not right.

10   BY MR. NARITA:

11      Q.  (Through Interpreter) Didn't she sue you

12   because she loaned you $22,000?

13          MR. WALLACE:  Objection; foundation, form,

14   assumes facts not in evidence.

15          THE WITNESS:  (Through Interpreter) That's what

16   was not correct.  I did not owe her that amount.  So by

17   now I have learned that when you talk a person

18   one-to-one, you don't take care of anything.  And then I

19   also went to see an attorney.  And with the same

20   attorney that I went to see, in less than one hour, took

21   care of the matter with the attorney, with her attorney,

22   from his office because I had proof that I did not owe

23   her that money.  It was a lot less.

24          And we had come to an agreement to pay her that

25   amount by month, $300.  Finally I finished paying her,

85

1  but not that money, not that amount.  It was a thousand.

2  And then my attorney spoke with her attorney on the

3  phone, from the phone, to his phone because I brought in

4  my proof that I had receipts signed by her.  She thought

5  that I didn't have anything.

6  BY MR. NARITA:

7      Q.  (Through Interpreter) You did borrow $22,000

8  from Rosa Duran, though, correct?

9          MR. WALLACE:  Foundation.

10          THE WITNESS:  (Through Interpreter) No, loan,

11  no.

12  BY MR. NARITA:

13      Q.  (Through Interpreter) Okay.  Do you recall

14  signing a promissory note with Rosa Duran where you

15  borrowed $22,000 and you agreed in writing to pay it

16  back?

17          MR. WALLACE:  Compound, foundation, form.

18          Go ahead.

19          THE WITNESS:  (Through Interpreter) Yes, I did

20  sign a form.  I do remember.

21          MR. WALLACE:  (Through Interpreter) You've

22  answered the question.

23          THE WITNESS:  Okay.

24          MR. NARITA:  Three.

25          (WHEREUPON, DEFENDANTS' EXHIBIT 3

86

1          WAS MARKED FOR IDENTIFICATION.)

2    BY MR. NARITA:

3          Q.   (Through Interpreter) Is Exhibit 3 copies of

4    documents filed in the lawsuit between Rosa Duran and

5    you relating to the loan that she made to you?

6          MR. WALLACE:   Objection; foundation, form,

7    compound, speculation.

8          THE WITNESS:   (Through Interpreter) I already

9    answered the question, and it was not a loan.

10   BY MR. NARITA:

11         Q.   (Through Interpreter) Take a look at the last

12   two pages of Exhibit 3, please.

13         A.   (Through Interpreter) Yeah.

14         Q.   If you look at the very last page at the

15   bottom, is that your signature?

16         A.   Correct.

17         Q.   Did you sign this promissory note in July of

18   2001?

19         MR. WALLACE:   Objection; foundation, form.

20         THE WITNESS:   (Through Interpreter) Because I

21   was looking at it and reading it, I didn't pay too much

22   attention to you.

23   BY MR. NARITA:

24         Q.   (Through Interpreter) Okay.  Did you sign this

25   on the 17th of July, 2001?

87

1     A.   (Through Interpreter) Correct.  I don't

2   remember the date, but I did sign this.

3     Q.   Okay.  Did Rosa Duran give you any money?

4          MR. WALLACE:  Objection; foundation, form,

5   vague.

6          THE INTERPRETER:  Confusion with the

7   translation, I believe.

8          (Translation.)

9          THE WITNESS:   (Through Interpreter) No.

10  BY MR. NARITA:

11    Q.   (Through Interpreter) Okay.  Can you tell me

12  why you agreed to pay Rosa Duran $22,000 pursuant to

13  this promissory note?

14         MR. WALLACE:  Objection; assumes facts not in

15  evidence, foundation, form.

16         THE WITNESS:  (Through Interpreter) Why, why

17  did I sign it?  Because she tricked me as much as this

18  woman, public notary.  I'm sorry, just notary.  We had

19  gone before, my daughter and I already, to sign this

20  document.  In other words, it wasn't this one, but it

21  was a document that we were going to sign based on a

22  transfer that was made of a store.  And according to the

23  notary, the female notary, the document was not ready.

24  Then she said come back later.

25         When once, according to her, she had it ready,

1    she called me at home, and that Mrs. Rosa was there to

2    sign it.  So I went.  I trusted and I signed it.  But

3    then my daughter Elizabeth was working, and the notary

4    called Elizabeth again to come back there to sign it as

5    well because we were both going to sign it.

6         So when my daughter Elizabeth came in to sign

7    it, that she read it, my daughter calls me on the phone

8    upset as to why had I signed that paper if it wasn't

9    right.  And then I told her why.  And then she explained

10    to me why what it was that it said, all of it.

11         And that's the reason why she did not sign it.

12    That is the reason why I said that that was not the

13    amount because I had already told you that I brought in

14    the receipts to the attorney showing what I had given

15    her.

16    BY MR. NARITA:

17         Q.  (Through Interpreter) Did you say this had

18    something to do with the transfer of a store?

19         MR. WALLACE:  Objection; misstates previous

20    testimony.

21         THE WITNESS:  (Through Interpreter) Yes.

22    BY MR. NARITA:

23         Q.  (Through Interpreter) Can you explain for me

24    what you mean by the transfer of a store?

25         A.  (Through Interpreter) She had the store.  It

89

1   was hers.  She placed an ad saying she wanted to

2   transfer it.  Me, I've always liked businesses.  I asked

3   her what were the conditions, how much would she sell it

4   for.  So we came to an agreement and I got it.

5        But as I said, this is the reason why I say

6   that she went over and she lied because I had already

7   given her amounts of money.  The first one that I gave

8   to her was one lump payment of 8,000, and I had more

9   receipts of different amounts that I had already given

10   to her.

11       Q.  So you did operate the store for a while?

12       A.  Yes.

13       Q.  What was the name of the store?

14       A.  When she transferred it, we named it Fausto's

15   General Store.

16       Q.  Is that store still in business?

17       A.  No.

18       Q.  Did you sell it?

19       A.  I took it out because it wasn't working.  I

20   believe that is the reason why she sold it, but

21   foolishly I, I got it, thinking that I was going to make

22   it work.

23       Q.  What was the total amount that you believe you

24   agreed to pay for the store?

25       MR. WALLACE:  Objection; foundation.

90

1        THE WITNESS:  (Through Interpreter) The total

2   amount for which we got it?

3   BY MR. NARITA:

4        Q.  (Through Interpreter) Yes.

5        A.  (Through Interpreter) I remember it was about

6   32,000.

7        Q.  I think I'm confused, Ms. Fausto, so I'm going,

8   I'm going to ask you a question to see if I can clarify

9   my confusion.  Okay?

10       A.  Correct.

11       Q.  Okay.  Do you, do you, do you agree that you

12  were obligated to pay $22,000 pursuant to this

13  promissory note or do you think that this promissory

14  note should have been for a different amount?

15       MR. WALLACE:  Compound, form, foundation,

16  assumes facts not in evidence.

17       THE WITNESS:  (Through Interpreter) Yes,

18  different.

19  BY MR. NARITA:

20       Q.  (Through Interpreter) Okay.  Do you recall that

21  Ms. Duran actually got a judgment against you for

22  $22,271 as part of this lawsuit?

23       MR. WALLACE:  Foundation, assumes facts not in

24  evidence, form.

25       THE WITNESS:  (Through Interpreter) No, there

91

1  was no judgment against me because she did not show up

2  in court. Her attorney did not want to go to answer the

3  lawsuit. I already explained that to you, that my

4  attorney called from his office to the other attorney's

5  office here in San Francisco. He saw, my attorney saw

6  that it was incorrect because I brought in receipts, and

7  that is the way that my attorney told her attorney.

8         MR. NARITA: Okay. Counselor, could you get

9  her to FA1951.

10        MR. WALLACE: (Counsel complies.)

11  BY MR. NARITA:

12     Q. (Through Interpreter) 1951 is a document dated

13  November 6, 2003, and it's a request for entry of

14  default judgment. Let me ask you, Ms. Fausto, does

15  looking at this document refresh your recollection that,

16  in fact, Rosa Duran did obtain a judgment against you

17  for $22,271 in this lawsuit?

18        MR. WALLACE: Objection; form, foundation.

19        THE WITNESS: (Through Interpreter) No, no, I

20  do not accept that because there wasn't -- I already

21  explained this -- there was no court. This is the same

22  question you're asking me. I never showed up in court

23  because her attorney never answered to the court, and I

24  already explained to you why.

25  BY MR. NARITA:

92

Case5:07-cv-05658-JW Document253 Filed01/12/09 Page44 of 102

1    Q.   (Through Interpreter) Do you have any

2    recollection of making payments to Ms. Rosa pursuant to

3    the judgment that was obtained against you?

4         MR. WALLACE:  Objection; foundation, form.

5         THE WITNESS:  (Through Interpreter) She was

6    paid her money, but what, but what really was owed which

7    was $8,000 only.

8    BY MR. NARITA:

9    Q.   (Through Interpreter) You recall that you filed

10   a lawsuit against the developer who built your home,

11   correct?

12        MR. WALLACE:  Objection, form, foundation.

13        THE WITNESS:  (Through Interpreter) Yes.  But

14   the lawsuit, I didn't file it.

15   BY MR. NARITA:

16   Q.   (Through Interpreter) It was filed on your

17   behalf, though, correct?

18   A.   (Through Interpreter) No.  It was a family

19   Alcala KB Homes.

20   Q.   But you and your husband were one of the named

21   plaintiffs that sued KB Homes, right?

22        MR. WALLACE:  Objection; foundation, form,

23   vague.

24        Do you understand, do you understand his

25   question?

93

1    THE WITNESS:  (Through Interpreter) No, please.

2    MR. NARITA:  Are we on number 4?

3    (WHEREUPON, DEFENDANTS' EXHIBIT 4

4    WAS MARKED FOR IDENTIFICATION.)

5    BY MR. NARITA:

6    Q.  (Through Interpreter) Ms. Fausto, the Court

7    Reporter is going to hand you Exhibit 4, which is a

8    complaint filed in the Superior Court for the County of

9    Monterey, case number M81500, Alfonso and Dolores

10   Alcala, et al., versus KB Homes, Inc.  The document is

11   Bates stamped FA1990 through FA2018.

12   MR. WALLACE:  Objection; form, foundation,

13   vague.

14   BY MR. NARITA:

15   Q.  (Through Interpreter) Have you ever seen a copy

16   of this complaint before, which is the first 11 pages of

17   Exhibit 4?

18   A.  (Through Interpreter) No.

19   Q.  Okay.  Do you, do you see in the caption of the

20   complaint where there's a listing of all the parties,

21   that you and your husband are listed as named plaintiffs

22   Manuel and Luz Fausto?

23   A.  Yes.

24   Q.  And then if you turn to the second page, about

25   halfway down, there's an item number 10 and it says

94

TOOKER & ANTZ COURT REPORTING & VIDEO SERVICES
Tel: (415) 392-0650

1    Fausto, Manuel and Luz, 532 Charolais Drive?

2         A.   Yes, correct.

3         Q.   And that's your house that you live in, right?

4              MR. WALLACE:   Objection to form, foundation.

5              THE WITNESS:   (Through Interpreter) Yes.

6    BY MR. NARITA:

7         Q.   (Through Interpreter) Do you recall now that

8    you and your husband filed a lawsuit against KB Homes,

9    the developer of your house at 532 Charolais Drive?

10             MR. WALLACE:   Foundation, form.

11             THE WITNESS:   (Through Interpreter) Once again,

12   yes, my name is here, but what was it that you asked me

13   again?  Because I get distracted sometimes when I'm

14   looking at this.  I'm sorry.

15   BY MR. NARITA:

16        Q.   (Through Interpreter) It's no problem.  I'll

17   ask the question again.

18             Now, that you've looked at the caption and seen

19   your name, and looked at the Page 2 and seen your name

20   and your address, do you now remember that, in fact, you

21   and your husband filed a lawsuit against KB Homes, Inc.,

22   with respect to your property?

23             MR. WALLACE:   Foundation and form.

24             Go ahead.

25             THE WITNESS:   (Through Interpreter) Yes, but,

95

1    yes.  But I did not understand it to be a lawsuit that

2    we were filing because the attorney, when he explained

3    to us what we were doing, he invited us to a meeting --

4              MR. WALLACE:  (Through Interpreter) Again,

5    remember that you have attorney-client privilege, so

6    don't disclose anything you or your attorneys may have

7    said to each other.

8              THE WITNESS:  (Through Interpreter)  Oh.  Okay.

9              I did not understand it to be a lawsuit from

10   us.

11   BY MR. NARITA:

12        Q.  (Through Interpreter) Okay.  So is today the

13   first day that anyone has ever said to you that you

14   actually filed a lawsuit with your husband against KB

15   Homes, Inc.?

16             MR. WALLACE:  (Through Interpreter) Let me

17   instruct you, when you answer that question, do not --

18   you can answer it to the extent that your answer does

19   not require you to reveal your knowledge based upon

20   attorney-client privilege communication.  If you can

21   answer it otherwise, you can.

22             THE INTERPRETER:  May Interpreter ask the Court

23   Reporter to repeat the question.

24             THE REPORTER:  Sure.

25             THE INTERPRETER:  And the objection.  Thank

1   you.

2          THE REPORTER:  "So is today the first day that

3          anyone has ever said to you that you actually

4          filed a lawsuit with your husband against KB

5          Homes, Inc.?

6          "MR. WALLACE:  Let me instruct you, when you

7          answer that question, do not -- you can answer

8          it to the extent that your answer does not

9          require you to reveal your knowledge based upon

10         attorney-client privilege communication.  If

11         you can answer it otherwise, you can."

12         (Translation.)

13         THE WITNESS:   (Through Interpreter) No.

14   BY MR. NARITA:

15     Q.   (Through Interpreter) Besides your attorney

16   that represents you in this lawsuit against KB Homes,

17   who else has told you that you filed a lawsuit against

18   KB Homes?

19     A.   (Through Interpreter) Most of the people who

20   live around my neighborhood.

21     Q.   So you've talked with your neighbors about this

22   lawsuit?

23     A.   I have not talked to them anymore than I did at

24   that meeting.

25     Q.   Is today the first day that you realized that

97

1  having any problems at your house that you believe are
2  caused by the way that KB Homes built it?
3         MR. WALLACE:  Objection; foundation, form.
4         Go ahead.
5         THE WITNESS:  (Through Interpreter) It did have
6  some defects, but we already did those ourselves.
7  BY MR. NARITA:
8      Q.  (Through Interpreter) You fixed the defects by
9  yourself?
10     A.  (Through Interpreter) Correct.
11     Q.  When did you fix them?
12         THE INTERPRETER:  I'm sorry?
13  BY MR. NARITA:
14     Q.  (Through Interpreter) When did you fix them?
15     A.  (Through Interpreter) All this past year we
16  were fixing it.
17     Q.  So during the --
18     A.  But the houses of the other people were worse
19  because they brought in the pictures.
20     Q.  What problems did you have with your house that
21  you think were caused by the way that KB built it?
22         MR. WALLACE:  Foundation, form.
23         THE WITNESS:  (Through Interpreter) Well, many,
24  because the same inspector that was sent in by the
25  attorney saw that there were many, many.

99

ORIGINAL

HERENDEEN & BRYAN
MacDonald Bryan/State Lic. No. 044183
119 Cayuga Street
P.O. BOX 1067
Salinas, CA 93902
Telephone: (831) 758-8282

Attorneys for Plaintiff

FILED

SEP 2 7 2004

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY

LIMITED JURISDICTION

CREDIT CONSULTING SERVICES, INC. )
a California Corporation )
                    Plaintiff, )
                           )
vs. )
                           )
MANUEL FAUSTO, et al. )
           Defendant(s). )
                           )
                           )

No. M71694

DECLARATION REQUESTING
REDUCTION OF FILING FEE
[BUS.& PROF. 6322.1]

Pursuant to Business and Professions Code section 6322.1,

Plaintiff, CREDIT CONSULTING SERVICES, INC. a California Corporation

requests a reduction in fees to the January 1, 1990 level.

This case qualifies for the lower fee because:

    1. The claim for money damages will not exceed $5,000.00; and

    2. The claim is filed by an assignee of the claim.

    I declare under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

Dated: SEPTEMBER 16, 2004

                           HERENDEEN & BRYAN

                           By: _____
                              MacDonald Bryan
                              Attorney for Plaintiff



EXHIBIT
2
LFausto 9/16 08

FA0001970

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):
HELENDEEN & BRYAN/MacDonald Bryan/State lic.
119 Cayuga Street/P.O. BOX 1067
Salinas, CA 93902

TELEPHONE NO.: (831) 758-8282 FAX NO.: (831) 758-0857
ATTORNEY FOR (Name): Plaintiff        (CCS/1879172/RS )

Insert name of court and name of judicial district and branch court, if any:
SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
LIMITED JURISDICTION

PLAINTIFF: CREDIT CONSULTING SERVICES, INC.,
a California Corporation
DEFENDANT: MANUEL FAUSTO, et al.

**FILED**

MAR 0 9 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY
CHRISTIE WATSON

REQUEST FOR     [X] ENTRY OF DEFAULT  [X] CLERK'S JUDGMENT
(Application)   [ ] COURT JUDGMENT

CASE NUMBER:
M71694

1. TO THE CLERK: On the complaint or cross-complaint filed
   a. on (date): 09-27-04
   b. by (name): CREDIT CONSULTING SERVICES, INC., a California Corporation
   c. [X] Enter default of defendant (names): MANUEL FAUSTO
       LUZ FAUSTO aka LUZ M FAUSTO
   d. [ ] I request a court judgment under Code of Civil Procedure sections 585(b), (c), 989, etc. against defendant (names):

       (Testimony required. Apply to the clerk for a hearing date, unless the court will enter a judgment on an affidavit under Code of Civil Procedure section 585(d).)

   e. [X] Enter clerk's judgment
       (1) [ ] for restitution of the premises only and issue a writ of execution on the judgment. Code of Civil Procedure section 1174(c) does not apply. (Code Civ. Proc., para. 1169.)
           [ ] Include in the judgment all tenants, subtenants, named claimants, and other occupants of the premises. The Prejudgment Claim of Right to Possession was served in compliance with Code of Civil Procedure section 415.46.
       (2) [X] under Code of Civil Procedure section 585(a). (Complete the declaration under Code Civ. Proc. para. 585.5 on the reverse (item 5).)
       (3) [ ] for default previously entered on (date):

2. Judgment to be entered.

| | Amount | Credits acknowledged | Balance |
|---|---|---|---|
| a. Demand of complaint | $ 2,608.16 | $ 2,560.54 | $ 47.62 |
| b. Statement of damages* | | | |
| (1) Special | $ 0.00 | $ 0.00 | $ 0.00 |
| (2) General | $ | $ | $ |
| c. Interest | $ 197.31 | $ 0.00 | $ 197.31 |
| d. Costs (see reverse) | $ 158.00 | $ 0.00 | $ 158.00 |
| e. Attorney fees | $ 521.63 | $ PER COURT 509.73 RULES | $ 11.90 |
| f. TOTALS | $ 3,485.10 | $ 3,070.27 | $ 414.83 |
| g. Daily damages were demanded in complaint at the rate of: $ | | per day beginning (date): | |

(*Personal injury or wrongful death actions; Code Civ. Proc., para. 425.11)

3. [ ] (Check if filed in an unlawful detainer case) LEGAL DOCUMENT ASSISTANT OR UNLAWFUL DETAINER ASSISTANT information is on the reverse (complete item 4).

Date: January 27, 2005
MacDonald Bryan
_____          _____
(TYPE OR PRINT NAME)               (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

FOR COURT USE ONLY
(1) [✓] Default entered as requested on (date) MAR 0 9 2005
(2) [ ] Default NOT entered as requested (state reason):

LISA M. GALDOS        Clerk, by _____, Deputy
                      CHRISTIE WATSON                Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
982(a)(6) (Rev. July 1, 2003)
REQUEST FOR ENTRY OF DEFAULT
(Application to Enter Default)
Code of Civil Procedure
para. 585-587, 1169

FA0001971

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TEL. NO.: |
|---|---|
| [X] Recording requested by and return to: | (831) 758-8282 |

HERENDEEN & BRYAN
MacDonald Bryan/State Lic. No. 044183
119 Cayuga Street/P O Box 1067
Salinas, CA 93902

(CCS/1879172/RS )

[X] ATTORNEY FOR  [X] JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD

FOR RECORDER'S USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 AGUAJITO RD.
MAILING ADDRESS:
CITY AND ZIP CODE: MONTEREY, CA 93940
BRANCH NAME: LIMITED JURISDICTION

PLAINTIFF: CREDIT CONSULTING SERVICES,INC.,
a California Corporation
DEFENDANT: MANUEL FAUSTO, et al.

| ABSTRACT OF JUDGMENT [ ] Amended | CASE NUMBER: M71694 |
|---|---|

1. The [X] judgment creditor  [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
      Name and last known address

   MANUEL FAUSTO

   PO BOX 1833
   GONZALES CA 93926

FOR COURT USE ONLY

   b. Driver's license no. and state:  [ ] Unknown.
   c. Social Security no.: 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  [X] Unknown.
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to *(name and address):*  MANUEL FAUSTO
                                        532 CHAROLAIS DR
                                        GONZALES CA 93926
   e. [X] Original abstract recorded in this county: MONTEREY
      (1) Date:
      (2) Instrument No.:

   f. [X] Information on additional judgment debtors is shown on page two.

Date:March 17, 2005
   MacDonald Bryan

*MacDonald Bryan*

> 

(TYPE OR PRINT NAME)                                    (SIGNATURE OF APPLICANT OR ATTORNEY)

2. a. [X] I certify that the following is a true and correct abstract
         of the judgment entered in this action.
   b. [ ] A certified copy of the judgment is attached
3. Judgment creditor *(name and address):*
CREDIT CONSULTING SERVICES,INC., a California Corporation
201 John St. Ste. E, Salinas, CA 93901
4. Judgment debtor *(full name as it appears in judgment):*
   MANUEL FAUSTO
   LUZ FAUSTO aka LUZ M FAUSTO

[SEAL]

5. a. Judgment entered on
      *(date):* 03-09-05
   b. Renewal entered on
      *(date):*

6. Total amount of judgment as entered or last renewed:
   $ 414.83
7. [ ] An [ ] execution lien [ ] attachment lien
      is endorsed on the judgment as follows:
      a. Amount: $
      b. In favor of *(name and address):*

8. A stay of enforcement has
   a. [X] not been ordered by the court.
   b. [ ] been ordered by the court effective until
          *(date):*
9. [ ] This judgment is an installment judgment.

This abstract issued on *(date):*

APR 15 2005

LISA M. GALDOS
Clerk, by _____, Deputy
                    CHRISTIE WATSON

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2003]

ABSTRACT OF JUDGMENT
(CIVIL)

Page 1 of 2
Code of Civil Procedure, 488.480,
674,700.190

FA0001972

NAME AND ADDRESS OF ATTORNEY
HERENDEEN & BRYAN (831) 758-8282
MacDonald Bryan/State Lic. No. 044183
119 Cayuga Street/P.O. BOX 1067
Salinas, CA 93902
ATTORNEY FOR: Plaintiff

INSERT NAME OF COURT AND NAME OF JUDICIAL DISTRICT AND BRANCH COURT, IF ANY:
SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
LIMITED JURISDICTION
1200 AGUAJITO RD. /
MONTEREY, CA 93940

FOR COURT USE ONLY

# FILED

MAR 0 9 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_Christie Watson_ DEPUTY
CHRISTIE WATSON

PLAINTIFF: CREDIT CONSULTING SERVICES, INC.,
a California Corporation
DEFENDANT: MANUEL FAUSTO, et al.

JUDGMENT (DEFAULT BY CLERK)

CASE NUMBER
M71694

The defendant(s) herein after named, sued herein upon contract for the recovery of money or damages only, having been personally served with summons and copy of complaint, having failed to appear and answer plaintiff's complaint within the time allowed by law, and default of said defendant(s) having been entered, and request that all unnamed does be dismissed, upon application of plaintiff(s), the Clerk entered the following judgment: Judgment is hereby entered that plaintiff(s) CREDIT CONSULTING SERVICES,INC., a California Corporation

recover from defendant(s) MANUEL FAUSTO
LUZ FAUSTO aka LUZ M FAUSTO

the sum of $ 47.62 principal; $ 11.90 attorney fee; $ 197.31 interest, and $ 158.00 costs, amounting to the total sum of $ 414.83 .

MAR 0 9 2005

Judgment entered on _____

in Judgment Book _____ at page _____

I certify this to be a true copy of the judgment entered on the date and in the Judgment Book herein set forth.

By LISA M GALDOS Clerk

By _Christie Watson_ Deputy Clerk
CHRISTIE WATSON

By LISA M GALDOS Clerk

By _____ Deputy Clerk

JUDGMENT (DEFAULT BY CLERK)

(rev. 6/80)

SATISFACTION OF JUDGMENT
ENTERED ON JUL 1 1 2005
LISA M. GALDOS,
CLERK OF THE COURT
By _____ H. SPICER DEPUTY

FA0001973

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY | Reserved for Clerk's File Stamp |
|---|---|
| Credit Consulting Services,<br>Plaintiff/Petitioner<br><br>vs.<br><br>Fausto, Manuel,<br>Defendant/Respondent | FILED<br>SEP 2 8 2004<br>LISA M. GALDOS<br>CLERK OF THE SUPERIOR COURT<br>_____ DEPUTY |
| CASE MANAGEMENT NOTICE | Case No.  M71694 |

Due Date:    01-25-05
Item Due:    Case Management ~~Conference~~/Statement

1.  NOTICE is hereby given that Case Management Statements shall be filed with the Court and served on all parties NO LATER than the date listed above.

2.  Any party may file a Case Management Statement after the matter is at-issue, prior to the above date.  If filed by any party prior to the above date, all other parties shall file and serve their Case Management Statement within 10 days of receipt of the opposing parties' Case Management Statement.

3.  No party may stipulate to extend any of the dates set above.

4.  On receipt of the Case Management Statement the Court may set a Case Management Conference. If a Case Management Conference is set by the Court, it is expected that trial counsel for each party and each self-represented party shall attend and be fully prepared to participate effectively in the conference.

5.  On receipt of the Case Management Statements or at the Case Management Conference the Court may make the following orders:

    a.   refer the matter to arbitration or other alternative disputes resolution procedure;

    b.   identify the case as one which may be protracted and in need of special attention;

    c.   assign the case to a particular judge for all purposes:

    d.   assign a mandatory settlement conference and trial date;

    e.   make orders establishing discovery schedules and cut-offs, including expert witness disclosure and discovery;

    f.   make appropriate Trial Management Orders; and/or

    g.   make any other orders to achieve the interests of justice and the timely disposition of the case, including the setting of additional Status Conferences.

6.  It is the policy of this Court that all complaints and cross-complaints be filed and served, all challenges to the pleadings be heard, and the matter be at-issue no later than 180 days from the filing of the complaint.  It is the policy of this Court that all civil matters be resolved in no more than 12 to 24 months of the filing of the complaint.

7.  Failure to file the Case Management Statements, attend the Case Management Conference and participate effectively, or comply with any Case And Trial Management Rules may result in sanction.

FA0001974

8.    It is the responsibility of the parties and/or their attorneys to be familiar with the Monterey County Case and Trial Management Policies and Rules and to comply therewith.

BY ORDER OF THE PRESIDING JUDGE

Date: September 28, 2004                    By: _Christie Watson_____
                                                     Deputy Clerk

                                                CHRISTIE WATSON

FA0001975

ORIGINAL

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
HERENDEEN & BRYAN/MacDonald Bryan/044183
119 Cayuga Street/P.O. BOX 1067
Salinas, CA 93902

(CCS/1879172/JNC)

TELEPHONE NO.: (831) 758-8282   FAX NO. (Optional): (831) 758-0857
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 AGUAJITO RD.
MAILING ADDRESS:
CITY AND ZIP CODE: MONTEREY, CA 93940
BRANCH NAME: LIMITED JURISDICTION

PLAINTIFF: CREDIT CONSULTING SERVICES,INC.,
           a California Corporation
DEFENDANT: MANUEL FAUSTO
           LUZ FAUSTO aka LUZ M FAUSTO
[X] DOES 1 TO _10_ inclusive

**CONTRACT**

[X] COMPLAINT      [ ] AMENDED COMPLAINT (Number):

[ ] CROSS-COMPLAINT  [ ] AMENDED CROSS-COMPLAINT (Number):

Jurisdiction (check all that apply):
[X] ACTION IS A LIMITED CIVIL CASE
    Amount demanded  [X] does not exceed $10,000
                     [ ] exceeds $10,000, but does not exceed $25,000
[ ] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint
    [ ] from limited to unlimited
    [ ] from unlimited to limited

FILED
SEP 2 7 2004
LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

CASE NUMBER:
M71694

1. PLAINTIFF* (names): CREDIT CONSULTING SERVICES,INC., a California Corporation

   alleges causes of action against DEFENDANT* (names): MANUEL FAUSTO
                                                        LUZ FAUSTO aka LUZ M FAUSTO

2. This pleading, including attachments and exhibits, consists of the following number of pages: 5

3. a. Each plaintiff named above is a competent adult
   [X] except plaintiff (name): CREDIT CONSULTING SERVICES,INC., a California Corporation
       [X] a corporation qualified to do business in California
       [ ] an unincorporated entity (describe):
       [ ] other (specify):

   b. [X] Plaintiff (name): CREDIT CONSULTING SERVICES,INC., a California Corporation
          [ ] has complied with the fictitious business name laws and is doing business under the fictitious name of (specify):

          [X] has complied with all licensing requirements as a licensed (specify): Collection Agency
   c. [ ] Information about additional plaintiffs who are not competent adults is shown in Complaint--Attachment 3c.

4. a. Each defendant named above is a natural person
   [ ] except defendant (name):                    [ ] except defendant (name):
       [ ] a business organization, form unknown       [ ] a business organization, form unknown
       [ ] a corporation                               [ ] a corporation
       [ ] an unincorporated entity (describe):        [ ] an unincorporated entity (describe):

       [ ] a public entity (describe):                 [ ] a public entity (describe):

       [ ] other (specify):                            [ ] other (specify):

Page 1 of 2

* If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.
Form Approved for Optional Use
Judicial Council of California
982.1(20) [Rev. July 1, 2002]

**COMPLAINT--Contract**

Code of Civ. Proc., par. 425.12

FA0001976

| SHORT TITLE: CREDIT CONSULTING SERVICES,INC., a California Corporation vs MANUEL FAUSTO , et al. | CASE NUMBER: |
|---|---|

## COMPLAINT--Contract

4. *(Continued)*
   b. The true names and capacities of defendants sued as Does are unknown to plaintiff.
   c. ☐ Information about additional defendants who are not natural persons is contained in Complaint--Attachment 4c.
   d. ☐ Defendants who are joined pursuant to Code of Civil Procedure section 382 are *(names):*

5. ☐ Plaintiff is required to comply with a claims statute, and
   a. ☐ plaintiff has complied with applicable claims statutes, or
   b. ☐ plaintiff is excused from complying because *(specify):*

6. ☐ This action is subject to   ☐ Civil Code section 1812.10   ☐ Civil Code section 2984.4.

7. This court is the proper court because
   a. ☒ a defendant entered into the contract here.
   b. ☒ a defendant lived here when the contract was entered into.
   c. ☒ a defendant lives here now.
   d. ☒ the contract was to be performed here.
   e. ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.
   f. ☐ real property that is the subject of this action is located here.
   g. ☐ other *(specify):*

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
   ☐ Breach of Contract   ☒ Common Counts
   ☐ Other *(specify):*

9. ☐ Other:

10. PLAINTIFF PRAYS for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
    a. ☒ damages of: $ 2,608.16
    b. ☒ interest on the damages
       (1) ☐ according to proof
       (2) ☒ at the rate of    10    percent per year from *(date):*   01-10-04
    c. ☒ attorney's fees
       (1) ☒ of: $   521.63
       (2) ☐ according to proof.
    d. ☐ other *(specify):*

11. ☐ The following paragraphs of this pleading are alleged on information and belief *(specify paragraph numbers):*

Date:   September 16, 2004
HERENDEEN & BRYAN

_____   ➤   _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If ··· wish to verify this pleading, affix a verification.)*

982.1(20) [Rev. July 1, 2002]         COMPLAINT--Contract

FA0001977

1A-29

| SHORT TITLE: CREDIT CONSULTING SERVICES, INC. VS MANUEL FAUSTO, et al. (CCS/1879172/JNC) | CASE NUMBER: |
| --- | --- |

FIRST        **CAUSE OF ACTION--Common Counts**        Page 3

_(number)_

ATTACHMENT TO   [X] Complaint   [ ] Cross-Complaint

_(Use a separate cause of action form for each cause of action.)_

CC-1. Plaintiff (name): CREDIT CONSULTING SERVICES, INC., a California Corporation

alleges that defendant (name): MANUEL FAUSTO
LUZ FAUSTO aka LUZ M FAUSTO

and DOES 1 to 10, inclusive

became indebted to [ ] plaintiff [X] other (name): Plaintiff's Assignor(s) -

| Plaintiff Assignor | Amount Incurred | Intr% | Plaintiff Assignor | Amount Incurred | Intr% |
| --- | --- | --- | --- | --- | --- |
| SALINAS VALLEY MEMORIAL HOSP | 2,417.66 01-26-04 | 10 | SALINAS VALLEY RADIOLOGISTS | 190.50 01-10-04 | 10 |

a. [X] within the last four years
   (1) [X] on an open book account for money due.
   (2) [ ] because an account was stated in writing by and between plaintiff and defendant in which it
       was agreed that defendant was indebted to plaintiff

b. [ ] within the last   [ ] two years   [ ] four years
   (1) [ ] for money had and received by the defendant for the use and benefit of plaintiff.
   (2) [ ] for work, labor, services and materials rendered at the special instance and request of defendant
       and for which defendant promised to pay plaintiff
       [ ] the sum of $
       [ ] the reasonable value.
   (3) [ ] for goods, wares, and merchandise sold and delivered to defendant and for which defendant
       promised to pay plaintiff
       [ ] the sum of $
       [ ] the reasonable value.
   (4) [ ] for money lent by plaintiff to defendant at defendant's request
   (5) [ ] for money paid, laid out, and expended to or for defendant's special instance and
       request
   (6) [ ] other _(specify):_

CC-2. $ .2,608.16 ,which is the reasonable value, is due and unpaid despite plaintiff's demand,
plus prejudgment interest [X] according to proof at the rate of see above percent per year
from _(date)_ (see accounts CC-1)

CC-3. [X] Plaintiff is entitled to attorney fees by an agreement or a statute
   [X] of $ 521.63
   [ ] according to proof   Prior to filing this action Plaintiff's assignor(s)
       assigned their rights against defendant(s) set forth
       herein to Plaintiff, CREDIT CONSULTING SERVICES, INC.,
CC-4. [ ] Other:   a California Corporation.

Form approved by the
Judicial Council of California
Effective January 1, 1982
Rule 982.1(22)

CCP 425.12

**CAUSE OF ACTION-Common Counts**

FA0001978

1A-29

| SHORT TITLE: CREDIT CONSULTING SERVICES, INC.<br>VS  MANUEL FAUSTO, et al.          (CCS/1879172/JNC) | CASE NUMBER: |
|---|---|

SECOND                  CAUSE OF ACTION--Common Counts          Page 4
_(number)_

ATTACHMENT TO   [X] Complaint   [ ] Cross-Complaint

(Use a separate cause of action form for each cause of action.)

CC-1. Plaintiff (name): CREDIT CONSULTING SERVICES,INC.,a California Corporation

alleges that defendant (name): MANUEL FAUSTO
LUZ FAUSTO aka LUZ M FAUSTO
and DOES 1 to 10, inclusive

became indebted to   [ ] plaintiff   [X] other (name):   Plaintiff's Assignor(s)-

| Plaintiff Assignor | Amount Incurred | Intr% | Plaintiff Assignor | Amount Incurred | Intr% |
|---|---|---|---|---|---|
| SALINAS VALLEY MEMORIAL HOSP | 2,417.66 | 01-26-04 | 10 | SALINAS VALLEY RADIOLOGISTS | 190.50 | 01-10-04 | 10 |

a. [X] within the last four years
   (1) [ ] on an open book account for money due.
   (2) [X] because an account was stated in writing by and between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff.

b. [ ] within the last   [ ] two years   [ ] four years
   (1) [ ] for money had and received by the defendant for the use and benefit of plaintiff.
   (2) [ ] for work, labor, services and materials rendered at the special instance and request of defendant and for which defendant promised to pay plaintiff
        [ ] the sum of $
        [ ] the reasonable value
   (3) [ ] for goods, wares, and merchandise sold and delivered to defendant and for which defendant promised to pay plaintiff
        [ ] the sum of $
        [ ] the reasonable value.
   (4) [ ] for money lent by plaintiff to defendant at defendant's request
   (5) [ ] for money paid, laid out, and expended to or for defendant's special instance and request
   (6) [ ] other (specify):

CC-2. $ 2,608.16                    ,which is the reasonable value, is due and unpaid despite plaintiff's demand,
plus prejudgment interest   [X] according to proof   at the rate of   see above   percent per year
from (date)   (see accounts CC-1)

CC-3.  [X] Plaintiff is entitled to attorney fees by an agreement or a statute
        [X] of $        521.63        Prior to filing this action Plaintiff's assignor(s)
        [ ] according to proof        assigned their rights against defendant(s) set forth
                                       herein to Plaintiff, CREDIT CONSULTING SERVICES,INC.,
CC-4.  [ ] Other:                     a California Corporation.

Form approved by the
Judicial Council of California
Effective January 1, 1982
Rule 982.1(22)

CCP 425.12

CAUSE OF ACTION-Common Counts

FA0001979

VERIFICATION

STATE OF CALIFORNIA, COUNTY OF MONTEREY:

I, Dane Askins, declare:

That I am an authorized agent for CREDIT CONSULTING SERVICES, INC., a California corporation, plaintiff herein, and am authorized to make this verification for and on its behalf.

That I have read the foregoing documents and know the contents thereof.

That the matters stated in the foregoing documents are true of of my own knowledge except as to those matters which are stated on information or belief, and as to those matters I believe them to to be true.

Executed on September 16, 2004 at Salinas, California.

I declare under penalty of perjury that the foregoing is true and correct.

DANE ASKINS
CREDIT CONSULTING SERVICES, INC.

Case #

CREDIT CONSULTING SERVICES, INC. vs MANUEL FAUSTO, et al.

Complaint verification

-5-

FA0001980

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*

HERENDEEN & BRYAN
MacDonald Bryan/State Lic. No. 044183
119 Cayuga Street/P.O. BOX 1067
Salinas, CA 93902

TELEPHONE NO.: (831) 758-8282    FAX NO. *(Optional):* (831) 758-0857
(CCS/1879172/RG )

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* Plaintiff

**ORIGINAL**

**FILED**

JAN 27 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY
C. WILLIAMS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY

STREET ADDRESS: 1200 AGUAJITO RD.

MAILING ADDRESS:

CITY AND ZIP CODE: MONTEREY, CA 93940

BRANCH NAME: LIMITED JURISDICTION

PLAINTIFF/PETITIONER: CREDIT CONSULTING SERVICES,INC.,
a California Corporation

DEFENDANT/RESPONDENT: MANUEL FAUSTO, et al.

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one):  ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)   ☒ **LIMITED CASE** (Amount demanded is $25,000 or less) | M71694 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:          Time:          Dept.:          Div.:          Room:

Address of court *(if different from the address above):*

**INSTRUCTIONS:** All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one):*
   a. ☒ This statement is submitted by party *(name):* CREDIT CONSULTING SERVICES,INC., a California Corporation
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):* 09-27-04
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☒ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      1. ☐ have not been served *(specify names and explain why not):*
      2. ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      3. ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in    ☒ complaint    ☐ cross-complaint    ☐ *(describe, including causes of action):*
      COLLECTIONS

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [New July 1, 2002]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rule 212

**FA0001981**

| PLAINTIFF/PETITIONER: CREDIT CONSULTING SERVICES,INC., a California Corporation | CASE NUMBER: M71694 |
|---|---|
| DEFENDANT/RESPONDENT: MANUEL FAUSTO, et al. | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

SERVICES RENDERED AT SALINAS VALLEY MEMORIAL HOSPITAL AND SALINAS VALLEY RADIOLOGISTS, INC. PLAINTIFF IS ATTEMPTING TO RESOLVE THIS MATTER WITH THE DEFENDANT WITHOUT ENTERING A JUDGMENT. IF AN AGREEMENT IS NOT MADE A DEFAULT AND JUDGMENT WILL BE SUBMITTED TO COURT.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party of parties request ☐ a jury trial ☒ a nonjury trial *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐ The trial has been set for *(date):*
b.  ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(If not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐ days *(specify number):*
b.  ☒ hours (short causes) *(specify):* N/A

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney: MacDonald Bryan
b.  Firm: HERENDEEN & BRYAN
c.  Address: 119 Cayuga Street, Salinas, CA 93901
d.  Telephone number: (831) 758-8282
e.  Fax number: (831) 758-0857
f.  E-mail address:
g.  Party represented: Plaintiff, CREDIT CONSULTING SERVICES,INC., a California Corporation
☐ Additional representation is described in Attachment 8.

9.  **Preference**
☐ This case is entitled to preference *(specify code section):*

10.  **Alternative Dispute Resolution (ADR)**
a.  Counsel ☒ has ☐ has not provided the ADR information package identified in rule 201.9 to the client and has reviewed ADR options with the client.
b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.  ☐ The case has gone to an ADR process *(indicate status):*

ORIGINAL

| PLAINTIFF/PETITIONER: CREDIT CONSULTING SERVICES,INC., a California Corporation | CASE NUMBER: M71694 |
|---|---|
| DEFENDANT/RESPONDENT: MANUEL FAUSTO, et al. | |

10. d.  The party or parties are willing to participate in *(check all that apply):*
    (1) ☐ Mediation
    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 1612)
    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 1612)
    (4) ☐ Binding  judicial arbitration
    (5) ☐ Binding private arbitration
    (6) ☐ Neutral case evaluation
    (7) ☐ Other *(specify):*

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
    g. ☐ This case is exempt from judicial arbitration under rule 1600.5 of the California Rules of Court *(specify exemption):*

11. **Settlement conference**
    ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

12. **Insurance**
    a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
    b. Reservation of rights: ☐ Yes ☐ No
    c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

13. **Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
    ☐ Bankruptcy ☐ Other *(specify):*
Status:

14. **Related cases, consolidation, and coordination**
    a. ☐ There are companion, underlying, or related cases.
      (1) Name of case:
      (2) Name of court:
      (3) Case number:
      (4) Status:
    ☐ Additional cases are described in Attachment 14a.
    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

15. **Bifurcation**
    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

16. **Other motions**
    ☐ The party of parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

CM-110 [New July 1, 2002]

**CASE MANAGEMENT STATEMENT**

Page 3 of 4

FA0001983

| PLAINTIFF/PETITIONER: CREDIT CONSULTING SERVICES,INC., a California Corporation | CASE NUMBER: M71694 |
|---|---|
| DEFENDANT/RESPONDENT: MANUEL FAUSTO, et al. | |

17. **Discovery**
   a.   [X] The party or parties have completed all discovery.
   b.   [ ] The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| | | |

   c.   [ ] The following discovery issues are anticipated *(specify)*:

[ ]

18. **Economic Litigation**
   a.   [X] This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
   b.   [ ] This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

19. **Other issues**
The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

20. **Meet and confer**
   a.   [X] The party or parties have met and conferred with all parties on all subjects required by rule 212 of the California Rules of Court *(if not, explain)*:

   b.   After meeting and conferring as required by rule 212 of the California Rules of Court, the parties agree on the following *(specify)*:

21. **Case management orders**
Previous case management order in this case are *(check one)*: [X] none    [ ] attached as Attachment 21.

22. Total number of pages attached *(if any)*: _0_____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter in stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: January 20, 2005

MacDonald Bryan
_____
(TYPE OR PRINT NAME)

> _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

> _____
(SIGNATURE OF PARTY OR ATTORNEY)

[ ] Additional signatures are attached

CM-110 [New July 1, 2002]

**CASE MANAGEMENT STATEMENT**

FA0001984

ORIGINAL

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* State Lic. No. : 183
HERENDEEN & BRYAN/MacDonald Bryan
119 Cayuga Street/P O Box 1067
Salinas, CA 93902        (CCS/1879172/RS )

TELEPHONE NO.: (831) 758-8282
FAX NO. *(Optional):* (831) 758-0857

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 AGUAJITO RD.
MAILING ADDRESS:
CITY AND ZIP CODE: MONTEREY, CA 93940
BRANCH NAME: LIMITED JURISDICTION

FOR RECORDER'S OR SECRETARY OF STATE'S USE ONLY

PLAINTIFF: CREDIT CONSULTING SERVICES, INC.
           a California Corporation
DEFENDANT: MANUEL FAUSTO , et al.

CASE NUMBER:
M71694

**ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT**
[X] FULL    [ ] PARTIAL    [ ] MATURED INSTALLMENT

FOR COURT USE ONLY

**FILED**

JUL 0 1 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY
H. SPICER

1. Satisfaction of the judgment is acknowledged as follows:
   a. [X] Full satisfaction
      (1) [X] Judgment is satisfied in full.
      (2) [ ] The judgment creditor has accepted payment or performance other than that specified in the judgment in full satisfaction of the judgment.
   b. [ ] Partial satisfaction
      The amount received in partial satisfaction of the judgment is $
   c. [ ] Matured installment
      All matured installments under the installment judgment have been satisfied as of *(date):*

2. Full name and address of judgment creditor:*
   CREDIT CONSULTING SERVICES, INC., a California Corporation
   201 John St. Ste. E, Salinas, CA 93901

3. Full name and address of assignee of record, if any:

4. Full name and address of judgment debtor being fully or partially released:*
   MANUEL FAUSTO / LUZ FAUSTO aka LUZ M FAUSTO
   PO BOX 1833   GONZALES CA 93926

5. a. Judgment entered on *(date):* March 9, 2005
   b. [ ] Renewal entered on *(date):*

6. [X] An [X] abstract of judgment [ ] certified copy of the judgment has been recorded as follows *(complete all information for each county where recorded):*

| COUNTY | DATE OF RECORDING | INSTRUMENT NUMBER |
|---|---|---|
| MONTEREY | 04-25-05 | 2005040273 |

7. [ ] A notice of judgment lien has been filed in the office of the Secretary of State as file number
   *(specify):*

NOTICE TO JUDGMENT DEBTOR: If this is an acknowledgment of full satisfaction of judgment, it will have to be recorded in each county shown in item 6 above, if any, in order to release the judgment lien, and will have to be filed in the office of the Secretary of State to terminate any judgment lien on personal property.

HERENDEEN & BRYAN
                                                        MacDonald Bryan

Date: June 13, 2005

*(SIGNATURE OF JUDGMENT CREDITOR OR ASSIGNEE OF CREDITOR OR ATTORNEY**)*

Page 1 of 1

*The names of the judgment creditor and judgment debtor must be stated as shown in any Abstract of Judgment which was recorded and is being released by this satisfaction. ** A separate notary acknowledgment must be attached for each signature.

Form Approved for Optional Use
Judicial Council of California
EJ-100 [Rev. January 1, 2005]

**ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT**

FA0001985

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of ___Monterey_____ } ss.

On ___June 15, 2005_____, before me, __Janna Norris-Costes, NotaryPublic__,
       Date                                Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally    appeared   __MacDonald Bryan_____
                                             Name(s) of Signer(s)

☒ personally known to me

☐ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted,
executed the instrument.

JANNA NORRIS-COSTES
COMM. # 1370692
Notary Public-California
County of Monterey
My Comm. Exp. Sept. 15, 2005

Place Notary Seal Above

WITNESS my hand and official seal.

_Janna Norris-Costes_
Signature of Notary Public

━━━━━━━━━━━━━━━━ OPTIONAL ━━━━━━━━━━━━━━━━

*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document
Title or Type of Document: __Acknowledgment of Satisfaction of Judgment__

Document Date: __June 13, 2005_____ Number of Pages: ___1___

Signer(s) Other Than Named Above: __none_____

## Capacity(ies) Claimed by Signer(s)

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Individual | ☐ Individual |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

FA0001986

SUM-100

# SUMMONS
*(CITACION JUDICIAL)* ORIGINAL

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

MANUEL FAUSTO
LUZ FAUSTO aka LUZ M FAUSTO

and DOES 1 to 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*

CREDIT CONSULTING SERVICES, INC.,
a California Corporation



FILED

MAR 0 9 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
DEPUTY
CHRISTIE WATSON

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO despues de que le entreguen esta citacion y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefonica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y mas informacion en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede mas cerca. Si no puede pagar la cuota de presentacion, pida al secretario de la corte que le de un formulario de exencion de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podra quitar su sueldo, dinero y bienes sin mas advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remision a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniendose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y direccion de la corte es):* | CASE NUMBER: *(Numero del Caso):* |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY LIMITED JURISDICTION 1200 AGUAJITO RD./ MONTEREY, CA 93940 | M71694 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without attorney, is:
*(El nombre, la direccion y el numero de telefono del abogado del demandante, o del demandante que no tiene abogado, es):*

HERENDEEN & BRYAN (831) 758-8282
State Lic. No. 044183
119 Cayuga Street/P.O. BOX 1067
Salinas, CA 93902

| DATE: *(Fecha)* | SEP 2 7 2004 | LISA M GALDOS | Clerk, by *(Secretario)* | *Cllritter Thrallo* | Deputy *(Adjunto)* |
|---|---|---|---|---|---|
| | | | | CHRISTIE WATSON | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010)).*
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]
SUPERIOR COURT OF CALIFORNIA COUNTY OF MONTEREY

1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other: *(specify):*

4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. January 1, 2004] | SUMMONS | Code of Civil Procedure per. 412.20, 465 |
|---|---|---|

FA0001987

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | | FOR COURT USE ONLY |
|---|---|---|
| Credit Consulting Services, Inc.<br>P.O. Box 5879<br>Salinas, CA 93915-5879<br>E-MAIL | Telephone<br>(831) 424-0606<br>FAX | |

ATTORNEY FOR (Name):    IN PROPRIA PERSONA

Monterey County Superior Court - Monterey

STREET ADDRESS:   1200 Aguajito Rd.

MAILING ADDRESS:

CITY AND ZIP CODE:   Monterey, CA 93940

BRANCH NAME:   Monterey

PLAINTIFF:    Credit Consulting Services, Inc.

DEFENDANT:    Manuel Fausto, et al.

| PROOF OF SERVICE OF SUMMONS | FILE NUMBER<br>2004001865 | COURT CASE NUMBER<br>M71694 |
|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the:
   f. Notice of Case Management Conference, SUMMONS AND COMPLAINT

3. a. Party served:    Luz Fausto aka Luz M. Fausto

4. Address where party was served:    532 Charolais Dr.
   Gonzales, CA 93926

5. I served the party
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of the process for the party (1)on: 10/18/2004 (2)at: 11:08 AM.

6. The "Notice to the Person Served" (on summons) was completed as follows:
   a. as an individual defendant.

7. Person who served papers:
   a. Name: R. Cole
   b. Address: Sheriff's Civil Unit Office of the Sheriff 1414 Natividad Road Salinas, CA 93906
   c. Telephone number: (831) 755-3712
   d. The fee for service was: $30.00

9. I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: October 18, 2004

Sheriff's Authorized Agent
Mike Kanalakis, Sheriff-Coroner

Hearing: <No Information>

Judicial Council form POS-010        Mail Copy        3929

FA0001988

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | | Telephone | | FOR COURT USE ONLY |
|---|---|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

Credit Consulting Services, Inc.
P.O. Box 5879
Salinas, CA 93915-5879

Telephone (831) 424-0606
FAX

E-MAIL

ATTORNEY FOR (Name):   **IN PROPRIA PERSONA**

Monterey County Superior Court - Monterey
STREET ADDRESS:   1200 Aguajito Rd.
MAILING ADDRESS:
CITY AND ZIP CODE:   Monterey, CA 93940
BRANCH NAME:   Monterey

PLAINTIFF:   Credit Consulting Services, Inc.
DEFENDANT:   Manuel Fausto, et al.

| PROOF OF SERVICE OF SUMMONS | FILE NUMBER 2004001865 | COURT CASE NUMBER M71694 |
|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the:
   f.   Notice of Case Management Conference, SUMMONS AND COMPLAINT

3. a.   Party served:   **Manuel Fausto**

4. Address where party was served:   532 Charolais Dr.
   Gonzales, CA 93926

5. I served the party
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of the process for the party (1) on: 10/18/2004 (2) at: 11:25 AM.

6. The "Notice to the Person Served" (on summons) was completed as follows:
   a. as an individual defendant.

7. Person who served papers:
   a. Name: R. Cole
   b. Address: Sheriff's Civil Unit Office of the Sheriff 1414 Natividad Road Salinas, CA 93906
   c. Telephone number: (831) 755-3712
   d. The fee for service was: $30.00

9. I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: October 18, 2004

Sheriff's Authorized Agent
Mike Kanalakis, Sheriff-Coroner

Hearing:  <No Information>

Judicial Council form POS-010          Original          3928

FA0001989

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "B"

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5   MANUEL G. FAUSTO, AND

    LUZ FAUSTO

6          Plaintiffs,

7   vs.                    Case No. C 07 05658 JW (RS)

8   CREDIGY SERVICES CORPORATION,

    CREDIGY RECEIVABLES, INC.,

9   CREDIGY SOLUTIONS, INC.,

    RYAN MILLER, RICARDO VENTURA,

10  BRETT BOYDE, PAULO PERES, THOMPSON

    and DOES 1-10, inclusive,

11         Defendants.

12          **CERTIFIED COPY**

13

14

15   VIDEOTAPED DEPOSITION OF MANUEL FAUSTO

16          September 15, 2008

17

18

19  REPORTED BY:

20  Debby Clary, CSR No. 9705, Registered Merit Reporter

21

22

23

             TOOKER & ANTZ

24     CERTIFIED SHORTHAND REPORTERS

       350 SANSOME STREET, SUITE 700

25       SAN FRANCISCO, CA  94104

1           BE IT REMEMBERED, that pursuant to Notice, and

2    on the 15th day of September, 2008, commencing at the

3    hour of 9:42 a.m., in the offices of Tooker & Antz, 350

4    Sansome Street, Suite 700, San Francisco, California,

5    before me, DEBBY CLARY, a Certified Shorthand Reporter

6    in the State of California, personally appeared

7                  MANUEL FAUSTO,

8    called as a witness by the Defendants, and the said

9    witness, by me first duly sworn, was thereupon examined

10    and testified as hereinafter set forth.

11

12                     --o0o--

13

14           Humphreys, Wallace & Humphreys, 9202 South

15    Toledo Avenue, Tulsa, Oklahoma 74137, represented by

16    LUKE WALLACE, Attorney at Law, appeared as counsel on

17    behalf of the Plaintiffs.

18           Law Offices of Balam O. Letona, 1347 Pacific

19    Avenue, Suite 203, Santa Cruz, California 95060,

20    represented by BALAM O. LETONA, Attorney at Law,

21    appeared as counsel on behalf of the Plaintiffs.

22           Simmonds & Narita, LLP, 44 Montgomery Street,

23    Suite 3010, San Francisco, California 94104, represented

24    by TOMIO NARITA, Attorney at Law, appeared as counsel on

25    behalf of the Defendant Credigy Services Corporation.

4

```
 1        A.   Yes.
 2        Q.   When did you become a United States citizen?
 3        A.   In 1996.
 4        Q.   Okay.  When did you first move from Mexico to
 5   the United States?
 6        A.   In 1970.
 7        Q.   Were you married at the time?
 8        A.   Yes, I was married.
 9        Q.   Were you married to Ms. Fausto, Luz Fausto?
10        A.   Yes.
11        Q.   When did the two of you get married?
12        A.   It was -- when was it?  In March, and I don't
13   remember the date, but it was in 1968.
14        Q.   How many children do you have?
15        A.   Nine.
16        Q.   Are all of the children that you have with your
17   wife, Luz Fausto?
18        A.   Yes.
19        Q.   This is a tough question, Mr. Fausto, but could
20   you name your children from oldest to youngest.
21        A.   Yes.
22        Q.   Please, please do.
23        A.   Jose Guadalupe; Maria Isabel; Jose Manuel; Alma
24   Yanette; Vanessa Aracely.  Oh.
25        Q.   I knew it was going to be hard.
```

                                                              10

MANUEL FAUSTO - September 15, 2008

```
1    really don't remember when I say certain things.  It's,

2    that is in order to answer the question.  I don't

3    remember.  I don't remember.

4           MR. WALLACE:  Objection; move to strike,

5    nonresponsive.

6    BY MR. NARITA:

7       Q.  (Through Interpreter) Do you have a good

8    memory?

9           MR. WALLACE:  Objection; foundation, vague.

10          THE WITNESS:  (Through Interpreter) I don't

11   know.

12   BY MR. NARITA:

13      Q.  (Through Interpreter) Do you have trouble

14   remembering things sometimes?

15          MR. WALLACE:  Objection; foundation, vague.

16          THE WITNESS:  (Through Interpreter) Yes.

17   BY MR. NARITA:

18      Q.  (Through Interpreter) Do you know why?

19          MR. WALLACE:  Objection; foundation, vague.

20          THE WITNESS:  (Through Interpreter) No.

21   BY MR. NARITA:

22      Q.  (Through Interpreter) Has anyone ever told you

23   that excessive drinking can affect your memory?

24          MR. WALLACE:  Objection; foundation.  No -- and

25   misstates evidence.
```

28

```
 1              THE WITNESS:  (Through Interpreter) Yes.

 2   BY MR. NARITA:

 3        Q.  (Through Interpreter) And you have been

 4   arrested on a number of occasions for public

 5   intoxication; is that correct?

 6              MR. WALLACE:  Objection; foundation.

 7              Go ahead.

 8              THE WITNESS:  (Through Interpreter) Yes.

 9   BY MR. NARITA:

10        Q.  (Through Interpreter) And you have been

11   convicted on a number of occasions for public

12   intoxication, correct?

13              MR. WALLACE:  Objection; foundation, assumes

14   facts not in evidence too.

15              THE WITNESS:  (Through Interpreter) Yes.

16   BY MR. NARITA:

17        Q.  (Through Interpreter) And as part of your

18   sentence in certain of those cases, you attended Alcohol

19   Anonymous classes at the direction of the court,

20   correct?

21        A.  (Through Interpreter) Yes.

22        Q.  And did you learn in connection with those

23   meetings that excessive alcohol drinking can impact your

24   memory?

25              MR. WALLACE:  Objection; foundation.
```

29

1      THE WITNESS:  (Through Interpreter) Yes.

2  BY MR. NARITA:

3      Q.  (Through Interpreter) And in connection with

4  those meetings, did you also learn that drinking alcohol

5  to excess can have other negative health consequences?

6      A.  (Through Interpreter) No.

7      Q.  Has anyone ever told you that drinking alcohol

8  to excess can have negative health consequences in

9  addition to affecting your memory?

10      MR. WALLACE:  Objection; foundation, vague,

11  compound.

12      THE WITNESS:  (Through Interpreter) No.

13  BY MR. NARITA:

14      Q.  (Through Interpreter) Do you recall that you

15  were arrested on March 23rd, 2000, for public

16  intoxication in Monterey County?

17      MR. WALLACE:  Objection; assumes facts not in

18  evidence, lack of foundation.

19      THE WITNESS:  (Through Interpreter) Yes.

20  BY MR. NARITA:

21      Q.  Interpreter) Do you recall where you were at

22  the time you were arrested?

23      A.  (Through Interpreter) No.

24      Q.  Do you recall if there was anyone with you at

25  the time you were arrested?

30

MANUEL FAUSTO – September 15, 2008
Case5:07-cv-05658-JW   Document253   Filed01/12/09   Page77 of 102

1   terms of your probation?

2         MR. WALLACE:   Objection; foundation.

3         THE WITNESS:   (Through Interpreter) No.

4   BY MR. NARITA:

5       Q.   (Through Interpreter) Well, one of the, one of

6   the terms of your probation was not to drink or possess

7   alcohol during the, during your probation, correct?

8         MR. WALLACE:   Objection; foundation.

9         THE WITNESS:   (Through Interpreter) Yes.

10  BY MR. NARITA:

11      Q.   (Through Interpreter) But weren't you arrested

12  again for the crime of public intoxication on

13  December 26, 2001, in Monterey County?

14        MR. WALLACE:   Foundation objection.

15        THE WITNESS:   (Through Interpreter) I don't

16  remember.

17  BY MR. NARITA:

18      Q.   (Through Interpreter) Do you have any memory of

19  being arrested on December 26, 2001, in Monterey County

20  for the crime of public intoxication?

21      A.   (Through Interpreter) Yes.

22        MR. NARITA:   Exhibit 2.

23        (WHEREUPON, DEFENDANTS' EXHIBIT 2

24        WAS MARKED FOR IDENTIFICATION.)

25  BY MR. NARITA:

33

MANUEL FAUSTO - September 15, 2008

1    Q.  (Through Interpreter) And in January of 2002,

2  you were charged by the District Attorney of Monterey

3  County with the crime of public intoxication; isn't that

4  correct?

5          MR. WALLACE:  Objection; foundation.

6          THE WITNESS:  (Through Interpreter) Yes.

7  BY MR. NARITA:

8    Q.  (Through Interpreter) And you pled guilty to

9  that charge, correct?

10   A.  (Through Interpreter) Yes.

11   Q.  And you paid a fine in connection with that

12  charge, correct?

13   A.  I don't remember.

14   Q.  Do you have any memory of using a credit card

15  to pay a $150 civil assessment in connection with that

16  case?

17   A.  I don't remember.

18   Q.  And in March of 2003, you were arrested again

19  for public intoxication, correct?

20   A.  Yes.

21   Q.  And then you were charged with the crime of

22  public intoxication by the District Attorney of Monterey

23  County, right?

24          MR. WALLACE:  Objection; foundation, vague.

25          THE WITNESS:  (Through Interpreter) Yes.

34

TOOKER & ANTZ COURT REPORTING & VIDEO SERVICES
Tel: (415) 392-0650

1   BY MR. NARITA:

2      Q.  (Through Interpreter) And do you recall that

3   you pled guilty to that charge?

4        MR. WALLACE:  Objection; foundation.

5        THE WITNESS:  (Through Interpreter) Yes.

6   BY MR. NARITA:

7      Q.  (Through Interpreter) And you were directed to

8   attend 30 Alcohol Anonymous meetings as a condition of

9   that charge being dismissed, correct?

10      A.  (Through Interpreter) Yes.

11        MR. NARITA:  3.

12        (WHEREUPON, DEFENDANTS' EXHIBIT 3

13        WAS MARKED FOR IDENTIFICATION.)

14   BY MR. NARITA:

15      Q.  (Through Interpreter) Did you attend all 30

16   Alcohol Anonymous meetings as required by your sentence?

17      A.  (Through Interpreter) Yes.

18      Q.  And do you recall that once you filed proof of

19   the fact that you had attended all those meetings, the

20   case was dismissed in May of 2003?

21      A.  No.

22      Q.  Mr. Fausto, do you recall in May of 2007 being

23   pulled over by the California Highway Patrol for driving

24   a 1986 Acura at excessive speeds on Highway 101?

25      A.  Yes.

35

MANUEL FAUSTO — September 15, 2008

1      Q.   And do you recall that the CHP officer cited

2   you for the misdemeanor of driving without a valid

3   California license?

4      A.   Yes.

5      Q.   Was your license suspended at that time?

6      A.   I did not know it.

7      Q.   Was your license suspended at the time?

8           MR. WALLACE:   Objection; foundation.

9           THE WITNESS:   (Through Interpreter) I did not

10   know it.

11   BY MR. NARITA:

12      Q.   (Through Interpreter) Did you learn when you

13   were pulled over by the California Highway Patrol in May

14   of 2007 that you were driving with a suspended license?

15           MR. WALLACE:   Foundation objection.

16           THE WITNESS:   (Through Interpreter) No.

17   BY MR. NARITA:

18      Q.   (Through Interpreter) Okay.  Had your license

19   ever been suspended to your knowledge?

20           MR. WALLACE:   Foundation objection.

21           THE WITNESS:   (Through Interpreter) No.

22   BY MR. NARITA:

23      Q.   (Through Interpreter) Well, have you ever been

24   arrested for driving while under the influence of

25   alcohol?

36

1          MR. WALLACE:  Objection; foundation.

2          THE WITNESS:  (Through Interpreter) Yes.

3     BY MR. NARITA:

4          Q.  (Through Interpreter) And do you remember what

5     year that was?

6          A.  (Through Interpreter) No.

7          Q.  Do you recall that it was prior to May of 2007?

8          MR. WALLACE:  Objection; foundation.

9          THE WITNESS:  (Through Interpreter) No.

10    BY MR. NARITA:

11         Q.  (Through Interpreter) Do you just not recall

12    one way or the other, or do you remember that it was

13    after 2007?

14         MR. WALLACE:  Objection; vague, foundation,

15    compound.

16         THE WITNESS:  (Through Interpreter) I don't

17    remember the date.

18    BY MR. NARITA:

19         Q.  (Through Interpreter) Do you remember the year?

20         MR. WALLACE:  Asked and answered.

21         THE WITNESS:  (Through Interpreter) The year,

22    yes.

23    BY MR. NARITA:

24         Q.  (Through Interpreter) Which year?

25         A.  (Through Interpreter) In 2007.

37

1     Q.  And you were charged by the Monterey County

2   District Attorney in 2007 with a misdemeanor of driving

3   with a suspended or revoked license, correct?

4           MR. WALLACE:  Objection; foundation and

5   compound.

6           THE WITNESS:  (Through Interpreter) I'm sorry?

7           MR. NARITA:  Can we read that back.

8           THE REPORTER:  "And you were charged by the

9           Monterey County District Attorney in 2007 with

10          a misdemeanor of driving with a suspended or

11          revoked license, correct?"

12          MR. WALLACE:  Same objections.

13          THE REPORTER:  "And you were charged by the

14          Monterey County District Attorney in 2007 with

15          a misdemeanor of driving with a suspended or

16          revoked license, correct?"

17          THE WITNESS:  (Through Interpreter) Yes.

18          MR. NARITA:  4.

19          (WHEREUPON, DEFENDANTS' EXHIBIT 4

20          WAS MARKED FOR IDENTIFICATION.)

21          MR. NARITA:  Counsel, could you direct him to

22   FA1932, please.

23     Q.  (Through Interpreter) Mr. Fausto, is that your

24   signature inside the box on FA1932?

25     A.  (Through Interpreter) Yes.

38

1      Q.  And this is a copy of the notice to appear that

2   the California Highway Patrolman gave you on the day

3   that he pulled you over for driving with a suspended or

4   revoked license, correct?

5          MR. WALLACE:  Objection; foundation, assumes

6   facts not in evidence.

7          THE WITNESS:  (Through Interpreter) Yes.

8   BY MR. NARITA:

9      Q.  (Through Interpreter) Was there anyone else in

10  the car with you at the time?

11     A.  (Through Interpreter) No.

12     Q.  Do you recall that you were scheduled to be

13  arraigned on these charges on July 25th, 2007?

14     A.  Yes.

15     Q.  Do you recall that you failed to appear on

16  July 25th, 2007?

17          MR. WALLACE:  Objection; foundation, vague.

18          THE WITNESS:  (Through Interpreter) No.

19  BY MR. NARITA:

20     Q.  (Through Interpreter) Well, do you recall

21  learning that there was a hearing on July 25th, 2007,

22  where Judge Larry Hayes with the Monterey County

23  Superior Court issued a bench warrant and set bail for

24  you at $7,500?

25     A.  (Through Interpreter) No.

                                                         39

1    Q.  Did you learn at some point that a bench

2  warrant for your arrest had been issued because you did

3  not appear in court on July 25th, 2007, for your

4  arraignment?

5         MR. WALLACE:  Assumes facts not in evidence,

6  foundation.

7         THE WITNESS:  (Through Interpreter) Yes.

8  BY MR. NARITA:

9    Q.  (Through Interpreter) And were you actually

10  arrested because of your failure to appear in court?

11         MR. WALLACE:  Objection; foundation.

12         THE WITNESS:  (Through Interpreter) No.

13  BY MR. NARITA:

14    Q.  (Through Interpreter) How did you learn that a

15  bench warrant had been issued for your arrest in

16  connection with your failure to appear in court for your

17  July 25th, 2007, arraignment?

18         MR. WALLACE:  Objection; foundation, assumes

19  facts not in evidence.

20         THE WITNESS:  (Through Interpreter) Because an

21  officer went to my house to arrest me.

22  BY MR. NARITA:

23    Q.  (Through Interpreter) And what did he say to

24  you?

25    A.  (Through Interpreter) That I had a warrant for

40

1  my arrest.

2      Q.  And what did you say to the officer?

3      A.  I showed him some proofs that I had, and he

4  then let me go.  He did not arrest me.

5      Q.  Did he tell you that you had failed to appear

6  on the date you were supposed to appear?

7      A.  No.

8      Q.  Was there anyone else from your family at home

9  with you when the officer came to arrest you?

10     A.  No.

11     Q.  So you were alone at the house?

12     A.  Yes.

13     Q.  Was that upsetting to you when the officer came

14  to your home and said he was going to arrest you?

15     A.  Yes.

16     Q.  Did you appear in court after the date that the

17  officer came to arrest you to explain to the court why

18  you had not appeared back in July?

19     A.  Yes.

20     Q.  Do you remember appearing on November 16, 2007,

21  before Judge Efren Iglesia?

22     A.  Yes.

23     Q.  And do you remember a discussion at that time

24  with the court about the fact that the court had issued

25  a bench warrant for your arrest?

41

 1          MR. WALLACE:  Objection; foundation.

 2          THE WITNESS:  (Through Interpreter) No.

 3   BY MR. NARITA:

 4      Q.  (Through Interpreter) Do you remember that

 5   there was an attorney there from the District Attorney's

 6   office from Monterey County?

 7      A.  (Through Interpreter) No.

 8      Q.  Okay.  Do you remember that the court

 9   rescheduled another hearing for January 30th, 2008, for

10   your arraignment?

11      A.  Yes.

12      Q.  And you did appear in court on January 30th,

13   2008, in connection with your arraignment for the

14   misdemeanor of driving a car with a suspended or revoked

15   license, correct?

16      A.  Yes.

17      Q.  And you pled guilty to that charge at that

18   time, correct?

19          MR. WALLACE:  Objection; foundation.

20          THE WITNESS:  (Through Interpreter) Yes.

21   BY MR. NARITA:

22      Q.  (Through Interpreter) And you were placed on

23   probation for a period of three years, correct?

24      A.  (Through Interpreter) Yes.

25      Q.  And did they assign you a probation officer?

                                                          42

## CERTIFICATE OF DEPOSITION OFFICER — FEDERAL COURT

I, _Debby Clary, CSR #9705_____, duly authorized to administer oaths, hereby certify that at the commencement of the foregoing deposition, the witness stated, under penalty of perjury, that he or she would testify the truth, the whole truth, and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and place therein stated; that the testimony of said witness was reported by me and was thereafter transcribed by me (or under my direction) into typewriting by computer; that the foregoing is a full, complete and true record of such testimony; and that the deponent or a party requested review of the deposition prior to completion of the deposition; and that the deponent was given an opportunity to review the deposition.

I FUTHER CERTIFY that I am not of counsel or attorney for any of the parties in the foregoing deposition and caption named, nor in any way interested in the outcome of the cause named in said caption.

_____
Deposition Officer

I hereby certify this copy is a true and exact copy of the original

_Debby Clary_
Deposition Officer          SEP 2 3 2008

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MANUEL G. FAUSTO, AND LUZ           )
FAUSTO,                             )
                                    )
              Plaintiff,            )
                                    )
        -vs-                        )
                                    )    No. C07 05658 JW
CREDIGY SERVICES CORPORATION,       )    RS
CREDIGY RECEIVABLES INC.,           )
CREDIGY SOLUTIONS INC., RYAN        )
MILLER, RICHARDO VENTURA,           )
BRETT BOYDE, PAULO PERES,           )
THOMPSON, and DOES 1-10,            )
inclusive,                          )
                                    )
              Defendants.           )
                                    )

CERTIFIED COPY

DEPOSITION OF VICTOR MUNOZ

BE IT REMEMBERED:  That pursuant to Notice of
Taking Deposition and on Thursday, October 9, 2008,
commencing at the hour of 1:58 p.m. of said day, before
me, Martha Ruble, Certified Shorthand Reporter, License
Number CSR-5145, personally appeared VICTOR MUNOZ, called
as a witness herein, at 2131 The Alameda, Suite D, San
Jose, California, and being by me first duly affirmed,
was examined in said cause.

Talty Court Reporters, Inc.

2

1    A P P E A R A N C E S :

2

3       For the Plaintiff:    LAW OFFICE OF BALAM O. LETONA,

4                             INC.

5                             1347 Pacific Avenue

6                             Suite 203

7                             Santa Cruz, California 95060-3940

8                             BY:   BALAM O. LETONA, Esq.

9                             831 421-0200

10                                 ***

11      For the Defendant:    SIMMONDS & NARITA LLP

12                            44 Montgomery Street

13                            Suite 3010

14                            San Francisco, California 94104

15                            BY:   TOMIO NARITA, Esq.

16                                 ***

17

18      Also Present:        Kathy Thoresen

19

20

21

22

23

24

25

Talty Court Reporters, Inc.

DEPONENT:   VICTOR MUNOZ 10/9/08

4

1           (Whereupon Defendant's Exhibit No. 1

2           was marked for identification.)

3                    VICTOR MUNOZ,

4    having been first duly affirmed to tell the truth, the

5    whole truth, and nothing but the truth, testified as

6    follows:

7              EXAMINATION BY MR. NARITA

8         Q.   Good afternoon.

9         A.   Good afternoon.

13:58:42 10   Q.   Sir, could you just for the record state your

11   full name.

12        A.   Victor Munoz.

13        Q.   Mr. Munoz, my name is Tomio Narita, and I am an

14   attorney for the Credigy entities.  They have been sued

15   in a lawsuit by Manuel Fausto and Luz Fausto.  And I'm

16   here today representing them, and we are here for your

17   deposition.  Have you had your deposition taken before?

18        A.   No.  First time.  It's all new to me.

19        Q.   Well, it's virtually painless.  But let me

13:59:24 20  explain this briefly, some of the procedures that we use

21   here.  You're under oath, so your testimony this

22   afternoon has the same force and effect as if we were

23   right in a courthouse in front of a judge and jury.  So

24   for that reason it's important to make sure you hear and

25   understand my question before you give an answer.  Okay?

21

1    Q.   That wasn't at first?

2    A.   Further than the first meeting.

3    Q.   We will talk about that more later, perhaps.

4         So during the -- during the first meeting that

5    you had with her, did she -- did she tell you whether or

6    not she was presently current on her mortgage?

7         MR. LETONA:  Objection.  Asked and answered,

8    calls for speculation, object as to form, lacks

9    foundation, go ahead and answer.

14:20:00 10       THE WITNESS:  She did not mention that.

11   BY MR. NARITA:

12   Q.   So you don't know --

13   A.   I don't recall that she was late already.

14   Q.   Did you recommend to her that she should stop

15   paying her mortgage?

16   A.   No.  Being real estate licensed, I cannot do

17   that recommendation.  What I did mention to her, that a

18   lot of times of the lenders don't want to negotiate with

19   them unless they are behind.  But I never mentioned or

14:20:28 20   suggested that she stop making payments.  That's not

21   something that I can advise somebody.

22   Q.   Why not?

23   A.   Like I said, being a real estate license, I

24   can't advise not to make the payment.

25   Q.   Do you know if it's lawful to advise someone to

Talty Court Reporters, Inc.

DEPONENT:     VICTOR MUNOZ 10/9/08

44

```
 1   STATE OF CALIFORNIA    )
                            )
 2   COUNTY OF SANTA CLARA )

 3

 4       I, Martha Ruble, a Certified Shorthand Reporter,

 5   License Number 5145, hereby certify that the witness in

 6   the foregoing deposition, VICTOR MUNOZ, was duly sworn by

 7   me to tell the truth in the above-entitled cause; that

 8   said deposition was taken at the time and place therein

 9   named; that the testimony of said witness was reported by

10   me, a disinterested person, to the best of my ability,

11   and was thereafter transcribed under my direction and

12   supervision.

13       IN WITNESS WHEREOF, I have hereunto set my hand.

14   Date:  October 15, 2008_____

15       Signing of the deposition by the deponent was waived

16   by stipulation at the time of the taking of the

17   deposition._____

18       The deponent personally appeared on the_____

19   day of_____, _____and upon said

20   date read and signed the deposition.

21       Upon completion of the transcript of the deposition,

22   the deponent was notified that it was ready for

23   signature, but did not sign said deposition for the

24   following reason:_____

25   Date:_____
```

Talty Court Reporters, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "D"

From: JANNEY & JANNEY COURT SERVICES   4138024          08/25/2008 15:50   #051 P.002/003

AUG-25-2008  13:40         SAYLER LEGAL SVC                    831 384 4031      P.02

Recording requested by:
LandAmerica United Title Company- CA

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

DFF2008016750092B

Stephen L. Vagnini          CRCATHY
Monterey County Recorder    6/10/2008
Recorded at the request of  14:19:3B
Filer

DOCUMENT: 2008037506   Titles: 1/ Pages: 2

Fees            12.00
Taxes
Other
AMT PAID       $12.00

Space above this line for Recorder's use only

Trustee Sale No.: 20080187509325          Title Order No.:

IMPORTANT NOTICE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $12,156.05 as of 6/7/2008 and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

FCU25_NoticeOfDefault.rpt-Report - 03/29/2007 - Ver:19                Page 1 of 2



EXHIBIT

2

10-3-08

**IMPORTANT NOTICE**
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Trustee Sale No. : 20080187509825          Title Order No.:

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

CHASE HOME FINANCE, LLC
c/o NDEx West, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**NOTICE IS HEREBY GIVEN THAT:** NDEx West, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 03/11/2007, executed by JOSE GUADALUPE FAUSTO, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), as Beneficiary Recorded on 03/26/2007 as Instrument No. 2007097042 of official records in the Office of the Recorder of MONTEREY County, California, as more fully described on said Deed of Trust  including a Note(s) Unconditional Guaranty which had a principal amount of $530,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 3/1/2008 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 6/7/2008

NDEx West, LLC as Agent for Beneficiary
By: LandAmerica United Title Company - CA, authorized agent

By:

**END OF DOCUMENT**

FCUS_NoticeOfDefault.rpt-Record - 02/29/2007 - Ver 19          Page 1 of 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "E"

# Welcome to Simplect

**Simplect Us** nls

■ -- Systems --    ■ -- Management --    ■ -- Services --    ■ -- Intranet --

■ **Collections System** ↳

| | |
|---|---|
| **Debtor Name** | MANUEL G FAUSTO |
| **Total Debt** | US$ 24,864.16 |
| **Queue** | Internal/Queue allocation holding area |

**SSN** 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
**No. of Accounts** 1account(s)
**Collector** Repository

🔵 SPEAK TO ATTY ONLY – Debtor is represented by attorney
🔵 Dispute has been resolved – Account # 10742223
🔵 *Account # 10742223 is in Legal System*
🔵 Legal – There is at least one account with the Stale Date expired for this Litigation

🔵 Counter claim filed – please review the file before proceding - Account # 10742223
🔵 No Validation Letter has been sent – Account # 10742223
🔵 DO NOT CALL – counterclaim has been filed
🔵 *Do not collect – not allowed legal status*

**Account Responsibles**
**AccountID**        **Original Debtor**           **Co-Obligor**
10742223             MANUEL G FAUSTO (Active)

Tracking | Actioning | Debtor Info | System | Negotiation | Results | Documents
CBR. | Hard Skip | | Flags | | | |

**Legend** ☐ **HelpDesk** ☐ **Collections** ☐ **System** ☐ **Not Classified** ☐ **Backoffice** ☐ **Warning** ☐ **Ext. Resource**

**TRACKING**
Always read all the Occurrencies before any contact with the debtor

| DATE | ACTION | | COLLECTOR | DESCRIPTION |
|---|---|---|---|---|
| Jan 10, 2008 at 16:01:07 | System Event | | public | System instructions : AccNo. 10742223 Campaign ID updated to 13 Julyana Aparecida Duarte Mizael e Silva's request for the reason: Miner Selection ProcessID 64619 |
| Jan 10, 2008 at 03:05:08 | System Event | | public | System instructions : AccNo. 10742223 Campaign ID updated to 44 Marcel Tadachi Saito's request for the reason: Miner Selection ProcessID 64584 |
| Jan 09, 2008 at 13:44:31 | System Event | | mairie | AccountID: 10742223 - The "Activated for Interest" Flag was activated. |
| Jan 09, 2008 at 13:43:50 | System Event | | mairie | System instructions : System instructions : AccNo. 10742223 was moved to Internal US/Adverse Litigation. |
| Jan 09, 2008 at 13:42:36 | System Event | | mairie | The debtor # 10662230 was transferred to Legal System. |
| Jan 04, 2008 at 16:18:40 | System Event | | Clackson | AccountID: 10742223 - The "CounterClaim Collection" Flag was activated. |
| Jan 04, 2008 at 16:18:32 | System Event | | Clackson | The "Represented By Attorney" Flag was activated. |
| Jan 02, 2008 at 18:06:20 | 3rd Party | | adias | Scheduled for 10/01/2008 18:05debtor not in, msg left (831) 675-1698 |
| Dec 21, 2007 at 14:40:56 | Phone always Busy | | jfmelo | Scheduled for 01/01/2008 14:41 |
| Dec 15, 2007 at 13:41:14 | Phone doesn't answer | | jfmelo | Scheduled for 24/12/2007 13:41 |
| Dec 03, 2007 at 16:14:53 | 3rd Party | | eisilva | Scheduled for 08/12/2007 16:10woman said he would be there within 2.30min |
| Nov 23, 2007 at 16:16:39 | Talked to Debtor | | eisilva | Scheduled for 30/11/2007 15:58talked to c1s wife she said it has been paid but acct is lying to ge away with since had disputed the acct and received all the necess info about it / in short is unwilling to negotiate |
| Nov 15, 2007 at 16:31:15 | 3rd Party | | eisilva | Scheduled for 22/11/2007 16:27spoke with wife, Did disclosure, NOT worried at all. TOld to call back at 3pm her time. (vbarbieri) - spanish. |
| Nov 14, 2007 at 00:00:00 | Collection Letter Issued | | public | Collection Letter Issued: GLBA Notice + Collection Letter issued by PCI Group: DD02_CSC – 50% discount sent to Account: 10742223 - Balance: 22509.36 Requested by – Diana de Matos Gregores |
| Sep 12, 2007 at 03:38:17 | System Event | | public | Flag "IA Review" De-activated - AccID: "10742223" |
| Sep 10, 2007 at 00:54:00 | System Event | | public | Flag "IA Review" Activated - AccID: "10742223" |

FA0001049

# Welcome to Simplect

| Date/Time | User | Event | Notes |
|---|---|---|---|
| Aug 07, 2007 at 02:10:19 | public | System Event | System instructions : SX Systems |
| Aug 05, 2007 at 23:14:48 | public | System Event | Flag "IA Review" De-activated - AcctID: "10742223" |
| Jul 31, 2007 at 05:12:52 | public | System Event | Flag "IA Review" Activated - AcctID: "10742223" |
| Jul 26, 2007 at 11:18:36 | rventura | Message Left | Scheduled for 01/08/2007 13:00left a message |
| Jul 20, 2007 at 12:47:57 | rventura | Message Left | Scheduled for 26/07/2007 14:00left a message |
| Jul 13, 2007 at 10:53:19 | rventura | Message Left | Scheduled for 20/07/2007 12:00left a message |
| Jul 06, 2007 at 12:53:52 | rventura | Message Left | Scheduled for 13/07/2007 14:00left a message on a machine |
| Jun 06, 2007 at 06:26:06 | public | System Event | System instructions : System instructions : Collection Letter issued by PCI Group: DD02_CSC_BZ - 45% discount - sent to Account: 10742223 - Balance: 19955.1700. Requested by – Diana de Matos Gregores |
| Jun 01, 2007 at 06:43:05 | public | System Event | System instructions : AccNo. 10742223 Campaign ID updated to 62 Mariam Arakawa Irie's request for the reason: Miner Selection ProcessID 49393 |
| May 22, 2007 at 12:06:40 | rventura | Phone doesn't answer | Scheduled for 28/05/2007 13:00no answer |
| May 16, 2007 at 14:59:47 | rventura | Phone doesn't answer | Scheduled for 22/05/2007 16:00no answer |
| May 11, 2007 at 00:00:00 | public | Dialer Event | Collection Dialer Returns to DebtorId: 10662230 - call status: Machine Left Message - Phone Dialed: (831) 675-1698 - Call happened at: 5/11/2007 1:09:16 - Duration: 32 seconds. |
| May 11, 2007 at 00:00:00 | public | Dialer Event | Collection Dialer Returns to DebtorId: 10662230 - call status: Machine Left Message - Phone Dialed: (831) 675-1698 - Call happened at: 5/11/2007 8:39:26 - Duration: 32 seconds. |
| May 10, 2007 at 00:00:00 | public | Dialer Event | Collection Dialer Returns to DebtorId: 10662230 - call status: Machine Left Message - Phone Dialed: (831) 675-1698 - Call happened at: 5/10/2007 5:39:18 - Duration: 32 seconds. |
| May 02, 2007 at 15:29:54 | rventura | Phone doesn't answer | Scheduled for 07/05/2007 12:00no answer |
| May 02, 2007 at 15:27:18 | lnunes | Phone doesn't answer | Scheduled for 02/05/2007 15:26postpone |
| May 02, 2007 at 02:03:36 | lmatsuda | System Event | System Instructions : Accno. 10742223 moved between portfolios Lye Fujisaki Matsuda´s request |
| Apr 28, 2007 at 00:00:00 | public | Dialer Event | Collection Dialer Returns to DebtorId: 10662230 - call status: Hung Up in Opening - Phone Dialed: (831) 675-1698 - Call happened at: 4/28/2007 11:55:21 - Duration: 20 seconds. |
| Apr 23, 2007 at 00:00:00 | public | Dialer Event | Collection Dialer Returns to DebtorId: 10662230 - call status: Machine Left Message - Phone Dialed: (831) 675-1698 - Call happened at: 4/23/2007 1:27:54 - Duration: 33 seconds. |
| Apr 23, 2007 at 00:00:00 | public | Dialer Event | Collection Dialer Returns to DebtorId: 10662230 - call status: Answering Machine (Hung Up) - Phone Dialed: (831) 675-1698 - Call happened at: 4/23/2007 3:16:04 - Duration: 3 seconds. |
| Apr 23, 2007 at 00:00:00 | public | Dialer Event | Collection Dialer Returns to DebtorId: 10662230 - call status: Answering Machine (Hung Up) - Phone Dialed: (831) 675-1698 - Call happened at: 4/23/2007 9:37:06 - Duration: 3 seconds. |
| Apr 18, 2007 at 00:00:00 | public | Dialer Event | Collection Dialer Returns to DebtorId: 10662230 - call status: Machine Left Message - Phone Dialed: (831) 675-1698 - Call happened at: 4/18/2007 9:12:47 - Duration: 32 seconds. |
| Apr 13, 2007 at 15:47:14 | rventura | Message Left | Scheduled for 20/04/2007 17:00left a message with a lady |
| Apr 13, 2007 at 15:21:52 | lnunes | Phone doesn't answer | Scheduled for 13/04/2007 15:19postpone |
| Apr 10, 2007 at 00:00:00 | dgregores | Collection Letter Issued | Collection Letter issued by Datamatx: DD02_CSC_BZ_DATAMATX – 45% discount sent to Account: 10742223 requested by – Diana de Matos Gregores |
| Apr 09, 2007 at 00:00:00 | public | Dialer Event | Collection Dialer Returns to DebtorId: 10662230 - call status: Answering Machine (Hung Up) - Phone Dialed: (831) 675-1698 - Call happened at: 4/09/2007 9:44:28 - Duration: 2 seconds. |
| Apr 09, 2007 at 00:00:00 | public | Dialer Event | Collection Dialer Returns to DebtorId: 10662230 - call status: Machine Left Message - Phone Dialed: (831) 675-1698 - Call happened at: 4/09/2007 1:56:59 - Duration: 32 seconds. |
| Apr 07, 2007 at 11:53:09 | lnunes | Phone doesn't answer | Scheduled for 15/04/2007 08:00(831) 675-1698 |
| Mar 30, 2007 at 11:19:11 | lnunes | In Negotiation | Scheduled for 08/04/2007 11:04told debtor she must send any prof that this account was already paid off or we re gonna continue to collection process according to the FDCPA (831) 675-1698 |
| Mar 30, 2007 at 11:08:00 | rventura | Talked to Debtor | Scheduled for 06/04/2007 13:00talked to debtor and transfer to Renato |
| Mar 23, 2007 at 12:04:31 | lnunes | Talked to Debtor | Scheduled for 30/03/2007 08:00she said her atty is gonna call us for sure today (831) 675-1698 |
| Mar 23, 2007 at 10:30:24 | lnunes | Phone doesn't answer | Scheduled for 30/03/2007 10:28postpone 0629am |
| | lnunes | Debtor Hung | LV – WOMAN ASKED FOR SOMEONE THAT SPEAKS SPANISH. ASKED HER TO HOLD. WHEN RDOMINGUES CAME |

http://www.credigy.net/simplect/systems/collect/collect.asp?id=10662230

FA0001050

Welcome to Simplect

Page 3 of 5

| Date | Type | User | Description |
|---|---|---|---|
| Mar 17, 2007 at 12:42:11 | up | ACompani | ON THE LINE SHE HUNG UP |
| Mar 17, 2007 at 00:00:00 | Dialer Event | public | Dialer Returns to Debtor Id: 10662230 - call status: Operator Transfer - phone dialed: (831) 675-1698 - Call happened at: 3/17/2007 12:39:23 - Duration: 116 seconds. |
| Mar 16, 2007 at 12:22:27 | In Negotiation | Inunes | Scheduled for 23/03/2007 08:00after disclousure, C2 updtd address , said her atty is about to call us in order to negotiate this account .1 (831) 675-1698 |
| Mar 16, 2007 at 12:16:21 | Talked to Debtor | rventura | Scheduled for 23/03/2007 14:00talked to Luz Maria andtransferred to Renato after diclosure all info regard to this ACC |
| Feb 27, 2007 at 19:29:33 | 3rd Party | cdsilva | Scheduled for 05/03/2007 19:28 not in |
| Feb 27, 2007 at 00:00:00 | Dialer Event | public | Collection Dialer Returns to Debtor Id: 10662230 - call status: Operator Transfer - Phone Dialed: (831) 675-1698 - Call happened at: 2/27/2007 7:29:01 - Duration: 82 seconds. |
| Feb 16, 2007 at 18:32:41 | 3rd Party | rgoncalves | Scheduled for 23/02/2007 18:22 (831) 675-1698 Talked to debtors wife who advised me lawyer is taking care of the acct. She will call me back tomorrow (17Feb) to give lawyers number so I can call him on Monday. |
| Feb 13, 2007 at 00:00:00 | Dialer Event | public | Collection Dialer Returns to Debtor Id: 10662230 - call status: Listened - Phone Dialed: (831) 675-1698 - Call happened at: 2/13/2007 6:37:06 - Duration: 55 seconds. |
| Jan 23, 2007 at 00:00:00 | Dialer Event | public | Collection Dialer Returns to Debtor Id: 10662230 - call status: Hung Up in Opening - Phone Dialed: (831) 675-1698 - Call happened at: 1/23/2007 6:34:36 - Duration: 62 seconds. |
| Jan 22, 2007 at 00:00:00 | Dialer Event | public | Collection Dialer Returns to Debtor Id: 10662230 - call status: Not Attempted (Not Made) - Phone Dialed: (831) 675-1698 - Call happened at: 01/22/07 - Duration: 0 seconds. |
| Jan 22, 2007 at 00:00:00 | Dialer Event | public | Collection Dialer Returns to Debtor Id: 10662230 - call status: Machine Left Message - Phone Dialed: (831) 675-1698 - Call happened at: 1/16/2007 7:11:06 - Duration: 32 seconds. |
| Jan 16, 2007 at 00:00:00 | Dialer Event | public | Collection Dialer Returns to Debtor Id: 10662230 - call status: Answering Machine (Hung Up) - Phone Dialed: (831) 675-1698 - Call happened at: 1/16/2007 7:35:27 - Duration: 3 seconds. |
| Jan 16, 2007 at 00:00:00 | Dialer Event | public | Collection Dialer Returns to Debtor Id: 10662230 - call status: Hung Up in Opening - Phone Dialed: (831) 675-1698 - Call happened at: 1/10/2007 5:23:14 - Duration: 34 seconds. |
| Jan 10, 2007 at 00:00:00 | Dialer Event | public | Collection Dialer Returns to Debtor Id: 10662230 - call status: Listened - Phone Dialed: (831) 675-1698 - Call happened at: 1/05/2007 6:33:38 - Duration: 65 seconds. |
| Jan 05, 2007 at 00:00:00 | Dialer Event | public | Collection Letter issued by PCI Group: DD02_CSC_DATAMATX - 50% discount sent to Account: 10742223 Requested by - Renato Vadasz Orlandin |
| Dec 26, 2006 at 00:00:00 | System Event | public | Letter issued by PCI Group: GLBA_CRI sent to Account: 10742223 Requested by - Renato Vadasz Orlandin |
| Dec 26, 2006 at 00:00:00 | System Event | public | Collection Letter issued : VL01_CSC_BZ_DATAMATX sent to Account: 10742223 - Fernando Neri requested by On-line |
| Dec 22, 2006 at 04:04:08 | Collection Letter Issued | public | Collection Letter issued : VL01_CSC_BZ_DATAMATX sent to Account: 10742223 - Fernando Neri requested by On-line |
| Dec 22, 2006 at 04:04:08 | Collection Letter Issued | public | validation letter requested |
| Dec 21, 2006 at 14:10:50 | Manager Return | FNeri | |
| Dec 21, 2006 at 12:51:25 | Talked to Debtor | Inunes | Scheduled for 28/12/2006 12:38 told ms luz maria fausto uribe that dispute has been revolved . from now on we re gonna continue the collection process . she said that they talked to a lawyer and shes gonna give our toll free for to contact us asap( 831) 675-1698 |
| Dec 19, 2006 at 06:06:47 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2006/12/19 |
| Nov 24, 2006 at 10:32:59 | Manager Return | SBlackwell | 5. An avs was prepared and mailed to the debtor. Dispute resolved, continue with legal or collection proceedings. |
| Nov 20, 2006 at 13:54:03 | Manager Return | kervin | A written dispute letter was received by the drft. Please cease collections and legal proceedings until the dispute has been resolved |
| Nov 15, 2006 at 08:18:22 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2006/11/15 |
| Nov 14, 2006 at 11:35:40 | Manager Return | mpierre | Recd Certified Mail 70050390000027943964 from debtor requesting validation of this debt...Fwd to Customer Service |
| Nov 09, 2006 at 13:14:18 | Phone doesn't answer | Inunes | Scheduled for 16/11/2006 13:12(831) 675-1698 |
| Oct 20, 2006 at 06:48:29 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2006/10/20 |
| Oct 10, 2006 at 18:06:18 | 3rd Party | MModaneze | Scheduled for 10/10/2006 18:04 LiveVox, said neither debtor or co-signer was in, message left |
| Sep 27, 2006 at 20:03:28 | Manager Return | SBlackwell | 5. An avs was prepared and mailed to the debtor. Dispute resolved, continue with legal or collection proceedings. |
| Sep 21, 2006 at 20:02:46 | System Event | SBlackwell | AccountID: 10742223 - The "Dispute" Flag was deactivated. |
| Sep 20, 2006 at 12:59:23 | Dispute | lposton | 1. A written dispute letter was received by the drft. Please cease collections and legal proceedings until the dispute has been resolved. |

FA0001051

# Welcome to Simplect

| Date/Time | Event Type | User | Description |
| --- | --- | --- | --- |
| Sep 20, 2006 at 12:58:57 | System Event | lposton | AccountID: 10742223 - Received written dispute |
| Sep 18, 2006 at 09:14:49 | Manager Review | silvae | Recd Certified Mail 7006 0810 0003 1805 9990 from debtor...Debt is being disputed...fwd to Dispute for review. |
| Sep 18, 2006 at 09:13:23 | Manager Review | silvae | Recd Certified Mail 7006 0810 0003 1805 9990 from debtor...Debt is being disputed...fwd to Dispute for review. |
| Sep 06, 2006 at 13:08:19 | Phone doesn't answer | acfaria | Scheduled for 13/09/2006 13:06 |
| Aug 30, 2006 at 10:00:35 | Phone doesn't answer | forlandini | Scheduled for 06/09/2006 09:59pp |
| Aug 22, 2006 at 12:43:17 | Talked to Debtor | kramos | Scheduled for 25/08/2006 12:39sd will dispute the acc. |
| Aug 18, 2006 at 03:41:20 | System Event | public | System instructions : AccNo. 10742223 moved between portfolios Mariam Arakawa Irie's request for the reason: Miner Selection ProcessID 29618 |
| Aug 17, 2006 at 13:07:53 | System Event | public | System instructions : AccNo. 10742223 Campaign ID updated to 42 Marcel Tadachi Saito's request for the reason: Miner Selection ProcessID 29560 |
| Aug 16, 2006 at 13:16:21 | System Event | public | Collection Letter issued : 35% discount DD02_CSC_BZ_DATAMTX sent to Account: 10742223 - Marcel Saito 's Request |
| Aug 05, 2006 at 10:50:57 | System Event | public | System instructions : SX Systems |
| Jul 27, 2006 at 18:47:22 | System Event | public | System instructions : AccNo. 10742223 Campaign ID updated to 62 Mariam Arakawa Irie's request for the reason: Miner Selection ProcessID 28133 |
| Jul 27, 2006 at 03:44:44 | System Event | public | Flag "IA Review" De-activated - AccID: "10742223" |
| Jul 23, 2006 at 16:09:03 | Skip Process | public | Automated Best Address: Address (3145637 - 532 CHAROLAIS Dr, GONZALES CA 93926-9358, MONTEREY County) marked Best Address (Score: 9.3%). |
| Jul 23, 2006 at 16:08:19 | Skip Process | public | Skip Process: Address (3145637) marked as Correct. Automated Best Address. Old Status was (O) last updated (07/23/2006). |
| Jul 12, 2006 at 07:40:11 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2006/07/12 |
| Jul 07, 2006 at 20:40:01 | System Event | public | System instructions : Account 10742223 moved to Internal Non Legal/Warehouse Expired Sol on Jul 7 2006 |
| Jun 30, 2006 at 03:47:58 | System Event | public | Flag "IA Review" Activated - AccID: "10742223" |
| Jun 29, 2006 at 03:16:29 | System Event | public | System instructions : AccNo. 10742223 moved between portfolios Mariam Arakawa Irie's request for the reason: Miner Selection ProcessID 26011 |
| Jun 14, 2006 at 07:09:23 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2006/06/14 |
| May 19, 2006 at 02:41:41 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2006/05/19 |
| Apr 24, 2006 at 12:26:27 | Manager Return | lgammage | Per MANUEL G FAUSTO |
| Apr 24, 2006 at 12:26:13 | Manager Return | lgammage | Deleted; duplicate trade line, per CBR. |
| Apr 18, 2006 at 08:20:07 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2006/04/18 |
| Mar 15, 2006 at 06:48:32 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2006/03/15 |
| Feb 23, 2006 at 23:52:06 | System Event | snishimura | System instructions : Account moved to Internal Non Legal/Expired Sol, Atty Recall as part of the Attorney Reconciliation V - Non Judgment accounts - Requested by Rodrigo Dalla Verde |
| Feb 22, 2006 at 07:22:45 | System Event | public | System instructions : AccNo. 10742223 moved between portfolios Andrea Matuzaki's request for the reason: Miner Selection ProcessID 19485 |
| Feb 17, 2006 at 07:41:15 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2006/02/17 |
| Jan 30, 2006 at 20:50:45 | Skip Process | public | Skip Process: Address (3145637) marked as Correct. Accurint Hit best address. Old Status was (N) last updated (n/a). |
| Jan 17, 2006 at 06:30:36 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2006/01/17 |
| Dec 23, 2005 at 19:37:12 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2005/12/23 |
| Dec 02, 2005 at 06:56:18 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2005/12/02 |
| Nov 22, 2005 at 07:07:24 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2005/11/22 |
| Oct 16, 2005 at 13:13:19 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2005/10/16 |
| Aug 28, 2005 at 14:02:08 | System Event | public | System instructions : Account: 10742223 updated at CBR on 2005/08/28 |
| Nov 04, 2004 at 06:01:50 | System Warning | public | System Warning : AccNo. 10742223 did not have distribution history information deleted after Attorney Reconciliation Phase III Clean Up procedure. |

MORE TRACKINGS   SKIP NOTES   VIEW LEGAL TRACKINGS   MAIL MODULE LETTERS HISTORY

FA0001052

Welcome to Simplect

© 2007 Credigy Technologies Incorporated. All rights reserved.
Click here to view the terms of use under which Simplect™ is provided to you.
IE 6 and Mozilla 5 compatible - Intranet Guide