Balám O. Letona, Bar No. 229642
LAW OFFICE OF BALÁM O. LETONA, INC.
1347 Pacific Avenue, Suite 203
Santa Cruz, CA 95060-3940
Tel: 831-421-0200
Fax: 831-515-3110
Email: letonalaw@gmail.com

Ronald Wilcox, Bar No. 176601
LAW OFFIC OF RONALD WILCOX
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: 408-296-0400
Fax: 408-296-0486
Email: ronaldwilcox@post.harvard.edu

David Humphreys *(pro hac vice)*
Humphreys Wallace Humphreys P.C.
9202 South Toledo Ave.
Tulsa, Oklahoma 74137

Luke Wallace *(pro hac vice)*
Humphreys Wallace Humphreys P.C.
9202 South Toledo Ave.
Tulsa, Oklahoma 74137
**Attorney for Plaintiffs**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

MANUEL G. FAUSTO and LUZ FAUSTO,

Plaintiffs,

vs.

CREDIGY SERVICES CORPORATION, CREDIGY RECEIVABLES INC., CREDIGY SOLUTIONS INC., RYAN MILLER, RICARDO VENTURA, BRETT BOYDE, PAULO PERES, THOMPSON, And DOES 1-10, inclusive,

Defendants.

Case No: C07-05658 JW

**OPPOSITION TO MOTION IN LIMINE OF DEFENDANTS: Exclusion of Evidence or Comment About Other Lawsuits Filed Against Defendants; MEMORANDUM IN SUPPORT**

**The Honorable James Ware**

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

III. ARGUMENT .......... 3

A. The Testimonial and Documentary Evidence may be Admitted at Trial .......... 3

B. Plaintiffs' Proposed Evidence is Relevant .......... 4

C. Plaintiffs' Proposed Evidence is Relevant to Defendants State Law Claims .......... 7

D. Plaintiffs' Proposed Evidence is Relevant to Punitive Damages Claim .......... 8

E. Defendants Argument Falls Short of Establishing Substantial Prejudice if This Evidence is Admitted .......... 10

IV. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ajaxo, Inc. v. E-Trade Group, Inc.*, 135 Cal. App. 4th 21, 68 (2005)....................9

*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673; 25 Cal.Rptr.2d 137, 863 P.2d 207....................8

*Austin v. Terhrune*, 367 F.3d 1167. 1174 (9th Cir. 2004)....................8

*Bains v. Arco Products Co.*, 405 F.3d 764, 769 and 774-775 (2003)....................9

*Bihun v. AT&T Information Systems, Inc.*, 16 Cal. Rptr. 2d 787 (1993)....................7

*BMW of North America, Inc. v. Gore*, 517 U.S. 559, (1996)....................8

*Brooks v. U.S.A*, 29 F. Supp. 2d 613 (N.D. Cal. 1997)....................8

*Compaq Computer Corp v. Ergonome, Inc.*, 387 F.3d 403 (5th Cir. 2004)....................10

*Cusumano v. NRB, Inc.*, 1998 WL 673833 (N.D. Ill.)....................10

*Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295, 1300-1301 (9th Cir. 1981)....................9

*Evan F. v. Hughson United Methodists Church*, 8 Cal. App. 4th 828 (1992)....................8

*Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490 (7th Cir. 1998)....................12,13

*Greenfield v. Spectrum Investment Corp.*, 174 Cal. App. 3d 111, 121 (1985)....................9

*Jerman v. Carlisle, Mcnellie, Rini, Kramer, & Ulrich, LPA.*, 538 F.3d 469, 476 (6th Cir. 2008)....................4

*Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, fn 6. (2005)....................9

*Kort v. Diversified Collection Serv.*, 394 F.3d 530, 538 (7th Cir. 2005)....................4

*Ladd v. County of San Mateo*, (1996) 12 Cal.4th 913, 917 ;50 Cal.Rptr.2d 309, 911 P.2d 496....................7

*Mark K. v. Roman Catholic Archbishop of Los Angeles*, 67 Cal. App. 4th 603 (1998)....................8

*Palmer v. Board of Regents of University System of Ga.*, 208 F.3d 969 (11th Cir. 2000)....................12

*Phillip Morris USA v. Williams*, 549 US 346, 355 (2007)....................9

*Seymour v. Summa Vista, Inc.*, 809 F.2d 1385, 1388 (9th Cir. 1986)....................9

*Van Westrienan v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1109-1110 (D. Or. 2000)....................5,13

*Weiss v. Allstate Insurance, Co.*, 512 F.Supp. 2d 463 (E.D. La. 2007)....................11

*Yellow Bayou Plantation, Inc. v. Shell Chemical Inc.*, 491 F.2d 1239 (5th Cir. 1974)....................11

**FEDERAL STATUTES**

Fair Debt Collection Practices Act
42 U.S.C. § 1981....................9

**OTHER AUTHORITIES**

Evidence Code § 1101(a)....................7

Federal Rules of Civil Procedure
Fed. R. Civ. P. 32(a)(4)(D)....................3,13
Fed R. Civ P. 32(a)(3)....................4,13

Federal Rule of Evidence
Fed. R. Evid. 401....................4
Fed. R. Evid. 403....................13
Fed. R. Evid. 404(b)....................4,5,9,12
Fed. R. Evid. 801(d)(2)....................13

## I. INTRODUCTION

Plaintiffs hereby move in opposition to Defendants MIL (Docket # 242) and request this Court deny Defendants Motion in Limine. The evidence Defendants seek to exclude is relevant to rebut the bona fide error defense raised by Defendant and is further evidence of Defendants' intent, pattern and practice, knowledge, notice and absence of mistake relevant to Plaintiffs' claims.

## II. STATEMENT OF FACT

Defendants admit that Credigy Services continued collection activity after it received the Plaintiffs' cease and desist letter (*see*, Defendants Motion for Summary Judgment, CV05658-JW, Document 218 p.1 line 8-9) claiming an honest mistake and bona fide error. Plaintiffs propose to enter evidence of other instances of similar abusive and harassing collection efforts and failures of cease collection activity to rebut the claim of a good faith error, as evidence of a lack of mistake, knowledge, notice and to show that Defendants' procedures were not "reasonably adapted to avoid" the specific "errors" here. The evidence is in the form of testimony of other consumers and documentary evidence of other similar complaints presented during examination of Credigy's corporate representative.

Scott Lloynd was designated as Defendants 30(b)(6) deponent on complaints and lawsuits regarding unlawful collection practices. *See* Declaration of Luke Wallace in Support of Plaintiffs' Opposition to Defendants' Motion in Limine Re Exclusion of Other Lawsuits Evidence and Opposition to Defendants' Motion in Limine Exclusion of Evidence Re Tape Recording ("Wallace Decl.") at Ex. A [Credigy FRCP 30(b)(6) Lloynd 62:14-21]. Defendants testified that there is no system to record, track or analyze the numbers of or trends in FDCPA complaint types. *Id.* Ex. A [Credigy FRCP 30(b)(6)Lloynd Depo 31:17-32:8]. The only way for Credigy to determine how many of the hundreds of FDCPA complaints against it pertain to failing to honor cease and desist demands would be to read every single pleading. *Id.* Ex. A [Credigy FRCP

30(b)(6) Llyond Depo 34:3-9]. Defendants supplied lists of cases in federal and state courts where claims and counterclaims were brought against the Defendants, but not the actual complaints of counterclaims themselves. Wallace Decl. at Ex. B [Third Supplemental Response of Credigy et. al. to Plaintiff Manuel Fausto's Requests for Production of Documents and Interrogatories; Set One ("Third Supp. Resp.")]. Lloynd testified that the list produced pursuant to the Order of the Magistrate contained 299 cases between 2006 and 2008. Wallace Decl. at Ex. A [Credigy FRCP 30(b)(6) Lloynd Depo 98:24-100:1]. This list was demonstrated to be incomplete and inaccurate. *Id.* Ex. A [Credigy FRCP 30(b)(6) Lloynd Depo 101:7-14; 103:10-104:12; 104:18-105:2; 111:4-15; 113:15-20]. Defendants are not able to accurately report how many claims were brought in state or federal court nor can they accurately identify the nature of the type of complaints.

Defendants confirmed that Plaintiffs were able to locate at least seven cases that were brought between the years of 2006 and 2008 involving failure to honor a written cease and desist demand. *Id.* Ex. A [Credigy FRCP 30(b)(6) Lloynd Depo 41:10-68:17 and Deposition Exhibits 19-25].[1] This number only represented the federal complaints that could be located and reviewed by Plaintiffs and none of the numerous state law complaints or counterclaims that Credigy did not produce. Defendants also confirmed at least twelve (12) cases involving claims that the Defendants failed to properly respond to consumer letters disputing debts alleged to be done by Credigy. *Id.* Ex. A [Credigy FRCP 30(b)(6) Lloynd Depo. 728:15-150:18; 158:25-160:13; and

[1] These cases include *Merrit v. Credigy Receivables*, U.S. District Court Western District of Kentucky, Case # 3:06CV443-S; *Heath v. Credigy Receivables*, Circuit Court of Jefferson County, State of Alabama, Case # CV200830041; *Del Rio v. Credigy Receivables*, San Diego County Superior Court, State of California, Case # 37-2008-00071968-CU-NP-SC; *Credigy Receivables v. Banghart*, 54A District Court for the County of Ingham, State of Michigan, Case # 07-0080-GC; *Nolan v. Credigy Services*, Polk County Circuit Court, State of Florida, Case # 53-2007 CA-007403-0000-00; *Schoenberger v. Credigy Receivables*, Duval County Court, State of Florida, Case # not on the documents; *Credigy Receivables v. Zullo*, Middlesex County Superior Court, State of New Jersey, Case # DC-8984-08.

Deposition Exhibits 31-41 and 43].[2] Because Defendants' claim to keep no records and due to the enormous time and expense that would be required for Plaintiffs or their counsel to travel and hand search state court records and to locate and review PACER records, no complete tally of similar claims exists. The complaints cited herein are merely examples of similar complaints.

It is economically unfeasible to do a thorough search of every state and Federal Court in order to locate and review every single complaint against the Defendants that is similar to the claims being brought by the Faustos. If it was logistically possible to bring witnesses and documents regarding every case ever filed against the Defendants, it would overburden this Court with duplicative testimony and documents. No such thing is sought by the Plaintiffs.

## III. ARGUMENT

### A. The Testimonial and Documentary Evidence may be Admitted at Trial.

Defendants wish to prevent the jury from hearing deposition testimony of other individuals who were abused by the Defendants use of similar collection practices, the deposition testimony of a 30(b)(6) deponent who testified about a variety of past cases against the Defendants involving similar acts, and evidence of past lawsuits including a list of state and federal cases involving claims and counterclaims for similar activity by the Defendants. Fed. R. Civ. P. 32(a)(4)(D) allows the use of deposition testimony at trial if the witnesses' attendance cannot be procured by subpoena. Three such witnesses, Jill Ostrowski, Stacey Beane, and Gretchen Fox, live

[2] These case include *Credigy Receivables v. Hickman,* Clark County Municipal Court, State of Ohio, Case # 2007CVF4533; *Credigy Receivables v. Fulton,* Cape Girardeau County Court, State of Missouri, Case # 08CG-AC01151; *Credigy Receivables v. Cook,* Brockton District Court, Commonwealth of Missouri, Case # 0715CV1775; *Credigy Receivables v. Basinger,* Adams County Court, State of Ohio, Case # 08cvf228; *Alford v. Discover et al.*, 45A District Court, State of Michigan, Case # 08-2302-GC; *Credigy Receivables v. Marcus,* Bronx County Civil Court, State of New York, Case # 093769/06; *Credigy Receivables v. Martin,* Early County Superior Court, State of Georgia, 07-CV-336; *Credigy Receivables v. Pietanza,* Hudson County Superior Court, State of New Jersey, Case # 018123-07; *Revenaugh v. Credigy Receivables,* Muskingum County Court, State of Ohio, Case # CVF 0800654; *Credigy Receivables v. Sanders,* Fairborn Municipal Court, Green County Ohio, 06-CVF-01998; *Credigy Receivables v. Smith,* Tioga County Court, State of New York, Case # 34745/06; *Credigy Receivables v. Wood,* Rhode Island District Court third division, Case # CA 7-0877.

respectively in Illinois, Pennsylvania and New Mexico, and are beyond the subpoena power and the Court. Credigy has represented that it intends to appear at trial without any corporate representatives during the Plaintiffs' case in chief. An adverse party may use the testimony of a 30(b)(6) designee at trial. Fed R. Civ P. 32(a)(3). Plaintiffs will show that this evidence and the evidence of other lawsuits is relevant under Fed. R. Evid. 401 and admissible under Fed. R. Evid. 404(b) to show knowledge, absence of mistake, intent, and a pattern and practice of behavior by the Defendants.

Defendants seek to exclude evidence of suits filed from 2006 to 2008 by comparing that number to the number of accounts it purchased back in 2002. Defendants' proposition goes to the weight, not admissibility, of this evidence.

**B. Plaintiffs' Proposed Evidence is Relevant.**

Defendants have alleged the affirmative defense of bona fide error under the FDCPA. There are three elements to the bona fide error defense (1) the violation cannot be intentional; (2) the violation was a bona fide error and not a contrived mistake; and (3) the procedures maintained by the defendant were reasonably adapted to avoid any such errors. *Jerman v. Carlisle, Mcnellie, Rini, Kramer, & Ulrich, LPA.*, 538 F.3d 469, 476 (6th Cir. 2008). Evidence of other similar complaints is relevant to at least the second and third elements of the defense.

The evidence Plaintiffs wish to present will demonstrate that Defendants claim that there action was not a bona fide error because Defendants knew its procedures were not "reasonably adapted." On multiple occasions, Defendants have been sued for their failure to honor cease and desist letters and to properly respond to dispute letters. These suits tend to show that Defendants have knowledge that their procedures are inadequate and that the error was not bona fide.

A bona fide error is one made in good faith and is a genuine mistake as opposed to a contrived mistake. *Kort v. Diversified Collection Serv.*, 394 F.3d 530, 538 (7th Cir. 2005). Testimony of other consumers claiming to have been abused and harassed by the same collection

agency has been admitted under Federal Rule of Evidence 404(b) to show the collection agency had a history or plan of aggressive debt collecting. *Van Westrienan v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1109-1110 (D. Or. 2000). The evidence is admissible under the Federal Rule of Evidence 404(b) which specifically makes an exception for the use of other wrongs and acts to establish intent, knowledge, or absence of mistake. The evidence of other past acts tends to show that this was not an isolated genuine mistake but a problem which Defendants knew existed but chose to ignore.

The Plaintiffs have additional evidence bearing on the willful neglect by Credigy of its Dispute Resolution Team. Credigy's Dispute Resolution Team was the department responsible for processing all disputes and cease and desist demands. Wallace Decl. Ex. I [Poston Depo. 25:2-5]. The Dispute Resolution Team was understaffed and overwhelmed by the sheer volume of dispute and cease and desist letters that were received by Credigy during the relevant time period and Defendants were aware or should have been aware that errors were occurring. When Leticia Poston first became an employee of the Defendants in July, 2004, there were buckets of consumer letters in tubs waiting for a response from the Defendants. *Id.* Ex. I [Poston Depo. 17:18-18:5]. In her time working these letters, the closest they came to being caught up was to work on letters that had been received within the last couple of months. *Id.* Ex. I [Poston Depo. 25:16-27:12]. The team was not given the support needed to do the job correctly. *Id.* Ex. I. [Poston Depo.14:16-22]. Although Poston, a trained paralegal with an MBA and former employee of the Fulton County Court, had been hired on to review and sign letters authored by the Dispute Resolution Team, because of her concerns about Credigy's procedures, she refused to sign any letters sent by Credigy. *Id.* Ex. I [Poston Depo, 24:10-15; 44:25-46:4].

Ms. Poston testified that the long hours and extreme work load resulted in cease and desist letters being mishandled. She also testified that the sheer volume was too much for the Dispute Resolution team to keep up with. *Id.* Ex. I [Poston Depo. 66:24-67:12]. Finally, she also testified

that she did everything she could to make management aware of the problems they were having processing the overwhelming volume of dispute and cease and desist letters and instead of increasing the staff of the Dispute Resolution Team, management actually decreased the amount of help that was available. *Id.* Ex. I [Poston Depo. 33:11-16; 34:9-14; 36:9-13; 66:17-23]; Ex. J [Ervin Depo. 112:18-114:12].

The above evidence, coupled with the evidence of repeated consumer complaints, tends to establish that the "errors" here were not bona fide. Gretchen A Fox lives in New Mexico. Wallace Decl. Ex. K [Fox Depo, 5:20-24]. Her former husband had a Discover card that she did not agree to be responsible to pay and never used. *Id.* Ex. K [Gretchen Fox Depo. 9:21-25; 10:1-4]. She wrote Credigy and asked them to provide proof that her name was on the account as stated by a collector. *Id.* Ex. K [Fox Depo. 11:24-25; 12:5; 13:17-20]. The collector's tone of voice was angry and intimidating. *Id.* Ex. K [Fox Depo. 14:10-16]. Ms. Fox hired a lawyer to write Credigy to obtain proof that the debt was owed by her. *Id.* Ex. K [Fox Depo. 15:10-13]. The letter requested something signed by Ms. Fox to prove the debt was hers. *Id.* Ex. K[Fox Depo. 16:15-21]. Credigy did not respond. *Id.* Ex. K [Fox Depo. 17:12-17]. Credigy continued its collection efforts. *Id.* Ex. K [Fox Depo. 20:22-25]. A lawyer from the Senior Citizen Law Office sent by facsimile a second letter to Credigy *Id.* Ex. K [Fox Depo. 22:21-24; 23:2-7] this time demanding Credigy to cease and desist further communication with Ms. Fox. *Id.* Ex. K [Fox Depo. 26:15-22; 27:13-21]. Credigy continued to collect on the debt and contacted Ms. Fox following receipt of the written cease and desist. *Id.* Ex. K [Fox Depo. 27:19-25; 28:3-22]. The phone calls did not stop after the cease and desist, so Ms. Fox retained a third lawyer who sued Credigy. *Id.* Ex. K [Fox Depo. 29:5-14; 31:4-17].

The evidence Plaintiffs wish to present also tends to show that the Defendants knew or should have known that the procedures they claim were in place were inadequate and not effectively preventing errors in the dispute resolution process. Multiple claims and counterclaims

have been filed against the Defendants for their failure to properly process consumer dispute and cease and desist letters which tends to show that the Defendants' alleged procedures were not reasonably adapted to prevent such errors.

**C. Plaintiffs' Proposed Evidence is Relevant to Defendants State Law Claims.**

Due to the similarities between the FDCPA and the Rosenthal Act, the above arguments for relevance to the FDCPA are also applicable to the Plaintiffs' Rosenthal Act claims.

Plaintiffs proposed evidence specifically address the knowledge of the Defendants that abusive collection practices were being engaged in by their employees and agents, knowledge that the supervision of these employees was inadequate to prevent these abuses, knowledge that the training of these employees was insufficient to prevent these abuses, and knowledge that the actions of its employees would cause harm to the Plaintiffs.

In an action for damages by an employee against her former employer arising from sexual harassment by one of the employer's senior officials, evidence of that official's sexual misconduct with other female employees was not inadmissible under Evidence Code § 1101(a)(inadmissibility of character evidence to prove conduct on specific occasion). *Bihun v. AT&T Information Systems, Inc.*, 16 Cal. Rptr. 2d 787 (1993). The evidence was not introduced to prove the official's conduct on a particular occasion, but rather to prove the employer's knowledge or opportunity to learn of the official's misconduct. Similarly, Credigy knew its Dispute Resolution Team's procedures and collection procedures were woefully inadequate such that it cannot establish the second ("bona fide error") or third ("reasonably adapted procedures") elements of its defense.

Under California law, elements of negligence include: (1) The defendant had a legal duty to conform to a standard of conduct to protect the plaintiff, and (2) the defendant failed to meet the required standard of conduct. *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 ;50

Cal.Rptr.2d 309, 911 P.2d 496; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673; 25 Cal.Rptr.2d 137, 863 P.2d 207. The evidence of other claims goes to the reasonableness of Defendants' conduct in the face of notice of significant failures of its procedures.

A cause of action for negligent infliction of emotional distress requires that plaintiff show (1) serious emotional distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress. *Brooks v. U.S.A,* 29 F. Supp. 2d 613 (N.D. Cal. 1997), *Austin v. Terhrune*, 367 F.3d 1167. 1174 (9th Cir. 2004). Past acts and the subsequent lawsuits for acts similar to those in the present dispute are evidence of knowledge that Defendants actions would cause such distress.

California also recognizes that an employer may be held liable for the negligent retention and supervision of its employees whom are alleged to have committed tortious acts. *See generally Mark K. v. Roman Catholic Archbishop of Los Angeles*, 67 Cal. App. 4th 603 (1998); *Evan F. v. Hughson United Methodists Church*, 8 Cal. App. 4th 828 (1992). Defendants' failure to remediate a known pattern of unlawful behavior is evidence relevant to the negligent retention claim. *Mark K.*, 67 Cal. App. 4th at 611-612.

The evidence proposed by Plaintiffs is also relevant to knowledge, foreseeability of injury, pattern of behavior, intent of the Defendants, and absence of any mistake in their behavior which could raise the level of intent to a malicious disregard of Plaintiffs' rights for all of these state law claims.

**D. Plaintiffs' Proposed Evidence is Relevant to Punitive Damages Claim.**

The evidence of other claims against these Defendants offered by Plaintiffs is relevant to the degree of reprehensibility of the actions by the Defendants and consequently to punitive damages. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, (1996). In fact, "evidence that a defendant has repeatedly engaged in prohibited conduct while knowingly or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure

the defendant's disrespect for the law." *Id* at 576. Evidence of harm to nonparties can help to show that the conduct presents a risk to the general public and is particularly reprehensible. *Phillip Morris USA v. Williams*, 549 US 346, 355 (2007). This standard was applied in both of these cases to state law claims against the defendants but the Ninth Circuit has applied the same standard on a claim based on 42 U.S.C. § 1981 and is applicable to claims under the FDCPA as well as Plaintiffs state law claims. *Bains v. Arco Products Co.*, 405 F.3d 764, 769 and 774-775 (2003). The Ninth Circuit has held, "Evidence of prior acts may clearly be used to establish the existence of a pattern or scheme. See Rule 404(b), Federal Rules of Evidence." *Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295, 1300-1301 (9th Cir. 1981).

Furthermore, a jury can find liability for punitive damages when a corporation has a practice of trying to sweep its misdeeds under the carpet rather than trying to remedy them. *Seymour v. Summa Vista, Inc.*, 809 F.2d 1385, 1388 (9th Cir. 1986), or when they have an opportunity to know of and choose to ignore, actually approved, or "turned a blind eye" to what was happening. *Ajaxo, Inc. v. E-Trade Group, Inc.*, 135 Cal. App. 4th 21, 68 (2005). Here, a jury could find the claim of a bona fide error to be a form of denial or concealment of wrongdoing, thereby increasing its reprehensibility. A jury may also find ratification, for punitive damages purposes, when a Defendant does not terminate or discipline its employees or agents for wrongful conduct. *Greenfield v. Spectrum Investment Corp.*, 174 Cal. App. 3d 111, 121 (1985). The information is also helpful in establishing an amount of punitive damages. "By placing the defendant's conduct on one occasion into the context of a business practice or policy, an individual plaintiff can demonstrate that the conduct toward him or her was more blameworthy and warrants a stronger penalty to deter continued or repeated conduct of the same nature." *Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, fn 6. (2005).

**E. Defendants Argument Falls Short of Establishing Substantial Prejudice if This Evidence is Admitted.**

Defendants spend considerable time under Section III. A. of their Motion in Limine arguing that this evidence is not discoverable and is therefore not admissible. (Docket Number 242). This argument fails for the simple reason that this Court permitted discovery of this evidence in its Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel, Docket Number 150. Defendant relies upon *Cusumano v. NRB, Inc.*, 1998 WL 673833 (N.D. Ill.) for this proposition but an unpublished opinion from the Northern District of Illinois in a discovery dispute has no bearing on whether evidence that was deemed discoverable in the present dispute is admissible at trial in this dispute.

Defendants also argue that regardless of whether this evidence is relevant, the confusion of issues, misleading the jury, undue delay, and/or waste of time and danger of unfair prejudice outweighs its probative value. First, the videotaped deposition testimony of three other similar victims can all be played in about an hour. Second, the videotaped deposition testimony of Credigy 30(b)(6) witness Scott Loynd can be played in approximately one and a half hours. Certainly, the Court can and will impose limits on improper duplicative testimony or wasteful time usage, but Credigy fails to make a specific showing of how that is likely here.

Defendants' reliance upon *Compaq Computer Corp v. Ergonome, Inc.*, 387 F.3d 403 (5th Cir. 2004), is misplaced. The evidence that Plaintiffs wished to present in this case involved previous lawsuits for repetitive stress injuries in a case where the underlying claim was copyright infringement. *Id.* at 403 and 407. Plaintiffs wish to present evidence against Credigy by consumers for similar claims that show the existence of intent, knowledge, and absence of mistake on the part of the Defendants and, as discussed above, are relevant to all of the claims made by the Plaintiffs and to the bona fide error defense raised by the Defendants. The events that led to this

lawsuit did not occur within a vacuum but are instead a continuing and long standing issue for the Defendants in how they regularly and repeatedly treat consumers in an attempt to collect debts.

Defendants also rely upon *Yellow Bayou Plantation, Inc. v. Shell Chemical Inc.*, 491 F.2d 1239 (5th Cir. 1974). The court does not go into detail in affirming the trial courts exclusion of evidence or rule that such evidence is never admissible, it simply says that the court did not abuse its discretion. *Id.* at 1242-3. The probative value of the evidence in the present case warrants the court using its discretion to admit the evidence. The complaints at issue are limited in time between 2006 to 2008 and are relevant to show intent, knowledge, and absence of mistake on the part of the Defendants and, as discussed above, are relevant to all of the claims made by the Plaintiffs and to the bona fide error defense raised by the Defendants.

The Defendants also rely on *Weiss v. Allstate Insurance, Co.* and the court's decision to not allow suits against a third party hired by Allstate to be admitted. 512 F.Supp. 2d 463 (E.D. La. 2007). This was a completely unaffiliated company hired for one task and not under common ownership or control, as is the case here. *Id.* at 472. Further, the Dispute Resolution Team personnel are employed by Defendant Credigy Services Corp. The Credigy companies sued in this case and sued in the cases Plaintiff wishes to have admitted are closely affiliated and under common ownership and management and suits against any of these Credigy affiliates is relevant to the conduct of all of the companies, particularly since the employees on the Dispute Resolution Team processed disputes and cease and desists for all of the Credigy affiliates. Wallace Decl. at Ex. I [Poston Depo. 66:24-25; 67:1-17].

Plaintiffs will also show that the nature of these suits were similar violations of the FDCPA and that these claims arose between 2006 and 2008. The lack of any judgment for or against Credigy is not determinative because Defendants frequently settle quickly and cheaply rather than changing its wrongful procedures. The existence of a resolution of the complaints is not probative; Credigy's knowledge of the complaints is the fact of consequence.

Finally, the Defendants rely on the four part test established by the Seventh Circuit regarding the admissibility of "prior acts" under Fed. R. Civ. P. 404(b). *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490 (7th Cir. 1998). While not binding on this Court it may be an instructive test. Part one of the test requires that the evidence be directed at something "other than a party's propensity to commit the act charged." *Id.* at 494-495. Plaintiffs believe their arguments supra have well established that the evidence is directed toward establishing knowledge, absence of mistake, intent, and routine practice by the Defendants and at establishing the reprehensibility of the Defendants actions for the purpose of punitive damages.

The second part of the *Gastineau* test requires that the other acts be similar enough and close enough in time to be relevant. *Id.* at 494-495. The lawsuits being presented as evidence of past acts by the Defendants all involve abusive collections practices by the Defendants including ignoring cease and desist letters, excessive calls, threats, unlawful third party communications, and other acts similar to those alleged by the Faustos and these acts all occurred between 2006 and 2008, the period overlaying the Faustos' collection matter and institution of this action. This limited time period is extremely relevant to the Faustos as it shows the knowledge of the Defendants immediately before, during, and after the activities that led to this dispute.

Defendants invite the Court to follow the reasoning of the Eleventh Circuit to decide that the cases that Plaintiffs wish to bring into evidence are dissimilar and consequently fail the second part of the *Gastineau* test. The Eleventh Circuit upheld the lower courts decision to exclude evidence on an abuse of discretion standard where the complaints involved different decision makers, different departments, and different hiring processes. *Palmer v. Board of Regents of University System of Ga.*, 208 F.3d 969 (11th Cir. 2000). This comparison falls short because the same departments, collections and the Dispute Resolution Team, and the same decision makers are involved in the suits Plaintiffs wish brought into evidence. The same decision makers created, adopted, and implemented the alleged procedures and policies regarding training, collections, and

dispute resolution that are at the core of the bona fide error defense and are key to defense against the Plaintiffs state law claims as well.

The third part of the *Gastineau* test requires that the evidence be such that the jury could find that the act occurred and that the party in question committed it. *Id.* Plaintiffs would use the deposition testimony of participants in these suits as allowed under Fed. R. Civ. P. 32(a)(4)(D) and the *Van Westrienan* decision. 94 F. Supp. 2d at 1109-1110. Plaintiffs will also use a list, produced by the Defendants in response to interrogatories, which is by definition an admission of the party and not hearsay, and the testimony of a 30(b)(6) deponent whose testimony is also by definition not hearsay and can be used for any purpose. Fed R. Evid. 801(d)(2); Fed R. Civ Pro. 32(a)(3).

The fourth part of the weighs the probative value against the prejudicial effect of the evidence. *Gastineau.*, 137 F.3d at 494-495. Defendants make a blanket claim that this evidence has no probative value and is therefore outweighed by any prejudicial effect. Fed. R. Evid. 403 requires the court to determine "whether the probative value of the ... evidence is **substantially outweighed** by its potential for unfair prejudice." (emphasis added). Plaintiffs have presented, supra, a variety of areas where this evidence is probative, including **to rebut** Defendants' bona fide error defense, the federal and state law claims brought by the Plaintiffs, and the reprehensibility of the conduct as an element of determining punitive damages. Defendants have presented no evidence that this evidence will have any prejudicial effect never mind presented evidence that this prejudicial effect substantially outweighs the probative value of the evidence. Any such potential prejudice could be cured by a limiting instruction.

## IV. CONCLUSION

The Plaintiffs, Manuel G. Fausto and Luz Fausto, hereby respectfully requests the Court to deny Defendants request for an order barring Plaintiffs, Plaintiffs' counsel, or any other witness from mentioning other lawsuits, the allegations in the pleadings of other lawsuits, or the specific

facts relating to these other lawsuits.

Respectfully submitted,

HUMPHREYS WALLACE HUMPHREYS, P.C.

By: /s/ Luke Wallace

David Humphreys, OBA #12346
Luke J. Wallace, OBA # 16070
9202 S. Toledo Avenue
Tulsa, Oklahoma 74137
(918) 747-5300/(918) 747-5311 fax
**PRO HAC VICE ATTORNEYS FOR PLAINTIFFS**