Balám O. Letona, Bar No. 229642
LAW OFFICE OF BALÁM O. LETONA, INC.
1347 Pacific Avenue, Suite 203
Santa Cruz, CA 95060-3940
Tel: 831-421-0200
Fax: 831-515-3110
Email: letonalaw@gmail.com

Ronald Wilcox, Bar No. 176601
LAW OFFIC OF RONALD WILCOX
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: 408-296-0400
Fax: 408-296-0486
Email: ronaldwilcox@post.harvard.edu

David Humphreys *(pro hac vice)*
Humphreys Wallace Humphreys P.C.
9202 South Toledo Ave.
Tulsa, Oklahoma 74137

Luke Wallace *(pro hac vice)*
Humphreys Wallace Humphreys P.C.
9202 South Toledo Ave.
Tulsa, Oklahoma 74137

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSÉ DIVISION

| | |
|---|---|
| MANUEL G. FAUSTO, AND LUZ FAUSTO,<br><br>                    Plaintiffs,<br><br>v.<br><br><br>CREDIGY SERVICES CORPORATION, CREDIGY RECEIVABLES INC., CREDIGY SOLUTIONS INC., RYAN MILLER, RICARDO VENTURA, BRETT BOYDE, PAULO PERES, THOMPSON, and DOES 1-10, inclusive,<br>                    Defendant(s). | Case No. C07-05658  JW – RS<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (No Negligence)**<br><br><br>The Honorable James Ware |

//
//

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………......1

II.     STATEMENT OF FACTS………………………………………………………2

III.    ARGUMENT…………………………………………………………………..7

        A.      Standard for Summary Judgment………………………………………7

        B.      Credigy had a duty to not engage in these activities……………………………..8

        C.      The Faustos have been injured by Credigy's negligent conduct………………..…13

    IV.     CONCLUSION………………………………………………………………...14

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alleyen v. Midland Mortgage Co.,*
    2006 WL 2860811 *12-13 (D. Colo.)……………………………………..…….10,11

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 256 (1986)………………………………………………………....8

*Austin v. Terhrune*
    367 F.3d 1167, 1174 (9th Cir. 2004)……………………………………………14

*Baker v. G.C. Services Corp.*
    677 F.2d. 775, 777 (9th Cir. 1982)……………………………………………....10

*Brooks v. U.S.A.*
    29 F. Supp. 2d 613 (N.D. Cal. 1997)……………………………………………14

*Bureerong v. Uvawas*
    959 F. Supp. 1231, 1237 (C.D. Cal. 1997)………………………………………9

*Celotex Corp. v. Catrett*
    477 U.S. 317, 325 (1986)……………………………………………………...8,13

*Fox. Citicorp Credit Services, Inc.,*
    15 F.3d 1507, 1515 (9th Cir. 1993)…………………………………………...11,13

*Garcia v. Jefferson  Capital*
    2007 U.S. Dist. LEXIS 33995 (M.D. Fla. 2007)……………………………………....3

*Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*
    545 U.S. 308, 318 (2005)…………………………………………………...…..9

*Henry v. Kemp*
    829 P.2d 505, 506 (Colo. App. 1992)…………………………………………...11

*Hunt v. Cromartie*
    526 U.S. 541, 552 (1999)………………………………………………………....8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574, 587 (1986)………………………………………………………....8

*Miller v. Fairchild Industries, Inc.,*
    885 F.2d 498, 511 (9th Cir. 1989)……………………………………………14

OPPOSITION TO DEFENDANT'S IMPROPERLY FILED MOTION FOR PROTECTIVE ORDER

**STATE CASES**

*Alcala v. Vazmar Corp.*
    167 Cal. App. 4th 747, 755 (Cal. App. 2nd 2008)…………………………………………...9

*Ann M. v. Pacific Plaza Shopping Center*
    6 Cal. 4th 666, 673 (1993), 25 Cal.Rptr.2d 137, 863 P.2d 207………………..……...…..8

*Bowden v. Spiegel*
    96 Cal. App. 2d 793 (1950)……………………………………………………………...10

*DiRosa v. Showa Denko K.K.*
    44 Cal. App. 4th 799, 805 (Cal. App. 1996)...…………………………………………….9

*Elsner v. Uveges*
    34 Cal. 4th 915, 927 (2004)…………………………………………………………….....9

*Hilyar v. Union Ice Co.*
    45 Cal. 2d 30, 36 (Cal. 1955)………………………………………………………….…10

*J'aire Corp. v. Gregory*
    24 Cal. 3d. 799, 803 (1979), 157 Cal.Rptr. 407 (1979)………………………....………9

*Ladd v. County of San Mateo*
    12 Cal. 4th 913, 917 (1996), 50 Cal.Rptr.2d 309, 911 P.2d 496…………………………8

*Shin v. Kong*
    80 Cal. App. 4th 498, 504 (2000)……………………………………………….…....9

*Sierra--Bay Fed. Land Bank Assn. v. Superior Court*
    (1991) 227 Cal. App. 3d 318, 336 [277 Cal.Rptr. 753]…………………………………9,10

**FEDERAL STATUTES**

Evidence Code § 669…………………………………………………………………………9

Fair Debt Collection Practices Act, 15 U.S.C. § 1692…………………………………………...1

Fair Debt Collection Practices Act, 15 U.S.C. § 1692(d)…………………………………………12

Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e)…………………………………………12

Fair Debt Collection Practices Act, 15 U.S.C. § 1692(f)…………………………………………12

Federal Rule of Civil Procedure 56(c)……………………………………………………...8

Federal Rule of Civil Procedure 26..………………………………………………………….5

iii

**OTHER AUTHORITIES**

California Civil Code § 3294………………………………………………………………………....14

California Penal Code § 519……………………………………………………………………….12

California Penal Code § 524……………………………………………………………………….12

California Penal Code § 653m……………………………………………………………………..12

Rosenthal Fair Debt Collection Practices Act, Civil Code § 1788…………………………………1

iv

# I.  INTRODUCTION

In the Summer of 2006, Credigy began to call and write the Faustos at their home seeking money for a ten-year-old alleged debt.  Mr. Fausto never heard of Credigy and disputed the debt.  With the help of the Watsonville Legal Clinic, Mr. Fausto wrote Credigy stating that he did not believe he owed the debt and demanded documents proving that he did.  To establish that Credigy had a right to collect on the alleged debt, Mr. Fausto requested a copy of the contract that he signed with the original creditor and asked for some proof that the debt with the original creditor remained unpaid.  Credigy responded with a single sheet of paper it generated that proved nothing.  The Faustos believed that Credigy ignored the request for information.  Shortly after receiving Credigy's "response," again with the help of Watsonville Legal Clinic, Mr. Fausto sent his second letter to Credigy, explaining again that he did not believe he owed this debt. Further, the letter stated that since his request for proof documents regarding the debt had been ignored, he was not going to pay anything and also demanded that Credigy immediately cease and desist all future collection activities.  Instead of complying with Mr. Fausto's demand, Credigy unleashed their collection efforts.  In total, Credigy telephoned the Faustos' home more than 90 times.

During some of these calls Credigy made false and extortionist threats to take the Faustos' home, garnish their wages, put a lien on their home, and report the debt on their credit report forever.  Credigy also failed to meaningfully identify itself and engaged in impermissible communications with third parties.

It is out of these wrongful acts that Plaintiffs Manuel and Luz Fausto assert claims for violations of the Fair Debt Collection Practices Act, 15 U.S.C.§ 1692, *et seq* ("FDCPA"), negligence, negligent supervision, negligent training, intrusion upon seclusion, and violations of the Rosenthal Fair Debt Collection Practices Act, Civil Code §1788 et seq.

1

Credigy admits that Credigy Services continued collection activity after it received the Faustos' cease and desist letter, (Defendants' Motion for Summary Judgment, CV05658-JW, Document 218 p.1 line 8-9) claiming an honest mistake.  The Faustoss have alleged that this is not just a simple mistake but a pattern of behavior that is at best simple negligence and at worst an intentional violation of the Faustos rights.

Plaintiffs Manuel and Luz Fausto ("the Faustos") have brought claims against Credigy for negligence stemming from the Credigy's harassing and abusive phone calls, their failure to honor a "Cease and Desist" letter, and the negligent training and supervision of its employees.  Credigy has not alleged or claimed any undisputed facts that would absolve them from any claim of negligence.  They have focused instead on legal arguments concerning an alleged lack of damages and whether any duty of care was owed by Credigy to the Faustos.

## II.  STATEMENT OF FACTS

It is for a jury to decide whether Credigy's collection activities were, as Credigy claims, merely an error or failure to exercise reasonable care, or part of an intentional campaign of misconduct to collect money as the Faustos believe.

On or about August 22, 2006, Credigy began a campaign to telephone the Faustos' residence at least ninety (92) times to attempt to collect an alleged ten-year old debt.  According to their own collection call logs, Credigy Services Corp. made at least fifty (51) telephone calls to the Faustos' home in an attempt to collect the alleged debt owned by Credigy Receivables, Inc.[1]  The Faustos have

---

[1] Wilcox Decl. at Ex. A [Williams Depo 96:14-24], identifying Bates Stamps, FA2-FA14, attached herein as B.  Also see, Wilcox Decl. at Ex. D [Williams Depo. 57:23-58:7], Ex. E.  Wilcox Decl. at Ex. A [Williams Depo. 201:3-14, 202:5-10, 206:3-10], Credigy testified as to how to determine when telephone calls occurred as they appeared in the Credigy Receivables, Inc. collection logs. Furthermore, the calls are self-explanatory by language in the "Action Column." See ""Phone always busy", "Phone doesn't answer", "Talked to Debtor", "Message Left," "Dialer Event", etc., in FA2-

provided a marked up version with a running tabulation of the total number of calls for the Court's convenience.  Wilcox Decl. Ex. N.  Credigy Solutions Corp. then had its agent, Live Vox, Inc. make another 41 calls to the Faustos' home in an attempt to collect the alleged debt.[2]  The calls occurred between August 22, 2006 and January 2008. *Id.*  The total number of calls placed in efforts to attempt to collect the nearly ten-year old alleged debt from the Faustos exceeded ninety (90).[3]

On numerous occasions, Credigy telephoned the Faustos more than once per day, including on January 16, 2007, January 22, 2007, February 27, 2007, March 16, 2007, March 17, 2007, March 23, 2007, April 13, 2007, April 23, 2007, May 2, 2007, May 11, 2007 (See FA 3 - FA 6).  Credigy also had its agent, Live Vox, Inc., make more than one call per day, including on July 18, 2007, August 13, 2007, August 25, 2007, and August 29, 2007).   Wilcox Decl. at Ex. M  [Live Vox 30(b)(6) Leraris Depo Ex. 6].  Rodrigo Dela Verde is Credigy's Services Corp.'s Director of U.S. Operations and its 30(b)(6) designee on the issue of the communications made by Credigy to the Faustos and facts related to bona fide error defense.  Wilcox Decl. at Ex. G [Siler Depo, 8:23-9:7; 9:25-10:3].  Wilcox Decl. at Ex. F [Dela Verde Depo. 8:17-20].  According to Mr. Dela Verde, the only mistake Credigy made in the handling of the Faustos' account was in how it handled the Faustos' second letter.  Wilcox Decl. at Ex. F [Dela Verde Depo. 67:22-68:4].  Furthermore, Live Vox testified that Credigy never placed any

---

FA14. Wilcox Decl. at Exhibit J. These collection logs were also produced by Credigy Solutions, Inc. Senior Litigation, Attorney, Scott Loynd via e-mail on January 9, 2007, and are thus an admission of a party opponent.

[2] *See* Wilcox Decl. at Ex. M [Decl. of Michael Leraris, attached as Ex. 3 to the Depo. of Michael Leraris, Deposition Ex. 6].  Again, the Faustos provided a marked up version with a running tabulation of the total number of calls for the Court's convenience. Wilcox Decl. at Ex. N.

[3] Furthermore, Credigy's collection logs do not include other calls the Faustos allege occurred, such as calls made by Credigy immediately after the Faustos hung up. *Garcia v. Jefferson Capital*, 2007 U.S. Dist. LEXIS 33995 (M.D. Fla. 2007)("Even assuming that the telephone records prove the absence of any telephone call to the Faustos' home from BSL's business, nothing in the record establishes that BSL's agents and employees could not have telephoned the Faustos from another telephone (including, for example, a cell phone, a home phone, or a pay phone").

3

limit on the number of calls it could place to a consumer. Wilcox Decl. at Ex. L [Live Vox 30(b)(6) Leraris Depo. 97:11-14].

Credigy would also call and let the phone ring repeatedly, would call back even after the phone was hung up terminating the call, and would abusively talk over Mrs. Fausto and not let her speak. Wilcox Decl. at Ex. R [Luz Fausto Depo 201:19-202:24]; Declaration of Luz Fausto in Support of Oppositions to Motions for Summary Judgment ("Luz Fausto Decl.") ¶ 28.

Plaintiff, Luz Fausto, recorded one of the final phone calls on or about November 21, 2007. Luz Fausto Decl. at ¶ 36. In doing so, she obtained evidence of Credigy's illegal acts (i.e. extortionist threats to disgrace the Faustos by reporting the alleged debt forever).[4]  Credigy also falsely threatened to take the Faustos' home and/or put a lien on the house and to garnish Mr. Fausto's wages, despite knowing it was collecting on a time barred debt. *Id.* at Ex. R [Luz Fausto Depo 245:25-246:8, 246:16-22]; Luz Fausto Decl. at ¶¶ 18-19.[5]  Credigy yelled at Mrs. Fausto and made false threats of imminent suit, threatening that unless immediate payment was made, the Faustos would be hearing from Credigy's attorneys. *Id.* at Ex. R [Luz Fausto Depo. 206:21-25]; Luz Fausto Decl. at ¶ 20.

Credigy also called and spoke with the Faustos' children, Elizabeth Fausto and Alma Fausto. Mrs. Fausto was very humiliated, embarrassed, and upset that Credigy was now speaking to her children about her personal and private financial matters. Luz Fausto Decl. at ¶ 34. Credigy's collector, Ricardo Ventura, told Elizabeth Fausto that he was collecting on a Visa card debt originally owed to

---

[4] Credigy contends the recording was unlawful.  However, for numerous reasons, the recording was lawful.  But since Credigy has not moved for Summary Judgment on the issue, there is no need to discuss it further here.

[5] Also see Amended Complaint, Docket #3, ¶29. Mrs. Fausto testified that she reviewed the Amended Complaint before it was filed with the Court, thereby agreeing to its truthfulness. Wilcox Dec. at Ex. R [Luz Fausto Depo. 161:19-162:17].

OPPOSITION TO DEFENDANT'S IMPROPERLY FILED MOTION FOR PROTECTIVE ORDER

Wells Fargo and to request that she have Mrs. Fausto return the call about the debt.  Wilcox Decl. at Ex. V [Elizabeth Fausto Depo 54:3-55:10, 56:1-3].

The Faustos' Amended Complaint alleged that, "Defendants' unlawful collection practices caused The Faustoss to suffer physical and emotional injury in the form of fear, anxiety, stress, difficulty eating, humiliation, uncontrollable shaking, crying fits, depression, marital instability, inability to sleep, and embarrassment, amongst other injury" and "Defendants' abusive and intrusive conduct caused Mrs. Fausto to suffer emotional distress in the form of loss of sleep, hopelessness, anxiety, and fear among other negative emotions.  The Faustos suffered marital instability, and argued about the contacts from Credigy. Amended Complaint, Docket #3, ¶49-50.  Mrs. Fausto testified that she reviewed the Amended Complaint before it was filed with the Court, thereby agreeing to its truthfulness. Wilcox Decl. at Ex. R [Luz Fausto Depo. 161:19-162:17]; Luz Fausto Decl. at ¶ 18

The Faustos are non-English speaking former farm workers. *Id*. at Ex. R [Luz Fausto Depo. 8:7-10, 10:18-19]; *Id.* at Ex. S [Manuel Fausto Depo. 7:18-21, 22:12-23:9].  Thus, Faustos have difficulty articulating certain feelings and emotions, and were required to do so through an interpreter whom Credigy failed to disclose on their F.R.C.P. 26 disclosures.  Furthermore, despite 260 pages of deposition testimony, Credigy waited until page 254 to focus any questions on Mrs. Fausto's emotional distress.

Nevertheless, throughout the course of her deposition Luz Fausto testified that she lost sleep because of Credigy's unlawful collection efforts, and would have lost sleep because of Credigy even if she did not have any other problems in her life (Wilcox Decl. at Ex. R [Luz Fausto Depo. 49:1-11]), she suffered embarrassment (*Id*. at Ex. R [Luz Fausto Depo. 166:10-11, 171:21-23]), she argued with her daughter Alma (*Id*. at Ex. R [Luz Fausto Depo. 165:9-167:25, 171:16-20]), she was frustrated as a result of the repeated and continuous calls and letting the phone ring excessively (*Id*. at Ex. R [Luz Fausto Depo. 202:16-20, 202:7-9]), and because Credigy refused to let her speak (*Id*. at Ex. R [Luz

5

Fausto Depo. 202:7-9, 206:19-207:3]), she could not relax because Credigy kept calling and bugging her (*Id.* at Ex. R [Luz Fausto Depo. 227:13-15, 227:22-25, 202:16-20]), Credigy yelled at her (*Id.* at Ex. R [Luz Fausto Depo. 242:22]), Credigy caused her emotional distress, anxiety and tension (*Id.* at Ex. R [Luz Fausto Depo. 254:22:-255:3, 255:18]), she felt desperate and impatient on many occasions (*Id.* at Ex. R [Luz Fausto Depo. 256:2-7]), Credigy affected her mentally, she felt stressed to the extreme, and angry (*Id.* at Ex. R [Luz Fausto Depo. 257:1-258:6]). Luz Fausto Decl. at ¶¶ 14, 24-32, and 34-35. Mrs. Fausto remembers that when Credigy called and spoke to Alma they told her all about her parents' debt. *Id.* at Ex. R [Luz Fausto Depo. 169:4-171:17]; Luz Fausto Decl. at ¶ 34. Mrs. Fausto told Alma that she had been getting harassed. Wilcox Decl. at Ex. U [Alma Fausto Depo. 13:13-25]. Credigy presumes that its counsel plumbed the depth and entirety of emotional distress suffered by the Faustos during its two session deposition examinations. In truth the right questions were not asked and therefor the Faustos provide the court with declarations that contain more comprehensive detail. Luz Fausto suffered injury in the form of fear, anxiety, stress, hopelessness, difficulty eating, humiliation, uncontrollable shaking, crying fits, depression, marital instability, inability to sleep, and embarrassment. Luz Fausto Decl. at ¶¶ 24-32. Manuel Fausto suffered from depression, stress, anxiety, emotional distress, hopelessness, impatience, arguments with his wife and fear. Declaration of Manuel Fausto in Support of Oppositions to Motions for Summary Judgment ("Manuel Fausto Decl.") ¶¶ 20-21, 24, 26-29, and 33-35. Both Luz and Manuel Fausto sought medical treatment for these symptoms and were prescribed medication. Luz Fausto Decl. at ¶¶ 21-22; Manuel Fausto Decl. at ¶¶ 28-30.

On or about December 21, 2006, Credigy called Mrs. Fausto in an attempt to collect the nearly ten (10) year old debt. Wilcox Decl. at Ex. B. Credigy alleged that the Fausto's dispute of the debt had been resolved and Credigy was going to continue to collect the debt. *Id.* Credigy used language that made Mrs. Fausto understand that if the Faustos did not pay, Credigy would cause the Fausto's to lose

their home.  Luz Fausto Decl. at ¶ 18[6]  Dr. Ponzio testified that on January 30, 2007, Luz Fausto met with the Gonzales Medical Center treatment. Wilcox Decl. at Ex. X [Ponzio Depo. 51:1-20]. Mrs. Fausto informed the medical clinic that she had increased stress at home because of money, was afraid she would lose her home, and was unable to sleep at night.  *Id.* at Ex. X [Ponzio Depo. 51:1-20]. Mrs. Fausto was prescribed Resotril, a sleeping medication used for Insomnia. Id. at Ex. X [Ponzio Depo. 61:19-23, 55:24-55:1].

Credigy Dispute Resolution Team Members testified to problems with the flag system alleging that sometimes it would malfunction and turn a cease and desist flag off and that collectors could remove the flag and continue to collect on an account.  *See* Wilcox Decl. at Ex. AA [Poston Depo. 52:18-56:24]; Wilcox Decl. at Ex. Z [Ervin Depo. 48:8-54-17].  There is also a record in the Simplect Notes of the account that on November 24, 2006, Sholanda Blackwell made an entry in the notes on the  Faustos' account that "An AVS was prepared and mailed to debtor, Dispute resolved, continue with legal or collection proceedings."  *See* Wilcox Decl. at Ex. FF [FA 00007]; *Id.* at Ex. Z [Ervin Depo.105:24-106:13]; *Id.* at Ex. A [30(b)(6) Williams Depo. 153:16-157:13]. The actions taken by Blackwell and Ervin were according to Credigy's policies and procedures.  *Id.* at Ex. A [30(b)(6) Williams Depo. 157:6-13].  Credigy's own corporate representative admitted a claimed error by stating that the mistake was not "solely her [Ervin's] mistake."  *See* Wilcox Decl. at Ex. I [30(b)(6) Scott Loynd Depo. 26:21-27:7].

### III.  ARGUMENT

### A.  Standard for Summary Judgment

---

[6] Also see Amended Complaint, Docket #3, ¶29. Mrs. Fausto testified that she reviewed the Amended Complaint before it was filed with the Court, thereby agreeing to its truthfulness. Luz Fausto Depo. 161:19-162:17.  **Mrs. Fausto also submits a Declaration in Opposition to the MSJ.**

7

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. "[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Id.* at 324.

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999) (quoting *Anderson,* 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson,* 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**B. Credigy had a duty to not engage in these activities.**

Under California common law, the basic elements of a negligence action are: (1) The defendant had a legal duty to conform to a standard of conduct to protect the plaintiff, (2) the defendant failed to meet this standard of conduct, (3) the defendant's failure was the proximate or legal cause of the resulting injury, and (4) the plaintiff was damaged. (*Ladd v. County of San Mateo,* 12 Cal.4th 913, 917 (1996), 50 Cal.Rptr.2d 309, 911 P.2d 496; *Ann M. v. Pacific Plaza Shopping Center,* 6 Cal.4th 666, 673 (1993), 25 Cal.Rptr.2d 137, 863 P.2d 207. "A duty of care may arise through statute, contract, the

8

general character of the activity, or the relationship between the parties." *Shin v. Kong*, 80 Cal. App. 4th 498, 504 (2000), and *J'aire Corp. v. Gregory*, 24 Cal. 3d. 799, 803 (1979), 157 Cal. Rptr. 407 (1979).

California recognizes that a violation of a statute establishes the requisite standard of care in a negligence action. *DiRosa v. Showa Denko K.K.,* 44 Cal. App. 4th 799, 805 (Cal. App. 1996). The California Supreme Court also recognized the power of a statute to create a duty of care. "Evidence Code section 669 allows proof of a statutory violation to create a presumption of negligence in specified circumstances. It codifies the common law doctrine of negligence per se, pursuant to which **statutes and regulations may be used to establish duties and standards of care in negligence actions**." *Elsner v. Uveges*, 34 Cal. 4th 915, 927 (2004)(emphasis added).[7]

> The negligence per se doctrine is codified in Evidence Code section 669, subdivision (a), under which negligence is presumed if the plaintiff establishes four elements: (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. *Alcala v. Vazmar Corp.*, 167 Cal. App. 4th 747, 755 (Cal. App. 2nd 2008).

As the United States Supreme Court has stated, "The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, 545 U.S. 308, 318 (2005). "[T]he breach of a federal statute may support a negligence per se claim as a matter of state law." *Id.* at 319. Indeed, Courts within the Ninth Circuit have stated that a federal statute can serve as the standard of care in a negligence per se action. *Bureerong v. Uvawas*, 959 F. Supp. 1231, 1237 (C.D. Cal. 1997). *Sierra--*

---

[7] Defendants attempt to minimize this California Supreme Court decision by referring this Court to what they refer to as *dicta* in n.8 of the *Elsner* decision and ignoring the language from the reasoning of the California Supreme Court's decision quoted above.

*Bay Fed. Land Bank Assn. v. Superior Court, (1991)* 227 Cal. App. 3d 318, 336 [277 Cal. Rptr. 753]

(*Sierra--Bay*) aptly summarizes section 669 and its application as follows:

> [A] plaintiff must prove four elements in order to establish negligence per se. Plaintiff must show that (1) defendant violated a statute, ordinance or regulation of a public entity, (2) the violation proximately caused his injury, (3) the injury resulted from an occurrence of the nature which the statute was designed to prevent; (4) he was one of the class of persons for whose protection the statute was adopted. "While the first two elements are normally considered questions for the trier of fact, '[t]*he last two elements are determined by the trial court as a matter of law, since they involve statutory interpretation ....*'"

(Italics added; internal citations removed)

In the present case, Credigy had a duty to conform their actions to the standards of conduct set forth in the FDCPA and the Rosenthal Act.  Credigy claims that such a duty does not exist under the FDCPA but they rely upon dicta in an unpublished Magistrate Judges decision recommending that the Federal District Court for the District of Colorado not grant supplemental jurisdiction to a negligence per se claim.  *Alleyne v. Midland Mortgage Co.*, 2006 WL 2860811 *12-13(D.Colo.).  The Ninth Circuit has cited favorably to comments from the debate about the enactment of the bill "'[t]hat every individual whether or not he owes the debt, has a right to be treated in a reasonable and civil manner.'"  *Baker v. G.C. Services Corp.*, 677 F.2d. 775, 777 (9th Cir. 1982) (citing to 123 Cong.Rec. 10241 (1977).   In fact, California has long recognized that debt collectors owe a duty to refrain from outrageous and abusive telephone calls in their attempts to collect a debt.  *Bowden v. Spiegel*, 96 Cal. App. 2d 793 (1950).

> All persons are required to use ordinary care to prevent others being injured as the result of their conduct; ordinary care is that degree of care which people of ordinarily prudent behavior can be reasonably expected to exercise under the circumstances of a given case. In other words, the care required must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated.

*Hilyar v. Union Ice Co*., 45 Cal.2d 30, 36 (Cal. 1955).  Credigy has failed to use ordinary care under the circumstances.  As outlined in the statement of facts, Credigy has abused the Faustos in the number

10

of calls they have made in attempting to collect this debt, by threatening actions against the Faustos' home and income when such action was barred by the statute of limitations, by threatening to report the debt forever, by talking to third parties and specifically to the Faustos' children about the alleged debt, by failing to honor the cease and desist letter, and by failing to properly authenticate their right to collect on this debt and whether the Faustos even owe this debt.  It is fully anticipated by Credigy that the Faustos would suffer the types of emotional distress outlined in the statement of facts and in the Opposition to Summary Judgment:  no actual damages filed concurrently with this brief and incorporated fully hereinto.  They count on this stress to convince consumers to pay money they may not owe to an entity they have never heard of.

Credigy, by their actions outlined in the statement of facts, at the least negligently violated the right to be treated in a reasonable and civil manner and at the worst deliberately and willfully ignored the Faustos' rights and their duty to refrain from outrageous and abusive telephone calls.  Credigy  also quotes the *Alleyne* court for the notion that since the FDCPA "provides its own remedies for violations, which do not exist at common law and the FDCPA therefore cannot be relied upon to support a negligence *per se* claim."  *Alleyne*, 2006 WL 2860811 at * 13.  This portion of the decision cites to a Colorado Appellate court case, *Henry v. Kemp*, 829 P.2d 505, 506 (Colo. App. 1992), and has no bearing on this case.

Credigy also relies on part of one line of a twelve-page Ninth Circuit decision.  In  *Fox v. Citicorp Credit Services, Inc.,* the Ninth Circuit said "[t]he FDCPA is not simply a federal codification of common-law negligence."  15 F.3d 1507, 1515 (9th Cir. 1993).  Taken out of context, this statement could arguably lend credence to Credigy's claim that there is no duty of care leading to per se negligence for violating the FDCPA.  It could likewise be argued that the court was implying that the FDCPa includes but is more than a simple codification of negligence standards.  In context, the court was addressing the standard the district court had applied to the plaintiff's claims that the defendant

had violated sections 1692(d), (e), and (f) of the FDCPA. *Id.* The reasonableness standard applied by the district court was wrong in this context because the sections specified what kind of conduct resulted in FDCPA liability regardless of how reasonable the conduct may have been. *Id.* There is room alongside an FDCPA claim for negligence per se. In fact, the parties in the *Fox* action argued the negligence claims with the FDCPA claims in their motions and oppositions to summary judgment and when the Ninth Circuit overturned summary judgment and reinstated the FDCPA claims, *the Court overturned summary judgment and reinstated the state law negligence claims. Id.* at 1517.

Credigy's actions also constitute violations of California Penal Codes §653m, §519, and §524.

**California Penal Code §519. Threats***:*

Fear, such as will constitute extortion, may be induced by a

threat, either:
1. To do an unlawful injury to the person or property of the individual threatened or of a third person; or, ….
3. To expose, or to impute to him or them any deformity, disgrace or crime; or, . . .

**California Penal Code §524.  Punishment for attempt:**
Every person who attempts, by means of any threat, such as is specified in Section 519 of this code, to extort money or other property from another is punishable by imprisonment in the county jail not longer than one year or in the state prison or by fine not exceeding ten thousand dollars ($10,000), or by both such fine and imprisonment.

Credigy's' false threats to take actions that could not legally be taken; seizing the Faustos' house (when no suit could be brought on the time barred debt) and to ruin the Faustos' credit forever unless the Faustos paid them money was unlawful and extortionate. These threats were attempts to do "unlawful injury" to the Faustos and their property. The threats were also an attempt to "disgrace" the Faustos by publishing the debt to the Faustos' creditors, Luz Fausto Decl. at ¶ 38 and would not be able to ever again apply for credit.

Rather than present undisputed evidence that the actions by Credigy outlined in the Statement of Facts did not occur, Credigy relies on the argument that they had no "duty" to the Faustos to refrain

12

from these acts.  Credigy had a duty created by the FDCPA, the Rosenthal Act, California statutes, and every individual whether or not he owes the debt, has a right to be treated in a reasonable and civil manner.

### C.   The Faustos have been injured by Credigy's negligent conduct

The Faustos reference and incorporate their Opposition to Motion for Summary Judgment: no actual damages into their Opposition to Motion for Summary Judgment: no negligence.   The Faustos have suffered injury and actual damages due to the negligent conduct of the Defendants.  Credigy has not presented any evidence of no actual damages in their Motion for Summary Judgment.  Instead, they refer the Court to another Motion for Summary Judgment.  In a like manner,  The Faustos would refer the Court to Plaintiffs' Response to Motion for Summary Judgment: No Actual Damages and incorporate that response into this response.

Assuming for the sake of argument that  Credigy met their burden of proof in their other Motion for Summary Judgment, the burden of proof shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S.  at 324.  The *Fox* Court found that the burden of the non-moving party for the purpose of defeating a Motion for Summary Judgment was met by the testimony in the depositions of the non-moving party.  *Fox*, 15 F.3d at 1516. As presented in the statement of facts, Luz Fausto has testified under oath that she lost sleep because of Credigy's unlawful collection efforts, suffered embarrassment, and was frustrated as a result of the repeated and continuous calls.  She further testified that she could not relax because Credigy kept calling and bugging her, Credigy caused her emotional distress, anxiety and tension, caused her to  feel desperate and impatient, Credigy affected her mentally, she felt stressed to the extreme, and angry.

Dr. Ponzio corroborated this testimony when she testified that on January 30, 2007, Luz Fausto came to the Gonzales Medical Center treatment and informed the clinic that she had increased stress at

13

home because of money, was afraid she would lose her home, and was unable to sleep at night.  This clinic prescribed Resotril, a sleeping medication used for Insomnia, to help treat these symptoms.

A cause of action for negligent infliction of emotional distress requires that plaintiff show (1) serious emotional distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress.  *Brooks v. U.S.A,* 29 F. Supp. 2d 613 (N.D. Cal. 1997), *Austin v. Terhrune*, 367 F.3d 1167, 1174 (9th Cir. 2004).  Punitive damages may be awarded for the conscious disregard of someone's rights, which lead to Negligent Infliction of Emotional Distress.  *Miller v. Fairchild Industries, Inc.*, *885 F.2d 498, 511* (9th Cir. 1989), Civil Code §3294.   The Faustos testimony corroborated by Dr. Ponzio shows serious emotional distress, actually and proximately caused by Credigy, this conduct was in violation of statutory and common law duties to the Faustos making it wrongful conduct, and Credigy should have known that abusive and harassing phone calls and threats would have this result.  In fact, Credigy relies on creating this kind of stress as a tool to extort money from debtors like the Faustos who would have no other reason to pay Credigy.

## IV.    Conclusion

Credigy owed a duty of care to the Faustos under the FDCPA, the Rosenthal Act, other California statutes, and California common law.  Credigy breached this duty through contact with third parties, threats of legal action, continuous and harassing phone calls, continued contact after receiving a cease and desist letter, and threats against the Faustos home and wages.  These breaches caused serious emotional distress to the Faustos and actual damages related to this serious emotional distress. It also caused actual damages as explained in the Plaintiffs Response to Motion for Summary Judgment: no actual damages.

14

Wherefore, Plaintiffs humbly request that this Court deny Defendants' Motion for Summary Judgment and allow the issues of negligence, negligence per se, and negligent infliction of emotional distress be brought before the jury.

Respectfully submitted,

HUMPHREYS WALLACE HUMPHREYS, P.C.

By: /s/ Luke Wallace
      David Humphreys, OBA #12346
      Luke J. Wallace, OBA # 16070
      9202 S. Toledo Avenue
      Tulsa, Oklahoma 74137
      (918) 747-5300/(918) 747-5311 fax
**PRO HAC VICE ATTORNEYS**
**    FOR PLAINTIFFS**

OPPOSITION TO DEFENDANT'S IMPROPERLY FILED MOTION FOR PROTECTIVE ORDER