IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Manuel Fausto, et al., | NO. C 07-05658 JW |
| Plaintiffs, v. | **ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR JOINDER** |
| Credigy Services Corp., et al., | |
| Defendants. | |

## I. INTRODUCTION

Manuel and Luz Fausto ("Plaintiffs") bring this action against Defendants[1], alleging, *inter alia*, violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and various state law causes of action. Plaintiffs allege that Defendants engaged in intrusive and abusive attempts to collect on an invalid debt, in violation of state and federal laws.

Presently before the Court are Defendants' five[2] Motions for Summary Judgment. The Court found it appropriate to take the matter under submission without oral argument. See Civ. L.R. 7-(b).

---

[1] Defendants are Credigy Services Corp., Credigy Receivables, Inc., Credigy Solutions, Inc. (collectively, "Credigy"), Ryan Miller ("Miller"), Ricardo Ventura ("Ventura"), Brett Boyde ("Boyde"), Paulo Peres ("Peres"), and Thompson (collectively, "Individual Defendants").

[2] (Motion for Summary Judgment (No Debt Covered by FDCPA), hereafter, "MSJ-1," Docket Item No. 196; Motion for Partial Summary Judgment (No Third Party Disclosure), hereafter, "MSJ-2," Docket Item No. 202; Motion for Summary Judgment (No Actual Damages), hereafter, "MSJ-3," Docket Item No. 219; Motion for Summary Judgment (No Intrusion Upon Seclusion; No Punitive Damages), hereafter, "MSJ-4," Docket Item No. 217; and Defendant Peres' First Motion for Summary Judgment (Not Liable for Conduct He Didn't Commit), hereafter, "MSJ-5," Docket Item No. 201.)

Based on the papers submitted to date, the Court DENIES Defendants' Motions for Summary Judgment.

## II.  BACKGROUND

### A.  Undisputed Facts

On August 16, 2006, Plaintiffs received a letter from Defendant Credigy stating that Plaintiff Manuel Fausto owed a debt to Wells Fargo in the amount of $16,689.64. (First Amended Complaint, Ex. 1, hereafter, "Complaint," Docket Item No. 3.) On August 22, 2006, Defendant Credigy began making phone calls to Plaintiffs in an attempt to collect on the alleged Wells Fargo debt. (Declaration of Ronald Wilcox in Support of Opposition to Defendants' Motions for Summary Judgment, Ex. N, hereafter, "Wilcox Decl.," Docket Item Nos. 297, 304.) In response to this attempted debt collection, Manuel Fausto requested documentation relating to the alleged Wells Fargo debt from Credigy. (Complaint, Ex. 2.) On November 7, 2006, after Credigy replied without including the full extent of the requested documentation, Manuel Fausto sent a letter requesting that Credigy cease communication with him, invoking his rights under 15 U.S.C. § 1692c(c). (Id., Exs. 3-4.)

Following Fausto's cease-and-desist letter, Credigy continued sending bills and attempting to make telephonic contact with Plaintiffs. (See Complaint, Exs. 5-10; Wilcox Decl., Ex. N.) Between August 22, 2006 and November 23, 2007, Credigy made no fewer than fifty-one calls to Plaintiffs' home. (Id.) In addition, an agent of Credigy made forty-one calls to Plaintiffs during the same time period. (Id.) By the time of Credigy's final debt-collection letter, dated November 15, 2007, the balance of the purported debt had reached $22,509.36. (Complaint, Ex. 10.)

### B.  Procedural History

Plaintiffs filed this action on November 7, 2007, alleging that Defendants' attempt to collect on the alleged Wells Fargo debt was abusive and harassing in violation of state and federal laws. In their Complaint, Plaintiffs assert six causes of action, as follows: (1) Violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*; (2) Violation of the Rosenthal Fair Debt

Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788, *et seq.*; (3) Intrusion Upon Seclusion; (4) Negligence; (5) Tort In Se; and (6) Negligent Training and Supervision. The sixth cause of action is asserted only against Credigy, and not against the Individual Defendants.

Presently before the Court are Defendants' Motions for Summary Judgment.[3]

### III.  STANDARDS

Although motions for partial summary judgment are common, Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment, does not contain an explicit procedure entitled "partial summary judgment." As with a motion under Rule 56(c), partial summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of partial summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact." Id. at 323. The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

When evaluating a motion for partial or full summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v.

---

[3] Defendants initially filed a total of nine Motions for Summary Judgment. In addition to the five motions presently before the Court, Defendants filed the four following motions: (1) Motion for Summary Judgment (No Debt Collection by Credigy Receivables or Credigy Solutions), Docket Item No. 197; (2) Motion for Partial Summary Judgment (No Negligence), Docket Item No. 199; (3) Motion for Partial Summary Judgment (Negligent Supervision; Negligent Training), Docket Item No. 200; and (4) Motion for Summary Judgment ("Bona Fide Error" Defense), hereafter, "MSJ-8," Docket Item No. 218. On February 6, 2009, however, Defendants filed notices of withdrawal with respect to each of these motions. (See Docket Item Nos. 328-31.) Defendants' withdrawals were technically timely under Civil Local Rule 7-7(e).

Defendants Boyde, Miller and Peres have also filed a Motion for Joinder in Defendants Credigy's Motions for Summary Judgment. (Docket Item Nos. 196, 197, 199, 200, 202, 213, and 217.) The Court GRANTS the Individual Defendants' Motion for Joinder.

Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, partial summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

Defendants move for summary judgment on a variety of grounds. The Court considers each of Defendants' Motions in turn.

### A. No Debt Covered by the FDCPA

Defendants move for summary judgment on Plaintiffs' FDCPA claim, on the ground that the FDCPA only applies where a defendant seeks to collect a "debt," as the term is defined by the statute. (MSJ-1 at 1.) Defendants contend that Plaintiffs did not have a "debt" under the FDCPA, because Plaintiffs allegedly paid the debt at issue in this case.[4]

Under the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Based on the plain language of the statute, the Court finds that the FDCPA defines "debt" as "any obligation or *alleged* obligation of a consumer," and does not require that the debt be actual

---

[4] Defendants' contention is based on Plaintiffs' deposition testimony, in which they asserted that they had resolved the Wells Fargo's debt several years prior to Defendants' attempts to collect on the debt. (See MSJ-1 at 1-2.) There is no other evidence before the Court, however, as to whether Plaintiffs actually paid the disputed Wells Fargo debt.

and extant at the time of the attempted collection. 15 U.S.C. § 1692a(5) (emphasis added). In addition, the Ninth Circuit has found that "Congress designed the FDCPA to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" Swanson v. Southern Oregon Credit Serv., Inc., 869 F.2d 1222, 1225 (9th Cir. 1988) (quoting S. Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699). Thus, the Court finds that Plaintiffs' purported settlement of the Wells Fargo's debt is immaterial to Defendants' potential FDCPA liability.

Accordingly, the Court DENIES Defendants' Motion for Summary Judgment on the issue of "debt" under the FDCPA.

**B.      Third-Party Disclosure Under 15 U.S.C. § 1692b**

Defendants move for summary judgment on Plaintiffs' FDCPA third-party disclosure claim, on the grounds that (1) 15 U.S.C. § 1692b does not apply to this case and (2) Plaintiffs' third-party disclosure claims are barred by the applicable one-year statute of limitations. The Court considers each contention in turn. (MSJ-1 at 1.)

**1.      Application of 15 U.S.C. § 1692b**

Defendants contend that Plaintiffs third-party disclosure claim under 15 U.S.C. § 1692b fails because Plaintiffs have no evidence that Defendants contacted a third-party to communicate about Plaintiffs' debt. (MSJ-1 at 3.)

The FDCPA provides:

> [W]ithout the prior consent of the consumer . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). The FDCPA does, however, provide a safe harbor by which a debt collector may communicate with third-parties for the limited purpose of obtaining information pertaining to the location of the debtor. Under this provision, "[a]ny debt collector communicating with any

5

1 person other than the consumer for the purpose of acquiring location information about the
2 consumer shall . . . (2) not state that such consumer owes any debt." 15 U.S.C. § 1692b.

3 In this case, Plaintiffs present evidence that their daughter, Elizabeth Fausto, received a call
4 from Defendants "telling [her] it was about a debt from [her] parents." (Declaration of Tomio Narita
5 in Support of Defendants' Motion for Summary Judgment, Ex. E at 54:18-19, hereafter, "Narita
6 Decl.," Docket Item No. 207.) Elizabeth Fausto testified that the caller was looking for Plaintiffs in
7 regard to a Wells Fargo's debt. (Id. at 54:14-20.) She also stated that she memorialized the call in a
8 note for her mother, on which she wrote the caller's name, Ricardo Ventura, his phone number and
9 the date "7-20." (See Wilcox Decl., Ex. W.) Furthermore, Defendants' call log shows that on July
10 20, 2007, an "rventura" called Plaintiffs' home and left a message. (Id., Ex. N.)

11 Plaintiffs' evidence that Elizabeth Fausto received a phone call from Defendants, along with
12 evidence of Defendants' log showing such a call, demonstrates that a call was made to the Faustos'
13 home on July 20. The parties dispute, however, whether Defendants were merely calling to seek
14 location information or whether they communicated information about Plaintiffs' debt to Elizabeth
15 Fausto. Accordingly, the Court finds that there are triable issues of fact with respect to whether the
16 July 20 phone call violated 15 U.S.C. §§ 1692b and c.

17 **2. Statute of Limitations**

18 In the alternative, Defendants contend that Plaintiffs' third-party disclosure claims are barred
19 by the FDCPA's one-year statute of limitations, on the ground that there is no evidence that any
20 third-party disclosures occurred within one year of the filing of this action. (MSJ-1 at 4.)

21 The FDCPA requires that an action be brought "within one year from the date on which the
22 violation occurs." 15 U.S.C. § 1692k(d).

23 In this case, Plaintiffs' third-party disclosure claim is based on the purported July 20, 2007
24 call received by Elizabeth Fausto, in which she has testified that Defendants' employee disclosed
25 information about her parents' debt. As discussed above, Plaintiffs have introduced evidence that
26 Elizabeth Fausto received and documented a call on "7-20" from Ricardo Ventura. Plaintiffs have

28 6

also introduced evidence that an "rventura" called Plaintiffs' home and left a message on July 20, 2007. Since this action was filed four months after this purported telephone exchange, the Court finds that, to the extent a reasonable jury could find that an "rventura" called on "7-20" and disclosed to Elizabeth Fausto her parents' debt, Plaintiffs' third-party disclosure claim is timely.

In sum, the Court DENIES Defendants' Motion for Summary Judgment on Plaintiffs' third-party disclosure claim.

**C.   Actual Damages**

Defendants move for summary judgment on the ground that Plaintiffs have no proof of actual damages in support of their FDCPA claim. (MSJ-3 at 1.) In particular, Defendants contend that Plaintiffs cannot prove that they suffered any emotional distress damage as a result of Defendants' conduct.

The FDCPA permits an award of actual damages for a defendant's violation of the statutory scheme. 15 U.S.C. § 1692k(a)(1). "Actual damages [under the FDCPA] not only include any out of pocket expenses, but also damages for personal humiliation, embarrassment, mental anguish or emotional distress." Panahiasl v. Gurney, No. 04-04479 JF, 2007 U.S. Dist. LEXIS 17269, at *3 (N.D. Cal. Mar. 8, 2007). Since the statutory scheme permits emotional distress damages, a plaintiff may recover "without proving the elements of the state law cause of action for intentional infliction of emotional distress."[5] Id. In the Ninth Circuit, emotional distress damages may be proven in a number of ways, including though corroborating medical evidence or non-expert testimony establishing "manifestations of mental anguish [and the occurrence of] significant emotional harm." Dawson v. Wash. Mut. Bank, F.A., 390 F.3d 1139, 1149-50 (9th Cir. 2004) (finding that damages

---

[5] But see Costa v. Nat'l Action Fin. Servs., No. CIV. S-05-2084 FCD/KJM, 2007 U.S. Dist. LEXIS 93230, at *22-*24 (E.D. Cal. Dec. 19, 2007). In Costa, the court determined that an FDCPA plaintiff may only recover actual emotional distress damages by proving the relevant state law elements for intentional infliction of emotional distress ("IIED"). The court noted that the Ninth Circuit has not decided the issue. In California, an IIED plaintiff must prove "(1) extreme and outrageous conduct by the defendant; (2) with intent to cause plaintiff emotional distress; (3) severe emotional distress suffered by plaintiff; and (4) defendant's conduct actually and proximately caused plaintiff's severe emotional distress." Id. at *23-*24 (citing Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982)).

7

1 for emotional distress are available under bankruptcy law when a creditor violates the automatic stay
2 that follows from the filing of a bankruptcy petition). Emotional distress can also be readily
3 apparent without corroborative evidence, where a plaintiff was a victim of egregious conduct or
4 where the "circumstances make it obvious that a reasonable person would suffer significant
5 emotional harm." Id. at 1150.

6 In this case, Plaintiffs have provided their own deposition testimony and that of several other
7 witnesses in support of Plaintiffs' emotional distress injuries. First, Luz Fausto testified in her
8 deposition that Defendants' conduct caused her to suffer emotional distress. (Wilcox Decl., Ex. R at
9 255:13.) She stated that she became "tense," "desperate," and "stressed to the extreme," as a result
10 of Defendants' pursuit of the disputed debt. (Id. at 255:18, 256:3, 257:14.) She further described
11 the experience as "a nightmare." (Id. at 256:25.) In her declaration, Luz Fausto testified that
12 Defendants threatened to take her home, which created increased stress at home and caused her to
13 lose sleep. As a result, she received medical treatment and was prescribed sleeping medication.
14 (Declaration of Luz Fausto in Support of Opposition to Defendants' Motion for Summary Judgment
15 ¶¶ 21-22, hereafter, "Luz Fausto Decl.," Docket Item No. 293.) She also declared that, as a result of
16 Defendants' conduct, she suffered "fear, anxiety, stress, hopelessness, difficulty eating, humiliation,
17 uncontrollable shaking, crying fits, depression, marital instability, inability to sleep, and
18 embarrassment." (Id. ¶ 24.) Plaintiffs' son has offered corroborating testimony in his deposition,
19 stating that after Defendants' phone calls, Luz Fausto's blood pressure went up and she ceased to be
20 herself, which caused the family to have to intervene to "help her calm down." (Wilcox Decl., Ex.
21 Y at 25:6-9.)

22 In his deposition, Manuel Fausto testified that Defendants' persistent calling "caused
23 depression" and made his wife cry at night. (Wilcox Decl., Ex. S at 142:7-8.) He stated that he
24 sought medical treatment as a consequence of Defendants' conduct. (Id. at 148:20-21.) In his
25 declaration, Manuel Fausto testified that he was "mortified" by the adverse effects of Defendants'
26 conduct on his wife's health. (Declaration of Manuel Fausto in Support of Opposition to

8

Defendants' Motions for Summary Judgment ¶ 21, hereafter, "Manuel Fausto Decl.," Docket Item No. 295.) According to Fausto, he is "still stressed." (Id. ¶ 27.)

The Court finds that the above evidence, in conjunction with the considerable and undisputed volume of calls to Plaintiffs' home, creates triable issues of fact as to whether Plaintiffs suffered recoverable emotional distress damages as a result of Defendants' conduct. Considering this evidence, along with evidence of Defendants' threats to take Plaintiffs' home, a rational trier of fact could find that Plaintiffs suffered actual damages in the form of emotional distress.

Accordingly, the Court DENIES Defendants' Motion for Summary Judgment on the issue of actual damages.

**D.** **Intrusion Upon Seclusion**

Defendants move for summary judgment on Plaintiffs' claim for intrusion upon seclusion, on the ground that there is no evidence that Defendants engaged in highly offensive conduct. (MSJ-4 at 1-2.)

In California, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Deteresa v. Am. Broad. Cos., Inc., 121 F.3d 460, 465 (9th Cir. 1997). To determine whether conduct is "offensive" within the meaning of the law, courts consider "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." Id. (quoting Hill v. National Collegiate Athletic Ass'n, 7 Cal. 4th 1, 26 (1994)).

Courts have held that "repeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion." Panahiasl, 2007 WL 738642, at *3. For example, in Joseph v. J.J. MacIntyre Cos., LLC, 238 F. Supp. 2d 1158, 1169 (N.D. Cal. 2002), the court found triable issues of fact as to whether a plaintiff's privacy was invaded by a debt collector, where the debt collector made 200 repeated calls over a nineteen month period. Furthermore, the FDCPA

1 itself provides that "the placement of [debt collection] telephone calls without meaningful disclosure
2 of the caller's identity" is abusive and harassing. 15 U.S.C. § 1692d(6). Under the FDCPA,
3 "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or
4 continuously with intent to annoy, abuse, or harass any person at the called number" is similarly
5 proscribed. Id. § 1692d(5).

6 In this case, Plaintiffs have evidence that Defendants made over ninety calls to their home,
7 and that the content of those calls was harassing in violation of state and federal laws. (See, e.g.,
8 Wilcox Decl., Ex. N.) Plaintiffs also offer evidence that Defendants failed to identify themselves
9 when calling, and would allow the phone to ring repeatedly when calling, only to call back
10 immediately after Plaintiffs hung up the phone. (See Wilcox Decl., Exs. L, M, R.)

11 In light of the common law and statutory proscriptions on abusive debt collection practices,
12 a reasonable jury could find that Defendants' debt collection conduct was actionably "offensive,"
13 and could find Defendants liable for the tort of intrusion upon seclusion.

14 Accordingly, the Court DENIES Defendants' Motion for Summary Judgment with respect to
15 Plaintiffs' claim for intrusion upon seclusion.

16 **E.     Punitive Damages**

17 Defendants move for summary judgment with respect to Plaintiffs' prayer for punitive
18 damages on the grounds that (1) punitive damages are not available for intrusion upon seclusion
19 causes of action, and (2) there is no evidence of malice, oppression, or fraud, such as to qualify
20 Plaintiffs for an award of punitive damages. (MSJ-4 at 2.)

21 In California, punitive damages may be awarded "where it is proven by clear and convincing
22 evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code §
23 3294.[6] Punitive damages have been recognized for common law invasion of privacy claims in the

---

[6] Under the California Civil Code, the following definitions are applicable: (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. (3) "Fraud" means an intentional

10

1  context of unlawful debt collection practices. <u>Sanchez v. Client Services, Inc.</u>, 520 F. Supp. 2d
2  1149, 1164-65 (N.D. Cal. 2007). Accordingly, the Court finds that punitive damages are available
3  for Plaintiffs' intrusion upon seclusion cause of action.

4       With respect to whether Defendants' actions could provide the basis for an award of punitive
5  damages, courts have found that voluminous and harassing debt collection communications can
6  constitute oppression, malice, or fraud within the meaning of California Civil Code § 3294. For
7  example, in <u>Sanchez</u>, the debtor plaintiffs testified that the defendant debt collector had made dozens
8  of threatening phone calls in pursuit of an alleged debt. 520 F. Supp. 2d at 1164-65. The court held
9  that the issue of whether the defendants' conduct amounted to oppression, fraud, or malice was a
10 credibility determination appropriately reserved for the ultimate trier of fact. <u>Id.</u> at 1165.

11      In this case, Defendants do not contest that at least ninety phone calls were placed to
12 Plaintiffs' residence. (<u>See</u> Wilcox Decl., Ex. N.) The parties do dispute, however, the nature and
13 the content of the calls made by Defendants. (<u>See, e.g.</u>, Wilcox Decl., Ex. HH at 8:28-29-9:1-3.)
14 Given the volume of calls to Plaintiffs' residence along with Plaintiffs' evidence of the threatening
15 nature of those calls, a reasonable jury could find clear and convincing evidence of malicious,
16 oppressive or fraudulent conduct, sufficient to support an award of punitive damages.

17      Accordingly, the Court DENIES Defendants' Motion for Summary Judgment on the issue of
18 punitive damages.

### F. <u>Defendant Peres' Motion for Summary Judgment</u>

20      Defendant Peres moves for partial summary judgment with respect to all of Plaintiffs' claims
21 on the ground that he is not liable for conduct he did not commit. (MSJ-5 at 1.)

22      In large part, the parties dispute whether Defendant Peres was involved with Credigy's debt
23 collection activity in the United States. Undisputed evidence shows that Peres' name and title as
24 "Collection Manager" was printed on the collection notice sent to Plaintiffs on December 22, 2006.

---

26 misrepresentation, deceit, or concealment of a material fact known to the defendant with the
intention on the part of the defendant of depriving a person of property or legal rights or otherwise
27 causing injury. Cal. Civ. Code § 3294.

28      11

1 (Complaint, Ex. 7.) On the face of this evidence, Peres had at least nominal contact with Plaintiffs.
2 Defendant Peres, however, testified that he did not sign the letter, had no knowledge of the letter,
3 and never had the title "Collection Manager." (Narita Decl., Ex. J at 123:1-17.) This testimony fails
4 to provide an explanation as to why his name was printed on the collection notice and why he was
5 named as a Collection Manager. Since Defendant Peres fails to present specific facts that
6 affirmatively separate himself from Credigy's attempts to collect on Plaintiffs' purported debt, he
7 has not demonstrated an absence of a genuine issue of material fact as to his own liability.

Accordingly, the Court DENIES Defendant Peres' Motion for Summary Judgment.

**G.     Defendants' Withdrawn Motions**

On February 6, 2009, Defendants withdrew four pending motions for summary judgment, each of which had previously been noticed for consideration alongside the five motions for summary judgment addressed in this Order. Although Defendants' withdrawals were technically within the time allowed by Civil Local Rule 7-7(e), the Court finds that the withdrawals may nonetheless have prejudiced Plaintiffs. Defendants' chosen strategy in pursuing summary judgment was to inundate Plaintiffs and the Court with nine separate and simultaneous motions for summary judgment. After forcing Plaintiffs to respond to all nine motions, and compelling the Court to begin its consideration of those motions, Defendants unilaterally withdrew four of them. This causes the Court to question whether Defendants had a meritorious basis for the withdrawn motions in the first instance, and whether Defendants should be subject to sanctions as a consequence of the filing and withdrawal of those motions.

Accordingly, the Court invites Plaintiffs to file the appropriate motion for monetary sanctions to recover fees and costs resulting from having to respond to the four motions for summary judgment that have been withdrawn.

//

12

## V. CONCLUSION

The Court DENIES Defendants' Motions for Summary Judgment. The Court's ruling on these motions are applicable to the Individual Defendants since the Court has granted the Individual Defendants' Motions for Joinder.

In light of this Order, the Court VACATES the hearing on the Motions currently set for February 20, 2009. The Court continues the Final Pretrial Conference from February 20, 2009 to **February 24, 2009 at 1:30 p.m.** All pretrial deadlines remain unchanged.

Dated: February 17, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Balam Osberto Letona letonalaw@gmail.com
Bernard A. Burk bburk@howardrice.com
D'Lonra C. Ellis dellis@howardrice.com
David Humphreys david@hwh-law.com
Jeffrey A. Topor jtopor@snllp.com
Jeffrey Boyd Lucas jeff.lucas@ssalaw.net
John F. Gillespie john.gillespie@ssalaw.net
Lucius James Wallace luke@hwh-law.com
Ronald Wilcox ronaldwilcox@post.harvard.edu
Tomio Buck Narita tnarita@snllp.com


**Dated: February 17, 2009**                                        **Richard W. Wieking, Clerk**


                                                                    **By:   /s/ JW Chambers                    **
                                                                           **Elizabeth Garcia**
                                                                           **Courtroom Deputy**