1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5    MANUEL G. FAUSTO, ET      )  C-07-0568-JW
     AL.,                      )
6                             )  MARCH 27, 2009
              PLAINTIFFS,      )
7                             )  VOLUME 7
              V.               )
8                             )  **PARTIAL TRANSCRIPT**
     CREDIGY SERVICES, ET      )
9    AL.,                      )  PAGES 1 - 24
                              )
10           DEFENDANTS.       )
     _____   )
11

12

13          THE PROCEEDINGS WERE HELD BEFORE

14         THE HONORABLE UNITED STATES DISTRICT

15                  JUDGE JAMES WARE

16   A P P E A R A N C E S:

17   FOR THE PLAINTIFFS: HUMPHREYS, WALLACE & HUMPHREYS
                          BY:  DAVID HUMPHREYS
18                             LUKE WALLACE
                               PAUL CATALANO
19                        9202 SOUTH TOLEDO AVENUE
                          TULSA, OKLAHOMA 74137
20
                          THE LAW OFFICE OF RONALD WILCOX
21                        BY:  RONALD WILCOX
                          2160 THE ALAMEDA
22                        FIRST FLOOR
                          SAN JOSE, CALIFORNIA 95126
23
          (APPEARANCES CONTINUED ON THE NEXT PAGE.)
24

25   OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                          CERTIFICATE NUMBER 8074

                                                        1

1

2

A P P E A R A N C E S: (CONT'D)

3

4      FOR THE PLAINTIFFS:        THE LAW OFFICE OF BALAM O.
                                  LETONA
5                                 BY:  BALAM O. LETONA
                                  1337 PACIFIC AVENUE
6                                 SUITE 203
                                  SANTA CRUZ, CALIFORNIA 95060
7

8

       FOR THE DEFENDANTS:       SIMMONDS & NARITA
9                                 BY:  TOMIO NARITA
                                  44 MONTGOMERY STREET
10                                SUITE 3010
                                  SAN FRANCISCO, CALIFORNIA
11                                94104

12

                                  STEWART & ASSOCIATES
13                                BY:  JEFFREY B. LUCAS
                                       JOHN E. GILLESPIE
14                                3950 JOHNS CREEK COURT
                                  SUITE 100
15                                SUWANEE, GEORGIA 30024

16

       ALSO PRESENT:             STEPHANIE SCHMITT
17                                KATY THORESEN

18

19

20

21

22

23

24

25

                                                                2

INDEX OF PROCEEDINGS

FOR THE PLAINTIFFS':

**OSCAR EDUARDO FAUSTO URIBE**    DIRECT EXAM P. 7
                                 CROSS-EXAM P. 16

3

```
1    SAN JOSE, CALIFORNIA                    MARCH 27, 2009

2
                       P R O C E E D I N G S
3

4            (WHEREUPON, THE PROCEEDINGS IN THIS

5    MATTER WERE HELD OUT OF THE PRESENCE OF THE JURY:)

6            THE COURT:  DID YOU FIX YOUR TECHNICAL

7    PROBLEM?

8            MR. WALLACE:  I BELIEVE SO.

9            THE COURT:  ALL RIGHT.  BRING THEM IN.

10           MR. WALLACE:  IS IT OKAY IF I CUE IT UP?

11           THE COURT:  JUST WAIT BECAUSE THEIR

12   ATTENTION MIGHT BE --

13           MR. WALLACE:  OKAY.

14           (WHEREUPON, THE FOLLOWING PROCEEDINGS

15   WERE HELD IN THE PRESENCE OF THE JURY:)

16           THE COURT:  PLEASE BE SEATED.

17           MEMBERS OF THE JURY, COUNSEL IS NOW GOING

18   TO TRY TO FAST FORWARD HIS VIDEO TO THE POINT WHERE

19   WE LEFT OFF YESTERDAY.  I HOPE THAT THE TECHNICAL

20   PROBLEM HAS BEEN SOLVED.  IT IS ALWAYS IRKSOME WHEN

21   TECHNOLOGY DOESN'T WORK, BUT AS YOU CAN SEE FROM

22   SOME OF THE GADGETS IN THIS COURTROOM, WE EMBRACE

23   TECHNOLOGY BECAUSE IT'S A WAY FOR YOU TO LEARN

24   ABOUT THE FACTS OF THE CASE AND HAVING A VIDEOTAPE

25   OF THE DEPOSITION HELPS BECAUSE YOU CAN ACTUALLY
```

4

1      OBSERVE THE DEMEANOR OF THE PERSON AS OPPOSED TO

2      HAVING THE TRANSCRIPT READ TO YOU.  SO IT'S GOOD OF

3      COUNSEL TO TRY AND PUT US IN A POSITION WHERE WE

4      CAN SEE THE WITNESS.

5                  ARE YOU READY TO RESUME?

6                  MR. WALLACE:  I BELIEVE SO.

7                  THE COURT:  YOU MIGHT REMIND US WHO THE

8      WITNESS IS.

9                  MR. WALLACE:  THIS IS KIMBERLY ERVIN, AND

10     SHE WAS AN EMPLOYEE IN THE DISPUTE RESOLUTION TEAM

11     AT THE TIME THAT CREDIGY -- ALL OF THIS WITH

12     CREDIGY WAS GOING ON IN 2006 AND 2007.

13                 MR. WALLACE:  IS IT OKAY TO PROCEED, YOUR

14     HONOR?

15                 THE COURT:  YES.

16                 (WHEREUPON, A VIDEOTAPE WAS PLAYED IN OPEN

17     COURT OFF THE RECORD.)

18                 MR. NARITA:  BLESS YOU.

19                 MR. WALLACE:  YOUR HONOR, I RESTARTED IT

20     AND THIS MORNING IT WORKED FINE AND SOMETIMES

21     THERE'S A GAP AND MAYBE IT'S PROCESSING BUT TOWARDS

22     A MINUTE HERE THERE'S LESS OF THOSE GAPS.

23                 THE COURT:  I KNOW IT'S POSSIBLE TO TAKE

24     ALL OF YOUR EDITS AND PUT THEM IN ONE FILE, LIKE AN

25     AVI FILE WHERE IT'S A SINGLE ONE.

                                                        5

1          I KNOW YOU'RE TAKING SEGMENTS AND PUTTING

2     THEM TOGETHER, BUT AFTER YOU DO THAT YOU MAY FIND

3     IT MORE PROFITABLE IF YOU HAVE MORE OF THESE, PUT

4     IT IN A SINGLE FILE SO THAT IT'S A SINGLE VIDEO

5     FILE RATHER THAN LEAVING IT IN SEGMENTS AND HAVING

6     IT SEARCH.

7          MR. HUMPHREYS:  YOUR HONOR, FORTUNATELY

8     FOR ALL OF US, THIS IS THE LAST VIDEO THAT WE WILL

9     BE PLAYING.

10          MR. HUMPHREYS:  YOUR HONOR, WE ARE HAVING

11    THE SAME PROBLEM.  IT'S FREEZING UP AGAIN.  I THINK

12    WE CAN GET THROUGH IT IF WE REBOOT ONE MORE TIME.

13    THERE'S NOT A WHOLE LOT LEFT.  I APOLOGIZE.

14          THE COURT:  WE CAN COME BACK TO IT AT

15    ANOTHER TIME.  LET'S MOVE ON TO SOMETHING ELSE AND

16    WE CAN HEAR THE REST OF IT.

17          THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

18          **OSCAR EDUARDO FAUSTO URIBE,**

19    BEING CALLED AS A WITNESS ON BEHALF OF THE

20    PLAINTIFFS, HAVING BEEN FIRST DULY SWORN, WAS

21    EXAMINED AND TESTIFIED AS FOLLOWS:

22          THE WITNESS:  YES.

23          THE CLERK:  BE SEATED.  PLEASE STATE YOUR

24    NAME FOR THE RECORD.

25          THE WITNESS:  OSCAR EDUARDO FAUSTO URIBE.

                                                      6

1    THE COURT:  YOU CAN MOVE IT CLOSER SO YOU

2    DON'T HAVE TO USE THE MIKE.  THERE YOU GO.

3                    **DIRECT EXAMINATION**

4    BY MR. WALLACE:

5    Q    GOOD MORNING, MR. FAUSTO.  WOULD YOU PLEASE

6    TELL US YOUR NAME.

7             THE COURT:  HE ALREADY DID.

8             MR. WALLACE:  GREAT.  THANK YOU.

9    Q    WHERE DO YOU LIVE?

10   A    IN GONZALES.

11   Q    AND DO YOU RECOGNIZE THE FOLKS AT THIS TABLE

12   AS YOUR PARENTS, MR. AND MRS. FAUSTO?

13   A    YES.

14   Q    OKAY.  TELL US HOW OLD YOU ARE?

15   A    I'M 20.

16   Q    AND ARE YOU IN SCHOOL?

17   A    YES.

18   Q    WHERE?

19   A    HARTNELL COLLEGE.

20   Q    AND HOW FAR ALONG IN COLLEGE ARE YOU?

21   A    WELL, IT BEING MY THIRD SEMESTER SO I WOULD

22   BASICALLY BE RANKED AS A SOPHOMORE.

23   Q    OKAY.  AND WHAT IS YOUR COURSE LOAD RIGHT NOW?

24   A    RIGHT NOW I HAVE 18 UNITS WHICH IS ABOUT 6

25   CLASSES.

7

1    Q    AND HAVE YOU DECIDED ON A MAJOR?

2    A    YES.

3    Q    AND WHAT IS THAT?

4    A    HISTORY.

5    Q    WHAT IS YOUR PLAN AFTER HARTNELL?

6    A    ACCORDING TO MY ED THAT I HAVE BASED WITH MY

7    COUNSELLOR, AFTER THIS SEMESTER I'LL HAVE THE FALL

8    AND THE SPRING.  AND THEN HOPEFULLY IF I'M ACCEPTED

9    I WOULD WANT TO GO TO BERKELEY IN THE FALL OF 2010.

10        BUT I ALSO MIGHT JOIN THE MILITARY.  MY

11   PARENTS DON'T WANT ME TO BECAUSE MY BROTHER IS

12   ALREADY IN IT, AND MY MOM HAS ASKED ME NOT TO PUT

13   THAT -- HER THROUGH THAT AGAIN.

14   Q    ARE YOU EMPLOYED?  DO YOU DO ANYTHING TO EARN

15   A LIVING?

16   A    YES.

17   Q    AND WHAT DO YOU DO?

18   A    RIGHT NOW I HAVE TWO SEPARATE JOBS.  I GUESS

19   MY PRIMARY JOB IS I'M A TUTOR AT FAIRVIEW MIDDLE

20   SCHOOL, AND I WORK THROUGH THE GONZALES MIDDLE

21   SCHOOL DISTRICT.  AND I -- THAT'S MY PRIMARY JOB.

22   I USUALLY WORK THERE MONDAY THROUGH FRIDAY, 3:00 TO

23   6:00.  AND ON THE WEEKDAY MORNINGS THAT I'M NOT IN

24   SCHOOL, I WORK FOR SEARS.

25   Q    AND WHAT DO YOU TUTOR?  WHAT SUBJECT?

8

1    A    BASICALLY I'M IN CHARGE OF THE SEVENTH

2    GRADERS.  I CAN TUTOR THEM THROUGHOUT ANY SUBJECT

3    BUT THE MAJORITY IS ALWAYS MATHEMATICS.

4    Q    LET ME TAKE YOU BACK TO THE TIME PERIOD OF

5    AUGUST 2006 TO VERY EARLY JANUARY 2008 AND ASK YOU,

6    WHERE WERE YOU LIVING AT THAT TIME?

7    A    AT HOME WITH MY PARENTS.

8    Q    OKAY.  WERE YOU IN HIGH SCHOOL AT THAT TIME?

9    A    '06 TO WHEN?

10   Q    '08.

11   A    YES.

12   Q    AND DID YOU GRADUATE FROM HIGH SCHOOL ANYWHERE

13   IN THERE?

14   A    YES, I GRADUATED IN JUNE OF '07.

15   Q    OKAY.  WHEN YOU WERE LIVING AT HOME DURING

16   THIS TIME PERIOD THAT WE JUST TALKED ABOUT, WERE

17   YOU EVER AROUND WHEN THE PHONE WOULD RING?

18   A    YES.

19   Q    AND WERE YOU EVER AROUND WHEN THE PHONE WOULD

20   RING AND YOUR MOM WOULDN'T ANSWER IT?

21   A    YES.

22   Q    WERE YOU EVER AROUND WHEN SHE DID ANSWER IT?

23   A    YES.

24   Q    AND IS THERE ANY CONVERSATION OR INCIDENT THAT

25   YOU REMEMBER WHILE YOU WERE LIVING THERE DURING

9

1    THAT TIME PERIOD THAT STICKS OUT IN YOUR MIND ABOUT

2    A CONVERSATION THAT YOUR MOM HAD?

3    A    YES.

4    Q    AND WHEN APPROXIMATELY WAS IT?

5    A    TO BE HONEST, I DON'T KNOW THE EXACT DATE

6    BECAUSE I WOULDN'T BE ABLE TO -- YOU KNOW, IF I

7    KNEW, I WOULD BE ABLE TO TELL YOU EXACTLY, BUT I

8    REALLY DON'T KNOW THE DATE.

9    Q    COULD YOU GIVE US AN APPROXIMATION?  DO YOU

10   THINK IT WAS IN THIS TIME PERIOD WE'RE TALKING

11   ABOUT 2006 TO 2007?

12   A    MORE THAN LIKELY.

13   Q    OKAY.  TELL US, WHERE WERE YOU WHEN THE

14   CONVERSATION STARTED?

15   A    I WAS IN THE LIVING ROOM.

16   Q    AND WHAT DID YOU SEE OR HEAR?

17   A    WELL, BASICALLY WHEN I WAS PRESENT WHEN MY MOM

18   ANSWERED THE PHONE.

19        MR. LUCAS:  JUDGE, I'M GOING TO OBJECT TO

20   THE EXTENT THAT THE QUESTION CALLS FOR HEARSAY.  HE

21   ASKED WHAT DID YOU HEAR?

22        AND IF HE'S ASKING IT FOR SOMETHING THAT

23   WAS BEING ASKED ON THE TELEPHONE.

24        THE COURT:  YES, IT DOESN'T SEEM TO BE

25   ASKED FOR THAT.  WHAT IS THE PROFFER?

10

1          MR. WALLACE:  THE PROFFER IS TO SHOW THE

2    EFFECT AND THE STATE OF MIND OF MY CLIENT OF THE

3    CONVERSATION.

4          THE COURT:  MEMBERS OF THE JURY, I'M

5    GOING TO ALLOW THIS FOR A LIMITED PURPOSE.  IN

6    OTHER WORDS, WHAT LAWYERS ARE REFERRING TO AS

7    HEARSAY IS STATEMENTS, AS I HAVE TOLD YOU BEFORE,

8    MADE BY SOMEONE WHO IS NOT HERE IN COURT TESTIFYING

9    BEFORE WHAT WAS SAID AND IT IS BEING OFFERED TO

10   PROVE THE TRUTH OF WHAT WAS BEING SAID.

11          IT SEEMS TO ME THAT THIS CAN BE RECEIVED

12   BY YOU BUT FOR A LIMITED PURPOSE.  IN OTHER WORDS,

13   IT DOESN'T MATTER IF WHAT THE PERSON IS SAYING IS

14   TRUE OR NOT.

15          THIS IS BEING OFFERED TO SHOW THE EFFECT

16   THAT THE PHONE CALL HAD AS HE CAN OBSERVE THE

17   DEMEANOR OF HIS MOTHER ON THE PHONE AND HER WORDS

18   MAY HELP TO UNDERSTAND THE REASON WHY HE IS ACTING

19   IN A PARTICULAR WAY.

20          AND SO IT'S NOT FOR THE TRUTH OF WHAT SHE

21   IS SAYING BUT THE EFFECT THAT IT HAS ON THE

22   OBSERVER AND THE PERSON HE'S OBSERVING.

23          SO WITH THAT LIMITATION, I'LL ALLOW THE

24   TESTIMONY.

25   BY MR. WALLACE:

                                                      11

1    Q    LET ME BACK UP JUST A SECOND HERE.  WHERE DID

2    YOU SAY THAT YOU WERE?

3    A    THE LIVING ROOM.

4    Q    OKAY.  AND WHERE WAS YOUR MOM AT THE TIME?

5    A    USUALLY AT THE KITCHEN TABLE.

6    Q    OKAY.  AND SO WHAT IS THE FIRST THING THAT YOU

7    REMEMBER ABOUT THIS INCIDENT?

8    A    WELL, HONESTLY WHEN IT FIRST STARTED SHE

9    ANSWERED THE PHONE AND SHE -- YOU CAN HEAR SHE WAS

10   HAVING A CONVERSATION WITH THE PERSON.

11   Q    AND WHAT WAS THE TONE OF THE CONVERSATION AT

12   FIRST?

13   A    AT FIRST IT SEEMED LIKE I SAID JUST A NORMAL

14   CONVERSATION LIKE WE'RE HAVING NOW.  IT WAS MELLOW.

15   NOTHING WRONG.

16   Q    AND THEN WHAT HAPPENED?

17   A    AFTER A WHILE YOU CAN HEAR MY MOM STARTING TO

18   GET AGITATED BECAUSE AFTER A WHILE YOU CAN HEAR

19   MURMURS COMING FROM THE TELEPHONE.

20        BASICALLY YOU CAN TELL SOMEONE IS

21   STARTING TO RAISE THEIR VOICE.  AND SO MY MOM AS A

22   RESPONSE WOULD RAISE HER VOICE AND THAT'S WHEN I

23   WOULD GET MORE CONCERNED AND THAT'S WHEN I WOULD

24   GET UP AND STAND WITH HER AND I WOULD BASICALLY

25   TELL HER WHAT WAS GOING ON, BUT SHE WOULDN'T NEVER

12

1    LET ME DO ANYTHING.

2    Q    SO YOU WERE SITTING ON THE COUCH AND YOU COULD

3    HEAR THROUGH THE RECEIVER THAT SHE WAS HOLDING UP

4    TO HER EAR SOMEONE ON THE OTHER END?

5    A    YES.

6    Q    AND COULD YOU HEAR WHAT THEY WERE SAYING WHILE

7    YOU WERE SITTING ON THE COUCH?

8    A    WHILE I WAS SITTING ON THE COUCH, NO.  BUT AS

9    I STOOD UP TO GO NEXT TO HER, I COULD HEAR AFTER,

10   BECAUSE I WAS PRESENT DURING A FEW OF THEM, I DON'T

11   KNOW SPECIFICALLY HOW MANY, BUT WHAT I UNDERSTOOD

12   FROM WHAT I WAS HEARING, THERE WAS ALWAYS SOMEONE

13   CALLING TO COLLECT SOME KIND OF DEBT, THAT THE DEBT

14   HAD TO BE PAID, THAT THE INTEREST WAS HIGH.  YOU

15   HAD TO PAY, YOU HAD TO PAY.

16        MY MOM WOULD RESPOND PRETTY MUCH EVERY

17   TIME, IT WOULD BE LIKE, "YOU KNOW WHAT, SEND US

18   SOME SORT OF PROOF OR EVIDENCE THAT WE OWE THIS

19   DEBT.  WE'LL BE MORE THAN HAPPY TO PAY IT.  BUT IF

20   YOU CAN'T PROVIDE ANY EVIDENCE THAT WE OWE THIS

21   DEBT, STOP CALLING US."

22   Q    AND DID YOU -- HOW ELEVATED OR IN TONE DID YOU

23   SEE OR HEAR YOUR MOTHER GET IN THIS CONVERSATION

24   YOU'RE TELLING US ABOUT?

25   A    SHE OBVIOUSLY WOULD GET UPSET AND THAT'S

13

1    REALLY WHAT WOULD CONCERN ME THE MOST BECAUSE I

2    GUESS AS YOU KNOW NOW, MY MOM IS DIABETIC AND WHEN

3    HER BLOOD PRESSURE GOES UP, THAT'S BAD NEWS BECAUSE

4    SHE STARTS TO GET --

5            MR. LUCAS:  JUDGE, I'M GOING TO OBJECT

6    THAT THERE'S NO FOUNDATION FOR ANY MEDICAL

7    TESTIMONY BY THIS WITNESS.

8            THE COURT:  WELL, DIABETES IS NOT

9    NECESSARILY ONE OF THOSE CONDITIONS THAT WOULD

10   REQUIRE EXPERT TESTIMONY.

11           SO THE OBJECTION IS OVERRULED IN TERMS OF

12   DESCRIBING HIS KNOWLEDGE AS TO THE STATE OF HER

13   HEALTH, BUT IT DOES SEEM TO ME THAT IT'S NOT

14   RESPONSIVE DIRECTLY TO THE QUESTION THAT WAS BEING

15   PUT TO THE WITNESS.

16           MR. WALLACE:  OKAY.

17   Q    TELL ME WHAT -- WAS THERE ANYTHING ABOUT THE

18   WAY THAT THIS -- SHE WAS BEHAVING IN THIS

19   CONVERSATION THAT CONCERNED YOU?

20   A    YES.

21   Q    WHAT?

22   A    BASICALLY SHE GETS -- IT'S HARD TO DESCRIBE.

23   YOU HAVE TO SEE IT.  SHE KIND OF GETS IRRITATED,

24   KIND OF AGITATED I GUESS THE WORD WOULD BE.

25           SHE KIND OF STARTS TO SHAKE.

                                                    14

1    Q    AND AFTER THIS WAS THERE ANYTHING ELSE THAT

2    YOU CAN REMEMBER ABOUT THIS CONVERSATION, THE WAY

3    YOUR MOM BEHAVED OR ANYTHING ELSE THAT WAS SAID?

4    A    HONESTLY, NO.  JUST LIKE I SAID IT, IT WOULD

5    START OUT MELLOW.  AFTER A WHILE, THAT'S WHEN

6    THINGS WOULD START INCREASING AND IT WOULD PRETTY

7    MUCH BE THE SAME THING AS I WOULD WITNESS.

8    Q    YOU TOLD US THAT YOUR MOM WOULD SHAKE.  IS

9    THERE ANYTHING ELSE THAT PHYSICALLY THAT YOU

10   OBSERVED?

11   A    WELL, YOU CAN JUST KIND OF TELL LIKE, YOU

12   KNOW, SHE STARTS RUBBING HER HEAD AND SHE STARTS

13   BLINKING AND, SHE STARTS -- YOU KNOW THOSE STAGES

14   BECAUSE I MEAN, I'M THERE.  I KNOW THAT SHE GETS TO

15   THAT CERTAIN LEVEL AND IT'S JUST -- IT CONCERNS ME,

16   THAT'S ALL.

17   Q    SO AFTER THE CONVERSATION IS OVER, HOW IS YOUR

18   MOM AFTER THAT?

19   A    REALLY, YOU CAN TELL JUST BY LOOKING AT HER,

20   YOU CAN TELL THAT SHE'S AT A LEVEL THAT IT'S BEST

21   TO LET HER BE BECAUSE WE HAVE TO LET HER RELAX

22   BECAUSE HONESTLY IF I WAS TO DO SOMETHING TO TRY TO

23   HELP OR SOMETHING LIKE THAT, IT CAN KIND OF IGNITE

24   HER.  AND THEN, HONESTLY, WE'RE THE ONES THAT END

25   UP PAYING THE PRICE FOR IT.  SO WE JUST KNOW TO LET

15

1    HER -- GIVE HER HER SPACE.

2    Q    THANK YOU VERY MUCH.

3          THE COURT:  YOU MAY CROSS-EXAMINE.

4                      **CROSS-EXAMINATION**

5    BY MR. LUCAS:

6    Q    MR. FAUSTO, I BELIEVE THAT YOU HAD TOLD

7    MR. NARITA IN YOUR DEPOSITION AND MAYBE EVEN TODAY

8    THAT YOUR MOM REALLY DIDN'T TALK ABOUT THIS MUCH AS

9    FAR AS GIVING YOU ANY DETAILS, KIND OF HELD YOU AT

10   BAY WHEN YOU WANTED TO KNOW WHAT WAS GOING ON.  IS

11   THAT A FAIR REPRESENTATION?

12   A    THAT'S CORRECT.

13   Q    AND YOU DON'T -- YOU DON'T HAVE ANY IDEA WHO

14   WAS ON THE OTHER SIDE OF THE CONVERSATION?  YOU

15   NEVER HEARD THE NAME OF A COMPANY OR ANY PERSON

16   THAT WAS TALKING ON THOSE CONVERSATIONS, DID YOU?

17   A    AT THE TIME?  NO.

18   Q    AND AT ANY TIME YOU HAVE NEVER BEEN TOLD BY

19   YOUR MOTHER AND NOR HAVE YOU HEARD ANYONE IDENTIFY

20   THEMSELF ON THE OTHER SIDE OF THE PHONE, EITHER A

21   COMPANY OR A PERSON; ISN'T THAT CORRECT?

22   A    CORRECT.

23   Q    WHAT INFORMATION DO YOU HAVE ABOUT DISCOVER

24   CARD CALLING YOUR PARENTS' HOME TO DEFAULT ON A

25   DISCOVER CARD?

16

1    A    NONE.

2              MR. WALLACE:  ASSUMES FACTS, YOUR HONOR.

3              THE COURT:  SUSTAINED.

4    BY MR. LUCAS:

5    Q    WHAT INFORMATION DO YOU HAVE ABOUT THE

6    MORTGAGE COMPANY CALLING TO COLLECT ON LATE

7    MORTGAGE PAYMENTS TO YOUR PARENT'S HOME?

8              MR. WALLACE:  ASSUMES FACTS, YOUR HONOR.

9              THE COURT:  SUSTAINED.  AND, COUNSEL, IF

10   YOU LAY A FOUNDATION THAT HE HAS KNOWLEDGE

11   REGARDING PARTICULAR CALLS, I'LL LET YOU INQUIRE BY

12   ASKING QUESTIONS ABOUT CALLS, BUT IT SEEMS TO ME

13   THAT WITHOUT THAT FOUNDATION, YOU CAN COME UP WITH

14   A WHOLE SERIES OF NAMES AND IT WOULD BE WITHOUT

15   FOUNDATION.  AND IT DOES SEEM TO ME TO BE IMPROPER

16   TO -- WITHOUT LAYING A BASIC FOUNDATION.

17             MR. LUCAS:  UNDERSTOOD, JUDGE.

18   Q    DO YOU REMEMBER A TIME THAT YOU WENT WITH

19   MR. -- WITH YOUR MOTHER, DROVE YOUR MOTHER TO THE

20   OFFICE OF MR. BALAM LETONA?

21   A    YES.

22   Q    AND DO YOU REMEMBER DISCUSSING THAT TRIP WHEN

23   MR. NARITA TOOK YOUR DEPOSITION?

24   A    YES.

25   Q    DURING THAT DEPOSITION MR. LETONA TRIED TO

17

1    STOP YOU FROM ANSWERING MR. NARITA'S QUESTIONS;

2    ISN'T THAT TRUE?

3              MR. WALLACE:  OBJECTION, YOUR HONOR.

4    FOUNDATION.

5              MR. LUCAS:  JUDGE, I BELIEVE THE

6    FOUNDATION IS THAT IT'S IMPORTANT THAT THE JURY

7    KNOW HOW HE CAME ABOUT HIS INFORMATION CONCERNING

8    THE FACTS OF THIS CASE.

9              THE COURT:  WELL, THIS DOES SEEM TO GO

10   BEYOND THE SCOPE OF THE DIRECT, BUT I'M WILLING TO

11   ALLOW YOU, IN THE INTEREST OF TIME, TO OPEN NEW

12   AREAS AND PARTICULARLY IF THIS IS IMPEACHING HIM ON

13   HIS CREDIBILITY I'LL ALLOW YOU TO GO INTO IT.

14             YOUR QUESTION, THOUGH, IS WERE THERE

15   TIMES WHEN THE ATTORNEY DIRECTED HIM NOT TO ANSWER

16   A QUESTION?

17             MR. LUCAS:  YES, JUDGE.

18             THE COURT:  WAS HE REPRESENTING HIM IN

19   THE DEPOSITION?

20             MR. LUCAS:  I CAN ASK, BUT I DON'T

21   BELIEVE SO ACCORDING TO THE DEPOSITION TESTIMONY.

22             THE COURT:  THE OBJECTION IS OVERRULED

23   FOR NOW.

24   BY MR. LUCAS:

25   Q    IS THAT TRUE THAT MR. LETONA INSTRUCTED YOU

18

1    NOT TO ANSWER AT ONE POINT DURING THE DEPOSITION

2    MR. NARITA'S QUESTIONS?

3    A    NO.  IF I MAY, I RECALL --

4         THE COURT:  JUST A MOMENT.  HE'LL READ

5    SOMETHING THAT MIGHT HELP TO CLARIFY THIS.

6         MR. LUCAS:  I'M GOING TO READ FROM YOUR

7    DEPOSITION PAGE 37, LINE 6.

8         THE COURT:  NOW, THIS IS A CASE WHERE

9    HE'S NOT A PARTY.  SO YOU NEED TO GIVE HIM AN

10   OPPORTUNITY TO SEE THE DOCUMENT IF YOU'RE GOING TO

11   IMPEACH HIM WITH THE PRIOR TESTIMONY.

12        MR. LUCAS:  ALL RIGHT, JUDGE.

13   Q    I'LL TELL YOU, MR. FAUSTO, I'LL READ IT HERE

14   BESIDE YOU AND CAN YOU TELL ME IF I READ IT

15   CORRECTLY?  THIS IS YOUR DEPOSITION OSCAR EDUARDO

16   FAUSTO URIBE?

17   A    YES.

18   Q    AND ON PAGE 37 THERE WAS A QUESTION ASKED BY

19   MR. NARITA, "YEAH, WHAT DID YOU TALK ABOUT?

20        "ANSWER:  I DIDN'T -- WELL, MR. --"

21        THE COURT:  YOU NEED TO READ IT --

22        MR. LUCAS:  ALL RIGHT.  THERE WAS A

23   QUESTION BY MR. NARITA.  THAT'S THE QUESTION HERE,

24   "WELL, MR. LETONA WASN'T REPRESENTING YOU DURING

25   THE MEETING, WAS HE?"

                                              19

1           AND THEN MR. LETONA HAS A COMMENT, "ONE

2     MOMENT.  TO THE EXTENT THAT YOU WERE THERE IN THE

3     OFFICE AND THERE WAS ANY CONVERSATION THAT OCCURRED

4     BETWEEN YOUR MOTHER AND I AND AS WELL AS YOU THAT'S

5     ATTORNEY-CLIENT PRIVILEGE INFORMATION AND I

6     INSTRUCT YOU NOT TO ANSWER ON THE BASIS OF THAT."

7           DID I READ THAT CORRECTLY?

8           THE WITNESS:  YES.

9           MR. WALLACE:  FOUNDATION, YOUR HONOR.

10    IMPROPER USE OF THE DEPOSITION, TOO.

11          THE COURT:  NO.  I DON'T REGARD THAT AS

12    AN IMPROPER USE OF THE DEPOSITION.

13          BUT THIS IS A CASE, MEMBERS OF THE JURY,

14    A COMMUNICATION BETWEEN THE ATTORNEY AND THE CLIENT

15    ARE PRIVILEGED COMMUNICATIONS AND EVEN THOUGH THOSE

16    MAY BE PRIVILEGED INFORMATION, THAT DOCTRINE

17    EXCEEDS RELEVANCE.

18          AND IF A CLIENT TAKES HER MINOR SON WITH

19    HER TO A MEETING WITH THE ATTORNEY, AND THE

20    ATTORNEY HAS THE RIGHT TO OBJECT TO THE MINOR SON

21    REPEATING WHAT GOES ON IN THE CONVERSATION EVEN

22    THOUGH HE'S NOT THE CLIENT.

23          SO I WOULD INSTRUCT YOU TO DISREGARD THE

24    IMPLICATION THAT THERE'S SOMETHING IMPROPER ABOUT

25    THAT EXCHANGE BETWEEN THE ATTORNEY AND THIS WITNESS

                                                        20

1    IN DIRECTING THAT HE NOT ANSWER THE QUESTION

2    BECAUSE HE'S PROTECTING THE ATTORNEY-CLIENT

3    PRIVILEGE BETWEEN THE ATTORNEY AND HIS CLIENT,

4    NAMELY, THE WITNESS'S MOTHER.

5              MR. LUCAS:  JUDGE, HE WAS NOT A MINOR AT

6    THE TIME.  HE WAS AN ADULT.  HE WAS 19 YEARS OLD, I

7    BELIEVE.

8              THE COURT:  WELL, IS -- THIS IS THE KIND

9    OF THING THAT I WOULD RATHER HAVE HAPPEN OUT OF THE

10   PRESENCE OF THE JURY.

11             IS IT YOUR POSITION THAT THERE WAS A

12   WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE OF HIS

13   PRESENCE DURING THE MEETING?

14             MR. LUCAS:  PRESENCE OF A NONREPRESENTED

15   THIRD PARTY, YES, JUDGE.

16             THE COURT:  AND WHAT IS THE PLAINTIFFS'

17   POSITION?

18             MR. WALLACE:  WELL, I DON'T BELIEVE

19   THERE'S BEEN A FOUNDATION THAT HE WASN'T A MINOR.

20   MR. LUCAS IS SPECULATING FOR THIS JURY AND HE --

21             THE COURT:  WELL, HE WOULDN'T MAKE THAT

22   REPRESENTATION UNLESS HE KNOWS THE DATE OF HIS

23   BIRTH AND THE DATE OF THE MEETING.

24             MR. LUCAS:  I THINK HE TESTIFIED THAT HE

25   WAS 19 YEARS OLD AT THIS TIME AND I CAN ASK HIM AND

21

1    WE COULD CLARIFY.

2            THE COURT:  SO I'M GOING TO ASSUME HE

3    WASN'T A MINOR AT THE TIME.  BUT WHAT IS YOUR

4    POSITION WITH RESPECT TO THE WAIVER?

5            MR. WALLACE:  I'LL LET HIM EXPLAIN IT.

6    GO AHEAD, YOUR HONOR.

7            THE COURT:  SO NO ASSERTION OF THE

8    PRIVILEGE IS APPLIED AND THE PARTY DOES HAVE A

9    RIGHT TO WAIVE THE PRIVILEGE.  AND SO WITH THE

10   PRIVILEGE BEING WAIVED, YOU MY INQUIRE FURTHER.

11   BY MR. LUCAS:

12   Q    DO YOU KNOW WHY MR. LETONA DID NOT WANT YOU TO

13   ANSWER MR. NARITA'S QUESTIONS?

14           MR. WALLACE:  IT'S SPECULATION, YOUR

15   HONOR.

16           THE COURT:  SUSTAINED.

17   BY MR. LUCAS:

18   Q    DID MR. LETONA TELL YOU ANYTHING SPECIFICALLY

19   THAT HE DID NOT WANT YOU TO SAY TO MR. NARITA?

20   A    NO.

21           MR. LUCAS:  I DON'T HAVE ANY FURTHER

22   QUESTIONS, JUDGE.

23           THE COURT:  ANY REDIRECT?

24           MR. WALLACE:  NO, YOUR HONOR.

25           THE COURT:  ALL RIGHT.  YOU MAY BE

                                                    22

1    EXCUSED.  YOU WERE OUTSIDE BECAUSE YOU WERE A

2    WITNESS IN THE CASE AND WITNESSES ARE EXCLUDED

3    DURING THE TRIAL, BUT NOW THAT YOU HAVE TESTIFIED,

4    YOU MAY REMAIN IF YOU WISH.

5              (WHEREUPON, THE PARTIAL TRANSCRIPT WAS

6    COMPLETED.)

7

8                        ---oOo---

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23