Balám O. Letona, Bar No. 229642
LAW OFFICE OF BALÁM O. LETONA, INC.
1347 Pacific Avenue, Suite 203
Santa Cruz, CA 95060-3940
Tel: 831-421-0200
Fax: 831-515-3110
Email: letonalaw@gmail.com

Ronald Wilcox, Bar No. 176601
LAW OFFIC OF RONALD WILCOX
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: 408-296-0400
Fax: 408-296-0486
Email: ronaldwilcox@post.harvard.edu

David Humphreys *(pro hac vice)*
Humphreys Wallace Humphreys, P.C.
9202 South Toledo Ave.
Tulsa, Oklahoma 74137

Luke Wallace *(pro hac vice)*
Humphreys Wallace Humphreys, P.C.
9202 South Toledo Ave.
Tulsa, Oklahoma 74137

Attorneys for Plaintiffs

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSÉ DIVISION

| | |
|---|---|
| MANUEL G. FAUSTO, AND LUZ FAUSTO,<br>Plaintiffs,<br>v.<br><br>CREDIGY SERVICES CORPORATION,<br>CREDIGY RECEIVABLES INC., CREDIGY<br>SOLUTIONS INC., LUIS RENATO SILVA<br>NUNES, BRETT BOYDE, PAULO PERES,<br>THOMPSON, and DOES 1-10, inclusive,<br>Defendant(s). | Case No. C07-05658  JW – RS<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION AND ATTORNEY FEES AND COSTS**<br><br>Date: June 30, 2009<br><br>Time: 9:00 a.m.<br><br>The Honorable James Ware<br>U.S. District Court<br>280 S. 1st. St.<br>San Jose, CA |

//
//
//

COME NOW the Plaintiffs, Manuel G. Fausto and Luz Fausto, and hereby submit their Memorandum in Support of Motion for Attorney Fees and Costs.

## CERTIFICATION OF COMPLIANCE WITH MEET AND CONFER REQUIREMENT

The undersigned Plaintiffs' counsel hereby certifies that the meet and confer requirement for this motion has been satisfied by the following: On May 19, 2009, the undersigned counsel for Plaintiffs provided a chart outlining the hourly rates for Plaintiffs' counsel and legal assistant staff. In addition, Defendants' counsel was provided an amount of total fees sought by stipulation. In addition to email communication, the undersigned Plaintiffs' counsel placed a telephone call to Defendants' counsel concerning the meeting and confer requirement. Defendants did not agree to such stipulation as to the rate of total amount of fees.

## FACTS OF THE CASE

The Court is familiar with this case. At trial, Credigy embraced the evidence of its conduct as lawful and appropriate. Credigy apparently has no plans to change its debt collection activities. When confronted with documented threats made by its collectors caught on tape, Credigy's corporate representative, a lawyer with ten years of experience who had appeared in more than fifty trials, claimed he wasn't familiar with the transcript and had only "glanced" at it.

Seven years after the Faustos believed the account was paid off, they received a phone call and a letter from Credigy Services Corp. demanding nearly $17,000. The Watsonville Law Center wrote a letter for Mr. Fausto demanding that Credigy provide a copy of the contract proving they owned the debt and proof that the debt was actually unpaid. Credigy responded with a form letter restating the balance claimed due. The Watsonville Law Center wrote a second letter for Mr. Fausto demanding Credigy to Cease and Desist all further contact with

them.

Credigy continued to collect on the account after having received a Cease and Desist, and knowing that the Faustos disputed owing it, writing numerous letters and calling the Faustos home over 90 times. The collectors made repeated false threats to the Faustos that Credigy would take their home and paycheck even though the time to sue had expired years before Credigy's first phone call to the Faustos' home. Mrs. Fausto tape recorded the last phone call from Credigy which documented false claims that the account had been reviewed in the legal department, that the account was a joint debt owed by Mrs. Fausto also, that Credigy was a "Credit Agency" and that Credigy would report the account "forever" on Mr. Fausto's credit file. Credigy's training manuals suggested the Brazilian collectors use the "coercion method," telling the consumer that their life will not be the same if the debt remains on their credit report. Credigy sued Mrs. Fausto claiming that its debt collection phone calls were confidential.

Credigy admitted receiving the written cease and desist demand (sent certified mail), but claimed it made a "Bona Fide Error" in continuing its collection efforts. The jury heard testimony that the "Dispute Resolution Team" was confronted with stacks of dispute letters, was understaffed and told that no more resources would be made available because it cost the company money.

The collection calls only stopped after this action was brought. Credigy had scheduled the calls to continue until the year 2020. A consumer from Illinois (a victim of ID theft) and another from New Mexico (former husband's account) testified that Credigy ignored their request for proof that the debt was owed and that Credigy continued collecting upon them after having received cease and desist demands.

3

## PROCEDURAL HISTORY

On November 7, 2007, Plaintiffs filed a Complaint in this Fair Debt Collection Practices Act suit against the Defendants and an Amended Complaint on December 16, 2007. Plaintiffs sued Credigy Services Corp., Credigy Receivables, Credigy Solutions and four individual debt collectors. The case was vigorously defended by the Credigy Defendants, resulting in 408 docket entries through the completion of the nine day jury trial. On February 28, 2008, Defendants Credigy Services, Credigy Receivables and Credigy Solutions served a Fed. R. Civ. P. Rule 68 Offer of Judgment in the sum of $5,000 for Mr. Fausto and $5,000 for Mrs. Fausto, plus attorney's fees and costs, then accrued. On April 3, 2009, the jury rendered its verdict for the Plaintiffs against Credigy Services for $500,000. This Court entered a judgment on May 5, 2009, determining that Plaintiffs were the prevailing party and entitled to an award of reasonable costs and attorney fees.

## SUMMARY OF ARGUMENT

A. Plaintiffs are Entitled to a Full Award of Their Attorney Fees and Costs.

B. Plaintiffs' Attorneys' Fees Are to Be Awarded Pursuant to the Lodestar Formula.

C. The *Laffey* Matrix Supports the Reasonableness of the Requested Hourly Rate.

D. The *Kerr* Factors Support the Reasonableness of the Requested Fee.

E. Plaintiffs are Entitled to a Supplemental Award of Attorney Fees for the Time Expended upon This Motion.

## STATEMENT OF QUESTION PRESENTED

What is the amount of reasonable attorney fees and costs that should be awarded to the

4

Plaintiffs?

## ARGUMENT AND AUTHORITIES

A.  **Plaintiffs are Entitled to a Full Award of Their Attorney Fees and Costs.**

The Fair Debt Collection Practices Act requires the payment of costs and reasonable attorney's fees to a successful consumer.

> …any debt collector who fails to comply with any provision of this subchapter…is liable to such person in an amount equal to the sum of--[actual damages] [statutory damages] and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. 15 U.S.C. § 1692k(a)(3).

Although litigants in the United States generally pay their own attorneys' fees, regardless of the outcome of the proceedings, "to encourage private enforcement of the law…Congress has legislated that in certain cases prevailing parties may recover their attorneys' fees from the opposing side. When a statute provides for such fees, it is termed a 'fee shifting' statute." *Stanton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). The FDCPA is one such statute, providing that any debt collector who fails to comply with its provisions is liable "in the case of any successful action…[for] the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The FDCPA's statutory language makes an award of fees mandatory. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008), (*Camacho II*), citing *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995). "The reason for mandatory fees is that Congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Id.*; *see also Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) (noting that the FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys

general").

### B. Plaintiffs' Attorneys' Fees Are to Be Awarded Pursuant to the Lodestar Formula.

The "Lodestar" Formula

"In the Ninth Circuit, the customary method of determining attorney fees is the 'lodestar method.' The court calculates the "lodestar" amount by multiplying the number of hours the prevailing party reasonable expended in the litigation by a reasonable hourly rate."[1]

Reasonable Hours Spent

In order to determine the reasonable number of hours spent on the litigation, courts require that "an attorney seeking a fee award must support her/his claim of hours worked by submitting detailed time records."[2] Plaintiffs' counsel has maintained "detailed time records," and a summary of the hours expended, hourly rates and total fees sought is contained on page 8 herein.

Counsel's time records were made contemporaneously with the work being performed. In addition to being meticulous in their detail, Plaintiffs' counsel has avoided "block billing" in their time records—discrete tasks are broken down and listed individually and not lumped in with other tasks. Finally, counsel's time records reveal the identity of the person for whom fees are sought and the hours of compensation requested the time records. Copies of Plaintiffs' counsel's billing summaries are attached to the Declarations of Plaintiffs' counsel and filed herein.

---

[1] *Ruby v. Invictus Franchising, Inc.*, 2001 U.S. Dist. LEXIS 22320 at *2, (Dist. Of Oregon 2001) (citing *Morales v. City of San Rafael*, 96 F.3d 359, 393 (9th Cir. 1996)) (citations omitted); *See also Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987).

[2] *Peake v. Chevron Shipping Co.*, 2004 U.S. Dist. LEXIS 15564 at *25, (N.D. Cal. 2004) (citing *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

6

Reasonable Hourly Rate

While "[w]e . . . recognize that determining an appropriate 'market rate' for the services of a lawyer is inherently difficult," *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984), the established standard when determining a reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997) (internal quotation marks omitted).[3]

The focus must be on the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."[4] "The relevant community is the forum in which the district court sits."[5] In this case the relevant community is the San Francisco Bay Area. Plaintiffs have provided the Court with competent and trustworthy evidence of the San Francisco Bay Area attorney fee market in the form of declarations of counsel. "The court may not use its own knowledge to establish the appropriate rate unless the evidence of prevailing market rates before the court is inadequate."[6] The Declarations submitted by Plaintiffs are adequate and trustworthy evidence of the market rate for comparable attorneys in the San Francisco Bay Area.

Attorney's Rate

Humphreys Wallace Humphreys, P.C. herewith submits the Declaration of David Humphreys. Ron Wilcox herewith submits his Declaration, and Balam Letona herewith submits his Declaration, containing a statement of the services rendered, the time spent by each person,

---

[3] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008).

[4] *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997).

[5] *Id.* at 500.

[6] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (*quoting Case* v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1257 (10th Cir. 1998)) and *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987)).

and the manner in which the records were maintained.

Total "Lodestar" Fees Requested

In total, Plaintiffs request the following attorney fees based on the "Lodestar" formula:

Humphreys Wallace Humphreys, P.C.:

| Name | Position | Hours | Rate | Total |
|---|---|---|---|---|
| David Humphreys | Attorney | 601.80 | $495.00 | $297,891.00 |
| Luke Wallace | Attorney | 726.60 | $445.00 | $323,337.00 |
| Laura Frossard | Attorney | 28.2 | $350.00 | $ 9,870.00 |
| Paul Catalano | Attorney | 367.5 | $180.00 | $ 66,150.00 |
| Tammy Kelley | Legal Assistant | 47.3 | $105.00 | $ 4,966.50 |
| Lacey Bryant | Legal Assistant | 66.4 | $105.00 | $ 6,972.00 |
| | | | | $709,186.50 |

Law Office of Ronald Wilcox:

| Name | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Ronald Wilcox | Attorney | 667.8 | $350.00 | $233,730.00 |
| Marion Ramel | Paralegal | 50.50 | $90 | $ 4,545.00 |
| | | | | $238,275.00 |

Law Office of Balam O. Letona, Inc.:

| Name | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Balam O. Letona | Attorney | 429.6 | $300.00 | $128,880 |

**C. The Laffey Matrix Supports the Reasonableness of the Requested Hourly Rate.**

The *Laffey* Matrix represents an attempt by the courts to develop an objective approach to calculate the appropriate hourly rate for fee awards.[7] In *Laffey*, the plaintiffs submitted, "a barrage of data, including twenty-five attorney affidavits secured specifically for [the] litigation, information gleaned from affidavits filed in other cases, and fee data reflected in previous judicial decisions" in support of their requested hourly rate.[8] From that data, the *Laffey* Court created a matrix intended to show the prevailing rates for lawyers of given levels of experience

---

[7] *In re HPL Techs, Inc.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005).

[8] *Laffey v. Northwest Airlines*, 572 F. Supp. 354, 371-72 (D.C. Dist. 1983) (aff'd in part, rev'd in part on other grounds, *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984)).

and competence.[9] This matrix is commonly referred to as the *Laffey* Matrix.

The current *Laffey* Matrix may be found at http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html. According to the Department of Justice website, the Matrix is adjusted annually to reflect the effects of inflation. "The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5."[10]

The *Laffey* Matrix has been used extensively in the Northern District of California in determining the appropriate hourly rate for attorney fees in the San Francisco Bay Area.[11] It has been noted, however, that the rates in the *Laffey* Matrix applied to the District of Columbia, rather than the San Francisco Bay Area. In order to resolve the difference in cost of living between the District of Columbia and the San Francisco Bay Area,[12] one Court in the Northern District concluded that the, "Washington-Baltimore area has a +15.98% locality pay differential; the San Francisco-Oakland-San Jose area has a +26.39% locality pay differential. "Thus, adjusting the *Laffey* matrix figures upward by approximately 9% will yield rates appropriate for the Bay area."[13]

---

[9] *Id.* at 372.

[10] Laffey Matrix 2003-2008, Explanatory note 3 at http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html.

[11] *In re HPL Techs., Inc.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005).

[12] *Id.* (Locality pay differential tables are currently available at http://www.opm.gov/oca/05tables/indexGS.asp).

[13] *Id.*

In total, Plaintiffs request the following attorney fees based on the "*Laffey* Matrix" formula for 2008-2009:

Laffey Matrix Rate:

Humphreys Wallace Humphreys, P.C.:

| Name | Experience | Laffey Rate | 9% Differential | Total |
|---|---|---|---|---|
| David Humphreys | 20+ yrs. | $465.00 | $41.85 | $506.85 |
| Luke Wallace | 11-19 yrs. | $410.00 | $36.90 | $446.90 |
| Laura Frossard | 20+ yrs. | $465.00 | $41.85 | $506.85 |
| Paul Catalano | 1-3 yrs. | $225.00 | $20.25 | $245.25 |
| Tammy Kelley | Paralegal | $130.00 | $11.70 | $141.70 |
| Lacey Bryant | Paralegal | $130.00 | $11.70 | $141.70 |

Law Office of Ronald Wilcox:

| Name | Experience | Laffey Rate | 9% Differential | Total |
|---|---|---|---|---|
| Ronald Wilcox | 11-19 yrs. | $410.00 | $36.90 | $446.90 |
| Marion Ramel | Paralegal | $130.00 | $11.70 | $141.70 |

Law Office of Balam O. Letona, Inc.:

| Name | Experience | Laffey Rate | 9% Differential | Total |
|---|---|---|---|---|
| Balam O. Letona | 4-7 yrs. | $270.00 | $24.30 | $294.30 |

**D.    The *Kerr* Factors Support the Reasonableness of the Requested Fee.**

Once the Lodestar calculation of attorney's fees should be adjusted, the Court may "adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."[14] The *Kerr* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of

---

[14] *Morales. v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 2004).

the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."[15] Analysis under the *Kerr* factors indicates that the Lodestar figure requested in this matter is reasonable without adjustment.

1. <u>The novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly, and the time and labor required.</u>

A number of difficult, or at least factually complex issues were presented to the Court, including in numerous discovery disputes that were heard by the U.S. Magistrate Judge, in the nine motions for summary judgment brought by defendants and in the 18 motions in limine raised by the Parties. Numerous subpoenas were issued, about 20 depositions were taken, and contested motions were filed on at least 41 occasions. Additionally, Plaintiffs' counsel has small law firms and do much of their work on their own. As stated in *Bailey v. District of Columbia*,[16]

> . . . attorneys, like plaintiff's counsel, operating either as solo practitioners or in small firms, often lack the resources to retain a large staff of junior lawyers who could handle [certain more clerically related] tasks more economically. Denying plaintiffs compensation for these tasks would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm.

2. <u>The preclusion of other employment by the attorney due to acceptance of the case.</u>

The time spent on this case was not, and could not be, spent at the same time on other cases. Plaintiffs' counsel were precluded from interviewing or accepting other employment for approximately four weeks during the discovery period when this case required full time attention, as well as approximately four weeks during which more than 25 motions/oppositions to summary judgment/motions in limine were being drafted, as well as the three weeks prior to and three weeks of trial.

---

[15] *Id.*, note 8.

[16] 839 F. Supp. 888, 891 (D.D.C. 1993).

11

3. <u>The customary fee.</u>

Plaintiffs' fee request is well within the range of similar work before this Court, including the jury trial in the matter of *Heston* v. City of Salinas, et al, C05-3658JW. The market rate in the San Francisco Bay Area for federal litigation of consumer law issues that are similar in difficulty and complexity to the issues herein is a range extending from $275 to $500 per hour, depending on the skill, experience and reputation of the attorney. The requested hourly rates outlined above are fair and reasonable, given their experience, qualifications and expertise in the representation of consumers.[17]

4. <u>Whether the fee is fixed or contingent.</u>

Here, as in most all cases under the Consumer Credit Protection Act, the fee is contingent – not on the amount of damages, but by award of the Court or agreement of opponent. In a private attorney general case such as this, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee (and that counsel must be paid from the recovery), because the fee may be out of proportion to the recovery.

If contingent, the fee award should compensate counsel for the risk of receiving no compensation.[18] Moreover, it should permit counsel "to earn an income that would be competitive with colleagues who get paid win or lose."[19]

"A contingent fee must be higher than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders,

---

[17] See <u>Declaration of David Humphreys in Support of Award of Attorney Fees and Costs.</u>

[18] *See, e.g., Blum v. Stenson*, 465 U.S. 886, 903 (1984)(Brennan, J., concurring); *Fabri v. United Techs Int'l, Inc.*, 193 F. Supp. 2d 480, 486 (D. Conn. 2002).

[19] *Bayless v. Irv Leopold Imports, Inc.*, 659 F. Supp. 942, 944 (D. Ore. 1987)(odometer case)(*citing Blum*, 465 U.S. at 903 (Brennan, J., concurring).

but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan."[20]

5. <u>The time limitations imposed by the client or by the circumstances</u>.

No time limitations existed in this case except as described in section 2, infra.

6. <u>The amount involved and the results obtained</u>.

Here, Plaintiffs obtained $501,000 under the Judgment. The Defendants served Offers of Judgment for $5,000 to each Plaintiff on February 28, 2008.

Courts have routinely rejected the "proportionality" argument as the basis for a fee award in fee-shifting cases, where consumers' rights are being vindicated under consumer protection statutes, civil rights laws, and the like.[21]

7. <u>The experience, reputation and ability of the lawyer or lawyers performing the services</u>.

Plaintiffs' counsel knows of very few attorneys who purport to be able to litigate and present to a jury Plaintiffs' consumer protection claims. Most attorneys do not recognize the legal issues involved in such cases, and requests for representation are generally turned away by members of the Bar. There are only a handful of San Francisco Bay Area attorneys who are willing to accept Fair Debt Collection Practice Act cases because of the special expertise required and the risk of nonpayment. The failure to adequately compensate consumer law plaintiffs has an effect on the ability of consumers to obtain adequate legal representation for meritorious claims.

---

[20] Posner, <u>Economic Analysis of Law</u>, 534, 567 (4th ed. 1992).

[21] See, e.g., *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986)(and cases cited therein).

13

8.  <u>The nature and length of the professional relationship with the client.</u>

Oftentimes, where a party has a lengthy professional relationship with a client, the client negotiates a "volume discount" for legal services. In this case, Plaintiffs' representation is a one time event.

9.  <u>The undesirability of the case.</u>

Consumer cases are often perceived as undesirable to other practitioners for many reasons. They are very often labor-intensive to obtain the requisite proof to win the case. The results are especially uncertain and taking them poses risks upon the practitioner. It becomes very difficult for consumers to vindicate their rights under consumer protection statutes as a result, especially where, as here, a vigorous defense is mounted and the Defendants willfully placed an obstacle to every path of an efficient resolution of the disputed issues. Compensation is both contingent upon success and deferred until after the end of the case – when (and if) it is collected from the defendant. For these reasons, consumer protection plaintiffs' cases are not, for the most part, attractive cases to most practitioners. The vast majority of other attorneys simply will not accept representation.

For the time spent representing the Plaintiffs in this matter, the Plaintiffs' counsel requests attorney fees in the amount of $1,076,341.50.

Plaintiffs' attorney Ronald Wilcox reimbursement of other litigation costs in the amount of $6,958.73, in addition to the Bill of Costs filed with the Clerk. The Bill of Costs is filed contemporaneously.

E.  **The Purpose of the Award Is To Enforce Consumer Protection Statutes**

Attorneys are central to the enforcement of both the Consumer Credit Protection Act (of

which the FDCPA is a part) and the California Rosenthal act, by private attorneys general. "The value of an attorney's services is not only measured by the amount of the recovery to the plaintiff, but also the non-monetary benefit accruing to others, in this case the public at large from this successful vindication of a national policy to protect consumers from fraud in the used car business."[22]

Such fees are particularly important in consumer cases, under the principles discussed by the Supreme Court in *Rivera*, supra, a civil rights case. "The public interest . . . is not limited to those cases that push the legal envelope; it is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations. Congress meant reasonable attorney's fees to be available to the private attorneys general who enforce the law."[23] California courts have likewise recognized this principle in awarding fees under consumer protection laws.

All of these same policy reasons exist in the context of consumer laws against Defendants and other debt collectors who violate the law. The cost and fee award encourages injured individuals to pursue their claims. The individuals then act as "private attorneys general" enforcing not only their own rights, but those of all citizens. Private actions act as a supplement to the public enforcement actions which may be brought against Defendants by state regulatory agencies. Hopefully, the policy of deterrence will be effectuated by a full award of costs and fees as well, causing Defendants to hesitate to violate the law in the future.

Moreover, Defendants chose to employ a "scorched earth" defense prolonging and

---

[22] *Fleet Inv. Co. v. Rogers*, 620 F.2d 792, 794 (10th Cir. 1980)(odometer law case).

[23] *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426, n.7 (2nd Cir. 1998).

multiplying needlessly the proceedings. The Defendants' efforts were observed by the Court earlier, when in response to Credigy's decision to withdraw four of its nine motions for summary judgment *after* Plaintiffs had responded, the Court invited the Plaintiffs to file a motion for sanctions.

A defendant should not be encouraged to litigate in the expectation of capitulation due to the volume of work alone or in the hope that the Court will reduce the plaintiff's fee request, especially when defendant's fees to its own attorney are not similarly scrutinized and reduced by the Court.[24]

An inadequate award diminishes the inducement created by fee-shifting statutes, and undermines the goal of promoting private representation in FDCPA actions. An award should be made at a rate which recognizes the vindication of public policy expressed in the FDCPA. "The award of attorney's fees, as a practical matter, is a critical and integral part of [the creation of a system of private attorneys general.]."[25]

F. **Plaintiffs Are Entitled to a Supplemental Award of Attorney Fees and Costs for the Time Expended upon this Motion.**

The Declaration submitted by Plaintiffs' attorney details the time expended in this litigation through May 15, 2009. Any additional time expended preparing a Reply Brief or attending any hearing that the Court should decide to schedule will be submitted when the work of Plaintiffs' counsel is completed. An award of fees is appropriate for the time expended in pursuing a motion for award of attorney fees.[26] "This Circuit allows the recovery of attorney's

---

[24] *See also Eddy v. Colonial Life Ins. Co.*, 59 F.3d 201, 207-08, (D.C. Cir. 1995)(a fee award deters noncompliance with the law and encourages settlement).

[25] *James v. Home Constr. Co.*, 689 F.2d 1357, 1359 (11th Cir. 1982).

[26] *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1500-01 (11th Cir. 1986).

1  fees for time spent preparing and filing a motion for attorney's fees and costs."[27] After
2  completion of briefing and oral argument Plaintiffs' counsel should be allowed leave of this
3  Court to submit a Supplemental Declaration Supporting any additional attorney fees and costs.

## CONCLUSION

Based upon the Lodestar calculation, reasonable attorney fees should be awarded to Plaintiffs in the amount of $1,076,341.50 and other litigation costs in the amount of $6,958.73. A supplemental award of attorney fees should be made to compensate Plaintiffs for any additional attorney time expended on this matter. A proposed Order is attached for the Court's use.

                Respectfully submitted,

                HUMPHREYS WALLACE HUMPHREYS, P.C.


By: /s/ David Humphreys
    David Humphreys, OBA #12346
    Luke J. Wallace, OBA # 16070
    Laura Frossard, OBA #3151
    9202 S. Toledo Avenue
    Tulsa, Oklahoma 74137
    (918) 747-5300/(918) 747-5311 fax
    **PRO HAC VICE ATTORNEYS**
    **FOR PLAINTIFFS**

---

[27] *Cancio v. Financial Credit Network, Inc.*, 2005 U.S. Dist. LEXIS 13626, *16 (N.D. Cal. July 6, 2005) *citing*, *Jordan v. Multnomah County*, 815 F.2d 1258, 1264 (9th Cir. 1987); *Rosenfeld v. S. Pac. Co.*, 519 F.2d 527, 530 (9th Cir. 1975).