MCGUIREWOODS LLP
Susan L. Germaise  SBN 176595
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Telephone:     (310) 315.8200
Facsimile:     (310) 315.8210
Email: sgermaise@mcguirewoods.com

David L. Hartsell (admitted *pro hac vice*)
77 West Wacker Dr., Ste. 4100
Chicago, IL 60601
Telephone:     (312) 849-8100
Facsimile:     (312) 849-3690
Email:  dhartsell@mcguirewoods.com

Attorneys for Credigy Services Corporation,
Credigy Receivables, Inc., Credigy Solutions, Inc.,
Luis Renato Silva Nunes, Brett Boyd and Paul Peres

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL G. FAUSTO, and LUZ FAUSTO,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CREDIGY SERVICES CORPORATION, *et al,*,<br><br>    Defendants. | CASE NO. 5:07-cv-05658-JW<br><br>**DECLARATION OF JUNE D. COLEMAN IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>DATE:        June 29, 2009<br>TIME:        9:00 a.m.<br>PLACE:       Courtroom 8 |

9076547.1

I, June D. Coleman, declare that:

1.      I am an attorney duly licensed to practice in all courts of the State of California, as well as all the federal courts in California and the Ninth Circuit Court of Appeals.  I am a partner with the law firm of Ellis, Coleman, Poirier, LaVoie, & Steinheimer.  I have personal knowledge of the information set forth herein below, unless noted as based on information and belief, all of which is true and correct of my own personal knowledge, and if called upon to testify, I could and would competently testify thereto.

2.      I am a 1989 graduate of the California State University, Sacramento, with a Bachelor's of Science degree in accounting.  I graduated from McGeorge School of Law, University of the Pacific in 1997, with great distinction.  During law school, I was the Managing Editor of the Pacific Law Journal and I was a published member of that law review, with one article in McGeorge's regular law review publication and several articles in McGeorge's legislative analysis law review publication.  I have also been a member of the Anthony Kennedy Inn of Court for four years.

3.      In 1997, I began my legal career as an associate in the law firm of Burger & Plavan, which ultimately closed its doors in 1999 as one of the name partners began her successful bid to become a Sacramento County judge.  At that time, I joined the law firm of Murphy, Pearson, Bradley & Feeney.  I opened my own firm with my partners in October of 2006.

4.      I have practiced regularly and extensively in the areas of Fair Debt Collection Practices Act defense, Fair Credit Reporting Act defense, including class action litigation, and related consumer actions.  I have done so for more than 10 years.  I am regularly retained throughout California, and throughout the nation, to defend attorneys and debt collectors who have been sued for allegedly violating various federal and state collection laws.  I have regularly defended debt collectors and attorneys sued in both state and federal courts over the last 10+ years.

5.      I also regularly lecture and publish articles on the area of collection law.  I have been selected by the national trade organization, American Collectors Association, to provide assistance to debt collectors regarding collection activity in California; I am the California State MAP Chair of this organization.  A true and correct copy of my biography is attached hereto as

**Exhibit 1**.

6.     I am familiar with the customary billing rates of the attorneys who routinely handle debt collection related cases and issues in California, including the United States District Court for the Northern District of California.  I have been involved in over 50 cases involving the defense of debt collector professionals and attorneys in the United States District Court for the Northern District of California, not to mention in other state and federal jurisdictions throughout California and across the nation.

7.     Almost all of my cases involve causes of action and claims related to collection activities.  My knowledge of customary billing rates in California is based on (1) the billing rates I am able to obtain to litigate cases in California, including the Northern District of California, (2) my discussions with my clients and other business persons regarding hourly rates they actually pay attorneys in California, including the Northern District of California, and (3) discussions with other attorneys regarding hourly rates they are paid in California, including the Northern District of California.  I also base my opinion regarding reasonable market rates for the services provided on contested fee applications I have reviewed and court orders awarding attorneys' fees.

8.     Based on my experience and personal knowledge, I believe that most if not all of my clients would be unwilling to pay more than approximately $250-$300 per hour for my legal services, or the legal services of any attorney, for the services provided by plaintiffs' counsel in this case.

9.     I have reviewed the various pleadings in this case filed by Ron Wilcox, Balam Letona, David Humphries, and Luke Wallace, as well as the pleadings filed by defense counsel in this case.

10.     The litigation efforts expended on this case arises from the following activities:

      (a) Pre-litigation investigation and the preparation of the complaint;

      (b) Written discovery;

      (c) Motions associated with discovery disputes;

      (d) Depositions of parties and third parties;

      (e) Attendance at mediation;

OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

(f)  Oppositions to summary judgment motions; and

(g)  Trial, including motions in limine and trial preparation; jury selection on March 17, 2009; 7 days of trial; closing arguments on April 1, 2009, followed by jury deliberations on April 1st - April 3rd.

11.     Based on my review of the file, the primary conduct alleged to have violated the Fair Debt Collection Practices Act was continued collection after a cease and desist letter; threats during phone call which defendants did not intend to follow through with, including threat of litigation on a time barred debt; and repeated phone calls intended to harass.  Defendants asserted that to the extent this conduct occurred, the conduct was a bona fide error.  These issues are not complex, nor are they novel.  Indeed, these are some of the most common claims in cases alleging violation of the FDCPA.

12.     Based on the legal services provided and the legal issues addressed, this case was neither procedurally convoluted nor legally or factually complex, even though I understand that from a geographical perspective, given the foreign location of several witnesses, it might have been complicated.  The legal services provided in this case did not require any "specialized experience," and even the actual trial of the case did not require any "specialized experience." While this action required some motion practice, and ultimately trial, this trial did not require sophisticated knowledge of the FDCPA or trial practice.  To the extent that the action required more attorney hours than most FDCPA cases (because most FDCPA cases settle or are resolved on dispositive motions), these hours were not a result of the complexity of the case.  This case involved slightly greater skill and complexity in light of the fact that the case was tried to a jury verdict.  However, this action did not require sophisticated knowledge of the FDCPA and the substantive FDCPA issues were not complex or novel.

13.     Based upon my experience in the area of FDCPA and related consumer litigation, and my personal knowledge of this case, in my opinion, I believe that the reasonable market rate for the legal services provided to plaintiffs Manuel and Luz Fausto was in the $250-$300 range, dependent upon the actual legal services provided and the skill and experience of the attorney. This is based on the following facts:

(a)   Most of these FDCPA cases are simple rather than complex, and the reasonable fees awarded in FDCPA and related consumer cases involving contested motions are often as little as $5,000-$7,000.  (See, e.g., *Savino v. Computer Credit, Inc.* (E.D.N.Y. 1999) 71 F.Supp.2d 173, 176-77 ("Given the simplicity and routine nature of the issues that were eventually presented to the Court," reasonable fees for prosecuting 4 motions, including a motion for summary judgment, opposing a sanction motion, and conducting various discovery, including a deposition are approximately $4,000, derived from 20 hours at approximately $200 per hour); *Altergott v. Modern Collection Techs., Inc.* (N.D. Ill. 1994) 864 F.Supp. 778, 783 (reasonable fees for bringing 2 motions for summary judgment and opposing one, propounding discovery, moving to amend and then amending the complaint, drafting a protective order, moving to compel discovery, and defending plaintiff's deposition was $5,080, with a blended rate for 40 hours of approximately $127).)

(b)   From my research and survey of these types of non-complex cases around the country, as well as in the Northern District, and based on my experiences in Northern California, the average reasonably hourly market rates awarded in cases with similar legal services provided and similar complexity around the country is in the range of $200 to $300, even if the case is venued in a district court where hourly market rates are generally reputed to be higher, such as New York City.  (See, e.g., *Kapoor v. Rosenthal* (S.D.N.Y. 2003) 269 F.Supp.2d 408, 415 (noting previous cases have awarded an average rate of $200 per hour in New York City for similar legal services, and a $225 hourly rate for experienced FDCPA plaintiff attorneys is appropriate); *Dowling v. Kucker Kraus & Bruh, LLP*, (S.D.N.Y. July 6, 2005) 2005 WL 1337442, *8 (citing *Kapoor* and holding that $200 per hour "is both reasonable and customary for an experienced attorney practicing in federal court in Manhattan" for similar legal services in an FDCPA action).) Even in San Francisco, which has higher rates, district courts have awarded even lower hourly rates. (See, e.g., *Yahoo!Inc. v. Net Games, Inc.* (N.D. Cal. 2004) 329 F.Supp.2d 1179, 1192 (reasonable hourly rate in trademark infringement case was $190.00/hour) Although these cases are from different geographic areas, they are relevant for purposes of comparing

9143914.1

4

similar legal services.  Also, since the geographic areas identified above typically have higher hourly rates, these cases are relevant to establish that a $350 rate or more in a non-complex case is not a reasonable market rate for the legal services provided in this case in San Jose.

(c)    Indeed, based on my review of cases involving similarly non-complex issues, courts in the Northern District appear to award an hourly market rate of approximately $250.  (See, e.g., *Abad v. Williams,* Cohen *& Gray, Inc*. (N.D. Cal. 2007) 2007 WL 1839914 (both Irving Berg, a 1973 law graduate with more than 30 years experience, and Rand Bragg, a 1978 law graduate with nearly 30 years experience, were entitled to an hourly rate of $250 for legal services in an FDCPA case); *Antiel v. G.C.S. Credit Systems Inc.*, slip op., case no. C-05-04604 RMW (N.D. Cal. Mar. 17, 2006) (awarding fees to an experienced FDCPA attorney based on an hourly rate of $250 and $75 per hour for his paralegal); *Johnson v. Credit International, Inc*. (N.D. Cal. 2005) 2005 WL 2401890 *aff'd in part and rev. in part on other grounds*, 2007 WL 3332813 (9th Cir. 2007) (Bragg and Paul Arons, a 1978 law graduate with more than 14 years experience litigating FDCPA class actions awarded $250 per hour for legal services in an FDCPA case).)

(d)    My average hourly billing rate actually paid by private clients for more complex litigation services than performed here by plaintiffs' counsel during the time this case was prosecuted in cases venued in San Jose and San Francisco, is in the $225 to $250 range. My hourly rate for private clients in the Northern District was $200-$250 per hour during the time this case was prosecuted (and still is).  This rate has been actually paid by my private clients for cases venued in the United States District Court for the Northern District of California, including the San Jose Division.

(e)    The services provided by plaintiffs' counsel in this case are not actually determined by clients, or the marketplace, as being worth $350 per hour or more.  That is to say, in my 10+ years of experience, the rates claimed by counsel representing FDCPA plaintiffs were not negotiated in an open market with a client that would actually pay the fees incurred. Based on my experience and based on my conversations with clients, no client would pay

9143914.1

OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

1       such rates for the work provided in this case.  Based on all of these facts, I do not believe

2       that the services provided by plaintiffs' counsel justified $350 per hour or more.

3   (f)    My opinion is also based on the recognized principle that a reasonable hourly rate should

4       be in accord with rates "prevailing in the community for similar services by lawyers of

5       reasonably comparable skill, experience and reputation." (*Blum v. Stenson* (1984) 465 U.S.

6       886, 895-96 n. 11.)  A reasonable hourly rate is determined with reference to the prevailing

7       market rate in the relevant legal community for similar work.  "Hourly rates are to be

8       computed according to the prevailing market rates in the relevant legal market, not the

9       rates that 'lions at the bar may command.'" (*Hopwood v. State of Texas* (5th Cir. 2000) 236

10      F.3d 256, 281.)  While the hourly rate must be "adequate to attract competent counsel," the

11      "measure is not the rates which lions at the bar may command." (*Leroy v. City of Houston*

12      (5th Cir. 1990) 906 F.2d 1068, 1079.)

13      14.    Based on, ***inter alia***, the above facts, the hourly rates sought by Dave Humphries,

14  Luke Wallace, Ronald Wilcox and Balam Letona are excessive for this case and the services

15  provided.  The hourly rates sought are clearly not within the reasonable range of market rates

16  charged by private attorneys of similar skill, reputation, and experience for comparable legal

17  services in the San Jose Division of the Northern District of California.

18      15.    I am personally familiar with Ronald Wilcox and have litigated opposite him in

19  many cases over the past 7 years, during the period of time that he has prosecuted FDCPA cases.

20  He is one of a number of attorneys that I would consider to be included in what might be termed

21  the FDCPA plaintiffs bar of California.  I have also reviewed his declaration submitted in support

22  of plaintiffs' fee motion, as well as the other declarations submitted in support of plaintiffs' fee

23  motion.  He has represented plaintiffs in over 180 cases since 2002 based on my review of

24  PACER for the various district courts in California.  From a review of these cases, many of which

25  were litigated against my current firm or my previous firm, Murphy Pearson, I am informed and

26  believe that these cases are almost all FDCPA cases. Notably, most of these cases have settled or

27  been resolved on dispositive motion.  I am unaware of Mr. Wilcox actually trying a case to

28  verdict, other than the instant *Fausto* matter (and my understanding is that he did not question

1   witnesses during trial in the instant cases).  I have also reviewed many if not most of the cases he

2   is counsel of record for in the Northern District of California.  First, I have been unable to find any

3   case that he has litigated to verdict.  Second, I have found cases in which courts in the Northern

4   District of California have awarded him fees, although some of these decisions have been certified

5   as "not for publication."  I have not found a case in which Mr. Wilcox has been awarded more

6   than $300 per hour as a reasonable market rate.  I have found Northern District of California cases

7   in which Mr. Wilcox has been awarded $300 per hour (see, e.g., *Campos v. Western Dental*

8   *Services*, case no. 05-2119 RMW (July 13, 2007) (finding requested rate of $300 per hour for

9   Wilcox is reasonable in uncontested fee application which ultimately awarded fees at a lesser rate

10  than requested due to a negotiated settlement); *Solloway v. Allied Interstate*, case no. 06-4814 JF

11  (Nov. 13, 2006); *Kolber v. Barnes*, case no. 04-1655 PVT (Dec. 14, 2005) (uncontested fee

12  request wherein Mr. Wilcox opines his reasonable hourly rate is $300 and Mr. Fred Schwinn

13  concurs with Mr. Wilcox, a true and correct copy of the Wilcox Declaration is attached hereto as

14  **Exhibit 10**)) and cases awarding $250 per hour (*Lea v. Cypress Collections*, case no. 06-4288 JF

15  (Apr. 2, 2007)) or lower (*Breon v. Capital Recovery Assocs.* (N.D. Cal. Nov. 8, 2005) slip op.,

16  case no. C 05 00766 JW (holding reasonable hourly rate in an FDCPA case in the Northern

17  District of California is $210.51) *Montez v. Capital Recovery Assocs.* (N.D. Cal. Nov. 8, 2005)

18  slip op., case no. C 05-01208 JW (holding reasonable hourly rate in an FDCPA case in the

19  Northern District of California is $210.51)).  Because of the non-complex legal issues in this case,

20  the non-complex procedural background of this case, what clients would actually be willing to pay

21  for the work performed in this case, the range of hourly rates awarded by courts for the type of

22  legal services performed in this case by attorneys of similar skill and experience, the location of

23  the case in the San Jose Division of the Northern District of California, and the 7 years of

24  expertise Mr. Wilcox has in the FDCPA subject matter, but the lack of trial experience, in my

25  informed opinion, Mr. Wilcox's reasonable hourly market rate for the services he provided in this

26  case is approximately $275.

27       16.     I am personally familiar with Balam Letona.  I, personally, have litigated opposite

28  him in one case.  He has been plaintiff's counsel in a very few cases in which my firm has been

9143914.1                                        7

1  defense counsel over the years.  I have reviewed his declaration submitted in support of plaintiffs'

2  fee motion, as well as the other declarations submitted in support of plaintiffs' fee motion.  From

3  my review of PACER for the various District Courts of California, he appears to have filed

4  approximately 20 FDCPA actions, one in 2005, and three in 2008, and the rest in 2007 and 2006.

5  In my opinion, he is not very knowledgeable about the FDCPA and its jurisprudence, and is also

6  not knowledgeable about civil procedure.    In the case I litigated opposite Mr. Letona, he sought

7  fees after a settlement, at the rate of $250 per hour, in April 2007.  The Court awarded Mr. Letona

8  and Mr. Wilcox $250 per hour, however, the Court certified this opinion as not for publication.

9  (*Lea v. Cypress Collections* (N.D. Cal. 2007) 2007 WL 988184, *2.)  I have not found any

10  indication that Mr. Letona has tried any cases, based on my review of cases on PACER.  I am

11  informed by Mr. Kaminski, previous defense counsel for some of the defendants, that Mr.

12  Letona's role was very limited in this case.  I have confirmed based on a review of the file that Mr.

13  Letona's role was very limited.  As one example, Mr. Kaminski told me that during the 8 hours

14  Mr. Letona referenced in his time records for attending the April 22, 2008 deposition of Jason

15  Williams and supporting the deposition through questions and areas of inquiry not covered by Mr.

16  Wilcox, Mr. Letona ran the video equipment.  I have confirmed that Mr. Letona is identified on

17  the appearance page of the Williams deposition transcript as the videographer.  I have also

18  searched the deposition transcript electronically for any reference to questions asked by Mr.

19  Letona, and have been unable to find any such reference.  Because of the non-complex legal issues

20  in this case, the non-complex procedural background of this case, what clients would actually be

21  willing to pay for the work performed in this case, the range of hourly rates awarded by courts for

22  the type of legal services performed in this case by attorneys of similar skill and experience, the

23  location of the case in the San Jose Division of the Northern District of California, and the

24  essentially 3 years of limited expertise Mr. Letona has in the FDCPA subject matter, but the lack

25  of trial experience, in my informed opinion, Mr. Letona's reasonable hourly market rate for the

26  services he provided in this case could not exceed $250.  And if the legal services he provided

27  were more in the nature described by Mr. Kaminski, my opinion would be that legal services

28  provided by Mr. Letona were more in the nature of paralegal work, valued at approximately $100

1    per hour or less.

2          17.    I am not personally familiar with David Humphreys, but I have read his declaration

3    and all of the other declarations submitted in support of plaintiffs' fee motion.  He has not been

4    involved in any cases in the Northern District of California, other than *Fausto* and *Pintor v.*

5    *Credigy*.  His role in this case appears to have been that of trial counsel based on the description of

6    work in his time records and the pleadings filed in this case.  This Court has previously held that

7    when an experienced attorney is representing the plaintiff, there is no reason to grant an hourly

8    rate to an out-of-state attorney higher than the experienced Northern District attorney.  Indeed, the

9    case in which this occurred was discussing Mr. Wilcox and Illinois attorney Rand Bragg in an

10   FDCPA case, but the case was also certified as "not for publication." (*Wyatt v. CreditCare, Inc.*

11   (N.D. Cal. 2007)  2007 WL 1994170, *2 ("Given Wilcox's extensive practice in this case, the

12   Court perceives no reason to grant an hourly rate that is over fifty percent higher to an out-of-state

13   attorney.")  Given Mr. Wilcox's extensive background in FDCPA litigation, and his extensive

14   involvement in this case, in my opinion, there is no reason to grant a higher hourly rate for an out-

15   of-state attorney.   Because of the non-complex legal issues in this case, the non-complex

16   procedural background of this case, what clients would actually be willing to pay for the work

17   performed in this case, the range of hourly rates awarded by courts for the type of legal services

18   performed in this case by attorneys of similar skill and experience, the location of the case in the

19   San Jose Division of the Northern District of California, and the extensive trial expertise, but lack

20   of expertise in FDCPA litigation, in my informed opinion, Mr. Humphrey's reasonable hourly

21   market rate for the services he provided in this case is approximately $275, identical to the rate I

22   believe is reasonable for Mr. Wilcox in this case, but should not exceed approximately $300.

23         18.    I am not personally familiar with Luke Wallace, but I have read his declaration and

24   all of the other declarations submitted in support of plaintiffs' fee motion.  He has not been

25   involved in any cases in the Northern District of California, other than *Fausto* and *Pintor v.*

26   *Credigy*.  His role in the *Fausto* case appears to have been that of second chair trial counsel based

27   on the description of work in his time records and the pleadings filed in this case.  This Court has

28   previously held that when an experienced attorney is representing the plaintiff, there is no reason

9143914.1                                              9

to grant an hourly rate to an out-of-state attorney higher than the experienced Northern District attorney. Indeed, the case in which this occurred was discussing Mr. Wilcox and Illinois attorney Rand Bragg in an FDCPA case, but the case was also certified as "not for publication." (*Wyatt, supra*, 2007 WL 1994170 at *2 ("Given Wilcox's extensive practice in this case, the Court perceives no reason to grant an hourly rate that is over fifty percent higher to an out-of-state attorney.") Given Mr. Wilcox's extensive background in FDCPA litigation, and his extensive involvement in this case, in my opinion, there is no reason to grant a higher hourly rate for out-of-state attorney Luke Wallace. Because of the non-complex legal issues in this case, the non-complex procedural background of this case, what clients would actually be willing to pay for the work performed in this case, the range of hourly rates awarded by courts for the type of legal services performed in this case by attorneys of similar skill and experience, the location of the case in the San Jose Division of the Northern District of California, and the extensive trial expertise, but lack of expertise in FDCPA litigation, in my informed opinion, Mr. Humphrey's reasonable hourly market rate for the services he provided in this case is approximately $275, identical to the rate I believe is reasonable for Mr. Wilcox in this case.

19.     Furthermore, the reasonable hourly rates that are in my opinion as discussed above are in line with the statistical analysis conducted by Judge Vaughn Walker of the Northern District of California in *Yahoo!, Inc. v. Net Games, Inc.*, 329 F.Supp.2d 1179 (N.D. Cal. 2004), updated to reflect the most current figures. Judge Walker statistically analyzed the market rate for a case that he found to be non-complex and routine, given the frequency in which the plaintiff's counsel had litigated the legal issues raised in this case. (*Id.* at 1189.) The logic applies equally in these circumstances: "The frequency with which [these attorneys] obtain [fee awards] suggests to the court that these cases are routine, not complex." Judge Walker determined the average rate of income, or net receipts, over gross receipts for businesses, sole proprietorships and partnerships, and then compared that ratio against the mean and median wages paid to attorneys in the San Francisco Bay Area, i.e. In his 2004 *Yahoo!* opinion, using the equation below, Judge Walker held that a reasonable market rate for attorneys was $190 and the reasonable market rate for

OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

paralegals was $70:

| Attorneys: | net receipts | = | wage | = | $29 billion | = | $70.23 | = | $191.32 |
|---|---|---|---|---|---|---|---|---|---|
| | gross receipts | | market rate | | $79 billion | | market rate | | |

| Legal Asst: | net receipts | = | Wage | = | $29 billion | = | $25.64 | = | $69.85 |
|---|---|---|---|---|---|---|---|---|---|
| | gross receipts | | market rate | | $79 billion | | market rate | | |

Net receipts = net receipts of partnerships from the Statistical Abstract of the United States: 2003,
as derived from tax returns, where net receipts are gross receipts less expenses. The 2003
Abstract provides data for the year 2000. The figure used was for legal partnerships.

Gross receipts = Monies received as derived from tax returns as set forth in the Statistical Abstract
of the Unites States: 2003. The 2003 Abstract provides data for the year 2000. The figure
used was for legal partnerships.

Wages = Hourly wages in the San Francisco area for 2002 for lawyers and for legal assistants as
developed by the Bureau of Labor and Statistics, which sets forth both the mean and
median wages for the locale.

20.      Judge Walker explained that the ratio of net receipts to gross receipts was used to
approximate the overhead costs that would be incorporated in the hourly rates billed to clients.
(*Id.* at 1189.)

21.      Reviewing       the       Statistical       Abstract       for       2008       found       at
www.census.gov/compendia/statab/ (see **Exhibit 2**, a true and correct printout of the home page of
the U.S. Census Bureau's 2009 Statistical Abstract is attached hereto), which uses data from 2005,
I updated the calculations above. The net receipts from the 2009 Abstract for legal partnerships
were $42 billion. The gross receipts from the 2009 Abstract for legal partnerships were $115
billion. (See **Exhibit 3**, a true and correct copy of Table 724 from the 2009 Abstract as found on
the U.S. Census Bureau's website is attached hereto.) The hourly mean wage for May 2008 for
lawyers in the San Jose area as set forth by the U.S. Department of Labor, Bureau of Labor
Statistic, data.bls.gov/oes/datatype.do, is $87.43, and the hourly median wage is greater than or
equal to $80. The hourly mean wage for May 2008 for paralegals and legal assistants in the San

11

OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Jose area as set forth by the U.S. Department of Labor, Bureau of Labor Statistic, data.bls.gov/oes/datatype.do, is $29.77, and the hourly median wage is $29.56. A true and correct copy of the internet printout of these occupational employment statistics by the U.S. Department of Labor, Bureau of Labor Statistics is attached hereto as **Exhibit 4**.

22. Using these figures, the updated calculations are as follows:[1]

| Attorneys: | $\frac{\text{net receipts}}{\text{gross receipts}}$ | $=$ | $\frac{\text{wage}}{\text{market rate}}$ | $=$ | $\frac{\$42 \text{ billion}}{\$115 \text{ billion}}$ | $=$ | $\frac{\$87.43}{\text{market rate}}$ | $=$ | $\$239.39$ |
|---|---|---|---|---|---|---|---|---|---|
| Legal Asst: | $\frac{\text{net receipts}}{\text{gross receipts}}$ | $=$ | $\frac{\text{Wage}}{\text{market rate}}$ | $=$ | $\frac{\$29 \text{ billion}}{\$79 \text{ billion}}$ | $=$ | $\frac{\$29.77}{\text{market rate}}$ | $=$ | $\$81.10$ |

Using the updated analysis, a reasonable market rate would be approximately $250 for attorneys and $85 for paralegals and legal assistants, rounding up to give the benefit of the doubt to plaintiffs' counsel.

23. These figures are in the range of the *Yahoo!* Rates adjusted to present day. For instance, the U.S. Department of Labor, Bureau of Labor Statistics also has an "inflation calculator" which will determine what the cost of something in one year will inflate to in a future year. Using the $190 per attorney hour from the *Yahoo!* Decision as a 2002 figure (to reflect that the wage data was from 2002), the inflation calculator indicates that $190 from 2002 would have the same buying power as $225.21 in 2009. Using the $70 per paralegal hour from the Yahoo! Decision as a 2002 figure (to reflect that the wage data was from 2002), the inflation calculator indicates that $70 from 2002 would have the same buying power as $82.97 in 2009. True and correct printouts from the U.S. Bureau of Labor, Bureau of Labor Statistics reflecting the "inflation calculator," which can be found at data.bls.gov/cgi-bin/cpicalc.pl, is attached hereto as **Exhibit 5**.

24. Likewise, using the consumer price index from 2002 and 2008, with respect to the *Yahoo!* rates, I calculated how the $190 and $70 rates would increase. The annual consumer price

---

[1] The mean wage is used as that provides a higher hourly rate.

1   index for 2002 (193.0) increased to 222.767 in 2008, with a 15.42% change ((222.767-

2   193)/193+15.42%).  Applying this 15.42 rate of change to the $190 per attorney hour and $70 per

3   legal assistant hour, these 2002 figures would increase to $219.30 ($190x1.1542=$219.30) and

4   $80.80 ($70x1.1542=$80.80), respectively.  A true and correct printout of the consumer price

5   index chart for the San Jose, San Francisco, and surrounding areas from the U.S. Department of

6   Labor, Bureau of Labor Statistics website, data.bls.gov/PDQ/servlet/SurveyOutputServlet, is

7   attached hereto as **Exhibit 6**.  The chart identifying the consumer price index for the San

8   Francisco/San Jose and surrounding areas was created by choosing San Francisco as the region in

9   the Regional Resource area of the Bureau of Labor Statistics website, data.bls.gov/CPI, a true and

10  correct copy of this webpage is attached hereto as **Exhibit 7**.

11         25.     The range of rates I opined above as appropriate for David Humphreys, Luke

12  Wallace, Ron Wilcox, and Balam Letona, $250-$300, exceed the rates calculated using the three

13  mathematical formulas discussed above: *Yahoo!*'s methodology, inflation methodology, and

14  consumer price index methodology.  This provides a good check balance to ensure that my opined

15  rates are not too low.

16         26.     I have read the declaration of Mark Chavez and am familiar with some of the work

17  that Mark Chavez does.  My familiarity with him comes from his submission of various

18  declarations supporting hourly rates claimed by various FDCPA plaintiff attorneys.  I note that

19  Mr. Chavez states in his declaration that he has co-counseled with Mr. Letona previously.  This

20  demonstrates one problem with the credibility of such a declaration, and indeed, all of the

21  declarations submitted by attorneys who are not counsel of record in this case.  These third party

22  declarations demonstrate that these attorneys appear to be willing to support any hourly rate for a

23  plaintiff's counsel, hoping to bolster a high fee award.  These third party declarants then, in turn,

24  offer to use the bolstered attorney fee award to support their own fee applications.  In effect, these

25  mutually supporting declarations create something analogous to a "kiting" scheme wherein with

26  each new case, higher fees are requested based upon earlier fee declarations and awards.

27         27.     This is not isolated to the Chavez declaration.  I have reviewed the cases set forth

28  on PACER for the Northern District of California with respect to Mr. Letona and Mr. Wilcox.  Mr.

1    Rand Bragg is currently co-counsel with Mr. Wilcox on at least two cases, and at least 7 others in

2    the past, and regularly co-counsels with FDCPA plaintiff attorneys in California and in the

3    Northern District of California.   Indeed, Mr. Bragg's declaration is rife with references to

4    California cases.   Mr. Mauer's declaration also references the fact that he practices in the same

5    legal area as Mr. Letona and Mr. Wilcox, that he obtains fee awards, and that he has co-counseled

6    cases with Mr. Letona and Mr. Wilcox.   Mr. Schwinn has also co-counseled with Mr. Wilcox to

7    prosecute FDCPA cases.   Mr. Schwinn has also opined as to Mr. Wilcox's hourly rate to support a

8    fee request.   Attached hereto as **Exhibit 9** is a true and correct copy of a declaration Mr. Schwinn

9    submitted on behalf of Mr. Wilcox to support a fee request by Mr. Wilcox in which Mr. Schwinn

10   opined that the reasonable hourly rate based on Mr. Wilcox's experience was $300.   It appears that

11   all three of these attorneys would personally benefit from higher rates being awarded in this case.

12          28.      More problematic is the fact that these third party declarants provide no analysis or

13   justification for seeking these extremely high rates. (See *Finkelstein v. Bergna* (N.D. Cal. 1992)

14   804 F.Supp. 1235, 1243, 1246.)   Moreover, none of the declarants indicate any hourly rates

15   actually paid to them or awarded for litigation wherein similar, non-complex legal services were

16   provided.   Nor do any of the declarants discuss any hourly rates paid to any other San Jose

17   attorneys for this kind of non-complex case.   The declarants conclude that the requested rates are

18   "reasonable" and the hourly rates of attorneys with similar "experience and expertise" are "equal

19   to or greater than the requested rates."   Some of the declarants provide an impressive list of

20   complicated lawsuits involving certified class actions which are factually distinguishable from the

21   procedurally and factually simple case here. In *Wingate v. South San Francisco Scavenger Co.,*

22   *Inc.*, case no. C 01-4334, the Honorable Vaughn Walker questioned Mr. Bragg's submittal of Mr.

23   Pearl's declaration to support a fee application in much the same fashion as Magistrate Judge

24   Brazil has in *Finkelstein*:

25              Although the court has no quarrel with Pearl's credentials or question about
                the accuracy of the information he represents, the court does question Pearl's
26              qualifications to opine on what is essentially a matter of economics, as
                distinguished from law; furthermore, the court finds inadequate the
27              information Pearl furnishes to support a determination that the hourly rates
                class counsel urge the court to employ in making its lodestar calculation are
28              in fact reasonable ones. …

9143914.1                                         14

OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

> While this information [identical as to qualitative nature of information submitted in the various third party declarations in the instant case] might well prove helpful to the court in arriving at a reasonably hourly rate to use in the calculation of the lodestar figure for the services of Berg and Bragg, it is inadequate in key respects. First, although Pearl states that his survey is of "the rates paid by clients for the services of comparably experienced attorneys for comparable litigation in the Northern District of California," he provides no information regarding the criteria he employed to determine what counts as comparable experience and what counts as comparable litigation. … The range of cases potentially encompassed by the term "complex litigation" is vast, and it is not self-evident that fees charged for complex litigation generally bear any meaningful relationship to the fees it would be reasonable to award in the FDCPA and UCL litigation at bar. … Pearl's declaration contains no information regarding how he identified partners or law firms "performing similar services" or how, aside from length of time in practice he identified lawyers of "reasonably comparable skill."

(*Wingate v. South San Francisco Scavenger Co., Inc.*, case no. C 01-4334, slip op., **Exhibit 8**, p. 27-36 (ultimately concluding that Mr. Bragg's hourly rate for this case should be in the neighborhood of $146).)

29.     Magistrate Judge Brazil addressed a related concern in *Finkelstein* when he discussed whether higher hourly rates from large law firms provided relevant evidence to support a high hourly rate for a small law firm or solo practitioner:

> Plaintiff has provided no direct evidence that a *solo practitioner* performing the bulk of the work on a complex case *himself* could survive in the Bay Area market charging an hourly rate of $300. Plaintiff has provided no declaration from a solo practitioner stating that he or she charges that much for all work performed on a case. Those attorneys who have submitted declarations stating that they charge rates comparable to $300 per hour (i.e. Mr. Sturdevant, …) all are partners in firms and, presumably, do not regularly perform basic, detail level legal work. It is one thing for a partner in a firm to charge a premium rate for putting in a relatively limited number of well focused hours, serving largely as a director for and supervisor of junior partners or associates who do most of the work and whose time is billed at appreciably lower hourly rates. It is quite another thing for a solo practitioner to charge a premium rate for doing by himself much of the "legwork," e.g., reviewing documents and transcripts, taking routine depositions, doing factual or legal research, drafting written discovery and responses to discovery requests from opponents, etc.
>
> A partner in a firm can survive in the marketplace charging a premium because the client is paying the premium rate for only a relatively small percentage of the total hours for which he is being charged. For example, [an attorney in another case] was awarded $330 an hour for the 83 hours he worked on the case, the average rate for all the attorneys in his firm was $198 per hour (for a total of 402.1 hours), and the total average rate for all the attorneys whose hours were reflected in the order was $210.70. Likewise, in

9143914.1

15

1

[other attorneys' fees award], the total average rate awarded was $173, despite individual rates of $330 for Mr. Rosen and $305 for Mr. Schlosser.

2

3

(*Finkelstein*, *supra*, 804 F.Supp. at 1246 (noting that a declaration submitted by Mr. Sturdevant

4

lacked foundation to support the requested hourly rate for the same reasons raised by defendant

here).)

5

6

Based on these concerns, Magistrate Judge Brazil concluded:

7

> *Absent clear proof to the contrary (which plaintiff has not provided), we must infer that fee paying clients simply would not tolerate being charged a premium rate for work done by a senior lawyer that could be done on a much more cost-effective basis by less senior and less pricey counsel.*

8

9

(*Id.* at 1246 (emphasis added).)

10

30.    Based on the *Finkelstein* analysis, hourly rates must not be driven by "lions at the

11

bar" or other attorneys who purportedly charge an hourly rate or are awarded an hourly rate

12

greatly in excess of the going rate in part because clients would not tolerate all or most of the legal

13

work being performed by attorneys with excessively high rates.

14

31.    The Ninth Circuit has rejected evidence such as declarations that conclude that that

15

the hourly rate claimed is the reasonable market rate based on the skill and experience of the

16

attorney because such declarations do not establish the reasonable market rate for "*similar legal*

17

*services*" provided in the specific case, and therefore did "not establish the prevailing market rate.

18

(*Widrig v. Apfel* (9th Cir. 1998) 140 F.3d 1207, 1210; see also *Finkelstein*, *supra*, 804 F.Supp. at

19

1246 ("Because an award of attorneys' fees … must be based on prevailing *market* rates, and

20

because plaintiff has failed to demonstrate that the market could bear a rate of $300 per hour for

21

most of the work performed on one complex case, we must reject [the] requested rate as not being

22

reasonable.") (emphasis added); accord *Jordan v. Multnomah County* (9th Cir. 1987) 815 F.2d

23

1258, 1264 n.9.)  For these reasons, I have based my opinion, *inter alia*, on hourly rates actually

24

paid by clients in cases with similar non-complex issues and on cases awarding fees where the

25

cases were of a similar complexity.  I have not given great weight to the declarations of Mr.

26

Schwinn, Mr. Mauer, or Mr. Bragg, because I believe these declarations raise credibility issues,

27

fail to consider the legal services provided by plaintiffs' counsel, including the complexity of the

28

case, and fail to address the concerns raised in *Finkelstein*, *Wingate*, and similar jurisprudence.

32.     I also note that Plaintiffs rely upon the order granting attorneys' fees in *Defenbaugh v. JBC* to support their argument that the Court should award a higher hourly rate than I have indicated in my expert opinion.  I was the attorney representing defendants in this case and am intimately aware with the arguments raised on the fee motion and the evidence before the Court on the fee motion.  *Defenbaugh* is distinguishable and inapposite for several reasons.  The *Defenbaugh* Court relied upon three things as the basis for its hourly rate determination:  (1) The plaintiffs' attorneys own declarations and those of third party declarants – mirroring the declarations in this case, which have been discussed above, (2) the uncontested *Irwin* order awarding attorneys' fees in the amount remaining from the settlement funds, and (2) other factually distinguishable cases awarding fees.

33.     With respect to the *Irwin* Order as a basis for the *Defenbaugh* hourly rates, I was also attorney of record for defendants in this case as well.  This unpublished order in *Irwin* approving of hourly rates in the $400 range is simply not relevant to the determination in this case.  (See *In re Quantum Health Resources, Inc.* (C.D. Cal. 1997) 962 F.Supp. 1254, 1256 (questioning the precedential value of unopposed orders granting attorneys' fees when the request was unopposed).)  It was not contested because it was a component of the settlement agreement between the parties.  Moreover, the *Irwin* litigation is not remotely comparable to the instant action, and thus, the order offers no factual support for the hourly rates requested by plaintiff's counsel.  *Irwin* was a class action that was hotly litigated for years.  Class members numbered in the hundreds of thousands.  The legal issues were novel and without precedent.  Given that the *Irwin* case is factually distinguishable from the *Fausto* case and the fee petition was uncontested, the *Irwin* case cannot support the plaintiffs' fee request.

34.     The third party declarations from attorneys Chavez and Sturdevant on which the Court relied in the *Defenbaugh* matter suffer from the same infirmities referenced above with respect to the third party declarants submitted in this case.  The declarants do not relate the hourly rate opinions to the legal services provided in the case, and thus the *Defenbaugh* opinion does not support the plaintiffs' request for fees.

35.     The *Defenbaugh* Magistrate Judge also relied upon *Hearn v. Barnhart* (N.D. Cal.

1    2003) 262 F.Supp.2d 1033, a social security benefits case, to support the fee award.  But that case

2    is also factually and procedurally distinguishable from the case at bar.  Under the Social Security

3    Act, attorneys' fees are recoverable from the benefits obtained up to a maximum of 25%.   In

4    analyzing the *Hearn* fee petition, the *Hearn* District Court noted that the case was *very*

5    *complicated* and involved *substantial risk* because the claim had already been rejected at several

6    levels of agency review.  (*Id.* at 1036-37.)  The District Court also noted that the ultimate recovery

7    was significantly greater than the past due benefits on which the fund percentage calculation was

8    based because the recovery included future benefits as well.  (*Id.* at 1037.)   And finally, the

9    District Court noted that the fee request was *unopposed* by the plaintiff before approving a fee

10   based on an hourly rate of $450 per hour.  (*Id.* at 1038.)  These facts are distinguishable from the

11   simple *Fausto* case.  First, the *Hearn* Court noted that courts are deferential to fee requests based

12   on a percentage recovery methodology in the social security benefits arena, often accepting overly

13   inflated hourly rates.  (*Id.* at 1037.)  Moreover, the rate there was deemed justified given the

14   extreme complexity of the case and the high risk involved.  In contrast, the case at bar was not

15   complex – and was not a class action.  In light of these factual and procedural differences, the

16   *Hearn* case fails to support the plaintiffs' fee petition, and thus the *Defenbaugh* case does not

17   support the plaintiffs' fee request.

18       36.     The Defenbaugh Magistrate Judge also relied on *Oberfelder v. City of Petaluma*

19   (N.D. Cal. 2002) 2002 U.S. Dist. LEXIS 8635, another factually and procedurally distinguishable

20   case. The *Oberfelder* case involved a lengthy and complicated civil rights case which spanned 3

21   years, included a trial, and resulted in a fee request for over 3,289 hours.  This fee request included

22   the following hours: almost 120 hours from summer associates; 1,104 hours from associate

23   attorneys; almost 1,030 hours from partners; and over 1,035 hours from legal assistants.  Of the

24   fees requested, the district court approved 4.1 hours, approximately .1% of the total hours, at $400

25   per hour, for a senior partner with over 30 years experience.  The *Oberfelder* District Court

26   approved an hourly rate of $295 per hour for the less experienced partner, who had 13 years

27   experience, but clearly had primary oversight over the case.  Although the experience of the senior

28   partner in the *Oberfelder* case may be comparable to Mr. Humphreys, this Court should also

9143914.1

18

1  compare the legal services performed and nature of the case to determine the reasonable market

2  rate.  In the *Oberfelder* case, the *one* senior partner had overall oversight responsibilities for a

3  lengthy, complicated case, rather than responsibility for the drafting of form complaints or cookie-

4  cutter discovery.  The *Oberfelder* case does not demonstrate that a reasonable market rate for any

5  of the attorneys in this factually distinguishable case in the $400-$500 range.    Given that the

6  Defenbaugh opinion relied upon *Oberfelder*, the *Defenbaugh* opinion does not support plaintiffs'

7  request either.

8        37.    I understand that Plaintiffs claim that there are very few attorneys who litigate and

9  present to a jury FDCPA claims on behalf of plaintiffs.  It is true that these generally non-complex

10  cases are settled, rather than tried, because it is often economically advantageous to settle the case

11  because of the statutory attorneys' fees provision.  However, there are a number of attorneys who

12  prosecute FDCPA cases in Northern California, including Peter Caron, Paul Arons, Rand Bragg,

13  Fred Schwinn, Eric Fagan, Jeremy Golden, Ron Wilcox, Todd Friedman, Mike Agruss, Nick

14  Bontrager, Irv Berg, Susan Berg, Lance Raphael, Brian Bromberg, Josh Swigart, Robert Hyde,

15  Scott Mauer, Ron Bochner, Lilys McCoy, Ann Marie Murphy, Andrew Ogilvie, Michael Quirk,

16  Brandon Block, Martha Bronson, Elizabeth Arleo, and Lawrence Szabo.  This is not meant to be

17  an all inclusive list, but merely represents a non-inclusive list of attorneys who have prosecuted

18  FDCPA cases against defendants in Northern California that my firm has represented.  Many of

19  these attorneys litigate cases throughout California.  In fact, the Northern District, and indeed all

20  of the district courts in California, has many FDCPA cases filed per year.  For instance, based on

21  my review of PACER reports, there have been 60 FDCPA cases filed from January to May of this

22  year, and 19 of those cases were filed in May 2009.  The reports I looked at sorted case

23  information based on a cause of action code indicating the case arose under the FDCPA: 15:1692.

24  This report would not include cases which were coded improperly or were coded with another

25  statutory or common law reference, even when the case included an FDCPA claim.

26

27

28

OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

1        I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct and that this Declaration was executed on this 8th day of June 2009,

3    in Sacramento, California.

4

5

6                                    June D. Coleman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9143914.1

OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS