Balám O. Letona, Bar No. 229642
LAW OFFICE OF BALÁM O. LETONA, INC.
1347 Pacific Avenue, Suite 203
Santa Cruz, CA 95060-3940
Tel: 831-421-0200
Fax: 831-515-3110
Email: letonalaw@gmail.com

Ronald Wilcox, Bar No. 176601
LAW OFFIC OF RONALD WILCOX
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: 408-296-0400
Fax: 408-296-0486
Email: ronaldwilcox@post.harvard.edu

David Humphreys *(pro hac vice)*
Humphreys Wallace Humphreys, P.C.
9202 South Toledo Ave.
Tulsa, Oklahoma 74137

Luke Wallace *(pro hac vice)*
Humphreys Wallace Humphreys, P.C.
9202 South Toledo Ave.
Tulsa, Oklahoma 74137

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSÉ DIVISION**

| | |
|---|---|
| MANUEL G. FAUSTO, AND LUZ FAUSTO,<br><br>Plaintiffs,<br><br>v.<br><br>CREDIGY SERVICES CORPORATION, CREDIGY RECEIVABLES INC., CREDIGY SOLUTIONS INC., LUIS RENATO SILVA NUNES, BRETT BOYDE, PAULO PERES, THOMPSON, and DOES 1-10, inclusive,<br>Defendant(s). | Case No. C07-05658 JW – RS<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>The Honorable James Ware<br><br>DATE:   June 29, 2009<br>TIME:   9:00 a.m.<br>PLACE:   Courtroom 8 |

//
//
//

//

i

# TABLE OF CONTENTS

I. INTRODUCTION

II. THE PLAINTIFFS HAVE SHOWN THAT THE HOURLY RATES ARE REASONABLE

    A. Defendants Case Law is Largely Irrelevant Following the Ninth Circuit's Recent Decision in *Camacho v. Bridgeport Financial, Inc.*

    B. The Coleman Declaration is Suspect

III. PLAINTIFFS SPENT A REASONABLE AMOUNT OF TIME PROSECUTING THIS ACTION

    A. The Defendant's "Scorched Earth" Strategy Resulted in the Great Expenditure of Time Prosecuting This Case

    B. The Claims in this Lawsuit are Inextricably Intertwined

    C. Plaintiffs Hours Expended Reflect the Distinct Contribution of each Lawyer to the Case

        1. Depositions

        2. Mediation

        3. Attendance at Trial was Reasonable

    D. Plaintiffs Spent a Reasonable Amount of Time on the Disputed Tasks

        1. Response to Motion for Summary Judgment (Bona Fide Error)

        2. Initial Investigation

        3. Jury Instructions/Verdict Form

        4. Communication Between Counsel

    E. Clerical Time

    F. Across the Board Reduction

    G. Kerr Factors

IV. CONCLUSION

# TABLE OF AUTHORITIES

## FEDERAL

*Abad v. Williams, Cohen & Gray*
    2007 LEXIS 61652 at *9……………………………………………………………...…………3

*Beaty v. BET Holdings, Inc.*
    222 F.3d 607, 612 (9th Cir. 2002)……………………………………………………………..8

*Bell v. Clackamas County*
    341 F.3d 858, 869 (9th Cir. 2003)……………………………………………………………..2

*Camacho v. Bridgeport Financial, Inc.*
    523 F.3d (9th Cir. 2008)……………………………………………………………………1, 2, 4

*Camacho v. Bridgeport Financial, Inc.*
    2008 LEXIS 61652 (N.D. Cal. 2008)………………………………………………...…………2, 3

*Cancio v. Financial Credit Network*
    No. C 04-3755 THE, 2005 WL 1629809 (N.D. Cal. July 6, 2005)…………………….………2

*Cooper v. Sunshine Recoveries, Inc.*
    No. 00CIV8898LTSJCF, 2001 WL 740765 (S.D.N.Y. June 27, 2001)………..…………..2

*Costa v. National Action Financial Services*
    2008 LEXIS 35339 *16 (E.D. Cal. April 30, 2008)……………………………….………4

*Johnson v. Credit International, Inc.,*
    No. C-03-100 SC, 2005 WL 2401890 (N.D. Cal. July 28, 2005)…………………………19

*Davis v. City and County of San Francisco*
    976 F.2d 1536 (9th Cir. 1992)………………………………………………….………..9

*Dowling v. Kucker Kraus & Bruh, LLP*
    No. 99CIV11958RCC, 2005 WL 1337442 (S.D.N.Y. July 6, 2005)……………..……..2

*Figueroa-Torres v. Toledo-Davila*
    232 F.3d 270, 277 (1st Cir. P.R. 2000)……………………………………………..……..8

*Gates v. Deukmejian*
    987 F.2d 1392, 1404 (9th Cir. 1992)……………………………………………………..8

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*
    100 F.3d 691, 700 (9th Cir. Guam 1996)…………………………………………………..13

*Hagan v. MRS. Assoc., Inc.*
    No. Civ A 99-3749, 2001 WL 531119 (E.D. La. May 15, 2001)…………………………..2

*Hensley v. Exkerhart*
    461 U.S. 424, 440, 103 S. Ct. 1933, 76 L. Ed.2d 40 (1933)………………….……………7

*In re Martinez*
    266 B.R. 523 (S.D. Fla. 2001)………………………………………………...……………2

*Johnson v. Credit International, Inc.*
  No. C-03-100 SC, 2005 WL 2401890 (N.D. Cal. July 28, 2005)……………….....2, 3, 15

*Johnson v. University College of University of Alabama*
  706 F.2d 1205, 1208 (11th Cir. 1983)……………………………………..…………..9

*McGowen v. King*
  661 F.2d 48, 51 (5th Cir. 1981)………………………………….…..…………….6

*McGrath v. County of Nevada*
  67 F.3d 248, 255………………………………………………………..………..9

*Montez v. Capital Recovery Assoc., Inc.*
  C-05-01207 JW 2005, LEXIS 29108 (N.D. Cal. Nov. 8, 2005)……………….…..……..3

*Moreno v. City of Sacramento*
  534 F.3d 1106, 1114 (9th Cir. 2008)………………………………………...…….9, 14

*Oberfelder v. City of Petaluma*
  2002 U.S. Dist. LEXIS 8635 (N.D. Cal. 2002)…………………………………..10,12

*Rodriguez v. Florida First Financial Group, Inc.*
  2009 WL 535980 (M.D. Fla. 2009)…………………………………………….…..7

*Ward v. Kelly*
  515 F.2d 908, 912 n. 11 (5th Cir. 1975)………………………………………………9

*Williams v. Hanover Housing Auth.*
  113 F.3d 1294, 1298-99 (1st Cir. 1997)……………………………...………..8

*Yahoo!Inc. v. Net Games, Inc.*
  329 F. Supp. 2d 1179 (N.D. Cal. 2004)……………………………………………….2

**STATE**

*Akins v. Enterprise Rent-A-Car Co.*
  79 Cal. App. 4th 1127, 1133 (2000)…………………………….…..……………8

*Avikian v. WTC Fin. Corp.*
  98 Cal. 4th 1108 (2002)…………………………………………………….9

*Sundance v. Municipal Court*
  192 CA3d 268, 273 (1987)………………………………..……………..8

**FEDERAL STATUTES**

42 U.S.C. § 1983……………………………………………………..…………..7

**FEDERAL RULES**

Fed. R. Civ. Pro. 68……………………………………………………...……………6

**OTHER**

*Richard Pearl, Continuing Education of the Bar of California*
  (2002) § 12.14A…………………………………………8

# PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
# MOTION FOR ATTORNEYS' FEES

## I.     Introduction

Plaintiffs are entitled to a full award of the reasonable attorneys' fees and costs as requested in the application. The fees and costs earned by Plaintiffs' counsel are reasonable under the Lodestar Formula and are supported by the *Laffey* Matrix and the *Kerr* Factors. The size of the fee award is further justified by the tactics employed by the Defendants in their defense of this case and in the purpose behind the fee shifting portion of the FDCPA. Defendants claim that this was a simple case both legally and factually is simply false. Defendants' claim is contradicted by the trial record, the extensive motion practice, including nine motions for summary judgment, and Defendants' own admissions.

As shown in Section II *infra* and section III F. *infra*, Defendants have no factual or legal basis for alleging unreasonable hourly rates or for its subjective one-third (33%) "across the board" reduction in the fees requested by Plaintiffs. Setting aside these two issues, the remaining amount in controversy is only $215,000, and the Defendants expend the majority of its argument seeking to avoid paying this amount as duplicative or excessive. This includes a claim that it was unreasonable for Messrs. Letona and Wilcox to include any of their time attending trial

## II.    The Plaintiffs Have Shown That the Hourly Rates are Reasonable

### A.    Defendants Case Law is Largely Irrelevant Following the Ninth Circuit's Recent Decision in *Camacho v. Bridgeport Financial, Inc.*

Defendants argue that the hourly rates charged by Plaintiffs' attorneys are unreasonable based on holdings in the Northern District of California and materials submitted in the Coleman Declaration. In making this argument, Defendants ignore *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, (9th Cir. 2008) and the decision by Judge Breyer upon remand found at *Camacho v. Bridgeport Financial, Inc.*, 2008 LEXIS 61652 (N.D. Cal. 2008)(hereinafter referred to as "*Camacho II*").

1

In *Camacho*, the Ninth Circuit noted that a district court abuses its discretion in determining the prevailing market rate if "it relies on cases decided years before the attorneys actually rendered their services." *Camacho*, 523 F.3d at 981 (citing *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003)("holding that it was an abuse of discretion to apply market rates in effect more than two years before the work was performed"). The present case was filed on November 7, 2007. Under *Camacho*, Defendants' reliance on cases and prevailing rates prior to November of 2005 is misplaced.[1] Defendants' reliance on some of these cases is also misplaced under *Camacho* as they are decisions regarding fees from district courts in New York, Florida, and Louisiana. The Court held that the relevant prevailing rates are those found in the Northern District of California and expressly told the Northern District that cases from the Southern District of New York and the Southern District of Florida, among others that the district court had relied on, were not the relevant community. *Camacho*, 523 F.3d at 979.

On remand, the Northern District examined several of the cases cited by Defendants as support for an hourly rate of $200-$250 and found them to be either distinguishable from the *Camacho* case or are invalid under the Ninth Circuits ruling in *Camacho*. *Camacho II*, 2008 LEXIS 61652 at *8. These cases are distinguishable from the present case for the same reasons. First, the Northern District declined to follow *Yahoo!Inc. v. Net games, Inc.*, 329 F. Supp. 2d 1179 (N.D. Cal. 2004) because the court believed it should follow the Ninth Circuit's standard instead. *Camacho II*, 2008 LEXIS 61652 at *10-*11. Second, The Northern District also declined to follow *Johnson v. Credit International, Inc.*, No. C-03-100 SC, 2005 WL 2401890 (N.D. Cal. July

---

[1] This eliminates Defendant's arguments regarding prevailing rates based on *Dowling v. Kucker Kraus & Bruh, LLP*, No. 99CIV11958RCC, 2005 WL 1337442 (S.D.N.Y. July 6, 2005); *Cooper v. Sunshine Recoveries, Inc.*, No. 00CIV8898LTSJCF, 2001 WL 740765 (S.D.N.Y. June 27, 2001); *Yahoo!Inc. v. Net games, Inc.*, 329 F. Supp. 2d 1179 (N.D. Cal. 2004); *Johnson v. Credit International, Inc.*, No. C-03-100 SC, 2005 WL 2401890 (N.D. Cal. July 28, 2005); *Cancio v. Financial Credit Network*, No. C 04-3755 THE, 2005 WL 1629809 (N.D. Cal. July 6, 2005); *In re Martinez*, 266 B.R. 523 (S.D. Fla. 2001); *Hagan v. MRS. Assoc., Inc.*, No.Civ A 99-3749, 2001 WL 531119 (E. D. La. May 15, 2001)

28, 2005) because this case relied on cases from outside the Northern District a practice "which the Ninth Circuit held in Camacho to be erroneous." *Camacho II*, 2008 LEXIS 61652 at *9. Third, the Northern District distinguished *Abad v. Williams, Cohen, & Gray*, 2007 LEXIS 46318 (N.D. Cal. June 26, 2007) because *Abad* had "no dispositive motion practice" and settled five months after the complaint was filed. *Camacho II*, 2008 LEXIS 61652 at *8. As this Court is well aware, there were nine motions for summary judgment filed by the Defendants in the present case and the case required a jury trial to reach its current status of post-judgment practice. Fourth, the Northern District distinguished two cases relied upon by the Defendants as unreliable guides because the fee application was unopposed. *Id*. at * 9-*10 (holding that *Johnson v. Credit International, Inc.*, No. C-03-100 SC, 2005 WL 2401890 (N.D. Cal. July 28, 2005) and *Montez v. Capital Recovery Assoc., Inc.*, slip op., case no. C-05-01207 JW, 2005 LEXIS 29108 (N.D. Cal. Nov. 8, 2005) were not reliable as unopposed fee applications). To put it simply, after *Camacho* and *Camacho II*, the Defendants are left with no legal support for the argument that the hourly rates requested by Plaintiffs are unreasonable.

Ultimately, the *Camacho II* Court granted an hourly rate of $375. *Camacho II*, 2008 LEXIS 61652 at *12. The Court found that the range for legal work within the Northern District of California was between $325 to $700 an hour and that attorneys of like skill and experience would make between $325 to $500. *Id.* at *6-*7. The Court did not grant the amount requested by the Plaintiff, reducing it instead to $375.00 because of the minimal results; $1,341.50 in total compensation, obtained by the Plaintiff on behalf of the entire class. *Id*. at *11-*12. The present case is easily distinguished from this reduction in rate because of the exceptional result of $501,000 in compensatory and punitive damages for two persons.

### B. The Coleman Declaration is Suspect

Defendants claim that the Declaration of June D. Coleman is the "only direct evidence of reasonable market rates billed and paid in this case." docket # p. 8. The Coleman Declaration is

3

suspect for several reasons.  First, the Declaration cites to case law that the Northern District has already determined is not applicable under the decision by the Ninth Circuit in *Camacho*.  (See Coleman Declaration, Docket 453 at ¶ 13 a-c (citing to cases that are outside the Northern District, over 2 years old, or distinguished or found unreliable for the reasons addressed *supra.*)).  Second, in a case defended by June Coleman, the Eastern District of California rejected the argument that what defense counsel can charge its clients to defend a case is the only evidence of a reasonable hourly rate.  *Costa v. National Action Financial Services*, 2008 LEXIS 35339 *16 (E.D. Cal. April 30, 2008).  Third, Ms. Coleman is a defense attorney with established relationships with debt collector clients and her rate is negotiated based, in part, on the sale of her time "wholesale" to a few insured clients.  Fourth, Ms. Coleman is a 1997 law school graduate and has approximately one half the legal experience of David Humphreys, about 25% less than Luke Wallace, and less experience than Ronald Wilcox, yet she opines that her rate should be equal to more experienced counsel.  Fifth, Ms. Coleman presents no evidence of any jury trial experience on her part.  Sixth, Defendants ignores all of the declarations filed by Plaintiffs, including the Declaration of Richard Pearl and ignore the fee survey he conducted. (*See,* Wilcox Declaration in Support of Motion for Attorneys Fees and Costs, at Exhibit 4, Docket number 435).  Such survey shows the rates requested herein are reasonable, and indeed below the market rate.  Seventh, the Coleman Declaration fails to disclose her substantial self interest in a lessened fee for Plaintiffs' counsel, her firm's defense in another debt collection case: National Credit Acceptance v. Jose Luis Gutierrez, County of Santa Cruz, Superior Court of the State of California CV 157984, in which the debtor is represented by counsel for the Faustos.

Finally, the Coleman Declaration is allegedly evidence of the simplicity of this particular case.  Coleman's assertion that the case was neither novel nor complex is false.   As this Court stated, "This was a case, which as you might come to learn, there haven't been many of these cases. So we were struggling a little bit as a court to make sure that we were clear with you on the

4

law. And so what you have done here will be pioneering in some respects. Other courts will take a look at the work that has been done in this case and draw from it." ( *See* Decalaration of David Humphreys In Support of Reply to Defendants' Opposition to Motion for Attorneys' Fees and Costs ("Humpreys Decl.") Ex. A (Trial Transcript 1384:1-8)).

As to the factual complexity, Defense counsel admitted during closing argument that this case has "been a huge part of my career for the last year" and that he had not been alone in representing the Defendants in this case. (Humphreys Decl. Ex. A (Trial Transcript 1357:8-11)). Defense Counsel also recognized that the Verdict Form itself was complicated. (Humphreys Decl. Ex. A (Trial Transcript 1397:12-13)). Finally, as the Court has noted there have been very few jury trials in this relatively new area of law. (Humphreys Decl. Ex. A (Trial Transcript 1384:9-14)). There are no reported decisions regarding attorney fees in an FDCPA case with a Jury award of this size.

Defendants' proposed rates are not supported by case law from the Northern District nor are they supported by other evidence.

### III.   Plaintiffs Spent a Reasonable Amount of Time Prosecuting This Action

Defendants complain of various alleged excesses in the billing including the implication that the use of multiple attorneys to prosecute the case and the involvement of three law firms is somehow improper, yet the Defendants have been represented in this case by no less than eight different attorneys who have entered formal appearances as well as additional attorneys who did not formally enter an appearance. Defendants then make self-serving assumptions of how much time, how many attorneys, and whether the presence and contributions of any or all of the attorneys resulted in a higher level of representation for the Plaintiffs and contributed to the extremely successful prosecution of this case. Conspicuously missing is any direct evidence by any of the Defendants' eight attorneys of the amount of time expended in defense of the case or the hourly rate charged for doing so.

Defendants are responsible for the amount of hours expended prosecuting this case

through its unreasonable resistance to cooperating in discovery, its filing of nine separate motions for summary judgment, its filing of a multiplicity of motions in Limine, its noticing of 20 plus depositions, its designation of 5 different individuals as persons most knowledgeable, its decision to object in writing to video depositions testimony designated by Plaintiffs, only later to withdraw said objections after untold days having been spent responding and arguing same by counsel for Plaintiffs, and its decision to vigorously litigate every conceivable issue of law or fact.  Counsel exchanged more than 1500 e-mails necessitating review and/or response. In addition to vigorous litigation, Defendants also attempted to intimidate the Plaintiffs by threatening and filing a counterclaim upon which it could not and did not prevail, by exhaustively digging into the intimate details of the Faustos' home lives, and by threatening to sue Plaintiffs' counsel and to put Plaintiff's counsel on the stand as a witness.  (Humphreys Decl. ¶ 3).

> **A.    The Defendants' "Scorched Earth" Strategy Resulted in the Great Expenditure of Time Prosecuting This Case**

Defendants chose to make a stalwart defense of all claims in this action and to bring an unmeritorious counter-claim.  Defendants chose to file nine motions for summary judgment in what it now claims was a "simple FDCPA case."  Defendants chose to make a Rule 68 offer of $5,000.00 in a suit that resulted in an ultimate judgment of $501,000.00.  Defendants are now seeking to avoid the financial repercussions of its conscious choice to escalate the cost of litigation to the breaking point by now claiming that the amount of time Plaintiffs' counsel spent was unreasonable.  "The borrower's counsel did not inflate this small case into a large one; its protraction resulted from the stalwart defense. And although Defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost." *McGowan v. King*, 661 F.2d 48, 51 (5th Cir. 1981).

In a recent FDCPA matter the Court noted:  "While the Court finds that certain of the tasks were more administrative in nature (drafting indexes, downloading Interested Persons Order), the overall amount of time spent is reasonable, considering that the case involved motion practice, evidentiary hearing and **a particularly difficult defendant.**" *Rodriguez v. Florid First Financial*

1 *Group*, Inc., 2009 WL 535980 (M.D. Fla. 2009)

2 On April 25, 2008, Defendants' counsel, Jeff Lucas, declared that Credigy would employ a
3 scorched earth policy in litigating this case. (Supplemental Declaration of Ronald Wilcox in
4 Support of Reply to Motion for Attorneys Fees and Costs ("Supplement Decl. Wilcox")).
5 Defendants' scorched earth tactics have no place in this honorable Courtroom. Having employed
6 this scorched earth policy, and lost, Defendants must now bear that cost. Defendants' scorched
7 earth tactics are further evidenced by their approach to discovery issues, nine motions for
8 summary judgment, multiple motions in Limine, noticing 20 plus depositions, requiring an order
9 of the Court to have a representative at trial to testify, and a motion practice that has resulted in a
10 Docket with over 450 entries. (Humphreys Decl. ¶ 4)

### B.     The Claims in this Lawsuit are Inextricably Intertwined

Defendants have admitted that "the facts underlying the FDCPA and Rosenthal claims also provide the factual predicate for the other claims for relief." (*See*, Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs, Docket 451 at p. 10). This was also clear from the verdict form, agreed to by the Defendants, that permitted only one damage award among all theories of recovery. Under *Hensley v. Eckerhart*, the Supreme Court held that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." 461 U.S. 424, 440, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1933). Defendants ignore this standard, and to the extent they failed to argue otherwise, have conceded the issue.

"It is clear that a litigant need not prevail on every claim in order to receive a full fee. [internal citations omitted]. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435 (emphasis added)." *Gates v. Deukmejian*, 987 F.2d 1392, 1404 (9th Cir. 1992).

Indeed, Appellate courts have held a Plaintiff is entitled to fees even if he only succeeded on state law claims. See *Williams v. Hanover Housing Auth.*, 113 F.3d 1294, 1298-99 (1st Cir. 1997) (holding that if a plaintiff succeeds in the primary objective of his law suit, he may receive

attorney's fees even if he prevails only on a state-law claim), and *Figueroa-Torres v. Toledo-Davila*, 232 F.3d 270, 277 (1st Cir. P.R. 2000)("In all events, this court has held that when state-law and § 1983 claims are inextricably intertwined, a plaintiff who prevails only on the state-law claim nonetheless may receive a fee award under 42 U.S.C. § 1983.")

Courts deciding California FDCPA matters have reached the same conclusion. *Akins v. Enterprise Rent-A-Car Co.*, 79 Cal. App. 4th 1127, 1133 (2000)(finding, in a case under the California FDCPA, the related claims rule applies when there are common factual or common legal issues).

Also see, *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2002) (Consistent with the purpose of the FEHA fee shifting statute, reductions for limited success are disfavored and may be applied only in the unusual case would a full award would be unjust), and *Sundance v. Municipal Court*, 192 CA3d 268, 273 (1987)(To reduce the attorney's fees of a successful party because he did not prevail on all his arguments, makes it the attorney, and not the defendant, who pays the costs enforcing [a] public right.)

Also, this court can award attorney's fees as a sanction since it encouraged Plaintiffs to seek sanctions as a result of Defendants abusive filing of nine motions for summary judgment on the day before Christmas Eve.

### C. Plaintiffs Hours Expended Reflects the Distinct Contribution of each Lawyer to the Case

Defendants argue there was significant duplication, but fail to identify the specific entries that are duplicative. "Once a documented fee claim is submitted, the opposing party must state any objections to the hours claimed." **California Attorney Fee Awards**, Richard Pearl, Continuing Education of the Bar of California, (2002) §12.14A. "Specific objections to particular hours are required, and generalized objections that the hours are "excessive" or "unnecessary" may not suffice to rebut the fee claim." *Id.*, citing, *Avikian v. WTC Fin. Corp.,* 98 Cal. 4th 1108 (2002), *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995)(fee opponent "bears the burden of proving specific evidence to challenge the accuracy and reasonableness of the hours charged.")

"While it is appropriate to consider the skill required to perform a task the district court may not set the fee based on speculation as to how other firms would have staffed the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008)(internal citations omitted). The Ninth Circuit also stated

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Id*. at 1112.

Defendants object to the presence of more than one attorney at depositions, mediation, and trial. Defendants rely primarily upon *Johnson v. University College of University of Alabama* for their assertion that every time more than one attorney was present at a deposition, mediation, or trial that Plaintiffs fee request should be reduced. 706 F.2d 1205, 1208 (11th Cir. 1983). Defendants have quoted this case out of context and to support a premise contrary to the court's actual language. The *Johnson* Court actually stated: "a reduction is warranted **only** if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Id.* at 1208(emphasis added) citing *Ward v. Kelly*, 515 F.2d 908, 912 n. 11 (5th Cir. 1975). The Ninth Circuit agrees that more than one attorney may be involved in the same task. *Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992)(hours claimed must reflect the distinct contribution of each lawyer).

The Northern District of California has previously recognized the value of having more than one attorney at a deposition, hearing, or settlement conference.

> In opposing the number of hours requested, defendants cite instances of multiple billing that occurred when more than one attorney billed for the same appearance, deposition or conference on the same day. It is true that courts have disallowed multiple billing where an attorney's presence is redundant. *However, the attendance of **more than two attorneys** is not per se duplicative.* Duplicative hours are those where the presence of more than one attorney does not provide benefit to

9

> the client. The deposition testimony of key witnesses are the building blocks of trial strategy. Counsel attending a deposition can better assess the quality of a witness more effectively than reading from a transcript. In fact, two attorneys for defendant also appeared at depositions as well as hearings before this court. The court finds that the presence of two attorneys for plaintiff at four out of twenty four depositions is not unreasonable nor atypical. Defendants' objection to the appearance of two attorneys for plaintiff at a case management conference is also rejected. The court uses these conferences for more than the mere formality of setting dates; issues are discussed, the case shaped for pretrial and trial and concessions and agreements are made. Attorneys empowered to make decisions on behalf of their client or those with substantive contributions are needed at case management conferences. Additionally, in objecting to the presence of two attorneys for plaintiff at a settlement conference, defendant overlooks the fact that a team approach to solving the issues is useful during settlement conferences which test counsel's ingenuity and negotiating skills.

*Oberfelder v. City of Petaluma*, 2002 U.S. Dist. LEXIS 8635 (N.D. Cal. 2002)(emphasis added).

### 1. Depositions

Defendants object to the presence of two attorneys on behalf of Plaintiffs at the depositions of Luz and Manuel Fausto, Ms. Fox, Ms. Bean, Ms. Ostrowski, Mr. Boyde, Ms. Poston, Ms. Ervin, Mr. Loynd, Mr. Miller, Mr. Williams, Mr. Siler and Mr. Dela Verde. For most of these depositions Defendants also had multiple attorneys present. Boyde, Poston, and Ervin were identified as central actors in the Defendants bona fide error defense and were therefore critical to the Plaintiffs' case. If Defendants had not misrepresented the facts in its interrogatory response regarding the actions of Ervin and Poston, the depositions would not have been necessary at all. Defendants chose to present Messrs. Loynd, Williams, Siler, and Dela Verde as corporate representatives and had multiple attorneys present for each deposition. Defendants flew Tomio Narita to Atlanta for the deposition of "Ryan Miller," a/k/a Nunes, but the deposition was defended by John Gillespie, an Atlanta attorney. (Humphreys Decl.¶ 5 ) At least two and on occasion four representatives of the Defendants' law firms were present at the Faustos' depositions. (Humphreys Decl. Ex. B; ¶ 6 ).

Defendants also object to the time spent by Ron Wilcox in preparing the nine Fausto children for their depositions as duplicative and excessive. Mr. Wilcox billed 7.6 hours to prepare

10

1 nine people for depositions (Supplemental Decl. of Wilcox); this is far from excessive and ignores
2 the reality that multiple conversations took place concurrently.

3 Finally, Defendants object to the time spent defending and preparing Luz and Manuel
4 Fausto for deposition. The Faustos' depositions were divided into four sessions all of which
5 needed to be defended and prepared for. In any attempt to communicate with the clients and
6 prepare them for the deposition, the presence of Balam Letona as the only Spanish speaking
7 member of the Plaintiffs litigation team was required. It was and is reasonable that the other more
8 experienced attorneys would also be involved in preparing the Plaintiffs for the multi day ordeal
9 that was their depositions. These clients are poorly educated, unsophisticated, Spanish speakers
10 who required extensive aid in understanding, preparing for, and being able and willing to
11 communicate with total strangers, under oath, about issues that they would not ordinarily
12 communicate about with others. It took considerable time to help them understand the process,
13 the rules, and to make them comfortable discussing what they considered extremely private and
14 personal matters that they were not inclined to share even with their own children. The time
15 necessary to prepare and attend these depositions was also increased by defense counsel's
16 insistence on performing the depositions in San Francisco, instead of in San Jose. This increased
17 travel time over the multiple deposition sessions by several hours. Defendants also refused to
18 confine the examinations to matters relevant to the dispute between the Faustos and the
19 Defendants and instead descended into a wild attempt to paint the Plaintiffs as individuals
20 unworthy of justice because of their immigration status, some history of misdemeanor traffic or
21 other convictions, history of alcohol use, and issues regarding civil disputes and the potential
22 foreclosure on the home of the Plaintiffs. All of these issues ended up being the subject of
23 Motions in Limine and the majority was excluded from being mentioned at trial. (Humphreys
24 Decl. ¶ 7)

25 **2. Mediation**

26 Defendants also argue that the presence of multiple Plaintiffs attorneys at the mediation
27 and spending time in preparation for the mediation was unreasonable but as the *Oberfelder* Court
28 has said "defendant overlooks the fact that a team approach to solving the issues is useful during

11

1  settlement conferences which test counsel's ingenuity and negotiating skills." 2002 U.S. Dist.
2  LEXIS 8635. In addition, Tomio Narita, virtually insisted on the presence of trial counsel as a
3  condition of any mediation. (Humphreys Decl. at ¶ 8).

          **3.    Attendance at Trial was Reasonable**

Each attorney had a different role at trial. David Humphreys was responsible for cross-examining the Defendants' witnesses. Luke Wallace was responsible for examining the Plaintiffs witnesses. Balam Letona was responsible for advising, counseling, interpreting and explaining what was happening at the trial to the Faustos. Mr. Wilcox documented the testimony and evidence necessary to address the Court, address jury instructions, argue motions, and prepare to argue in opposition to any Motion for Judgment as a Matter of Law. Indeed, on numerous occasions Mr. Wilcox had to address the Court on issues which were heard both on and off the record, including a discussion with the court regarding the availability of punitive damages for Negligent Infliction of Emotional distress. Each attorney added his own perspective and memory of the evidence that had been produced during discovery and the law in question to help prepare for arguing motions and examining witnesses. Thus, these efforts all contributed to the $500,000 award the jury returned for the Faustos.

    **D.    Plaintiffs Spent a Reasonable Amount of Time on the Disputed Tasks**

          **1.    Response to Motion for Summary Judgment (Bona Fide Error)**

Defendants object to the amount of time spent on the Opposition to Defendants' Motion for Summary Judgment (bona fide error). Defendants ignore the significance of this particular motion. Failure to effectively defend against this motion would have been fatal to the Plaintiffs' case. If the Defendants had prevailed on this motion the claims under the FDCPA and Rosenthal Act would have been dismissed. This would have removed the Federal Question that was the basis for this Court's jurisdiction in the case and would have allowed Defendants to argue that supplemental jurisdiction over any remaining state law claims should be declined.

In order to respond effectively to this Motion Plaintiffs had to examine the Defendants case law (much of this case law the Plaintiffs were able to refute as either distinguishable from the present case or a misstatement of the precedence by the Defendants), find case law that supported

1  Plaintiffs' position, and canvas the entire record, including a close examination of thousands of
2  pages of Credigy documents and over a thousand pages of deposition testimony to include the
3  totality of the factual basis for presenting this issue to a jury. This took considerable time on the
4  part of all of the attorneys and then to reach the final product that was filed with the Court all of
5  the attorneys were involved in revising and strengthening the factual and legal arguments that
6  were made based on their involvement in specific discovery matters.

7  The final product was so effective that Defendants withdrew its motion rather than argue it
8  before the Court. Ironically, these fees could have been avoided entirely had Credigy not
9  attempted to overwhelm Plaintiffs' counsel with voluminous summary judgment filings

### 2. Initial Investigation

Defendants criticize the amount of time spent meeting with the clients, investigating the matter before the complaint was filed, and drafting the complaint, but fail to specify what time they are criticizing. Plaintiffs have a responsibility to not bring a frivolous claim and to bring the claim against the correct Defendants. In the instant case, it took considerable time just to unravel the Credigy family of companies enough to determine who the proper Defendants might be. Simply put, Plaintiffs did what was necessary to achieve the exceptional verdict herein, and expose a corporate practice of abusing consumers nationwide. From July 21, 2007, when he first met the Plaintiffs to November 8, 2007, when the Complaint was filed, Mr. Wilcox billed 13.5 hours, of which 4.4 hours was devoted to drafting or revising the complaint. (Supplemental Decl. of Wilcox) This can hardly be seen as excessive, especially in light of the results for the Plaintiffs and this matter. In a thirteen year old decision the 9th Cir. stated it often costs more that $6,000 to hire an attorney to draft a complaint." *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. Guam 1996) ("Acknowledging that it often costs more than $ 6000 to hire an attorney to draft a complaint...")

### 3. Jury Instructions/Verdict Form

Defendants cannot make up their minds regarding how much time was spent preparing Jury Instructions and Verdict Forms. At one point they complain that Laura Frossard spent 22 hours on jury instructions and at another point they argue that she spent in excess of 25 hours on this

13

1 task. Ms. Frossard prepared an initial draft of the Jury Instructions and Verdict Forms which were
2 circulated among the attorneys for comment and revisions with the final versions being prepared
3 by Ron Wilcox. (Humphreys Decl. ¶ 9) As the Verdict Form and Jury Instructions appear to play
4 an important part in Defendants' Renewed Motion for Judgment as a Matter of Law and Plaintiffs
5 perhaps could have devoted additional attention to this filing to prevent Credigy's most recent
6 defense.

### 4. Communication Between Counsel

Plaintiffs complain about 88 hours spent communicating between counsel for case strategy, opinions on legal and factual arguments, and determining who would attend or address which hearing, deposition, or motion. If all four attorneys were part of every conference call for these purposes, the Plaintiffs would have spent a total of 22 hours of actual time over the life of this case communicating with each other. This is far from excessive and represents a substantial and significant reduction in time actually expended.

### E. Clerical Time

Defendants complain about fees for work that they allege should have been performed by a legal secretary and not part of the fee agreement. Defendants make a broad generalization about this work and does not express specific instances that they object to but rather make a broad objection. For small firms like those of the Plaintiffs, the luxury of hiring legal secretaries as well as paralegals is not feasible nor is it cost effective. As Moreno makes clear, a reduction of fees based on how another firm might have handled the work is not appropriate. *Moreno v. City of Sacramento*, 534 F.3d at 1114. In any event, Defendants point to little or nothing in the billing records to support this contention.

### F. Across the Board Reduction

Defendants argue for an additional across the board cut of 33% based on their alleged inability to identify what claims were being addressed and an alleged but unsubstantiated claim that documents filed in this case were "almost identical" to motions/pleadings.

First, Defendants have not identified which specific entries they were unable to identify as pertinent to a specific claim. They make a general objection to "a substantial portion of Exhibit

14

O." Defendants have failed to meet its burden related to this claim of an across the board reduction. Even if they had identified specific entries that it was impossible to determine which claim the entry was in reference to, the claims in this matter were inextricably (see argument *supra*.) intertwined and separating whether a specific set of time was part of one claim or another is not feasible.

Second, they allege an across the board reduction is due based on the existence of a second case against Credigy, *Pintor v. Credigy Services Corp.*, Case No. 5:07-cv-06428-JF, Northern District of California. This case went to mediation on August 27, 2008 and no further substantial time was put into the case thereafter. Defendants cannot point to any work done on the *Pintor* case that was duplicated in Fausto after this mediation and Plaintiffs' counsel divided all time spent that applied to both cases prior to this date. This appears in the billing records. The *Pintor* matter was completed well before the vast majority of the work performed in this case. (Humphreys Decl. ¶ 10)

Finally, even if the unsubstantiated allegations made by the Defendants were true, its own case law does not support the drastic cut suggested. The *Johnson* case Defendants cites, allowed for a 5% reduction not the massive 33% reduction the Defendants would have the Court believe is appropriate. *Johnson v. Credit International, Inc.,* No. C-03-100 SC, 2005 WL 2401890 (N.D. Cal. July 28, 2005).

### G. Kerr Factors

Defendants allege that the Kerr factors should be ignored for basically the same reasons for reducing the fee generally. For the reasons addressed in Plaintiffs Motion for Attorneys Fees and previously addressed in this Reply, the *Kerr* Factors should be implemented.

## IV. Conclusion

The hourly rates and the fees requested by the Plaintiffs are reasonable, within standards for the Northern District of California and should be awarded in consideration of the purposes behind fee shifting statutes.

        Respectfully submitted,

        HUMPHREYS WALLACE HUMPHREYS, P.C.


By:   /s/ David Humphreys
       David Humphreys, OBA #12346
       Luke J. Wallace, OBA # 16070
       9202 S. Toledo Avenue
       Tulsa, Oklahoma 74137
       (918) 747-5300/(918) 747-5311 fax
       **PRO HAC VICE ATTORNEYS**
       **FOR PLAINTIFFS**